Appeal No. 21-10199

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

JUAN ENRIQUE PINTO,

*Objector-Appellant,*

v.

SUSAN DRAZEN, *ET AL.*,

*Plaintiffs-Appellees,*

v.

GODADDY.COM, LLC,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
For the Southern District of Alabama
District Court Docket No. 1:19-00563-KD-B

---

**OPENING BRIEF OF APPELLANT JUAN ENRIQUE PINTO**

---

Robert W. Clore
BANDAS LAW FIRM, PC
802 N. Carancahua, Suite 1400
Corpus Christi, TX 78401
Tel: (361) 698-5200
Fax: (361) 698-5222
rclore@bandaslawfirm.com
*Attorneys for Appellant*

Appeal No.:21-10199
Juan Pinto v. Susan Drazen v. GoDaddy.com, LLC

Pursuant to 11th Circuit Rule 26.1-2 (a), Juan Enrique Pinto declares that he is an individual and as such, is not a subsidiary or affiliate of a publicly owned corporation and there is no publicly held corporation that owns ten percent or more of any stock issued by Pinto. Pursuant to 11th Circuit Rule 26.1-2, the following trial judges, attorneys, persons, association of persons, firms, partnerships, and corporations are believed to have an interest in the outcome of this case or appeal:

Bandas, Christopher Andres, *Counsel for Appellant*

Bivins, Sonja F., the Honorable, *U.S. Magistrate Judge, SDAL*

Bock, Phillip A., *Counsel for Appellees-Plaintiffs*

Clore, Robert, *Counsel for Appellant*

Cox, John R., *Counsel for Appellees-Plaintiffs*

Deen, Thomas Jefferson III, *Counsel for Appellant*

Drazen, Susan, *Appellee-Plaintiff*

DuBose, Kristi K., the Honorable, *Chief District Court Judge, SDAL*

GoDaddy.com, LLC, a Delaware Limited Liability Company, *Appellee-Defendant*

Hatch, Robert M., *Counsel for Appellees-Plaintiffs*

Helfand, Steven F., *Objector not a party to this appeal*

Kent, Trinette G., *Counsel for Appellees-Plaintiffs*

McMorrow, Michael J., *Counsel for Appellees-Plaintiffs*

CIP-1

Appeal No.:21-10199
Juan Pinto v. Susan Drazen v. GoDaddy.com, LLC

Meyers, Evan M., *Counsel for Appellees-Plaintiffs*

Monhait, Jeffrey M, *Counsel for Appellee-Defendant*

Pinto, Juan Enrique, *Appellant-Objector*

Riemer, Kenneth J., *Counsel for Appellees-Plaintiffs*

Turin, Yevgeniy Y., *Counsel for Appellees-Plaintiffs*

Underwood, Earl Price, Jr., *Counsel for Appellees-Plaintiffs*

Wasvary, Mark K., *Counsel for Appellees-Plaintiffs*

Zecchini, Paula L., *Counsel for Appellee-Defendant*

Appeal No. 21-10199
Juan Pinto v. Susan Drazen v. GoDaddy.com, LLC

Dated:  August 20, 2021                    Respectfully submitted,


                              By:     _/s/ Robert Clore_____
                                      Robert Clore
                                      BANDAS LAW FIRM, P.C.
                                      802 N. Carancahua, Suite 1400
                                      Corpus Christi, Texas 78401
                                      Tel: (361) 698-5200
                                      Fax: (361) 698-5222
                                      rclore@bandaslawfirm.com

                                      *Attorney for Appellant Juan Enrique Pinto*

## Statement Regarding Oral Argument

Appellant Juan Pinto respectfully requests that this Court hear oral argument to consider a significant issue of first impression in this Circuit concerning the Class Action Fairness Act ("CAFA") and its restrictions on coupon settlements. *See* 28 U.S.C. §1712. The district court, relying on a district court opinion from within this Circuit, concluded that a class action settlement predominately comprised of coupons is not subject to CAFA when there is a cash option.[1] Although this Court has never interpreted the coupon-settlement provision of CAFA, the Fourth, Seventh, and Ninth Circuit Courts of Appeals (the only Sister Courts to consider the issue) disagree. *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 491 (4th Cir. 2020); *In re Easysaver Rewards Litig.*, 906 F.3d 747, 759 n.11 (9th Cir. 2018); *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 706 (7th Cir. 2015).

Since this issue is recurring within the Circuit, Pinto believes that the implications are sufficiently important to warrant oral argument. And Pinto's counsel has previously advocated successfully before the Fourth Circuit Court of Appeals in favor of application of CAFA. *Lumber Liquidators*, 952 F.3d 471.

---

[1] Dkt. 74 at 7.

i

# Table of Contents

Jurisdictional Statement ............................................................................ 1

Statement of the Issues............................................................................. 2

Statement of the Case ............................................................................... 3

    A. Class counsel settle TCPA litigation against GoDaddy on behalf of 1.2 million class members. ........................................................................ 4

    B. The district court prematurely awards $8.75 million in attorneys' fees. ............... 5

    C. Pinto objects that the settlement violates CAFA and requests that the premature fee award be set aside; the court amends its order to carry the fee motion.......... 6

    D. The claims data confirms vouchers are the primary relief and the settlement is worth no more than $2.2 million to the class. ........................................................ 7

    E. The final approval hearing…………………………………………………..8

    F. The court finds CAFA inapplicable, approves the settlement, and awards $7 million in fees.......................................................................................................... 9

    G. Class counsel tentatively settle based on Pinto's contributions; but the district court indicates it will not approve the settlement, which allows the appeal to go forward under the express terms of the settlement. ............................................... 10

Summary of the Argument......................................................................... 11

Argument.................................................................................................. 13

    I. Standard of review…………………………………………………………...13

    II. CAFA's "coupon settlement" provision………………………………………..13

    III. Every circuit court to reach the issue has concluded that a cash option does not remove a coupon settlement from CAFA's purview............................................ 14

    IV. The vouchers are coupons…………………………………………...…...19

    V. CAFA proscribes approval of settlements that disproportionately allocate benefits in favor of the attorneys, as with this settlement..................................... 21

VI. Only settlement reversal will directly benefit the class; regardless, the Court should not permit the unlawful fee to stand. .......................................................... 24

VII. The appealing parties' failed settlement should have no bearing on the merits of the appeal. ................................................................................................ 28

Conclusion ................................................................................................................ 30

Certificate of Compliance with Rule 32(a) ........................................................ 31

Certificate of Service ............................................................................................. 32

# Table of Citations

## Cases

*Bankston v. Then*, 615 F.3d 1364 (11th Cir. 2010) ............................................... 12

*Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ....................................... 25

*Cannon v. Ashburn Corp.*, No. 16-1452 (RMB/AMD), 2018 U.S. Dist. LEXIS 64044 (D.N.J. 2018) ........................................................................ 21

*Carl v. First National Bank of Omaha*, No. 2:19-cv-00504-GZS, 2021 WL 244162 (D. Me. June 15, 2021) ........................................................................ 24

*Chambers v. Whirlpool Corp.*, 980 F.3d 645 (9th Cir. 2020) ........................................... 15, 18

*CLRB Hanson Indus., LLC, v. Weiss & Assocs., P.C.*, 465 F. App's 617 (9th Cir. 2012) 18

*Consolidated Bank, N.A. v. Office of Comptroller of Currency*, 118 F.3d 1461 (11th Cir. 1997) ........................................................................ 13

*Cope* v. *Duggins*, No. CIV.A. 98-3599, 2001 WL 333102 (E.D. La. 2001) ............... 22, 23

*Dardarian v. OfficeMax N. Am., Inc.*, No. 11-CV-00947 YGR, 2013 WL 12173924 (N.D. Cal. July 12, 2013) ........................................................................ 20

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) ............................................................... 1

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) ................................................... 24

*Figueroa v. Sharper Image Corp.,* 517 F. Supp. 2d 1292, (S.D. Fla. 2007) ........................... 21

*Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969 (8th Cir. 2016) .......................... 13, 14

*Gevaerts v. TD Bank, N.A.*, No. 14-cv-20744, 2015 WL 6751061 (S.D. Fla. Nov. 5, 2015) ........................................................................ 25

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................. 26

*In re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018) ........................................ passim

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ................................. 7, 8, 23, 25

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ................... passim

*In re Sw. Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015) .......................... i, 12, 15, 25

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020)...............................................................passim

*Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020) ....................................... 8, 27

*Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823 (N.D. Cal. 2017)........................................... 20

*Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860 (S.D. Fla. Nov. 20, 2017) .14, 17, 19

*Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) ................ 26

*Parsons v. Brighthouse Networks, LLC*, No. 2:09-CV-267-AKK, 2015 WL 13629647 (N.D. Ala. Feb. 5, 2015) .................................................................................................. 26

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010). ...................................................... 27

*Polar Int'l Brokerage Corp.* v. *Reeve,* 187 F.R.D. 108 (S.D.N.Y. 1999) ............................... 22

*Radosti* v. *Envision Emi, LLC*, 717 F. Supp. 2d 37 (D.D.C. 2010).................................... 21

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014)..........................................13, 18

*Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002)............................................ 27

*Rougvie v. Ascena Retail Group, Inc.*, CV 15-724, 2016 WL 4111320 (E.D. Pa. July 29, 2016) ................................................................................................................................ 15

*Schwartz* v. *Dallas Cowboys Football Club, Ltd.,* 157 F. Supp. 2d 561 (E.D. Pa.2001) 22, 23

*Sheppard* v. *Consolidated Edison Co.,* 2000 WL 33313540 (E.D.N.Y. 2000) ..................... 22

*Swaney v. Regions Bank*, 2020 WL 30664945, at *6-7 (N.D. Ala. June 9, 2020) ............. 25

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ............... 21

*True v. Am. Honda Motor Co. .,* 749 F.Supp.2d 1052 (C.D. Cal. 2010) ......................15, 16

*U.S. v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) ................................................... 13

*Warshauer v. Solis,* 577 F.3d 1330 (11th Cir. 2009) ........................................................... 13

**Statutes**

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 1331 ...................................................................................... 1

28 U.S.C. §1712.................................................................................passim

47 U.S.C. § 227.......................................................................................... 3

**Rules**

Fed. R. Civ. P. 23....................................................................10, 21, 29

**Other Authorities**

4 Newberg on Class Actions § 12.12 (5th ed. 2017) ...................................... 21

Senate Report 109-14........................................................... 14, 22, 23, 24

## Jurisdictional Statement

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 because plaintiffs filed suit alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 *et seq.* This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this is a timely-filed appeal from a final decision. On December 23, 2020, the district court entered its Final Judgment and Order Approving Class Settlement,[2] which is a final judgment of the district court. Pinto filed a timely notice of appeal from this final judgment.[3] Pinto also complied with the district court's bond requirement by posting a $2,000 bond.[4]

Pinto is a member of the settlement class who on August 31, 2020, timely objected to the approval of the settlement and class counsels' request for attorneys' fees.[5] Pinto appeared at the fairness hearing through counsel.[6] Because Pinto is a class member who filed a timely objection and appeared at the fairness hearing, he has standing to bring his appeal without intervening. *See Devlin v. Scardelletti*, 536 U.S. 1, 6 8, 14 (2002). Further, Pinto filed a claim under the settlement claims process.[7] He is thus bound by and aggrieved by the final judgment approving a settlement that

---

[2] Dkt. 74

[3] Dkt. 75.

[4] Dkt. 86, 87.

[5] Dkt. 53.

[6] Dkt. 84.

[7] Dkt. 53-1 at ¶ 4.

awards more than 3/4 of its benefits to the attorneys in clear violation of CAFA; and has standing to appeal.

## Statement of the Issues

1)      Every Circuit Court of Appeals to consider the issue has concluded that a "coupon settlement" is not removed from CAFA's purview simply by inclusion of a lesser cash option. The district court erred as a matter of law in finding to the contrary and in determining that this settlement, which provides $1.8 million of a total purported $2.2 million value in the form of GoDaddy vouchers, is not a "coupon settlement" under CAFA simply because it provides a lesser cash alternative.

2)      CAFA requires application of heightened scrutiny and was enacted, in part, to discourage disproportionate allocations of settlement proceeds in favor of attorneys. Class counsel pocketed $7 million in attorney's fees, more than 3 times the maximum potential $2.2 million recovery to the class. The Court should reverse the district court's approval of the settlement, which cannot withstand CAFA's scrutiny.

3.      Class counsel structured the settlement so that any fee reduction does not benefit the class; accordingly, the only disposition that will benefit the class is reversal of settlement approval. In the unlikely event that this Court declines to reverse settlement approval, it should at least reverse the $7 million in fees as patently unlawful under CAFA. The district court erred as a matter of law in awarding attorney's fees by applying *Camden I* and considering the potential relief instead of basing any fee on the actual relief and considering the redemption value of the

coupons as required by CAFA. The Court should not reward class counsel for their structuring of the settlement to the detriment of the class by allowing the unlawful fee to stand.

### Statement of the Case

This lawsuit stems from GoDaddy.com, LLC (GoDaddy) sending or causing to be sent text messages and phone calls to approximately 1.2 million persons or entities allegedly without their consent.[8] GoDaddy is one of the world's largest domain registrars and provides web hosting, website building, website security, and other internet-related services.

Plaintiffs brought a class action alleging that GoDaddy violated the TCPA by sending text messages and placing phone calls to Plaintiffs' cellular telephones, marketing its products and services.[9] They alleged that the calls and text messages were placed/sent using an "automatic telephone dialing system" (ATDS), as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).[10]

---

[8] Dkt. 69 at 1 (noting settlement includes "1.2 million Settlement Class Members"). Dkt. 45-1 at ¶44 (defining "Settlement Class Member to include "persons or entities" who are members of the Settlement Class). Dkt 45-1 at ¶49(a) (defining "Settlement Class" as "all persons within the United States to whom, during the Class Period, Defendant placed a voice or text message call to their cellular telephone pursuant to an outbound campaign facilitated by the web-based software application….").

[9] Dkt. 74 at 2.

[10] *Id.*

**A. Class counsel settle TCPA litigation against GoDaddy on behalf of 1.2 million class members.**

With litigation pending in the Southern District of Alabama, the district court accepted transfer of a class action from the District of Arizona and consolidated another matter also in the Southern District of Alabama. Dkt. 74 at 2. The parties settled in late 2019[11] and class counsel moved for preliminary approval of the class action settlement in January 2020.[12] The parties modified the class definition in an amended settlement agreement to provide as follows:

> (a) All persons within the United States to whom, from November 4, 2014 through December 31, 2016, Defendant placed a voice or text message call to their cellular telephone pursuant to an outbound campaign facilitated by the web-based software application used by 3Seventy, Inc., or the software programs and platforms that comprise the Cisco Unified Communications Manager.
>
> (b) Excluded from the term "Settlement Class" are (1) the trial judges presiding over the Actions; (2) Defendant, as well as any parent, subsidiary, affiliate or control person of Defendant, and the officers, directors, agents, servants or employees of Defendant; (3) the immediate family of any such person(s); (4) any Settlement Class Member who timely and properly opts out of the settlement; and (5) Class Counsel, their employees, and their immediate family.[13]

---

[11] Dkt. 45-1 at ¶¶5-6. A third action in the District of Arizona was incorporated and resolved by the settlement. Dkt. 74 at 2 (citing Dkt. 39 at 2, n.1).

[12] Dkt. 74 at 2.

[13] Dkt. 74 at 3-4 (citing Dkt. 41 at 4; Dkt. 45-1 at 11).

The settlement purports to create a $35 million fund to cover settlement costs as well as claims made by class members for either (1) a GoDaddy voucher with a face value of $150 or (2) $35 cash.[14] The settlement has no claims floor, meaning the actual amount paid under the settlement could theoretically be only administrative expenses and attorneys' fees.[15] GoDaddy and class counsel agreed to attorney's fees up to 30% of the $35 million supposedly made available under the settlement, and GoDaddy agreed not to oppose that request.[16]

## B. The district court prematurely awards $8.75 million in attorneys' fees.

The court preliminarily approved the settlement[17] and class counsel moved for final approval of the settlement[18] and $10.5 million in attorneys' fees.[19] Class notice issued informing the class members of an August 31, 2020, objection deadline.[20] Yet on August 11, 2020, twenty days ahead of the deadline, the court entered an order awarding fees.[21] The court awarded $8.75 million as 25% of $35 million, noting that "[t]he issues in this case were not complex and did not require more than average

---

[14] Dkt. 45-1 ¶¶47, 50-51.

[15] *Id.* at ¶47.

[16] *Id.* at ¶77.

[17] Dkt. 49.

[18] Dkt. 69.

[19] Dkt. 50 at 1.

[20] Dkt. 53-2 at p. 3 of notice.

[21] Dkt. 51.

skill."[22] Moreover, the result obtained did "not justify an award at the high end of the benchmark."[23]

## C. Pinto objects that the settlement violates CAFA and requests that the premature fee award be set aside; the court amends its order to carry the fee motion.

Pinto, an undisputed member of the settlement class,[24] filed a timely objection, requesting that the district court set aside its fee award as premature, and challenging the settlement and fee as violative of CAFA.[25] Pinto anticipated that based on the claims data available at that time, actual class recovery defined in terms of vouchers actually redeemed plus cash was likely to be a fraction of class counsels' requested fee.[26] He further predicted that because the parties represented the vouchers as worth 4 times the cash value ($150 v. $35), more class members were likely to select the vouchers than cash.[27] Pinto recognized that the parties structured the claims-made settlement so that any reduction in fees returned to GoDaddy instead of the class.[28] Pinto called for the parties to amend the settlement so that excess fees could be

---

[22] *Id.* at 6-7.

[23] *Id.* at 6.

[24] Dkt. 53-1 at 2-4.

[25] Dkt. 53 at 1-5, 12-28.

[26] *Id.* at 3.

[27] *Id.* at 2.

[28] *Id.* at 26-27 (citing Dkt. 45-1 at ¶50).

distributed to the class; otherwise, the only recourse was for the district court to disapprove the settlement.[29]

### D. The claims data confirms vouchers are the primary relief and the settlement is worth no more than $2.2 million to the class.

The results of the claims process validated Pinto's concerns. Of the 24,059 total claims filed by the 1.2-million-member class, 11,622 claimants selected cash and 12,396 selected vouchers. The highest possible value of these claims is approximately $2.2 million

Settlement Value to the Class

| Vouchers | 12,396 claims | $150 (face value) | $1,859,400 |
| Cash | 11,622 claims | $35 | $406,770 |
| Total | 24,059 claims | | **$2,266,170** |

After reviewing Pinto's objection, the court amended its premature fee order, carrying the motion to the final approval hearing; it also ordered the parties to file responses to Pinto's objection.[30] Class counsel filed a response, which GoDaddy essentially adopted, and Pinto filed a reply.[31] Pinto, class counsel, and GoDaddy also

---

[29] *Id.* (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1175-76 (9th Cir. 2013) (revering orders approving the settlement and awarding fees under CAFA and noting "a class action settlement 'must stand or fall in its entirety'").

[30] Dkt. 55; Dkt. 56.

[31] Dkt. 61; Dkt. 62; Dkt. 65.

submitted briefing on this Court's opinion in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020).[32]

**E. The final approval hearing.**

The Court held a final approval hearing on December 14, 2020.[33] Pinto's counsel advocated for application of CAFA, which forbids class counsel from taking multiples of the maximum $2.2 million class recovery.[34] He again urged the parties to rework the settlement so that the obligatory reduction in fees would benefit the class. Otherwise, disapproval of the settlement was required.[35] He discussed CAFA's Section 1712(e) and the legislative history behind it, and referenced an opinion, *HP Inkjet*,[36] in which the Ninth Circuit faced a similar scenario, albeit a much less disproportionate ratio, and reversed not only fees but settlement approval itself.[37] The district court responded that it did not believe this is a coupon settlement, but that the objection did make the court "rethink the value of the settlement because of the miniscule

---

[32] Dkt. 66; Dkt. 67; Dkt. 68.

[33] Dkt. 84.

[34] *Id.* at 4, 6.

[35] *Id.* at 6-7.

[36] 716 F.3d at 1179.

[37] Dkt. 84 at 6-8.

people who responded,[38] the fact that this is a reverter provision," and that the parties agreed GoDaddy would not oppose a 30% fee request.[39]

### F. The court finds CAFA inapplicable, approves the settlement, and awards $7 million in fees.

After taking the matter under advisement, the court granted final approval, reduced fees a further $1.75 million to $7 million, and overruled Pinto's objections "except to the extent the Court has reconsidered attorney[s'] fees."[40] The court found that "this is not a coupon settlement as contemplated by CAFA."[41] According to the court, "[t]he $150 Voucher award in and of itself may be a coupon as anticipated by CAFA, but, the presence of the $35 cash award removes this Settlement from the purview of CAFA's restrictions on coupon settlements."[42] The court acknowledged that the supposed $35 million made available to the class "is an exaggerated 'result'" and that "based on the structure of the settlement (claims made fund) and the typical claims rate in consumer cases" "no party expected recovery for plaintiffs of $35 million."[43] Nevertheless, "[a]fter reconsideration," the court awarded 20% in fees, or

---

[38] With respect to the low claims rate, GoDaddy's counsel remarked that she did not "believe that the claims rate being closer to 2 percent is necessarily indicative of a notice problem as opposed to the fact that, frankly, GoDaddy has some great customers." *Id.* at 19.

[39] *Id.* at 10.

[40] Dkt. 74 at 2.

[41] *Id.* at 7.

[42] *Id.*

[43] *Id.* at 26.

$7 million, based on the same $35 million, placing weight on the evolution of TCPA law since the parties reached settlement.[44]

### G. Class counsel tentatively settle based on Pinto's contributions; but the district court indicates it will not approve the settlement, which allows the appeal to go forward under the express terms of the settlement.

Pinto filed a timely notice of appeal[45] and class counsel moved to require Pinto to post a $125,000 appeal bond.[46] Without suggesting that Pinto's appeal was anything less than meritorious, the district court ordered Pinto to post a bond in the amount of $2,000, which Pinto promptly did.[47]

On appeal, class counsel reached a tentative settlement with Pinto for compensation based on the "meaningful benefits" he delivered to the class, including providing an adversarial proceeding on fees, with Pinto's objection ensuring that the "class members would have an opportunity to object to the proposed fees."[48] As class counsel asserted in their joint motion for indicative relief filed under Fed. R. Civ. P. 23(e)(5)(B), Pinto's objection resulted in an adversarial hearing with Pinto's counsel presenting argument,[49] and the court reducing the requested fee to $7 million.[50] Class

---

[44] *Id.*

[45] Dkt. 75.

[46] Dkt. 81 at 1, 15.

[47] Dkt. 86 at 3; Dkt. 87.

[48] Dkt. 88 at 5, 11 (citing Dkt. 88-1 at ¶ 1.17).

[49] Dkt. 84.

[50] Dkt. 74 at 27-28

counsel further asserted that Pinto "ensur[ed] that the Settlement Administrator initiate[d] an email campaign directed at any class member whose Settlement Award is returned as undeliverable"[51] and quantified this benefit as worth over $100,000.[52] The district court issued an indicative ruling finding that Pinto did not confer a benefit and indicating that it would not be inclined to grant a motion to approve the settlement.[53] Under the express terms of the settlement, Pinto then went forward with his appeal,[54] with class counsel not opposing a motion to lift stay. Despite praising the contributions of Pinto's good-faith objections,[55] class counsel then used their tentative settlement with him as a basis for claiming entitlement to summary affirmance. This Court promptly denied the motion.

## Summary of the Argument

The district court committed error as a matter of law in concluding that CAFA and its limitations on coupon settlements (28 U.S.C. §1712) do not apply because, even though vouchers for more GoDaddy products are indisputably the primary relief of this settlement, there was also a cash option available. This issue of whether a coupon settlement is removed from CAFA's protections by a lesser cash option is an

---

[51] Dkt. 88 at 5-6.

[52] *Id.* at 10-11.

[53] Dkt. 89 at 5-7.

[54] Dkt. 88-1 at ¶¶ 1.14, 1.15, 2.2.2; *see also* Dkt. 88 at 5 (joint motion noting that the "Objector agrees to dismiss his appeal with prejudice *if*: the Court enters an indicative ruling approving the Objector Settlement Agreement....") (emphasis added).

[55] Dkt. 88 at 11.

issue of first impression in this Circuit. Every circuit court to reach the question has disagreed with the district court and found CAFA applicable. *See Lumber Liquidators*, 952 F.3d at 491; *Easysaver Rewards*, 906 F.3d at 759 n.11; *Sw. Airlines Voucher*, 799 F.3d at 706. As these Courts recognized, attorneys should not be allowed to bypass CAFA's limitations on "coupon settlements" with a nominal cash throw-in.

Since this *is* a "coupon settlement" and it directs 3/4 of the settlement benefits to the attorneys, it cannot survive CAFA's heightened scrutiny and prohibition against disproportionate fees. 28 U.S.C. § 1712(e). This Court should not simply reduce fees—class counsel structured the settlement so that any fee reduction does not return to the class. Instead, the district court's approval of the settlement should be reversed so that the class members are not left with a mere 1/4 of its proceeds. Even in the unlikely event the Court is not inclined to throw out the settlement, class counsels' fees must be reversed as unlawful under CAFA. The district court purported to award 20% of the total theoretical settlement fund without regard to its actual value or coupon redemption rates, something that CAFA strictly prohibits. Rather than $7 million, class counsel would be entitled to a percentage from whatever amount class members redeem of the purported $1.8 million coupons issued.

**Argument**

## I.    Standard of review.

This Court reviews "questions of statutory interpretation *de novo*." *Bankston v. Then*, 615 F.3d 1364, 1367 (11th Cir. 2010) (citing *Warshauer v. Solis,* 577 F.3d 1330, 1335 (11th Cir.2009)). The starting point for statutory interpretation is, of course, the statute itself. *U.S. v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999). The court may look beyond the plain language of the statute to determine congressional intent if: "(1) the statute's language is ambiguous; (2) applying it according to its plaint meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent." *Id.* (citing *Consolidated Bank, N.A. v. Office of Comptroller of Currency*, 118 F.3d 1461, 1463–64 (11th Cir.1997)).

## II.    CAFA's "coupon settlement" provision.

This Court has not interpreted CAFA's "coupon settlement" provision found in 28 U.S.C. §1712. Other Courts of Appeals have done so, and applied *de novo* review. *Lumber Liquidators*, 952 F.3d at 488 ("[w]e review de novo the district court's decision that CAFA's 'coupon' settlement provisions are inapplicable here"); *Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 971 (8th Cir. 2016) ("[r]eviwing the interpretation of CAFA *de novo*"); *Sw. Airlines*, 799 F.3d at 707 (same).

CAFA's "coupon settlement" provision has been "universally criticized as 'badly drafted.'" *Lumber Liquidators*, 952 F.3d at 488; *see Galloway*, 833 F.3d at 973 ("[n]early every federal court to consider §1712 has agreed with Judge Richard

13

Posner's observation, "This is a badly drafted statute") (citing *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014)). Among other snafus, Section 1712 creates specific rules for "coupon settlements" without ever defining what a "coupon" or "coupon settlement" is. Interpreting courts have therefore consulted CAFA's legislative history to clarify its ambiguities. *See Lumber Liquidators*, 952 F.3d at 488 ("Although CAFA does not define 'coupon,' there are several sources from which we can derive the meaning for that term, including CAFA's legislative history, contemporary dictionaries, and the decisions of other courts"); *Galloway*, 833 F.3d at 973 (considering Senate Report 109-14 "in parsing [Section 1712's] various ambiguities and inconsistencies"). In particular, they have been "informed by § 1712's animating purpose of preventing settlements that award excessive fees while leaving class members with 'nothing more than promotional coupons to purchase more products from the defendants.'" *Easysaver*, 906 F.3d at 755 (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (quoting S. Rep. 109-14 at 15)).

## III. Every circuit court to reach the issue has concluded that a cash option does not remove a coupon settlement from CAFA's purview.

The court erred as a matter of law in refusing to apply CAFA because this *is* a "coupon settlement." The district court acknowledged that "[t]he $150 Voucher award in and of itself may be a coupon as anticipated by CAFA[.]" Dkt. 74 at 7. Still, it believed that "the presence of the $35 cash award" removed the settlement "from the purview of CAFA's restrictions on coupon settlements." *Id.* (citing *Mahoney v. TT*

*of Pine Ridge, Inc.*, 2017 WL 9472860, at *6 (S.D. Fla. Nov. 20, 2017)). No circuit court

to take up the issue has agreed.

The Fourth Circuit found "unconvinc[ing]" the argument that CAFA did not

apply "because the settlement also includes a cash option." *Lumber Liquidators*, 952

F.3d at 491. Such an interpretation would defeat CAFA's purpose. That is, attorneys

should not be permitted to circumvent the "exacting scrutiny" applied to coupon

settlements with "an end run around CAFA by including a nominal cash award as a

settlement term." *Lumber Liquidators*, 952 F.3d at 491. The Fourth Circuit arrived at

that conclusion even though the cash payment in *Lumber Liquidators* was greater than

the $35 here. *Lumber Liquidators*, 1:15-md-02627, Dkt. 1885 at 31 (E.D. Va.) (class

members who selected "cash would get about $66"). Further, as the Fourth Circuit

explained, "both the Seventh and Ninth Circuits have applied CAFA's 'coupon'

settlement provisions to settlements awarding both cash and 'coupon' relief." *Lumber

Liquidators*, 952 F.3d at 491 (citing *Easysaver*, 906 F.3d at 759 n.11; *Sw. Airlines*, 799

F.3d at 706). In *Easysaver*, for example, the Ninth Circuit applied CAFA to a mixed

settlement involving a $3.5 million cash fund and coupons with a $20 face value.

*Easysaver*, 906 F.3d at 752, 759 n. 11. The Ninth Circuit also subsequently applied

CAFA to a mixed settlement in *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 655 (9th Cir.

2020) (describing cash reimbursement and applying CAFA); *see also Rougvie v. Ascena

Retail Group, Inc.*, CV 15-724, 2016 WL 4111320, at *1 (E.D. Pa. July 29, 2016)

(applying CAFA to a settlement that provided cash, but paid over 95% of the

settlement through *de facto* coupons and noting that "[t]he only consistent reading of the Act is Congress intended to address mixed settlements"); *True v. Am. Honda Motor Co. .,* 749 F.Supp.2d 1052, 1069 (C.D. Cal. 2010) (despite cash option, the "primary relief" was a rebate, and thus "the settlement is largely a coupon settlement" governed by CAFA).

The vouchers are indisputably the primary relief here. 12,396 class members chose them while 11,622 chose cash.[56] *See True,* 749 F.Supp.2d at 1069 (despite cash option, the "primary relief" was a rebate, and thus "the settlement is largely a coupon settlement" governed by CAFA). They make up a purported $1.8 million of the total $2.2 million class benefit, or 81%.

The district court reasoned that since the class members could choose between cash and vouchers, "it can be assumed that half of the claimants recognized the $150 Voucher as bestowing equal or greater value than the $35 cash award." Dkt. 74 at 7. That argument is unavailing. Even assuming it to be true, the vouchers are still worth something less than their $150 face value. And allowing settlement values to be inflated with the face value of coupons to generate large fee awards is one of CAFA's concerns. If the class members had been offered $35 in vouchers and an equivalent $35 in cash with similar results in the claims process, the court would have a better argument. But as it stands, there is no reason to think the class members valued the

---

[56] Dkt. 74 at 10.

vouchers as equivalent or even close to equivalent to cash; or even if they did, that CAFA would then not apply. *See Easysaver*, 906 F.3d at 758 (noting that in *Online DVD* the "[c]lass members who selected gift cards must have valued them at close to face value, because they selected them over essentially the *same* value in cash" and "[i]t was therefore appropriate to treat … the settlement as similar to an all-cash settlement") (emphasis added) (citing *Online DVD*, 779 F.3d at 952 n. 11).

85% of the claimants in *Lumber Liquidators* chose cash over vouchers, which the Fourth Circuit took to mean they did not view the vouchers the same as cash. That does not mean that since slightly more members here selected vouchers, the vouchers are the functional equivalent of cash. The class members here were induced by a 4X larger represented value for the vouchers ($150 v. $35 cash).[57] There was nothing approaching that disparity in *Lumber Liquidators*.[58] As such, the claims process here does not reflect that the class members valued the vouchers as equivalent or even close to equivalent as cash.

---

[57] Like the parties when they arrived at these figures, Pinto anticipated that this substantial inducement would trigger more class members to choose vouchers. Dkt. 53 at 2 ("The significantly greater face value of the vouchers makes it more likely class members will select vouchers over cash. The settlement is thus structured to make the vouchers the primary settlement benefit.")

[58] The class notice in *Lumber Liquidators* represented that class members would receive a 20-56% reimbursement for cash and a 38%-104% reimbursement for vouchers. *In re Lumber Liquidators*, 1:16-md-02743, Dkt. 140-1 at Ex. 1-A (E.D. Va.).

The *Mahoney* opinion from the Southern District of Florida, the only case relied on by the district court,[59] is unsupportive. *Mahoney*, 2017 WL 9472860, at *6.[60] The overwhelming majority of class members in *Mahoney* (95%) received cash, not vouchers. Here, vouchers are the primary benefit. Further, *Mahoney* interpreted Ninth Circuit authority as suggesting that a cash option could render CAFA inapplicable. *Id.* at *6 (citing *Online DVD*, 779 F.3d at 952; *CLRB Hanson Indus., LLC, v. Weiss & Assocs., P.C.*, 465 F. App's 617, 619 (9th Cir. 2012)). But the Ninth Circuit has since twice applied CAFA to settlements with a cash option. *Chambers*, 980 F.3d at 655; *Easysaver*, 906 F.3d at 759 n. 11; *see also Lumber Liquidators*, 952 F.3d at 491 (noting that authority referenced on CAFA from within the Ninth Circuit "predate[s] … the Ninth Circuit's ruling in a published 2018 decision that CAFA's 'coupon' settlement provisions apply to mixed settlements involving cash and 'coupon' relief"). This Court should join the three other Circuits and hold that attorneys cannot engineer around CAFA's strictures by throwing in a cash option with a coupon settlement.

---

[59] Dkt. 74 at 7.

[60] Absent the cash option, *Mahoney* acknowledged the vouchers were coupons because they "can only be used [with the defendant], the entity that allegedly harmed the class," they "expire within one year of issuance," and "they are not redeemable for cash." 2017 WL 9472860, at *6 The vouchers here share the same traits. They can only be used with GoDaddy, the company that harmed the class, they expire within a year of issuance, and they are not redeemable for cash.

## IV.    The vouchers are coupons.

Otherwise, the GoDaddy vouchers are clearly "coupons" as construed by the various Circuit Courts—the district court was correct in this regard.[61] The nomenclature used to describe the coupons, "vouchers," "is not dispositive." *Lumber Liquidators*, 952 F.3d at 489; *Redman*, 768 F.3d at 635-36 (rejecting distinction between "coupon" and "voucher" for purposes of CAFA's "coupon settlement" provision). Moreover, the GoDaddy vouchers have the hallmarks of a coupon settlement recognized by other courts.

First, they require class members to use them with the defendant. *Lumber Liquidators*, 952 F.3d at 489 (vouchers were coupons because they required "class members to do business with Lumber Liquidators"); *Mahoney*, 2017 WL 9472860, at *6 ("the voucher can only be used at Naples Nissan, the entity that allegedly harmed the class"). Second, depending on the GoDaddy service used by class members, some may have to spend additional money with GoDaddy, the company that harassed them with unlawful marketing calls, to use the vouchers.[62] *Lumber Liquidators*, 952 F.3d at 490. Third, they have limited flexibility with a one-year lifespan[63] and cannot be redeemed for cash. *Id.* at 491 (vouchers with a three-year lifespan and that could not

---

[61] Dkt. 74 at 7.

[62] For example, class members would have to spend beyond the $150 voucher for either an annual premium or ecommerce website builder subscription. *See* https://www.godaddy.com/websites/website-builder/plans-and-pricing.

[63] Dkt. 50-1 at ¶ 51(b).

be redeemed for cash were "coupons"). Fourth, the "vouchers 'can be used only 'to purchase items from a limited universe of products," *i.e.*, website-building and related internet services, distinguishing them from cash or a gift card at a giant retailer like Walmart or Amazon. *Id.* at 490.[64] Thus, while some class members may make complete purchases with the voucher, they are still limited to a narrow catalogue of items, distinguishing the vouchers from cash. *See id.* (Lumber Liquidator's vouchers were coupons under CAFA where they could "be used only 'to purchase items from a limited universe of products' such as flooring and flooring tools"); *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 836-38 (N.D. Cal. 2017) (vouchers were coupons even though some items did not require the class member to spend out of pocket because they were limited to art-related products from the defendant); *Dardarian v. OfficeMax N. Am., Inc.*, No. 11-CV-00947 YGR, 2013 WL 12173924, at *2–3 (N.D. Cal. July 12, 2013) (vouchers for Office Max products were coupons even though they allowed for purchase of complete Office Max products without spending out of pocket; noting "substantively[,] the question centers on the difference of the benefit to each class member when compared to a cash settlement"). Finally, the fact that class members must use the vouchers with GoDaddy "also triggers the policy concerns that

---

[64] *See also Online DVD*, 779 F.3d at 952 ("Like the gift cards to Rite Aid in Reibstein, part of what separates a Walmart gift card from a coupon is not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different types of products.").

defendants in coupons settlements are not forced to 'disgorge … ill-gotten gains' and often benefit from coupons because customers are lured back to spend more money." *Knapp*, 283 F. Supp. 3d at 836-38. The GoDaddy vouchers are thus "coupons" for purposes of CAFA. And since they are the primary settlement benefit, CAFA's "coupon settlement" provision applies.

## V.    CAFA proscribes approval of settlements that disproportionately allocate benefits in favor of the attorneys, as with this settlement.

Since CAFA applies, reversal of the district court's approval of the settlement must follow. A settlement that distributes 3/4 of its benefits to the attorneys cannot survive CAFA's "heightened scrutiny." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) ("we note that in that statute Congress required heightened judicial scrutiny of coupon-based settlements"); *see also Online DVD*, 779 F.3d at 949 ("CAFA directs courts to apply heightened scrutiny to coupon settlements"); *Figueroa v. Sharper Image Corp.,* 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007) (concluding CAFA requires "a greater level of scrutiny"); *Cannon v. Ashburn Corp.*, No. 16-1452 (RMB/AMD), 2018 U.S. Dist. LEXIS 64044, at *26-27 (D.N.J. 2018) (although CAFA employs the same language as Rule 23(e), "the weight of authority suggest that Congress intended for courts to apply heightened scrutiny to coupon settlements"); 4 Newberg on Class Actions § 12.12 (5th ed. 2017) ("Notwithstanding CAFA's virtual restatement of existing law, courts across a number of circuits have held that [CAFA] requires heightened judicial scrutiny of coupon-

based class action settlements.") (collecting cases); *but see Radosti* v. *Envision Emi, LLC*, 717 F. Supp. 2d 37, 55 (D.D.C. 2010) (finding the judicial scrutiny under § 1712(e) "indistinct" from the scrutiny required by Rule 23(e), "with the understanding that coupon settlements pose a particular risk of unfairness and unreasonableness because of the increased possibility that the benefits afforded to class members will never be realized").

In adopting CAFA, Congress explained that when scrutinizing a settlement under section 1712(e), courts "should consider, among other things, the real monetary value and likely utilization rate of the coupons provided by the Settlement." S. Rep. 109-14, at 31. Congress was concerned that courts would unreasonably accept the coupons at face value which would allow attorneys to "'reap the lion's share of the [settlement] benefits' while leaving the class members with little reward." *Lumber Liquidators*, 952 F.3d at 488 (quoting *Easysaver*, 906 F.3d at 755).

Thus, "settlement fairness 'should be seriously questioned by the reviewing court'" when fees are disproportionate to class benefits. S. Rep. 109-14 at 31. On this point, Section 1712(e) specifically "incorporate[s]" a line of cases "in which proposed settlements have been wholly or partially rejected because the compensation proposed to be paid to the class counsel was disproportionate to the real benefits provided to the class members." *Id.* at 32 & n. 123 (citing *Cope* v. *Duggins*, No. CIV.A. 98-3599, 2001 WL 333102 (E.D. La. 2001) (rejecting proposed class settlement because attorneys' fees were disproportionate to class benefits); *Schwartz* v. *Dallas Cowboys*

*Football Club, Ltd.,* 157 F. Supp. 2d 561 (E.D. Pa. 2001) (same); *Sheppard* v. *Consolidated Edison Co.,* 2000 WL 33313540 (E.D.N.Y. 2000) (same); *Polar Int'l Brokerage Corp.* v. *Reeve,* 187 F.R.D. 108 (S.D.N.Y. 1999) (same)).

Consequently, section 1712(e) precludes disproportionate allocations such as the attorneys recovering 2/3 of the settlement benefits in *Cope* or 1/2 of the benefits in *Schwartz. Cope,* 2001 WL 333102, at *2 (disapproving settlement that "affords plaintiffs' counsel 67.5% of the settlement funds for fees and costs" or "more than two-thirds (2/3) of the settlement"); *Schwartz,* 157 F. Supp. at 579-80 (disapproving settlement where class counsels' fees and costs "would equal approximately 50% of the amount of the settlement fund to be distributed to the class"). Indeed, "if the legislative history of CAFA clarifies one thing, it is this: the attorneys' fees provisions of § 1712 are intended to put an end to the 'inequities' that arise when class counsel receive attorneys' fees that are grossly disproportionate to the actual value of the coupon relief obtained for the class." *HP Inkjet,* 716 F.3d at 1179 (reversing coupon settlement with a 50/50 fee-to-class-benefit ratio).

The ratio here is far more egregious. Class counsel have taken 3/4 of the settlement pie, leaving 1/4 for the class. *Compare with Cope,* 2001 WL 333102, at *2 (disapproving of 2/3 allocation in favor of class counsel); *Schwartz,* 157 F. Supp. at 579-80 (disapproving of 1/2 allocation). The Ninth Circuit reversed a settlement with a much more favorable 50/50 fee-to-class-benefit ratio. *HP Inkjet,* 716 F.3d at 1175 (reversing $1.5 million settlement where class counsel received $1.5 million in fees).

The misallocation here is one of the very abuses targeted by CAFA in which "the clients are [rendered] marginally relevant at best." Sen. Rep. 109-14 at 4. As Congress recognized, class actions "are only beneficial when the class members are kept a priority throughout the process." *Id.* By distributing less than 1/4 of its benefits to the class, this settlement treats the class as only marginally relevant. It does not satisfy CAFA as a matter of law and the district court's approval of it should be reversed.

## VI. Only settlement reversal will directly benefit the class; regardless, the Court should not permit the unlawful fee to stand.

Pinto's appeal stands to benefit the class significantly. The class is far better off with a settlement that does not give 75% of its benefits to the attorneys. The response that "something is better than nothing" is an excuse, not a legal argument. Although it is hardly clear that plaintiffs could not recover the same or even more on remand,[65] that approach flouts CAFA and ignores that there is always the possibility that a class may recover nothing when settlement approval is reversed. That's not justification for failing to follow the law.

---

[65] While the Supreme Court recently limited the definition of autodialers under the TCPA, it also provided an example of when equipment might still qualify as an autodialer if it uses "a random number generator to determine the order in which to pick phone numbers from a preproduced list." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 n.7 (2021); *Carl v. First National Bank of Omaha*, No. 2:19-cv-00504-GZS, 2021 WL 244162, at *9 n.10 (D. Me. June 15, 2021) (acknowledging that "this description may encompass defendant's [dialing system]," but finding the issue not amenable to summary judgment on the current record"). Further, *Facebook* does not foreclose plaintiffs from making capacity arguments or raising claims under state unfair and deceptive trade practices laws.

Class counsel deliberately structured the settlement so that no reduction in fees would inure to the benefit of the class.[66] They are to blame for making settlement reversal the only recourse. Pinto repeatedly urged class counsel and GoDaddy to revise the settlement so that a fee reduction would inure to the benefit of the class.[67] They refused.

In the unlikely event that the Court declines to reverse settlement approval, it should at least reverse the fee award as unlawful under CAFA. The district court awarded class counsel 20% of the so-called $35 million settlement fund.[68] In the context of CAFA, the court misapplied *Camden I's* requirement that fees be calculated as a percentage of the "fund established for the class" and "regardless of whether each class member redeems the benefits made available[.]"[69]

Since CAFA applies, the court could "not award attorneys' fees to class counsel that are 'attributable to' an award of coupons without first considering the redemption value of the coupons." *HP Inkjet*, 716 F.3d 1187. Stated affirmatively, Section "1712(a) require[d] that any percentage-of-recovery award in a coupon settlement be

---

[66] Dkt. 45-1 at ¶ 50; Dkt. 81 at 10 (class counsel acknowledging that even if fees are reduced to zero, the class members do not receive an increase in settlement funds under the terms of the settlement).

[67] Dkt. 53 at 27; Dkt. 84 at 7.

[68] Dkt. 74 at 28.

[69] Dkt. 74 at 24 (citing *Gevaerts v. TD Bank, N.A.*, No. 14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (quoting *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Swaney v. Regions Bank*, 2020 WL 30664945, at *6-7 (N.D. Ala. June 9, 2020)).

based upon a percentage of the value of the coupons actually redeemed by class members, not the nominal value of the coupons merely available to the class." *Sw. Airlines*, 799 F.3d at 708; *Parsons v. Brighthouse Networks, LLC*, No. 2:09-CV-267-AKK, 2015 WL 13629647, at *9 (N.D. Ala. Feb. 5, 2015) ("if fees are to be calculated as a percentage of the value of the coupons in a coupon settlement, that percentage must be calculated based on the value of coupons *redeemed* by the class, rather than the value of the coupons *made available* to the class") (emphasis original). Thus, under the percentage method, class counsel would be entitled to a percentage of the $1.8 million in coupons actually redeemed. If, for example, half the claimants redeemed the coupons, class counsel would be entitled to a percentage of $900,000.

Theoretically, class counsel could have petitioned for fees under the lodestar method. *See* 28 U.S.C. §1712(b). They claimed $2.8 million in lodestar;[70] but failed to proffer any detailed billing records, leaving the court unable to make such an award. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("the fee applicant [under the lodestar method] bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (same and noting that the court is charged with excluding "'excessive, redundant, or otherwise unnecessary' hours[,]" which can only  be accomplished with a detailed lodestar submission). That is, class

---

[70] Dkt. 50 at 19.

counsel failed to produce "records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at at 1303; *accord* William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 15:47 (5th ed.). Further, class counsel did nothing to show "rare and exceptional" circumstances that would allow for a positive multiplier above their actual baseline lodestar. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Regardless, the $7 million award on attorney's fees based on a percentage of unclaimed and unredeemed coupons is patently unlawful under CAFA and should be reversed.

Considering the judiciary's independent fiduciary obligation to the class,[71] this Court should not reward class counsel for structuring the settlement so that excess fees cannot be returned to the class. Although the settlement itself should be thrown out, at the very least, this Court should make clear that attorneys are not entitled to windfall fees in defiance of CAFA.

---

[71] *See Johnson*, 975 F.3d at 1252-53 (recognizing that because of the conflicts inherent in class actions, "'the district court must assume the role of fiduciary for the class plaintiffs'") (citation omitted); *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002) (noting that the problem of class counsel placing their pecuniary interests ahead of the class requires courts "to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions").

## VII. The appealing parties' failed settlement should have no bearing on the merits of the appeal.

Class counsels' specious motion for summary affirmance, which this Court promptly denied, was meant to distract from the merits of the appeal. The tentative settlement between class counsel and Pinto that was not approved by the district court should not factor into the analysis nor preclude this Court from applying CAFA. Indeed, every page of the answering brief that class counsel dedicate to this narrative rather than the merits demonstrates a lack of substance to their argument.

Pinto will not rehash his response to every argument in this misguided motion[72] but suffice it to say the underlying premise that Pinto does not challenge the terms of the settlement, and that his efforts are part of an effort to secure an improper payment is demonstrably false. After initially attempting to smear Pinto and his counsel in the same manner before the district court, class counsel acknowledged that Pinto's objection delivered multiple "meaningful benefit[s]"[73] to the class. These included "ensuring an adversarial proceeding on attorneys' fees, with [Pinto's] objection resulting in clarification by the Court that, despite the premature fee order, class members would have an opportunity to object to the proposed fees."[74] It is beyond dispute that without Pinto's intervention, the district court would have awarded $8.75 million in fees without the class members having any opportunity to

---

[72]  Pinto incorporates by reference his response herein.

[73] Dkt. 88 at 11.

[74] *Id.* at 5, 11 (citing Dkt. 88-1 at ¶ 1.17).

oppose the fee at the objection deadline.[75] Instead, the court held an adversarial hearing with Pinto's counsel presenting argument,[76] and the court reduced the requested fee to $7 million.[77] Class counsel also asserted that Pinto "ensur[ed] that the Settlement Administrator initiates an email campaign directed at any class member whose Settlement Award is returned as undeliverable"[78] and quantified this benefit as worth over $100,000. *Id.* at 10-11. Class counsel admitted that Pinto "advanced 'good-faith objections' to assist the Court in evaluating the class settlement" and "add[ed] non-monetary benefits to the class settlement."[79]

Class counsels' assertion that Pinto waived his appeal under the settlement is also mistaken. Under the express terms of the settlement, Pinto's offer to dismiss the appeal was expressly contingent on district court approval, which did not occur.[80] Thus, Pinto did not abandon his appeal by agreeing with class counsel to a tentative settlement to reward Pinto for his contributions.[81] Nothing in Rule 23(e)(5)(B) contemplates that if a district court issues an indicative ruling that it would not approve the settlement, the objector waives the underlying appeal. And no court has

---

[75] Dkt. 55.

[76] Dkt. 84.

[77] Dkt. 74 at 27-28

[78] Dkt. 88 at 5-6.

[79] *Id.* at 10-11.

[80] Dkt. 88-1 at ¶ 2.2.

[81] Class counsels' settlement with Pinto provides that it does not "limit, abrogate or alter the scope, rights or obligations of the Parties." *Id.* at ¶ 4.6.

ever held that when a district court denies approval, the objecting class member's appeal is waived or terminated as a result. Class counsels' false narrative should not sidetrack the Court in reversing the underlying settlement, 3/4 of which goes to class counsel.

## Conclusion

Appellant Juan Enrique Pinto requests that the Court reverse the district court's order and judgment approving the settlement as violative of CAFA. Alternatively, Pinto requests that the Court reverse the fee award and remand for application of CAFA.

Dated: August 20, 2021                Respectfully submitted,

By:    _/s/ Robert Clore_
Robert Clore
BANDAS LAW FIRM, P.C.
802 N. Shoreline Blvd, Suite 1400
Corpus Christi, Texas 78401
Tel: (361) 698-5200
Fax: (361) 698-5222
rclore@bandaslawfirm.com

*Attorneys for Appellant Juan Enrique Pinto*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Eleventh Circuit Rules 28.1 and 32 because this brief contains 7,443 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4, as counted by Microsoft Word 2010.

This brief complies with the typeface requirements of Fed. R. App. P 32(a)(5) and the Eleventh Circuit Rule 28.1 type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman and is double-spaced.

Executed on August 20th, 2021.

*/s/ Robert W. Clore*
Robert W. Clore

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 20th day of August, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system and that as a result electronic notice of the filing was served upon all attorneys of record.


*/s/ Robert W. Clore*
Robert W. Clore