No. 21-10199

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### JUAN ENRIQUE PINTO,
Objector-Appellant,

**v.**

### SUSAN DRAZEN, ET AL.
Plaintiffs-Appellees,

**v.**

### GODADDY.COM, LLC,
Defendant-Appellee.

---

On Appeal from the United States District Court for the
Southern District of Alabama
(Case No. 1:19-cv-00563-KD-B)

---

### PLAINTIFFS-APPELLEES' SUPPLEMENTAL APPENDIX

---

Dated: November 10, 2021

Respectfully submitted,

/s/*Earl P. Underwood, Jr.*
UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
epuunderwood@alaw.com
*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

**Tab SAC -** Second Amended Complaint filed in *Bennett v. GoDaddy.com, LLC*, No. 16-cv-03908, Dkt. No. 75 (D. Az.)

    Filed December 2, 2017 ................................................................... 1

**Tab DS** – Docket Sheet for *Drazen et al. v. GoDaddy.com LLC*, No. 19-cv-00563 (N.D. Ala.) ................................................................... 16

**Tab 20 -** Plaintiffs' Unopposed Motion In Support of Preliminary Approval of Settlement

    Filed January 10, 2020 ................................................................. 26

**Tab 49 -** Preliminary Approval Order

    Filed June 9, 2020 ........................................................................ 62

**Tab 69-1 -** Declaration of Kari Grabowski re: Notice and Settlement Administration

    Filed November 3, 2020 ............................................................... 72

**Tab 88 -** Joint Motion for an Indicative Ruling Approving Objector Settlement

    Filed April 15, 2021 ................................................................... 131

**Tab 88-1 -** Objector Settlement Agreement

    Filed April 15, 2021 ................................................................... 145

**Tab 89 -** Order denying Joint Motion for an Indicative Ruling Approving Objector Settlement

    Filed April 22, 2021 ................................................................... 152

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 10, 2021, I electronically filed the foregoing Plaintiffs-Appellees Supplemental Appendix with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that on November 10, 2021, two copies of this appendix were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by Federal Express shipping service.

Respectfully submitted,

/s/ *Earl P. Underwood, Jr.*
UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
Fax: (251) 990-0626
epuunderwood@alalaw.com

*Counsel for Plaintiffs-Appellees*

# TAB SAC

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| JASON BENNETT, on behalf of himself and all others similarly situated, | * * | Civil Action No. **2:16-cv-03908-DLR** |
| | * | |
| Plaintiff, | * | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE** |
| | * | **RELIEF PURSUANT TO 47 U.S.C.** |
| v. | * | **§ 227 et seq. (TELEPHONE** |
| | * | **CONSUMER PROTECTION ACT)** |
| | * | |
| GODADDY.COM, LLC, | * | |
| | * | |
| Defendant. | * | |

## <u>FIRST AMENDED COMPLAINT</u>

This case arises from the intentional and repeated efforts of Defendant to market its business in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* (hereinafter referred to as the "TCPA"). Plaintiff and Class Members now come to this Honorable Court seeking injunctive relief, a judgment against Defendant for violations of the TCPA, statutory damages as set forth in the statute, the costs incurred in this action, and for such other, further and different relief to which Plaintiff and Class Members may be entitled under the circumstances. As more specific grounds therefore, Plaintiff and Class Members allege on personal knowledge, investigation of undersigned counsel, and on information and belief as follows:

## <u>PARTIES</u>

### PLAINTIFF

1. Plaintiff Jason Bennett (herein after referred to as "Plaintiff") is a natural person who is a resident of Baldwin County, Alabama, and is over the age of 19.

2. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

**DEFENDANT**

3.      Defendant, Godaddy.com, LLC (herein after referred to as "Defendant"), is a Delaware corporation with its principal place of business in Arizona.

4.      Defendant is, and at all relevant times was, a "person" as that term is defined by 47 U.S.C. §153(39).

## JURISDICTION

5.      Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

6.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as the "CAFA"), codified as 28 U.S.C. §1332(d)(2).  The matter in controversy exceeds $5,000,000.00, in the aggregate, exclusive of interest and costs, as each member of the proposed Class, of at least thousands, is entitled to damages of up to $1,500.00 for each call made by Defendant in violation of the TCPA.  Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

7.      This Court has Federal Question jurisdiction pursuant to 28 U.S.C. §1332 and 47 U.S.C. §227.

**PLAINTIFF'S FACTUAL ALLEGATIONS
REGARDING TELEMARKETING CALLS**

8.      Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

9.      Plaintiff has used the same cellular telephone number [(251) 654-1830 (hereinafter referred to as "Plaintiff's cellular telephone")] for many years.

**September 21, 2015 and May 20, 2016 Telemarketing Campaign Calls:**

10.     Defendant's "Customer Development Team" (hereinafter referred to as "Defendant's CDT") used an automatic telephone dialing system, as defined in 47 U.S.C. §227(a)(1) (hereinafter referred to as an ATDS), to initiate telephone calls to Plaintiff's cellular telephone on September 21, 2015 and May 20, 2016.

11.     The September 21, 2015 and May 20, 2016 calls were initiated to Plaintiff's cellular telephone because his cellular telephone number was included in a certain telemarketing "campaign"[1] (the campaign that resulted in the September 21, 2015 and May 20, 2016 calls to Plaintiff are hereinafter collectively referred to as the "September 21, 2015 and May 20, 2016 Telemarketing Campaign").

12.     The September 21, 2015 and May 20, 2016 Telemarketing Campaign calls were placed in the hope that Plaintiff would choose to purchase the renewal of some recently expired service.

13.     The September 21, 2015 and May 20, 2016 Telemarketing Campaign calls were also initiated in the hope that the CDT agent could engage in a "consultation" with Plaintiff regarding his business, whereby the CDT agent (through such "consultation") would identify GoDaddy products to offer for sale to Plaintiff.

14.     The purpose of the September 21, 2015 and May 20, 2016 Telemarketing Campaign calls initiated to Plaintiff's cellular telephone were to encourage the purchase of Defendant's services.

15.     Alternatively, the September 21, 2015 and May 20, 2016 Telemarketing Campaign calls were initiated for the dual purpose of both (1) informing Plaintiff that some service provided

---

[1] A "campaign" is a list of Defendant's customers to be called by the CDT for the purpose of telemarketing.

by Defendant had expired, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant, and was motivated, in part, by Defendant's desire to sell its services to Plaintiff.

16.     The September 21, 2015 and May 20, 2016 Telemarketing Campaign calls were each a "telemarketing call" as defined in 47 U.S.C. § 227(a)(4).

**January 27, 2016 Telemarketing Campaign Call:**

17.     Defendant's CDT used an ATDS to initiate a telephone call to Plaintiff's cellular telephone on January 27, 2016.

18.     The January 27, 2016 call was initiated to Plaintiff's cellular telephone because his cellular telephone number was included in a certain telemarketing "campaign" (the campaign that resulted in the January 27, 2016 call to Plaintiff is hereinafter referred to as the "January 27, 2016 Telemarketing Campaign").

19.     The January 27, 2016 Telemarketing Campaign call was initiated in the hope that the CDT agent could engage in a "consultation" with Plaintiff regarding his business, whereby the CDT agent (through such "consultation") would identify GoDaddy products to offer for sale to Plaintiff.

20.     The purpose of the January 27, 2016 Telemarketing Campaign call initiated to Plaintiff's cellular telephone was to encourage the purchase of Defendant's services.

21.     Alternatively, the January 27, 2016 Telemarketing Campaign call was initiated for the dual purpose of both (1) reaching out to Plaintiff to provide customer service/outreach, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant, and was motivated, in part, by Defendant's desire to sell its services to Plaintiff.

22.     The January 27, 2016 Telemarketing Campaign call was a "telemarketing call" as defined in 47 U.S.C. § 227(a)(4).

**April 1, 2016 Telemarketing Campaign Call:**

23.     Defendant's CDT used an ATDS to initiate a telephone call to Plaintiff's cellular telephone on April 1, 2016.

24.     The April 1, 2016 call was initiated to Plaintiff's cellular telephone because his cellular telephone number was included in a certain telemarketing "campaign" (the campaign that resulted in the January 27, 2016 call to Plaintiff is hereinafter referred to as the "April 1, 2016 Telemarketing Campaign").

25.     The April 1, 2016 Telemarketing Campaign call was placed in the hope that Plaintiff would choose to continue purchasing some service that was soon to expire.

26.     The April 1, 2016 Telemarketing Campaign call also was initiated in the hope that the CDT agent could engage in a "consultation" with Plaintiff regarding his business, whereby the CDT agent (through such "consultation") would identify GoDaddy products to offer for sale to Plaintiff.

27.     The purpose of the April 1, 2016 Telemarketing Campaign call initiated to Plaintiff's cellular telephone was to encourage the purchase of Defendant's services.

28.     Alternatively, the April 1, 2016 Telemarketing Campaign call was initiated for the dual purpose of both (1) informing Plaintiff that some service provided by Defendant was about to expire, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant, and was motivated, in part, by Defendant's desire to sell its services to Plaintiff.

29.     The April 1, 2016 Telemarketing Campaign call was a "telemarketing call" as defined in 47 U.S.C. § 227(a)(4).

**May 6, 2016 Telemarketing Campaign Call:**

30.     Defendant's CDT used an ATDS to initiate a telephone call to Plaintiff's cellular telephone on May 6, 2016.

31.     The May 6, 2016 call was initiated to Plaintiff's cellular telephone because his cellular telephone number was included in a certain telemarketing "campaign" (the campaign that resulted in the January 27, 2016 call to Plaintiff is hereinafter referred to as the "May 6, 2016 Telemarketing Campaign").

32.     The May 6, 2016 Telemarketing Campaign call was initiated in the hope that the CDT agent could engage in a "consultation" with Plaintiff regarding his business, whereby the CDT agent (through such "consultation") would identify GoDaddy products to offer for sale to Plaintiff.

33.     The purpose of the May 6, 2016 Telemarketing Campaign call initiated to Plaintiff's cellular telephone was to encourage the purchase of Defendant's services.

34.     Alternatively, the May 6, 2016 Telemarketing Campaign call was initiated for the dual purpose of both (1) reaching out to Plaintiff to provide customer service/outreach, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant, and was motivated, in part, by Defendant's desire to sell its services to Plaintiff.

35.     The May 6, 2016 Telemarketing Campaign call was a "telemarketing call" as defined in 47 U.S.C. § 227(a)(4).

36.     Plaintiff has not provided his prior express written consent, as defined by 47 C.F.R. §64.1200, to be contacted by Defendant for telemarketing purposes using an ATDS.

37.     The calls placed to Plaintiff's telephone by Defendant were not made for "emergency purposes," as defined in 47 C.F.R. §64.1200.

38.     The calls placed to Plaintiff's telephone by Defendant were initiated intentionally.

39.     As a result of Defendant's conduct in violation of the TCPA, Plaintiff is entitled to an award of minimum statutory damages of $500.00 for each of the telemarketing calls initiated to Plaintiff's cellular telephone by an ATDS.

40.     Because each of the telemarketing calls initiated to Plaintiff's telephone by an ATDS were initiated intentionally, willfully and/or knowingly by Defendant, an award of statutory damages may be increased to as much as $1,500.00 for each of the subject telemarketing calls.

41.     Plaintiff is entitled to injunctive relief to prohibit further telemarketing calls being intimated to his cellular telephone by Defendant using an ATDS.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

43.     Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Rule 23, *Federal Rules of Civil Procedure*.

44.     Plaintiff proposes the following Class definition, subject to amendments as appropriate:

> All persons within the United States to whom, from November 4, 2014 through October 19, 2016, Defendant's Customer Development Team initiated a telephone call to his or her cellular telephone using an automatic telephone dialing system pursuant to one or more of the Telemarketing Campaigns that resulted in the initiation of a telephone call to Plaintiff's cellular telephone.

Collectively all these persons will be referred to as "Class Members."  Plaintiff represents, and is a member of, the Class.

45.     Excluded from this Class are all persons who have already settled or otherwise compromised their claims against Defendant.  Also excluded from the Class are the Defendant,

and any entity in which the Defendant has a controlling interest, the Defendant's agents and employees, and Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and all people who submit timely and otherwise proper requests for exclusion from the Class.

46.     Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class Members number in the thousands of individuals.

47.     Plaintiff and all Class Members have been harmed by the acts of the Defendant.

48.     This Class Action seeks injunctive relief and money damages.

49.     The joinder of all Class members is impracticable due to the size of the Class and the relatively modest value of each individual claim.

50.     The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

51.     The Class can be identified easily through records maintained by Defendant.

52.     There are well defined, nearly identical, questions of law and fact affecting all parties.  Such common questions of law and fact include, but are not limited to, the following:

a.  Whether Defendant used an ATDS to initiate calls to Class Members' cellular telephones pursuant to the CDT's September 21, 2015 and May 20, 2016 Telemarketing Campaign.

b.  Whether Defendant's CDT's September 21, 2015 and May 20, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the purpose of encouraging the purchase of Defendant's services; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

c.  Whether Defendant's CDT's September 21, 2015 and May 20, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the dual purpose of both (1) informing Class Members that some service provided by Defendant had expired, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

d. Whether Defendant used an ATDS to initiate calls to Class Members' cellular telephones pursuant to the CDT's April 1, 2016 Telemarketing Campaign.

e. Whether Defendant's CDT's April 1, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the purpose of encouraging the purchase of Defendant's services; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

f. Whether Defendant's CDT's April 1, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the dual purpose of both (1) reaching out to Class Members to provide customer service/outreach, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

g. Whether Defendant used an ATDS to initiate calls to Class Members' cellular telephones pursuant to the CDT's May 6, 2016 Telemarketing Campaign.

h. Whether Defendant's CDT's May 6, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the purpose of encouraging the purchase of Defendant's services; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

i. Whether Defendant's CDT's May 6, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the dual purpose of both (1) reaching out to Class Members to provide customer service/outreach, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

j. Whether Defendant used an ATDS to initiate calls to Class Members' cellular telephones pursuant to the CDT's January 27, 2016 Telemarketing Campaign.

k. Whether Defendant's CDT's January 27, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the purpose of encouraging the purchase of Defendant's services; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

l. Whether Defendant's CDT's January 27, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the dual purpose of both (1) reaching out to Class Members to provide customer service/outreach, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

    m. Whether Defendant can meet its burden of showing that it obtained prior express written consent to use an automatic telephone dialing system to place telemarketing calls to Class Members' cellular telephones.

    n. Whether Defendant's conduct was knowing and/or willful.

    o. Whether Defendant is liable for minimum statutory damages.

    p. Whether Defendant is liable for treble damages.

    q. Whether Defendant should be enjoined from engaging in such conduct in the future.

53.    Plaintiff's TCPA claim is typical of each Class Member in all relevant ways, including specifically:

    a. Defendant's CDT initiated one or more calls to Plaintiff's cellular telephone (and the cellular telephones of all Class Members) using an ATDS pursuant to CDT's September 21, 2015 and May 20, 2016 Telemarketing Campaign, its May 6, 2016 Telemarketing Campaign, its April 1, 2016 Telemarketing Campaign, and its January 27, 2016 Telemarketing Campaign between November 4, 2014 and October 19, 2016.

    b. The calls were initiated by Defendant's CDT to Plaintiff's cellular telephone (and the cellular telephones of all Class Members) for the purpose of encouraging the purchase of Defendant's services; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

    c. The calls were initiated by Defendant's CDT to Plaintiff's cellular telephone (and the cellular telephones of all Class Members) for the dual purpose of both (1) reaching out to inform Plaintiff of an expiring (or expired) service or to provide customer service/outreach, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

    d. The calls were initiated by Defendant's CDT to Plaintiff's cellular telephone (and to the cellular telephones of all Class Members) without the prior express written consent of Plaintiff (or the prior express written consent any Class Member).

54.    Plaintiff will fairly and adequately represent and protect the interests of the Class.

55.    Plaintiff has no interests that are antagonistic to any Class Member.

56.     Plaintiff has retained counsel experienced in handling claims involving violations of federal consumer protection statutes, including claims under the TCPA.

57.     A class action is the superior method for the fair and efficient adjudication of this controversy.

58.     Class wide relief is essential to compel Defendant to comply with the TCPA.

59.     The interest of the Class Members in individually pursuing claims against Defendant is slight because the minimum statutory damages for most individuals could be less than one thousand dollars.  Such small minimum statutory damages, combined with the lack of a fee shifting mechanism in the TCPA, will result in few (if any) individual actions being filed. Therefore, it is unlikely that a sufficient number of individual cases will be filed to deter Defendant from engaging in the same behavior in the future.

60.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue were all telemarketing calls placed by an ATDS to Class Members' cellular telephones by Defendant without Class Members' prior express written consent.

61.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

**62.**     Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

## FIRST COUNT

## STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 .S.C. §227 *et seq.*

63.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

64.     The foregoing acts and omissions of Defendant constitute multiple violations of the TCPA, including, but not limited to, each of the above-cited provisions of 47 U.S.C. §227 *et seq.*

65.     As a result of Defendant's violations of 47 U.S.C. §227 *et seq.*, Plaintiff and each Class Member is entitled to an award of $500.00 in statutory damages for each call made in violation of the statute, pursuant to 47 U.S.C. §227 (b)(3)(B).

66.     Plaintiff and Class Members are also entitled to, and do seek, injunctive relief prohibiting Defendant from making future telemarketing calls in violation of the TCPA.

## SECOND COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227 *et seq.*

67.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

68.     The foregoing acts and omissions of Defendant constitute multiple knowing and/or willful violations of the TCPA, including, but not limited to, each of the above-cited provisions of 47 U.S.C. §227 *et seq.*

69.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §227 *et seq*., Plaintiff and each Class Member is entitled to treble damages of up to $1,500.00 for each call made in violation of the statute, pursuant to 47 U.S.C. §227 (b)(3).

70.     Plaintiff and Class Members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future.

## PRAYER FOR RELIEF

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court grant Plaintiff and all Class Members the following relief:

A.     An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the undersigned as counsel for the Class;

B.     As a result of Defendant's statutory violations of 47 U.S.C. §2727(B)(1), Plaintiff seeks for himself and each Class Member $500.00 in statutory damages for each call that violated the TCPA;

C.     As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(B)(1), Plaintiff seeks for himself and each Class Member treble damages, as provided by statute, of up to $1,500.00 for each call that violated the TCPA;

D.     Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

E.     Such other, further, and different relief to which Plaintiff and the Class Members may be entitled and that this Honorable Court may deem just and proper.

13

Respectfully submitted,

s/ John R. Cox
_____
John R. Cox (admitted *pro hac vice*)
Attorney for Plaintiff and Proposed Class
30941 Mill Lane, Suite G-334
Spanish Fort, Alabama 36527
251.517.4753
john@jrclegal.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, under penalty of perjury under the laws of the State of

Arizona, that I served the foregoing document via U.S. Mail, with a courtesy copy via electronic

mail, to the following:

Paula L. Zecchini, AZ Bar No. 031880
Taylor P. Widawski (admitted *pro hac vice*)
COZEN O'CONNOR
999 3rd Avenue, Suite 1900
Seattle, WA 98104
Telephone:  (206) 340-1000
  Facsimile:   (206) 621-8783
  E-Mail:  pzecchini@cozen.com
       twidawski@cozen.com

Attorneys for Defendant
GODADDY.COM, LLC

SIGNED AND DATED this 1st day of December, 2017 at Spanish Fort, Alabama.

         s/ John R. Cox
         John R. Cox (admitted *pro hac vice*)

# TAB DS

# U.S. District Court
## SOUTHERN DISTRICT OF ALABAMA (Mobile)
## CIVIL DOCKET FOR CASE #: 1:19−cv−00563−KD−B

Drazen v. Godaddy.com,LLC
Assigned to: District Judge Kristi K. DuBose
Referred to: Magistrate Judge Sonja F. Bivins
 Case in other court:  11th Circuit, 21−10199
Cause: 47:227(b)(3) Telephone Consumer Protection Act of
1991

Date Filed: 08/21/2019
Date Terminated: 12/23/2020
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**Plaintiff**

**Susan Drazen**
*On behalf of herself and other persons
similarly situated*

represented by **Earl P. Underwood , Jr.**
Underwood & Riemer, PC
21 South Section Street
Fairhope, AL 36532
251−990−5558
Fax: 251−990−0626
Email: epunderwood@gmail.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Evan Meyers**
McGuire Law, P.C.
55. W. Wacker Drive, 9th Floor
Chicago, IL 60601
312−893−7002
Email: emeyers@mcgpc.com
*PRO HAC VICE
ATTORNEY TO BE NOTICED*

**John R. Cox**
9786 A Timber Circle
Spanish Fort, AL 36527
251−517−4753
Email: federalcourt.notices.jrclegal@gmail.com
*ATTORNEY TO BE NOTICED*

**Kenneth J. Riemer**
Underwood & Riemer
2153 Airport Boulevard
Mobile, AL 36606
251−432−9212
Email: kriemer@alalaw.com
*ATTORNEY TO BE NOTICED*

**Robert Manning Hatch**
Bock, Hatch, Lewis & Oppenheim LLC
134 N. LaSalle Street
Suite 1000
Chicago, IL 60602
312−658−5500
Email: shinhatch@outlook.com
*PRO HAC VICE
ATTORNEY TO BE NOTICED*

**Yevgeniy Y. Turin**
McGuire Law, P.C.
55 West Wacker, 9th Floor
Chicago, IL 60601
312−893−7002
Email: eturin@mcgpc.com

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Godaddy.com,LLC**                    represented by    **Paula Zecchini**
*a Delaware Limited Liability Company*                   Cozen O'Connor
                                                          999 Third Avenue
                                                          Suite 1900
                                                          Seattle, WA 98104
                                                          206−373−7213
                                                          Email: pzecchini@cozen.com
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jeffrey M. Monhait**
                                                          Cozen O'Connor
                                                          One Liberty Place
                                                          1650 Market Street
                                                          Suite 2800
                                                          Philadelphia, PA 19103
                                                          215−665−2084
                                                          Email: jmonhait@cozen.com
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

V.

**Objector**

**Mr. Juan Enrique Pinto**             represented by    **John R. Cox**
                                                          (See above for address)

                                                          **Robert Clore**
                                                          Bandas Law Firm, PC
                                                          802 N. Carancahua
                                                          Suite 1400
                                                          Corpus Christi, TX 78401
                                                          361−698−5200
                                                          Email: rclore@bandaslawfirm.com
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **T. Jefferson Deen , III**
                                                          T. Jefferson Deen, III, P.C.
                                                          P. O. Box 2705
                                                          Mobile, AL 36652
                                                          251−433−5860
                                                          Email: tjeffdeen@deenlawpc.com
                                                          *ATTORNEY TO BE NOTICED*

**Objector**

**Steven F. Helfand**                  represented by    **Steven F. Helfand**
                                                          1400 SW 137th Avenue F112
                                                          Pembroke Pines, FL 33027
                                                          786−676−1018
                                                          PRO SE

| Date Filed | # | Docket Text |
| --- | --- | --- |

| 08/21/2019 | 1 | COMPLAINT against Godaddy.com,LLC ( Filing fee $400 receipt number AALSDC−2462488, Online Credit Card Payment), filed by Susan Drazen. (Attachments: # 1 Supplement Summons, # 2 Civil Cover Sheet Civil Cover Sheet) (Underwood, Earl) (Entered: 08/21/2019) |
|---|---|---|
| 08/22/2019 | 2 | Summons Issued as to Godaddy.com,LLC. Note to Counsel: The Summons have been issued. Please print copies necessary for service. (nah) (Entered: 08/22/2019) |
| 09/19/2019 | 3 | MOTION and APPLICATION for Paula L. Zecchini to Appear Pro Hac Vice. Attorney affirms that a certificate of good standing that complies with *S.D. Ala. GenLR 83.3(d)* is attached. ( Filing fee $ 75, Receipt number AALSDC−2479433, Online Credit Card Payment) filed by Godaddy,LLC. (Zecchini, Paula) (Entered: 09/19/2019) |
| 09/19/2019 | 4 | MOTION and APPLICATION for Jeffrey M. Monhait to Appear Pro Hac Vice. Attorney affirms that a certificate of good standing that complies with *S.D. Ala. GenLR 83.3(d)* is attached. ( Filing fee $ 75, Receipt number AALSDC−2479444, Online Credit Card Payment) filed by Godaddy.com,LLC. (Monhait, Jeffrey) (Entered: 09/19/2019) |
| 09/19/2019 | | MOTIONS REFERRED: 3 MOTION and APPLICATION for Paula L. Zecchini to Appear Pro Hac Vice and 4 MOTION and APPLICATION for Jeffrey M. Monhait to Appear Pro Hac Vice − Referred to Judge Sonja F. Bivins. (nah) (Entered: 09/19/2019) |
| 09/20/2019 | 5 | ENDORSED ORDER granting Doc. 3 Motion to Appear Pro Hac Vice filed by Paula L. Zecchini. Signed by Magistrate Judge Sonja F. Bivins on 9/20/19. (ktw) (Entered: 09/20/2019) |
| 09/20/2019 | 6 | ENDORSED ORDER granting Doc. 4 Motion to Appear Pro Hac Vice filed by Jeffrey M. Monhait. Signed by Magistrate Judge Sonja F. Bivins on 9/20/19. (ktw) (Entered: 09/20/2019) |
| 09/30/2019 | 7 | NOTICE of Settlement by Susan Drazen (Underwood, Earl) (Entered: 09/30/2019) |
| 09/30/2019 | | REFERRAL OF 7 Notice of Settlement to Judge DuBose. (nah) (Entered: 09/30/2019) |
| 11/04/2019 | 8 | ORDER: The parties are ORDERED to file a Status Report on or before November 12, 2019. Signed by Chief Judge Kristi K. DuBose on 11/4/19. (gcp) (Entered: 11/04/2019) |
| 11/06/2019 | 9 | STATUS REPORT *Joint* by Susan Drazen. (Underwood, Earl) (Entered: 11/06/2019) |
| 11/06/2019 | | REFERRAL OF 9 Status Report to Judge DuBose. (nah) (Entered: 11/06/2019) |
| 11/26/2019 | 10 | STATUS REPORT by Susan Drazen. (Underwood, Earl) (Entered: 11/26/2019) |
| 11/26/2019 | | REFERRAL OF 10 Status Report to Judge DuBose. (nah) (Entered: 11/26/2019) |
| 12/09/2019 | 11 | MOTION and APPLICATION for Eugene Y. Turin to Appear Pro Hac Vice. Attorney affirms that a certificate of good standing that complies with *S.D. Ala. GenLR 83.3(d)* is attached. ( Filing fee $ 75, Receipt number AALSDC−2525947, Online Credit Card Payment) filed by Susan Drazen. (Attachments: # 1 Certificate of good standing) (Turin, Yevgeniy) (Entered: 12/09/2019) |
| 12/09/2019 | | MOTIONS REFERRED: 11 MOTION and APPLICATION for Eugene Y. Turin to Appear Pro Hac Vice − Referred to Judge Sonja F. Bivins. (nah) (Entered: 12/09/2019) |
| 12/09/2019 | 12 | ENDORSED ORDER granting Doc. 11 Motion to Appear Pro Hac Vice filed by Eugene Y. Turin. Signed by Magistrate Judge Sonja F. Bivins on 12/09/19. (ktw) (Entered: 12/09/2019) |
| 12/17/2019 | 13 | ORDER: The parties are ORDERED to file a Joint Status Report by January 8, 2020. Signed by Chief Judge Kristi K. DuBose on 12/17/19. (gcp) (Entered: 12/17/2019) |
| 01/08/2020 | 14 | NOTICE of Appearance by John R. Cox on behalf of All Plaintiffs (Cox, John) (Entered: 01/08/2020) |

| | | |
|---|---|---|
| 01/08/2020 | <u>15</u> | Joint MOTION to Accept Transfer and Consolidation filed by Godaddy.com,LLC. (Attachments: # <u>1</u> Exhibit A−G) (Zecchini, Paula) (Entered: 01/08/2020) |
| 01/08/2020 | <u>16</u> | NOTICE of Filing Proposed Order by Godaddy.com,LLC re: <u>15</u> Joint MOTION to Accept Transfer and Consolidation (Zecchini, Paula) (Entered: 01/08/2020) |
| 01/08/2020 | | MOTIONS REFERRED: <u>15</u> Joint MOTION to Accept Transfer and Consolidation and REFERRAL OF <u>16</u> Notice of filing Proposed Order to Judge DuBose. (nah) (Entered: 01/08/2020) |
| 01/08/2020 | <u>17</u> | STATUS REPORT *Joint* by Godaddy.com,LLC. (Monhait, Jeffrey) (Entered: 01/08/2020) |
| 01/09/2020 | | REFERRAL OF <u>17</u> Status Report to Judge DuBose. (nah) (Entered: 01/09/2020) |
| 01/10/2020 | <u>18</u> | MOTION and APPLICATION for Robert M. Hatch to Appear Pro Hac Vice. Attorney affirms that a certificate of good standing that complies with ***S. D. Ala. GenLR 83.3(d)*** is attached. ( Filing fee $ 75, Receipt number AALSDC−2547199, Online Credit Card Payment) filed by Susan Drazen. (Attachments: # <u>1</u> Certificate of good standing) (Hatch, Robert) (Entered: 01/10/2020) |
| 01/10/2020 | | MOTIONS REFERRED: <u>18</u> MOTION and APPLICATION for Robert M. Hatch to Appear Pro Hac Vice − Referred to Judge Sonja F. Bivins. (nah) (Entered: 01/10/2020) |
| 01/10/2020 | 19 | ENDORSED ORDER granting Doc. <u>18</u> Motion to Appear Pro Hac Vice filed by Robert M. Hatch. Signed by Magistrate Judge Sonja F. Bivins on 1/10/20. (ktw) (Entered: 01/10/2020) |
| 01/10/2020 | <u>20</u> | Unopposed MOTION to Approve Settlement Agreement *Plaintiffs' Unopposed Motion & Memorandum in Support of Preliminary Approval of Class Action Settlement* filed by Susan Drazen. (Attachments: # <u>1</u> Exhibit A (Settlement Agreement), # <u>2</u> Exhibit B (Declaration of Myles McGuire), # <u>3</u> Exhibit C (Declaration of John Cox), # <u>4</u> Exhibit D (Declaration of Earl P. Underwood), # <u>5</u> Exhibit E (Declaration of Robert M. Hatch), # <u>6</u> Exhibit F (Declaration of Cameron R. Azari) (Turin, Yevgeniy) (Entered: 01/10/2020) |
| 01/13/2020 | | MOTIONS REFERRED: <u>20</u> Unopposed MOTION to Approve Settlement Agreement *Plaintiffs' Unopposed Motion & Memorandum in Support of Preliminary Approval of Class Action Settlement* to Judge DuBose (nah) (Entered: 01/13/2020) |
| 01/14/2020 | <u>21</u> | NOTICE of Filing Proposed Order by Susan Drazen re: <u>20</u> Unopposed MOTION to Approve Settlement Agreement *Plaintiffs' Unopposed Motion & Memorandum in Support of Preliminary Approval of Class Action Settlement* (Turin, Yevgeniy) (Entered: 01/14/2020) |
| 01/15/2020 | | REFERRAL OF <u>21</u> Notice of filing Proposed Order, to Judge DuBose. (nah) (Entered: 01/15/2020) |
| 01/21/2020 | <u>22</u> | Order setting an Evidentiary Hearing for 2/6/2020 at 02:00 PM in US Courthouse, Courtroom 4B, 155 St. Joseph Street, Mobile, AL 36602 before Chief Judge Kristi K. DuBose. Signed by Chief Judge Kristi K. DuBose on 01/21/2020. (nah) (Entered: 01/22/2020) |
| 01/29/2020 | <u>23</u> | NOTICE of Appearance by Kenneth J. Riemer on behalf of Susan Drazen (Riemer, Kenneth) (Entered: 01/29/2020) |
| 02/03/2020 | <u>24</u> | Order entered on the parties' inquiry regarding the February 6, 2020 evidentiary hearing. Signed by Chief Judge Kristi K. DuBose on 02/03/2020. (nah) (Entered: 02/03/2020) |
| 02/04/2020 | <u>25</u> | MOTION and APPLICATION for Evan M. Meyers to Appear Pro Hac Vice. Attorney affirms that a certificate of good standing that complies with ***S. D. Ala. GenLR 83.3(d)*** is attached. ( Filing fee $ 75, Receipt number AALSDC−2563811, Online Credit Card Payment) filed by Susan Drazen. (Attachments: # <u>1</u> Exhibit Certificate of Good Standing) (Meyers, Evan) (Entered: 02/04/2020) |
| 02/04/2020 | | MOTIONS REFERRED: <u>25</u> MOTION and APPLICATION for Evan M. Meyers to Appear Pro Hac Vice − Referred to Judge Sonja F. Bivins. (nah) (Entered: |

| | | |
|---|---|---|
| | | 02/04/2020) |
| 02/05/2020 | 26 | ENDORSED ORDER granting Doc. 25 Motion to Appear Pro Hac Vice filed by Evan M. Meyers. Signed by Magistrate Judge Sonja F. Bivins on 2/05/20. (ktw) (Entered: 02/05/2020) |
| 02/06/2020 | | Minute Entry for proceedings held before Chief Judge Kristi K. DuBose: Evidentiary Hearing held on 2/6/2020. Court Reporter Melanie Wilkins. (nah) (Entered: 02/06/2020) |
| 02/12/2020 | 27 | AFFIDAVIT re 20 Unopposed MOTION to Approve Settlement Agreement *Plaintiffs' Unopposed Motion & Memorandum in Support of Preliminary Approval of Class Action Settlement Declaration of Susan Drazen* by Susan Drazen. (Turin, Yevgeniy) (Entered: 02/12/2020) |
| 02/12/2020 | | REFERRAL OF 27 Affidavit − Declaration of Susan Drazen, to Judge DuBose. (nah) (Entered: 02/12/2020) |
| 02/19/2020 | 28 | STATUS REPORT *(JOINT)* by Susan Drazen. (Turin, Yevgeniy) (Entered: 02/19/2020) |
| 02/19/2020 | | REFERRAL OF 28 Status Report to Judge DuBose. (nah) (Entered: 02/19/2020) |
| 02/21/2020 | 29 | Order Consolidating Cases. Lead Case No.: 19−00563−KD−B, Member Case No.: 20−00094−KD−B, All future pleadings to be filed in the Lead Case. The Clerk is directed to extract documents 1−9, 12−25, 29−32, 35−39, 44−50, 52−85, 87, 89−96, 100−118, 120−126, 128−158 in 20−00094−KD−B and make those documents a part of 19−00563−KD−B. Signed by Chief Judge Kristi K. DuBose on 02/21/2020. (nah) (Entered: 02/21/2020) |
| 02/21/2020 | 30 | Order for parties to file on or before 3/6/2020, briefs explaining how this case is distinguishable from Salcedo v. Hanna, the basis for standing and whether the proposed class includes text message only recipients. Signed by Chief Judge Kristi K. DuBose on 02/21/2020. (nah) (Entered: 02/21/2020) |
| 02/21/2020 | 31 | Documents 1−9, 12−22, 24−25, 29−32, 35−39, 44−50, 52−85, 87, 89−96, 100−106, 108−111, 113−117, 120−121, 124−125, 128, 130, 132−134, 136−157 extracted from 20−00094−KD−B, per 29 Consolidation Order. (nah) (Entered: 02/21/2020) |
| 03/04/2020 | 33 | Joint MOTION for Extension of Time to File Response to District Judges Order as to 30 Order,, filed by Godaddy.com,LLC. (Attachments: # 1 Text of Proposed Order) (Zecchini, Paula) (Entered: 03/04/2020) |
| 03/05/2020 | | MOTIONS REFERRED: 33 Joint MOTION for Extension of Time to File Response to 30 District Judges Order to Judge DuBose (nah) (Entered: 03/05/2020) |
| 03/05/2020 | 34 | ENDORSED ORDER granting 33 the parties' joint Motion for Extension of Time within which to file, on or before March 30, 2020, briefs on the issue of standing for the proposed settlement class. Signed by Chief Judge Kristi K. DuBose on 03/05/2020. (SHG) (Entered: 03/05/2020) |
| 03/26/2020 | 35 | Joint MOTION for Extension of Time to File Response to District Judges Order as to 30 Order,, Set Deadlines, filed by Godaddy.com,LLC. (Attachments: # 1 Text of Proposed Order) (Monhait, Jeffrey) (Entered: 03/26/2020) |
| 03/26/2020 | | MOTIONS REFERRED: 35 Joint MOTION for Extension of Time to File Response to District Judges Order as to 30 Order, to Judge DuBose (nah) (Entered: 03/26/2020) |
| 03/26/2020 | 36 | ENDORSED ORDER granting 35 the parties' joint Motion for Extension of Time within which to file, on or before April 15, 2020, briefs on the issue of standing for the proposed settlement class. Signed by Chief Judge Kristi K. DuBose on 03/26/20. (SHG) (Entered: 03/26/2020) |
| 04/15/2020 | 37 | Joint MOTION for Extension of Time to File Response to District Judges Order as to 30 Order,, Set Deadlines, filed by Godaddy.com,LLC. (Attachments: # 1 Text of Proposed Order) (Monhait, Jeffrey) (Entered: 04/15/2020) |
| 04/16/2020 | | MOTIONS REFERRED: 37 Joint MOTION for Extension of Time to File Response to District Judges Order as to 30 Order to Judge DuBose (nah) (Entered: 04/16/2020) |

| 04/16/2020 | 38 | ENDORSED ORDER granting 37 the parties' joint Motion for Extension of Time within which to file, on or before April 22, 2020, briefs on the issue of standing for the proposed settlement class. Signed by Chief Judge Kristi K. DuBose on 04/16/20. (SHG) (Entered: 04/16/2020) |
|---|---|---|
| 04/22/2020 | 39 | RESPONSE TO ORDER re: 30 Order,, Set Deadlines, by Godaddy.com,LLC filed by Godaddy.com,LLC. (Zecchini, Paula) (Entered: 04/22/2020) |
| 04/22/2020 | 40 | Brief filed by Susan Drazen , Jason Bennett, John Herrick: Plaintiffs' Unopposed Statement In Support Of Plaintiffs' Unopposed Motion & Memorandum In Support Of Preliminary Approval Of Class Action Settlement. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Turin, Yevgeniy) (Entered: 04/22/2020) |
| 04/23/2020 | | REFERRAL OF 39 Response to Order and 40 Brief, to Judge DuBose. (nah) (Entered: 04/23/2020) |
| 04/27/2020 | 41 | NOTICE by Godaddy.com,LLC Joint Statement Modifying Settlement Class Definition in Amended Class Action Settlement Agreement (Monhait, Jeffrey) (Entered: 04/27/2020) |
| 04/27/2020 | | REFERRAL OF 41 Notice − Joint Statement Modifying Settlement Class Definition in Amended Class Action Settlement Agreement to Judge DuBose. (nah) (Entered: 04/27/2020) |
| 04/27/2020 | 42 | Unopposed MOTION to Reschedule Final Approval Hearing filed by Susan Drazen. (Turin, Yevgeniy) (Entered: 04/27/2020) |
| 04/27/2020 | 43 | NOTICE of Filing Proposed Order by Susan Drazen re: 42 Unopposed MOTION to Reschedule Final Approval Hearing, 20 Unopposed MOTION to Approve Settlement Agreement Plaintiffs' Unopposed Motion & Memorandum in Support of Preliminary Approval of Class Action Settlement (Turin, Yevgeniy) (Entered: 04/27/2020) |
| 04/27/2020 | | MOTIONS REFERRED: 42 Unopposed MOTION to Reschedule Final Approval Hearing, REFERRAL OF 43 Notice of filing Proposed Order, to Judge DuBose. (nah) (Entered: 04/27/2020) |
| 05/14/2020 | 44 | Order re: 20 Unopposed Motion for Preliminary Certification of the Settlement Class. The motion will be GRANTED if the Proposed Settlement Agreement is amended to remove Herrick as a Class Representative. The Parties shall file an amended Proposed Settlement Agreement on or before 5/28/2020. Signed by Chief Judge Kristi K. DuBose on 05/14/2020. (nah) (Entered: 05/14/2020) |
| 05/28/2020 | 45 | NOTICE by Susan Drazen of Filing Second Amended Class Action Settlement Agreement (Attachments: # 1 Exhibit A) (Turin, Yevgeniy) (Entered: 05/28/2020) |
| 05/28/2020 | 46 | NOTICE of Filing Proposed Order by Susan Drazen re: 20 Unopposed MOTION to Approve Settlement Agreement Plaintiffs' Unopposed Motion & Memorandum in Support of Preliminary Approval of Class Action Settlement, 45 Notice (Other), 44 Order,, Set Deadlines, (Turin, Yevgeniy) (Entered: 05/28/2020) |
| 05/29/2020 | | REFERRAL OF 45 Notice of Filing Second Amended Class Action Settlement Agreement and 46 Notice of filing Proposed Order, to Judge DuBose. (nah) (Entered: 05/29/2020) |
| 05/29/2020 | 47 | Minute Entry for proceedings held before Chief Judge Kristi K. DuBose: Telephone Conference (ten minutes) held on 5/29/2020. (SHG) (Entered: 05/29/2020) |
| 06/04/2020 | 48 | Minute Entry for proceedings held before Chief Judge Kristi K. DuBose: Telephone Conference (ten minutes) held on 6/4/2020. (SHG) (Entered: 06/04/2020) |
| 06/09/2020 | 49 | Order GRANTING Plaintiff's 20 Unopposed MOTION, as supported by Doc. 20, 2−6 and amended by Doc. 45 and [45−1] (Revised Settlement Agreement), the proposed class is certified for settlement only and the settlement agreement is conditionally and preliminarily approved as set forth in this order. The operative settlement agreement is Doc. 45−1. A hearing is set for 12/14/2020 at 02:00 PM in US Courthouse, Courtroom 4B, 155 St. Joseph Street, Mobile, AL 36602 regarding the final approval of the class action settlement. Motions in support of final approval shall be submitted on or before 11/3/2020. Any motion for approval of attorney's fees and motion for incentive award |

| | | |
|---|---|---|
| | | shall be filed on or before 7/24/2020 and objections shall be due by 7/31/2020. Please see other deadlines set forth in order. Signed by Chief Judge Kristi K. DuBose on 06/09/2020. (nah) (Entered: 06/09/2020) |
| 07/24/2020 | 50 | MOTION for Attorney Fees *, Costs, and Expenses, and for Service Awards* filed by Susan Drazen. (Attachments: # 1 Exhibit A (Settlement Agreement), # 2 Exhibit B (Declaration of Myles McGuire), # 3 Exhibit C (Declaration of John R. Cox), # 4 Exhibit D (Declaration of Earl P. Underwood Jr.), # 5 Exhibit E (Declaration of Phillip A. Bock)) (Turin, Yevgeniy) (Entered: 07/24/2020) |
| 07/27/2020 | | MOTIONS REFERRED: 50 MOTION for Attorney Fees *, Costs, and Expenses, and for Service Awards* to Judge DuBose (tgw) (Entered: 07/27/2020) |
| 08/11/2020 | 51 | ORDER granting in part and denying in part 50 Motion for Attorney Fees, Costs, Expenses and Service Awards. Signed by Chief Judge Kristi K. DuBose on 8/11/2020. (tgw) (Entered: 08/11/2020) |
| 08/31/2020 | 52 | NOTICE of Appearance by T. Jefferson Deen, III on behalf of Juan Enrique Pinto (Deen, T.) (Entered: 08/31/2020) |
| 08/31/2020 | 53 | Objection *to Settlement and Amount of Attorney's Fees*. (Attachments: # 1 Exhibit Declaration of Juan Pinto, # 2 Exhibit Class Notice, # 3 Exhibit Prior Class Action Objections, # 4 Exhibit Representation Agreement) (Deen, T.) (Entered: 08/31/2020) |
| 08/31/2020 | 54 | MOTION and APPLICATION for Robert W. Clore to Appear Pro Hac Vice. Attorney affirms that a certificate of good standing that complies with ***S.D. Ala. GenLR 83.3(d)*** is attached. ( Filing fee $ 75, Receipt number AALSDC−2670402, Online Credit Card Payment) filed by Juan Enrique Pinto. (Attachments: # 1 Exhibit) (Clore, Robert) (Entered: 08/31/2020) |
| 08/31/2020 | | REFERRAL OF 53 Objection to Judge DuBose. (srd) (Entered: 08/31/2020) |
| 08/31/2020 | | MOTIONS REFERRED: 54 MOTION and APPLICATION for Robert W. Clore to Appear Pro Hac Vice. Attorney affirms that a certificate of good standing that complies with ***S.D. Ala. Referred to Judge Sonja F. Bivins. (srd) (Entered: 08/31/2020)*** |
| 09/01/2020 | 55 | AMENDED ORDER re: 51 Order on Motion for Attorney Fees. It is ORDERED that Plaintiffs' motion for attorneys' fees, costs, expenses, and service award is CARRIED to the final approval hearing as set out. Signed by Chief Judge Kristi K. DuBose on 09/01/2020. (srd) (Entered: 09/02/2020) |
| 09/01/2020 | 56 | Order re: 53 Objection filed by Juan Enrique Pinto. Parties are ORDERED to file responses on or before 9/15/2020 as set out. Signed by Chief Judge Kristi K. DuBose on 09/01/2020. (srd) (Entered: 09/02/2020) |
| 09/02/2020 | 57 | ENDORSED ORDER granting Doc. 54 Motion to Appear Pro Hac Vice filed by Robert W. Clore. Mr. Clore is expected to fully familiarize himself with and strictly adhere to this Court's Local Rules, the Alabama Rules of Professional Conduct, and the Alabama Standards for Imposing Lawyer Discipline. Signed by Magistrate Judge Sonja F. Bivins on 09/02/2020. (ktw) (Entered: 09/02/2020) |
| 09/04/2020 | 58 | Joint MOTION for Extension of Time *to File Response* filed by All Plaintiffs. Associated Cases: 1:19−cv−00563−KD−B, 1:20−cv−00094−KD−B (Cox, John) (Entered: 09/04/2020) |
| 09/08/2020 | | MOTIONS REFERRED: 58 Joint MOTION for Extension of Time *to File Response* − Referred to Judge DuBose (tgw) (Entered: 09/08/2020) |
| 09/08/2020 | 59 | ENDORSED ORDER granting 58 the parties' joint Motion for Extension of Time within which to file, on or before October 2, 2020, responses to Juan Pinto's Objection. Signed by Chief Judge Kristi K. DuBose on 9/8/20. (shg) (Entered: 09/08/2020) |
| 09/23/2020 | 60 | Order DIRECTING parties to file a briefing on the Eleventh Circuit's opinion on or before 10/16/2020 as set out. Signed by Chief Judge Kristi K. DuBose on 09/23/2020. (srd) (Entered: 09/23/2020) |
| 10/02/2020 | 61 | RESPONSE to 53 Objection filed by Susan Drazen. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Turin, Yevgeniy) (Entered: 10/02/2020) |

| 10/02/2020 | 62 | Notice of Joinder by Godaddy.com,LLC re: 61 Response *filed by Plaintiffs Susan Drazen and Jason Bennett to 53 Objection* (Zecchini, Paula) (Entered: 10/02/2020) |
|---|---|---|
| 10/02/2020 | | REFERRAL OF 61 Response and 62 Notice of Joinder to Judge DuBose. (srd) (Entered: 10/05/2020) |
| 10/09/2020 | 63 | MOTION for Leave to File *Reply of Juan Pinto* filed by Juan Enrique Pinto. (Attachments: # 1 Exhibit Reply in Support of Juan Pinto) (Deen, T.) (Entered: 10/09/2020) |
| 10/09/2020 | | MOTIONS REFERRED: 63 MOTION for Leave to File *Reply of Juan Pinto* to Judge DuBose. (srd) (Entered: 10/09/2020) |
| 10/14/2020 | 64 | ENDORSED ORDER granting 63 Objector Juan Pinto's Motion for Leave to File Reply. Signed by Chief Judge Kristi K. DuBose on 10/14/2020. (SHG) (Entered: 10/14/2020) |
| 10/14/2020 | 65 | REPLY in Support of 53 Objection of Juan Pinto filed by Juan Enrique Pinto. (srd) Referred to Judge DuBose. (Entered: 10/14/2020) |
| 10/16/2020 | 66 | Brief filed by Susan Drazen re 60 Order, Set Deadlines *Plaintiffs' Statement Regarding Johnson v. NPAS Solutions, LLC* filed by Susan Drazen. (Turin, Yevgeniy) (Entered: 10/16/2020) |
| 10/16/2020 | 67 | Brief filed by Godaddy.com,LLC re 60 Order, Set Deadlines *Defendant GoDaddy.com, LLC's Statement in Response to the Court's September 23, 2020 Order*. (Zecchini, Paula) (Entered: 10/16/2020) |
| 10/16/2020 | 68 | Brief filed by Juan Enrique Pinto . (Deen, T.) (Entered: 10/16/2020) |
| 10/16/2020 | | REFERRAL OF 66 Brief, 67 Brief, and 68 Brief to Judge DuBose. (srd) (Entered: 10/16/2020) |
| 11/03/2020 | 69 | MOTION to Approve Settlement Agreement *Plaintiffs' Motion & Memorandum in Support of Final Approval of Class Action Settlement* filed by Susan Drazen. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Turin, Yevgeniy) (Entered: 11/03/2020) |
| 11/03/2020 | | MOTIONS REFERRED: 69 MOTION to Approve Settlement Agreement *Plaintiffs' Motion & Memorandum in Support of Final Approval of Class Action Settlement* (srd) (Entered: 11/04/2020) |
| 11/16/2020 | 70 | STRICKEN − Objection to Settlement and Amount of Attorney's Fees. filed by Steven F. Helfand. (srd) Referred to Judge DuBose. Modified on 11/18/2020 (srd). (Entered: 11/16/2020) |
| 11/18/2020 | 71 | Order STRICKING 70 Objection filed by Steven F. Helfand as set out. Signed by Chief Judge Kristi K. DuBose on 11/18/2020. (srd) Copy to Objector Helfand. (Entered: 11/18/2020) |
| 12/10/2020 | 72 | MOTION to Appear Telephonically at Hearing filed by Godaddy.com,LLC. (Zecchini, Paula) (Entered: 12/10/2020) |
| 12/10/2020 | | MOTIONS REFERRED: 72 MOTION to Appear Telephonically at Hearing to Judge DuBose. (srd) (Entered: 12/10/2020) |
| 12/11/2020 | 73 | ENDORSED ORDER granting 72 Defendant GoDaddy.com, LLC's Motion to appear telephonically. Clerk to provide call−in information through separate email. Signed by Chief Judge Kristi K. DuBose on 12/11/20. (SHG) (Entered: 12/11/2020) |
| 12/14/2020 | | Minute Entry for proceedings held before Chief Judge Kristi K. DuBose: Final Approval of the Class Action Settlement Hearing held on 12/14/2020. Court will take under advisement. Court Reporter Melanie Wilkins. (nah) (Entered: 12/14/2020) |
| 12/23/2020 | 74 | FINAL JUDGMENT AND ORDER APPROVING CLASS SETTLEMENT − It is ORDERED, ADJUDGED, and DECREED as follows: 69 MOTION to Approve Settlement Agreement *Plaintiffs' Motion & Memorandum in Support of Final Approval of Class Action Settlement* filed by Susan Drazen is GRANTED. 50 Motion for Attorneys' Fees, Costs, Expenses, and Service Awards is GRANTED in part and DENIED in part. The Court approves the Class Action Settlement as fair, reasonable, |

| | | |
|---|---|---|
| | | and not the result of collusion. The Court CERTIFIES this Action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(3). 53 Objection to Settlement and Amount of Attorney's Fees is OVERRULED. This action is DISMISSED with prejudice and the Court retains jurisdiction over this Class Action Settlement as set out. Signed by Chief Judge Kristi K. DuBose on 12/23/2020. (srd) (Entered: 12/28/2020) |
| 01/19/2021 | 75 | NOTICE OF APPEAL by Juan Enrique Pinto. (Deen, T.) (Entered: 01/19/2021) |
| 01/19/2021 | 76 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re: 75 Notice of Appeal. No other appeals. Judge Appealed: DuBose. Court Reporter: Melanie Wilkins. No fee paid. (srd) (Entered: 01/19/2021) |
| 01/19/2021 | 77 | Appeal Instructions re: 75 Notice of Appeal : The Civil Appeal Statement Form is available on the Internet at www.ca11.uscourts.gov. Transcript Information Form to be filed no later than 2/2/2021. (srd) (Entered: 01/19/2021) |
| 01/19/2021 | 78 | USCA Appeal Fees received $ 505 receipt number 46031055238 re 75 Notice of Appeal filed by Juan Enrique Pinto. (srd) (Entered: 01/19/2021) |
| 01/21/2021 | 79 | NOTICE of Docketing Record on Appeal from USCA re 75 Notice of Appeal filed by Juan Enrique Pinto; USCA Case Number 21−10199. (srd) (Entered: 01/21/2021) |
| 01/22/2021 | 80 | TRANSCRIPT INFORMATION FORM filed by Juan Enrique Pinto re: 75 Notice of Appeal. Court Reporter Melanie Wilkins. Email to Court Reporter Melanie Wilkins. (Deen, T.) (Entered: 01/22/2021) |
| 02/03/2021 | 81 | MOTION for Bond filed by All Plaintiffs. (Attachments: # 1 Exhibit Appeal Statement) (Cox, John) (Entered: 02/03/2021) |
| 02/04/2021 | | MOTIONS REFERRED: 81 MOTION for Bond to Judge DuBose. (srd) (Entered: 02/04/2021) |
| 02/04/2021 | 82 | Order re: 81 MOTION for Appeal Bond filed by Susan Drazen. Response to Plaintiff's Motion due on or before 2/25/2021 as set out. Signed by Chief Judge Kristi K. DuBose on 02/04/2021. (srd) (Entered: 02/04/2021) |
| 02/05/2021 | 83 | Transcript Acknowledgment filed by Court Reporter Melanie Wilkins, CRR, RMR, re: 80 Transcript Information Form, 75 Notice of Appeal for proceedings as follows: 12/14/2020 before Judge Kristi K. DuBose, Transcript due by 2/20/2021. (maw) (Entered: 02/05/2021) |
| 02/05/2021 | 84 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT for dates of 12/14/2020 MOTION HEARING before Judge Kristi K. DuBose, re: 75 Notice of Appeal. USCA Case Number 21−10199. Court Reporter Melanie Wilkins, CRR, RMR, Telephone number (251)690−3371. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE: The parties have twenty−one (21) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. Notice of Transcript Redaction to be filed by 2/26/2021. Redaction Request due 2/26/2021. Redacted Transcript Deadline set for 3/8/2021. Release of Transcript Restriction set for 5/6/2021. (maw) (Entered: 02/05/2021) |
| 02/12/2021 | 85 | RESPONSE to 82 Order, Set Deadlines filed by Juan Enrique Pinto. (Deen, T.) (Entered: 02/12/2021) |
| 02/16/2021 | | REFERRAL OF 85 Response to Judge DuBose. (srd) (Entered: 02/16/2021) |
| 02/18/2021 | 86 | Order GRANTING in part and DENYING in part 81 MOTION for Bond filed by Susan Drazen as set out. Pinto's request for the Court to order Plaintiffs to show cause why sanctions should not issue given their deliberate misrepresentations that form the basis of their bond motion (Doc. 85 at 2) is DENIED as set out. Signed by Chief Judge Kristi K. DuBose on 02/18/2021. (srd) (Entered: 02/18/2021) |
| 02/19/2021 | 87 | Appeal Bond fee: $ 2,000.00, receipt number 46031055457 paid by Robert Clore for Juan Enrique Pinto. (srd) Referred to Judge DuBose. (Entered: 02/19/2021) |

| 04/15/2021 | <u>88</u> | MOTION UNOPPOSED JOINT MOTION FOR AN INDICATIVE RULING APPROVING OBJECTOR SETTLEMENT AGREEMENT AND MOTION TO EXPEDITE filed by Susan Drazen, Juan Enrique Pinto. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2) (Cox, John) (Entered: 04/15/2021) |
|---|---|---|
| 04/15/2021 | | REFERRAL OF <u>88</u> MOTION UNOPPOSED JOINT MOTION FOR AN INDICATIVE RULING APPROVING OBJECTOR SETTLEMENT AGREEMENT AND MOTION TO EXPEDITE to Judge DuBose. (srd) (Entered: 04/15/2021) |
| 04/22/2021 | <u>89</u> | Order GRANTING <u>88</u> MOTION UNOPPOSED JOINT MOTION FOR AN INDICATIVE RULING APPROVING OBJECTOR SETTLEMENT AGREEMENT AND MOTION TO EXPEDITE filed by Susan Drazen, Juan Enrique Pinto. Motion to Expedite the briefing is MOOT as set out. Signed by Chief Judge Kristi K. DuBose on 04/22/2021. (srd) (Entered: 04/22/2021) |
| 08/24/2021 | | Pursuant to F.R.A.P. 11(c), the Clerk of the District Court for the Southern District of Alabama certifies that the record is complete for purposes of this appeal re: <u>75</u> Notice of Appeal, Appeal No. 21−10199. The entire record on appeal is available electronically. (srd) (Entered: 08/24/2021) |

# TAB 20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **SUSAN DRAZEN, on behalf of herself and other persons similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | **Case No. 1:19-cv-00563-KD-B** |
| **GODADDY.COM, LLC, a Delaware Limited Liability Company,** | ) ) ) | **Hon. Kristi K. DuBose** |
| **Defendant.** | ) ) ) ) | |

## PLAINTIFFS' *UNOPPOSED* MOTION & MEMORANDUM IN SUPPORT OF
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated:  January 10, 2020

UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
Fax: (251) 990-0626
epunderwood@alalaw.com

[additional counsel listed on signature page]

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ii–iii

TABLE OF AUTHORITIES ....................................................................................... iv–vii

I.     INTRODUCTION ............................................................................................. 1

II.    BACKGROUND ................................................................................................ 2

    A.     Drazen's Allegations Regarding GoDaddy. ............................................ 2

    B.     The *Bennett* Litigation. ........................................................................... 3

    C.     The *Herrick* Litigation. .......................................................................... 5

    D.     Settlement Negotiations. .......................................................................... 6

III.   THE PROPOSED SETTLEMENT ................................................................. 7

    A.     The Settlement Class................................................................................. 7

    B.     The Relief Provided ................................................................................. 7

    C.     Notice And Settlement Administration.................................................... 8

    D.     Opt-Out And Objection Procedure. ......................................................... 9

    E.     Attorneys' Fees, Costs, and Incentive Awards. ...................................... 9

    F.     Release ..................................................................................................... 10

IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ..... 10

    A.     The Court Would Likely Find That The Proposed Settlement Is Fair, Reasonable, And Adequate. .................................................................... 11

        1. The Settlement was reached after extensive discovery, litigation, and arm's length negotiation................................................... 12

        2. The relief provided by the Settlement is more than adequate and provides equal relief to all Class Members .............................. 13

    B.     The Court Would Likely Find That The Proposed Settlement Class Meets All Requirements For Certification For Purposes Of Settlement Under Federal Rule 23. ...................................................... 18

        1. The Proposed Settlement Class meets all prerequisites to certification under Federal Rule 23(a)....................................... 18

            i.   The Proposed Settlement Class is Ascertainable based on Objective Criteria .............................................................. 18

            ii.  Numerosity................................................................................ 19

            iii. Commonality............................................................................. 19

            iv.  Typicality .................................................................................. 21

            v.   Adequacy .................................................................................. 22

        2. The Proposed Settlement Class is Certifiable Under Federal Rule 23(b)(3). ........ 23

  i. Common questions predominate within the Settlement Class.................. 23

  ii. A class action is the most efficient way of adjudicating Settlement Class Members' claims...................................................................................... 24

  iii. The proposed Notice Plan satisfies Due Process and the requirements of Federal Rule 23. .................................................................................. 26

  iv. Plaintiffs' Counsel Should Be Appointed Class Counsel. ........................ 27

V. CONCLUSION.............................................................................................. 28

iii

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................23, 25

*Appleyard v. Wallace*,
    754 F.2d 955 (11th Cir. 1985) ....................................................................22

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ....................................................................11

*Bussey v. Macon County Greyhound Park, Inc.*,
    562 Fed. Appx. 782 (11th Cir. 2014)..........................................................18

*Calderone v. Scott*,
    838 F.3d 1101 (11th Cir. 2016) ..................................................................19

*Carriuolo v. General Motors Co.*,
    823 F.3d 977 (11th Cir. 2016) ....................................................................20

*CMart, Inc. v. Metro. Life Ins. Co.*,
    299 F.R.D. 679 (S.D. Fla. 2014)............................................................24, 26

*Cox v. American Cast Iron Pipe Co.*,
    784 F.2d 1546 (11th Cir. 1986) ..................................................................19

*Dalton v. Cardworks Servicing, LLC*,
    No. 09-cv-00563, 2010 WL 5341939 (S.D. Ala. 2010) .............................11

*Dominguez v. Yahoo, Inc.*,
    894 F.3d 116 (3d Cir. 2018)........................................................................14

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)....................................................................................23

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)....................................................................................23

*Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*,
    No. 15-cv-0590, 2016 WL 6573981 (S.D. Ala. 2016) ..................10, 11, 19, 20, 25

*Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*,
    No. 15-cv-0590, 2017 WL 1042079 (S.D. Ala. 2017) ...............................19

*Family Med. Pharmacy, LLC v. Impax Laboratories, Inc.*,
    No. 17-cv-0053, 2017 WL 4366740 (S.D. Ala. 2017) ...............................18

iv

*Florida Trailer and Equip. Co. v. Deal,*
   284 F.2d 567 (5th Cir. 1960) ............................................. 15

*Garcia v. Target Corp.,*
   No. 16-cv-02574 (D. Minn. 2019) ....................................... 17

*Gen. Tel Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982) ........................................................ 26

*Gonzalez v. TCR Sports Broad. Holding, LLP,*
   No. 18-cv-20048, 2019 WL 2249941 (S.D. Fla. 2019) .................... 16, 24

*Guarisma v. ADCAHB Med. Coverages, Inc.,*
   No. 13-cv-21016, 2015 WL 13650934 (S.D. Fla. 2015) ................... 20

*In re CP Ships Ltd. Sec. Litig.,*
   578 F.3d 1306 (11th Cir. 2009) .......................................... 12

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.,*
   No. 11-MD-02261 (S.D. Cal. 2013) ....................................... 17

*Ira Holtzman, C.P.A. v. Turza,*
   728 F.3d 682 (7th Cir. 2013) ............................................ 20

*Jackson v. Motel 6 Multipurpose, Inc.,*
   130 F.3d 999 (11th Cir. 1997) ........................................... 24

*James v. JPMorgan Chase Bank, N.A.,*
   No. 15-cv-2424, 2017 WL 2472499 (M.D. Fla. 2017) ..................... 15

*Jenkins v. Raymark Indus., Inc.,*
   782 F.2d 468 (5th Cir. 1986) ............................................ 20

*Karhu v. Vital Pharmaceuticals, Inc.,*
   621 Fed.Appx. 945 (11th Cir. 2015) ..................................... 18

*Klay v. Humana, Inc.,*
   382 F.3d 1241 (11th Cir. 2004) .......................................... 23

*Knutson v. Schwan's Home Serv., Inc.,*
   No. 12-cv-0964, 2013 WL 4774763 (S.D. Cal. 2013) ..................... 25

*Los Santos v. Millward Brown, Inc.,*
   No. 13-cv-80670, 2015 WL 11438497 (S.D. Fla. 2015) ................... 17

*Markos v. Wells Fargo Bank, N.A.,*
   No. 15-cv-01156, 2017 WL 416425 (N.D. Ga. 2017) ..................... 16

*Murray v. Auslander,*
   244 F.3d 807 (11th Cir. 2001) .............................................................21

*O'Toole v. Pitney Bowes, Inc.*,
   No. 08-cv-01645, 2009 WL 10672311 (N.D. Ga. 2009).........................24

*Ressler v. Jacobson,*
   822 F. Supp. 1551 (M.D. Fla. 1992) ....................................................15

*Rose et al. v. Bank of America Corp.,*
   No. 11-cv-02390 (N.D. Cal. 2014) .......................................................17

*Schwyhart v. AmSher Collection Servs., Inc.,*
   No. 15-cv-01175, 2017 WL 1034201 (N.D. Ala. 2017)...................16, 24

*Smith v. William Wrigley Jr. Co.,*
   No. 09-cv-60646, 2010 WL 2401149 (S.D. Fla. June 15, 2010)...........11

*Spillman v. RPM Pizza,*
   No. 10-cv-349, 2013 WL 2286076 (M.D. La. 2011)..............................17

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,*
   350 F.3d 1181 (11th Cir. 2003) ...........................................................22

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011).............................................................................20

*Williams v. Bluestem Brands, Inc.,*
   No. 17-cv-1971, 2019 WL 1450090 (M.D. Fla. 2019)......................17, 23

*Williams v. Mohawk Industries, Inc.,*
   568 F.3d 1350 (11th Cir. 2009) ...........................................................21

*Wright v. Circuit City Stores, Inc.,*
   201 F.R.D. 526 (N.D. Ala. 2001)..........................................................21

## Statutes

47 U.S.C. § 227................................................................................ *passim*

FED. R. CIV. P. 23 ........................................................................... *passim*

## Other Sources

Alba Conte & Herbert B. Newberg, 2 Newberg on Class Actions § 11.41 (4th ed. 2002) ...........10

Manual for Complex Litigation § 21.632 (4th ed. 2004)................................................11

vi

## I.     <u>INTRODUCTION</u>

After more than three years of litigation, and months of arms-length negotiations, Susan Drazen ("Drazen"), Jason Bennett ("Bennett"), and John Herrick ("Herrick") (collectively "Plaintiffs"[1])—the respective plaintiffs in the Actions, including this case—have reached an agreement with Defendant GoDaddy.com, LLC ("GoDaddy") to resolve the Actions. Plaintiffs have each asserted claims in their respective lawsuits on behalf of various putative classes under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). In accordance with the Parties' Amended Class Action Settlement Agreement (the "Agreement"), the Parties wish to commence the settlement approval process.

By this Motion, Plaintiffs seek, *inter alia*, certification of their proposed settlement class for purposes of settlement under Federal Rules 23(a) and (b)(3), and preliminary approval of the Settlement Agreement, claims procedure, and the proposed form and method of class notice. While Plaintiffs maintain that even absent a settlement they would be able to secure class certification and prevail on the merits at trial, success is not assured, and GoDaddy has vigorously defended the Actions at every stage. If approved, the settlement would bring meaningful relief to consumers as well as certainty and closure to what has been, and likely would continue to be, highly contentious and costly litigation.

As explained in detail below, the settlement is fair, reasonable, and adequate, and is consistent with other TCPA settlements that have been approved in this District and in other courts throughout the country. Certification of the settlement class is in the best interest of the putative class members and satisfies the requirements for certification of a settlement class under Federal

---

[1] Unless otherwise stated, capitalized terms have the same meaning as those terms are used in the Amended Class Action Settlement Agreement, attached hereto as <u>Exhibit A</u>.

Rule 23. Accordingly, Plaintiffs respectfully request that the Court enter an order that (i) grants preliminary approval to the Settlement; (ii) appoints Plaintiffs as Class Representatives of the proposed Settlement Class; (iii) approves the proposed Notice Plan; (iv) appoints McGuire Law, P.C.; JRC Legal; Underwood & Riemer, P.C.; Bock, Hatch, Lewis & Oppenheim, LLC; Mark K. Wasvary, P.C.; Kent Law Offices; and McMorrow Law, P.C., as Class Counsel; and (v) schedules a final approval hearing to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and whether the Settlement Class should be certified.

## II.  BACKGROUND

### A.  Drazen's Allegations Regarding GoDaddy

On August 21, 2019, Drazen filed her Class Action Complaint against GoDaddy in the United States District Court for the Southern District of Alabama ("Southern District of Alabama"). Dkt. No. 1. Drazen alleges GoDaddy provides website related services and products to customers across the country. Dkt. No. 1 ("Drazen Compl."), ¶ 5. Drazen alleges that, when a customer buys any of GoDaddy's products or services, the customer provides GoDaddy with a telephone number as part of the transaction. *Id.* ¶ 6. Drazen alleges that GoDaddy used these telephone numbers to make promotional calls and send text messages attempting to sell additional or more expensive services and products and/or to contact individuals who are no longer customers, including Drazen. *Id.* ¶ 7. Drazen alleges that GoDaddy used an ATDS, as that term is defined under the TCPA, 47 U.S.C. § 227(a)(1), to make these contacts. *Id.* ¶ 9. Drazen further alleges that GoDaddy failed to obtain the necessary written consent required under the TCPA and its regulations to make these contacts. *Id.* ¶ 14. As such, Drazen alleges that the promotional calls and text message at issue were made and sent in violation of the TCPA. *Id.* ¶ 18.

As discussed further below, Plaintiff Bennett also alleges that he received calls similar to those described above on his cellular telephone, and Plaintiff Herrick alleges he received promotional text messaging from GoDaddy on his cellular telephone. Plaintiffs Bennett and Herrick subsequently filed suit against GoDaddy. *See Bennett v. GoDaddy.com, LLC*, No. 2:16-cv-03908 (D. Ariz.) (the "*Bennett* Litigation"), Dkt. No. 1 ("Bennett Compl."); *Herrick v. GoDaddy.com, LLC*, No. 2:16-cv-00254 (D. Ariz.) (the "*Herrick* Litigation"), Dkt. No. 1 ("Herrick Compl.").

### B.  The *Bennett* Litigation

On June 20, 2016, Bennett filed his original Class Action Complaint against GoDaddy in the Southern District of Alabama. Plaintiff Bennett alleged that he received numerous automated calls on his cellular telephone from GoDaddy attempting to get Plaintiff to renew services that he had previously purchased but which had expired. Bennett Compl., ¶¶ 12, 14–15. Bennett further alleged that GoDaddy failed to obtain his written consent to place such telemarketing calls. *Id.* ¶ 17. As such, Bennett alleged the calls he received were unauthorized and in violation of the TCPA. *Id.* ¶¶ 19, 46.

On November 1, 2016, GoDaddy filed a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), seeking to have the case transferred to the United States District Court for the District of Arizona ("District of Arizona"), *see* No. 16-cv-03908, Dkt. No. 17. The case was transferred to the District of Arizona with Bennett's consent. On January 27, 2017, following this transfer, GoDaddy filed its amended Answer to Bennett's Complaint. *See* No. 16-cv-03908, Dkt. No. 37.

In discovery, Bennett sought information regarding the equipment GoDaddy used to place the calls at issue, as well as information regarding GoDaddy's efforts to obtain consent to place the calls at issue. Bennett also pursued issues pertaining to class discovery, such as the identities

3

34

of the individuals who received calls from GoDaddy that Bennett alleged were unauthorized telemarketing calls. In addition to written discovery, the Parties participated in numerous fact and expert depositions. On July 27, 2018, Bennett moved for class certification. No. 16-cv-03908, Dkt. 111. Bennett sought to certify a class of individuals who had received calls to their cellular telephones from GoDaddy pursuant to two specific call campaigns. *Id.* at 3:24-26. After the Parties fully briefed the motion, the District of Arizona granted Bennett's motion for class certification on March 15, 2019. No. 16-cv-03908, Dkt. 131.

As described further below, in September 2019, after Bennett, Drazen, GoDaddy, and their respective counsel entered into the Class Action Settlement Agreement (the "Original Agreement"), Bennett and GoDaddy sought to stay the *Bennett* Litigation pending entry of final approval and judgment in this action. No. 16-cv-03908, Dkt. Nos. 152, 154. On October 3, 2019, the District of Arizona stayed the *Bennett* Litigation, and stated it was "inclined to transfer [the *Bennett* Litigation] to the Southern District of Alabama but will do so only if the judge handling the related [*Drazen*] matter indicates transfer would be appropriate." Case No. 16-cv-03908, Dkt. No. 155. The District of Arizona ordered Bennett and GoDaddy to "seek clarification from the Southern District of Alabama whether it believes transfer of [the *Bennett* Litigation] would be appropriate." *Id.*

Pursuant to the District of Arizona's Order, the Parties filed a Joint Motion to Accept Transfer and Consolidate with the Court on January 8, 2020, *see* Dkt. No. 15, and respectfully asked the Court to exercise its considerable discretion to advise the District of Arizona that transfer of the *Bennett* Litigation is proper and then, post-transfer, to consolidate the *Bennett* and *Drazen* matters.

### C.  The *Herrick* Litigation

On January 28, 2016, Herrick filed his original Class Action Complaint against GoDaddy in the District of Arizona. *See* Herrick Compl. Herrick alleged that he received text message advertising on his cellular telephone from GoDaddy containing promotional offers in December 2015. *See* Herrick Compl., ¶ 23. Herrick further alleged that GoDaddy failed to obtain his prior express written consent. *Id.* ¶¶ 25, 26. As such, Herrick alleged the text message advertising he received was unauthorized and in violation of the TCPA. *Id.* ¶ 50.

On April 11, 2016, GoDaddy Answered Herrick's Complaint, *see* No. 16-cv-00254, Dkt. No. 17, and on August 9, 2016, Herrick filed an Amended Class Action Complaint on, *see* No. 16-cv-00254, Dkt. No. 27. Following the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016), on August 30, 2016, GoDaddy filed a Motion to Dismiss Herrick's Amended Class Action Complaint for lack of subject matter jurisdiction. *See* No. 16-cv-00254, Dkt. No. 31. Following full briefing on the motion, the parties sought to supplement the record with post-*Spokeo* decisions. *See* No. 16-cv-00254, Dkt. No. 59. The District of Arizona agreed that the record needed to be supplemented, and denied the motion to dismiss without prejudice to renew to allow the parties an opportunity to provide their "respective views taking into account the case law which has developed since the original briefing of the motion to dismiss." *See id.* GoDaddy renewed its motion to dismiss on January 24, 2017, *see* No. 16-cv-00254, Dkt. No. 66, and subsequently withdrew the motion without prejudice on February 1, 2017, *see* No. 16-cv-00254, Dkt. No. 67.

Contemporaneous to this motion practice, the parties participated in discovery, exchanging written discovery and documents, and participating in multiple depositions. On March 31, 2017, GoDaddy filed a Motion for Summary Judgment on the issue of whether the equipment used to send the text message advertising at issue was an ATDS. *See* No. 16-cv-00254, Dkt. 79. Following

5

full briefing on the motion, the District of Arizona granted GoDaddy's motion for summary judgment on May 14, 2018. No. 16-cv-00254, Dkt. 107. Herrick appealed this ruling to the Ninth Circuit, and the Parties have fully briefed Herrick's appeal. *See Herrick v. GoDaddy.com, LLC*, No. 18-16048 (9th Cir.). On December 17, 2019, the Parties filed a joint motion to stay the appeal pending court approval of the proposed class action settlement in this action. *See* No. 18-16048, at Dkt. 44.  On December 18, 2019, the Ninth Circuit granted this joint motion, and stayed the appeal "pending approval of the proposed class action settlement." *See* No. 18-16048, at Dkt. 45.

### D.     Settlement Negotiations.

Throughout the course of the Bennett litigation, Bennett and GoDaddy periodically engaged in informal settlement discussions. These discussions ultimately led Bennett and GoDaddy to believe that mediation could prove fruitful. As a result, on June 13, 2019, Bennett and GoDaddy participated in a full-day mediation before the Honorable Wayne Andersen (Ret.) of JAMS Chicago. The mediation stretched well into the evening, and based on the progress the Parties made during the mediation, the Parties were able to confirm the general terms of a global settlement of the claims asserted in the Bennett Litigation on June 17, 2019. Over the course of the next three months, the Parties worked diligently to reduce these general terms to a final, fully executed settlement agreement. These negotiations involved innumerable conversations among the parties, and multiple follow-up calls with Judge Andersen, during which the parties sought guidance on the resolution of questions regarding the settlement terms negotiated by the parties. Furthermore, after the *Drazen* Litigation was filed, the parties agreed to involve that action in a global resolution of the claims at issue. In September 2019, Bennett, Drazen, GoDaddy, and their respective counsel entered into the Original Agreement. In December 2019, the parties amended the settlement to formally include Herrick as a Plaintiff in this settlement, and to include his

6

37

counsel as Class Counsel for the Settlement Class. *See* Ex. A, ¶ 6.

All told, the Parties have conducted significant written and oral discovery, exchanged thousands of pages of documents, engaged in several rounds of briefing on various motions, and dedicated several months to negotiating the terms of the Agreement sought to be approved here. Plaintiffs now present this settlement to this Court for preliminary approval.

## III.   THE PROPOSED SETTLEMENT

### A.   The Settlement Class

The proposed Settlement would establish a Settlement Class defined as follows:

> (a) All persons within the United States who received a call or text message to his or her cellular telephone from Defendant from November 4, 2014 through December 31, 2016.
> (b) Excluded from the term "Settlement Class" are: (1) the trial judges presiding over the Actions; (2) Defendant, as well as any parent, subsidiary, affiliate or control person of Defendant, and the officers, directors, agents, servants or employees of Defendant; (3) the immediate family of any such person(s); (4) any Settlement Class Member who timely and properly opts out of the settlement; and (5) Class Counsel, their employees, and their immediate family.

Ex. A, ¶ 46.

### B.   The Relief Provided

The Agreement calls for GoDaddy to make a total of up to thirty-five million U.S. dollars ($35,000,000.00) available for settlement of Approved Claims and Settlement Costs. Ex. A, ¶ 47. Each Settlement Class member who submits an approved claim and elects to receive a Cash Award will receive a check in the amount of thirty-five dollars ($35.00), subject to *pro rata* reduction. Ex. A, ¶ 48(a). In the alternative, each Settlement Class Member who submits an approved claim and elects to receive a Voucher Award will receive a voucher in the amount of one hundred fifty Dollars ($150.00), subject to *pro rata* reduction. Ex. A, ¶ 48(b). The Voucher Award will be redeemable online at GoDaddy's website or over the telephone, and will be fully transferrable,

good on all products and services offered by GoDaddy, and will require no minimum purchase. Ex. A, ¶ 48(b). The Settlement provides for only one claim per Settlement Class Member to receive either a Cash Award or Voucher Award. Ex. A, ¶ 48.

While the total payment to each Settlement Class Member will depend on the number of valid Claim Forms submitted, based on an estimate of the number of claims expected in response to the Notice Program, Plaintiffs anticipate that each Settlement Class Member will likely receive the full $35.00 Cash Award or $150.00 Voucher Award.

### C.   Notice and Settlement Administration

The Parties have agreed to retain Epiq Systems, Inc. ("Epiq") as the Settlement Administrator. Epiq will be responsible for receiving Claims submitted by Settlement Class Members, determining whether all submitted information is complete and accurate, and effectuating class notice. Ex. A, ¶¶ 54–62. Notice will be provided through a combination of direct mail and email notice. Ex. A, ¶ 61.

The Parties will provide the Settlement Administrator with the Cellular Number List— meaning the list of unique cellular phone numbers that received a call or text message from GoDaddy during the Class Period—and Contact Information Records, which includes the names and addresses, email addresses, and phone numbers associated with numbers on the Cellular Telephone List. Ex. A, ¶¶ 17, 24, 61. The Settlement Administrator will use the Cellular Number List and Contact Information Records to send the Notice by email to all individuals for whom an email address is available. Ex. A, ¶ 61(b). To the extent that the Settlement Administrator is unable to determine a valid email address, or any emails are found to be undeliverable, the Settlement Administrator will send Notice via regular mail by postcard. Ex. A, ¶ 61(c).

In addition to the robust direct notice being provided, the Settlement Administrator will also establish a Settlement Website, which will contain electronic versions of the Claim Form[2] that can be submitted online or via regular mail, as well as the full Settlement Agreement, a detailed Long Form Notice, important court documents, and answers to frequently asked questions. Ex. A, ¶ 61(d). The format and language of the Short Form Notice and Long Form Notice have been carefully drafted in straightforward, easy-to-read language to clearly inform Settlement Class Members of all the material aspects of the Settlement, such as the relief they are entitled to under the settlement, the amount of attorneys' fees and incentive awards that may be sought, and instructions and deadlines for opting out from, or objecting to, the Settlement. Ex. A, ¶¶ 56–58, Exs. 1–3.

### D.      Opt-Out and Objection Procedure

Settlement Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. Ex. A, ¶¶ 56–60. The procedures and deadlines for filing opt-out requests and objections will be referenced in all forms of the notice and on the Settlement Website. *Id.*; *see also* Ex. A, at Exs. 1–3. With respect to objections, the notices inform Settlement Class Members that the Final Approval Hearing will be their opportunity to appear and have their objections heard. Ex. A, ¶ 56–60, Exs. 1–3. The notices also inform Settlement Class Members that they will be bound by the release unless they timely exercise their right to exclusion. *Id.*

### E.      Attorneys' Fees, Costs, and Service Awards

Subject to Court approval, attorneys' fees are to be paid out of the Total Settlement Amount. Ex. A, ¶ 74. Under the Agreement, Class Counsel will request attorneys' fees of no more than thirty percent (30%) of the Total Settlement Amount plus reimbursement of reasonable

---

[2] The proposed Claim Form is Exhibit 3 to the Settlement Agreement.

litigation costs and expenses. Ex. A, ¶ 74. Class Counsel also intends to ask the Court to approve

a service award in the amount of five thousand U.S. dollars ($5,000.00) for each Plaintiff, and

GoDaddy has agreed not to oppose this request. Ex. A, ¶ 75.

### F.    Release

In exchange for the monetary and prospective relief described above, each Settlement Class

Member who does not exclude himself or herself will be deemed to have released and forever

discharged GoDaddy and the other "Released Parties" (*e.g.*, GoDaddy's affiliates) from any claims

related to or arising out of placing a phone call or sending a text message to such individuals. Ex.

A, ¶¶ 35–37, 47, 49.

## IV.    <u>THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED</u>

The proposed settlement provides substantial relief to the Settlement Class Members and

represents a fair and reasonable resolution of this dispute. It thus merits that the Court grant

preliminary approval of the settlement, and permit notice to be sent to the Settlement Class

Members. Rule 23 directs the Court at this stage to determine whether it "will be likely" to grant

final approval of the proposed settlement as "fair, reasonable, and adequate" pursuant to Fed. R.

Civ. P. 23(e)(2), and certifiable "for purposes of judgment on the proposal" pursuant to Fed. R.

Civ. P. 23(e)(1)(B)(ii). This directive matches the well-established two-step process in this Circuit

of performing a "preliminary" evaluation of the fairness of the settlement to determine whether

notice is to be sent out, prior to the final fairness inquiry. Conte & Newberg, 4 *Newberg on Class*

*Actions*, § 11.25, at 38–39 (4th Ed. 2002); *Family Med. Pharmacy, LLC v. Trxade Group, Inc.*,

No. 15-cv-0590, 2016 WL 6573981, at *7 (S.D. Ala. July 5, 2016) (noting that at the preliminary

approval stage, the "Court must first 'make a preliminary evaluation of the fairness of the

settlement before directing that notice be given to the settlement class"). Accordingly, the

preliminary approval evaluation is not a final fairness hearing. Rather, it is an evaluation to determine whether there is reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, § 11.25, at 38–39; *Dalton v. Cardworks Servicing, LLC*, No. 09-cv-00563, 2010 WL 5341939, at *2 (S.D. Ala. Nov. 19, 2010), *report and recommendation adopted*, No. 09-cv-0563, 2010 WL 5331724 (S.D. Ala. Dec. 21, 2010). The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement based on the written submissions and informal presentation from the settling parties. *Manual for Complex Litigation*, § 21.632 (4th ed. 2004). Critically, the Court need only find at the preliminary approval stage that it is "*likely*" to determine at the final approval hearing that the Settlement is "fair, reasonable, and adequate" and certifiable. Fed. R. Civ. P. 23(e)(1)(B).

Because every settlement is a compromise, courts should not reject a settlement solely because it does not provide a complete victory. Indeed, preliminary approval should be "granted unless a proposed settlement is obviously deficient." *Family Medicine Pharmacy*, 2016 WL 6573981, at *7 (citing *Smith v. William Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010)). There is a strong judicial and public policy favoring the settlement of class action litigation, and such a settlement should be approved by the Court after inquiry into whether the settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). As explained below, the Court is "likely" to find that the settlement reached by the Parties is fair, adequate, and reasonable, such that it warrants preliminary approval and issuance of notice.

## A.   The Court Would Likely Find That The Proposed Settlement Is Fair, Reasonable, And Adequate

As the amendments to Rule 23 direct, in determining whether to grant preliminary approval of a settlement, the Court must first evaluate whether it is "likely" to make a final determination

11

that the settlement is fair, reasonable, and adequate. The factors for determining whether a settlement is fair, reasonable, and adequate include: (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the settlement was negotiated at arm's length; (3) whether the relief provided to the class is adequate when weighed against (i) the cost, risk, and delay of trial and appeal, (ii) the method by which relief will be distributed to the class, (iii) the proposed attorneys' fees award, and (iv) any agreement made in connection with the settlement; and (4) whether the Settlement treats all class members equally to one another. Fed. R. Civ. P. 23(e)(2); *see also In re CP Ships Ltd. Sec. Litig.,* 578 F.3d 1306, 1318 (11th Cir. 2009) (quoting *Bennett,* 737 F.2d at 986). Application of these factors to this case demonstrates that the proposed settlement is fair, reasonable, and adequate.

        1.    <u>The settlement was reached after extensive discovery, litigation, and arm's length negotiation.</u>

The first two factors under the amended Rule 23(e)(2) are intended to "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note. In determining whether these factors are satisfied, the Court may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note.

The negotiations that led to the Agreement followed extended and thorough discovery in both the *Bennett* and *Herrick* Litigations. The mediation in the *Bennett* Litigation followed the close of discovery and the granting of Bennett's motion for class certification following full briefing. It took another three months of negotiations for the Parties to finalize the Original Agreement, and yet another three months for the Parties to finalize the final Settlement Agreement before the Court now. In the course of litigating the Actions, Plaintiffs' counsel has collectively

reviewed thousands of pages of documents, and conducted several depositions of GoDaddy's corporate designees. Bennett's counsel and Herrick's counsel also worked closely with their respective expert witnesses to analyze in detail the process by which GoDaddy placed the calls at issue and sent the text messaging at issue. Accordingly, given that Plaintiffs and their counsel had sufficient information about the facts of the allegedly unauthorized calls at issue to fairly weigh their prospects of success at trial versus the negotiated outcome provided by the settlement, the Court is likely to find that they adequately represented the Class.

Critically, the Parties' settlement negotiations were at all times conducted at arm's length and were facilitated by an experienced mediator. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

2. <u>The relief provided by the settlement is more than adequate and provides equal relief to all Class Members.</u>

The Court is also likely to find that the proposed settlement satisfies Rule 23's requirement that the settlement provide adequate relief when weighed against the likely outcome of any trial on the merits. The Agreement provides a significant monetary benefit to the Settlement Class, as every Settlement Class Member with an approved claim is entitled to receive the same relief— either a $35 Cash Award or a $150 Voucher Award—subject to *pro rata* reduction. GoDaddy has agreed to make a total of up to $35 million available for payment of Approved Claims and Settlement Costs. Given that the individual claims of the Settlement Class Members are statutorily limited under the TCPA, this settlement provides a significant benefit. This conclusion is strengthened when one considers the defenses GoDaddy has raised, and likely would raise if this litigation continued, and the possibility that the Settlement Class Members would receive no

13

benefit whatsoever in the absence of the Agreement. Because each Settlement Class Member is entitled to the same benefit from the settlement, the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(2)(D).

Although Plaintiffs believe they have a good likelihood of prevailing on their TCPA claims against GoDaddy, they are also aware that GoDaddy has denied each of their allegations and all charges of wrongdoing or liability, and GoDaddy has raised several legal defenses, any of which, if successful, would result in the Plaintiffs and the proposed Settlement Class Members receiving no payment whatsoever. Specifically, GoDaddy has made it clear it is prepared to argue, among other things, that (a) Plaintiffs have not suffered any actual injury, (b) that the communications at issue were not made for a telemarketing purpose, (c) that GoDaddy had valid consent to place the calls at issue and send the text messaging at issue, and (d) that no ATDS was used in making the communications at issue. *See, e.g.*, GoDaddy's Opposition to Bennett's Motion for Class Certification, No. 16-cv-03908, Dkt. 117; *Herrick v. GoDaddy.com, LLC*, 312 F. Supp. 3d 792, 793 (D. Ariz. 2018). Given that the Court in the *Herrick* litigation already held that "undisputed material facts show that GoDaddy did not use an [ATDS] to send the text in question," 312 F. Supp. 3d at 793, GoDaddy would no doubt pursue this argument in the *Drazen* and *Bennett* actions. Indeed, a similar holding in the *Drazen* and/or *Bennett* litigation would result in the Class Members receiving no relief whatsoever. *See Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018).

Additionally, any trial in this matter – or potentially multiple trials, since the Agreement resolves at least three separate pending lawsuits – is likely to be complex and expensive. In addition, the trial is unlikely to take place for some time, given that the Parties in the *Herrick* Litigation are in the midst of an appeal before the Ninth Circuit, the Parties in the *Bennett* action have only recently received an order on their disputed motion for class certification, and the *Drazen*

14

45

action is still in the early stages of litigation. Pursuant to the Agreement, Plaintiffs and the Settlement Class Members will receive a meaningful benefit now, instead of a chance at an uncertain benefit years from now that might never materialize. In short, in the absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation that would result would be substantial. Even in the event that the litigation reached trial, evidence and witnesses from across the country would have to be assembled in multiple forums. Given the complexity of the issues and the amount in controversy, as has already proven true in the *Herrick* Litigation, the losing Party would likely appeal both the decision(s) on the merits (at summary judgment and/or trial), as well as the decision(s) on class certification. As such, the immediate relief provided to the Settlement Class under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of continued litigation, trial, and appeal in multiple forums. *Ressler v. Jacobson*, 822 F. Supp. 1551, 1552 (M.D. Fla. 1992) ("The law generally favors and encourages the settlement of class actions"); *see also Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960) ("[T]he very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise").

The other factors to be considered under the amended Rule 23(e)(2)(C) are also all satisfied here. As detailed above, the Parties have prepared an extensive Notice Plan that will ensure Settlement Class Members receive effective notice informing them about the settlement, and enable them to easily submit a Claim. *See supra* Section III.C; Fed. R. Civ. P. 23(e)(2)(C)(ii). In addition, Plaintiffs' counsel's anticipated attorneys' fees request – no more than just thirty percent of the Total Settlement Amount – falls well within the range of attorneys' fees awarded in similar cases, and will likely be deemed reasonable in light of the significant recovery achieved for the

15

46

Settlement Class Members and the effort undertaken by Plaintiffs' Counsel in pursuing these claims on behalf of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(iii), *see James v. JPMorgan Chase Bank, N.A.*, No. 15-cv-2424, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (awarding attorneys' fees amounting to 30% of the settlement fund where class counsel "litigat[ed] a large class action" brought under the TCPA); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 18-cv-20048, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (collecting authorities and noting "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund"); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 15-cv-01175, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) (finding award of attorneys' fees of "one-third of the Settlement Fund" to be "fair and reasonable" in TCPA class action); *Markos v. Wells Fargo Bank, N.A.*, No. 15-cv-01156, 2017 WL 416425, at *3 (N.D. Ga. Jan. 30, 2017) (awarding $4.9 million, or 30% of settlement fund, in TCPA class action). To the extent that any Settlement Class Members believe that the requested attorneys' fees are not appropriate, they will have the opportunity to submit a written objection, and appear at the Final Approval Hearing. Plaintiffs have also identified all agreements made in connection with the Settlement, which are solely limited to the terms contained in the Settlement Agreement filed herewith as Exhibit A. Fed. R. Civ. P. 23(e)(2)(C)(iv).

In sum, (a) the lengthy, extensive, and contested litigation in the Actions, (b) the substantial benefit the Agreement provides for the Settlement Class, (c) the significant procedural and substantive hurdles Plaintiffs and the Settlement Class Members would face in the absence of reaching the Agreement, and (d) the participation of an experienced mediator throughout the settlement negotiation process, are all testaments to the fairness of the Agreement. However, the Court need not rule on a blank slate as to the reasonableness of the Agreement. Courts in this Circuit and across the country have granted final approval to similar class action settlements

16

<u>47</u>

involving alleged violations of the TCPA. *See, e.g.*, *Spillman v. RPM Pizza, Inc.*, No. 10-cv-349, 2013 WL 2286076, at *4 (M.D. La., June 17, 2011) (approving a settlement creating a $9.75 million fund for unauthorized automated calls, resulting in a settlement payment of approximately $15 per class member); *Los Santos v. Millward Brown, Inc.*, No. 13-cv-80670, 2015 WL 11438497 (S.D. Fla. Sept. 11, 2015) (approving a settlement creating a $11 million fund for unauthorized automated calls resulting in a settlement payment of $50 per class member); *Rose et al. v. Bank of America Corp.*, No. 11-cv-02390 (N.D. Cal. 2014) (approving settlement creating a $32 million fund for unauthorized automated calls, resulting in a settlement payment of approximately $20–$40 per class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-MD-02261 (S.D. Cal. 2013) (approving settlement providing class members with $20 vouchers that could be redeemed for $15 cash); *Garcia v. Target Corp.*, No. 16-cv-02574, Dkt. 191 (D. Minn. July 30, 2019) (preliminary approving a settlement creating a $7.05 million fund for unauthorized automated calls providing for a settlement payment of $70 per class member); *Williams v. Bluestem Brands, Inc.*, No. 17-cv-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (approving TCPA settlement resulting in approximately $25–$75 per claimant). Here, the Parties estimate that each Settlement Class Member who submits a valid Claim will receive the full amount of the Cash Award ($35) or Voucher Award ($150) that they elect to receive. Such relief is well within the range of the TCPA settlements reviewed above. Accordingly, the proposed settlement, which provides significant relief to the Settlement Class Members—as GoDaddy has agreed to make a total of up to $35 million available for settlement of Approved Claims and Settlement Costs—and which will allow each Settlement Class Member to receive as much as $150 in GoDaddy's products and services, is likely to be fair, reasonable, and adequate, and warrants the Court's preliminary approval.

**B.** **The Court Would Likely Find That The Proposed Settlement Class Meets All Requirements For Certification For Purposes Of Settlement Under Federal Rule 23**

The proposed settlement is not only likely to be found fair, reasonable, and adequate, but the proposed Settlement Class is also likely to be finally certified by the Court at the Final Approval Hearing. As explained below, the Settlement Class meets all of the criteria for certification under Rule 23(a) and 23(b)(3). Indeed, in the *Bennett* Litigation, the District of Arizona already found that all of the class certification requirements were met as to the narrower set of phone calls at issue in that case.

      1.    <u>The Proposed Settlement Class meets all prerequisites to certification under Federal Rule 23(a).</u>

          i.    *The Proposed Settlement Class is Ascertainable based on Objective Criteria.*

Although not explicitly required under Rule 23(a), some courts require that a proposed class be ascertainable. *Family Med. Pharmacy, LLC v. Impax Laboratories, Inc.*, No. 17-cv-0053, 2017 WL 4366740, at *2 (S.D. Ala. 2017). "In order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified." *Karhu v. Vital Pharmaceuticals, Inc.*, 621 Fed. Appx. 945, 947 (11th Cir. 2015). "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Bussey v. Macon County Greyhound Park, Inc.*, 562 Fed.Appx. 782, 787 (11th Cir. 2014).

Here, the proposed Settlement Class Members are readily ascertainable using the Cellular Number List and Contact Information Records. Ex. A, ¶¶ 17, 24. The Cellular Number List contains the unique cellular phone numbers that received a call or text message from GoDaddy during the Class Period. Ex. A, ¶ 17. Using this list, as well as the accompanying Contact Information Records that contain contact information associated with each cellular telephone

number, the Settlement Administrator will be able to identify each individual who is associated with a cellular telephone number that received calls or a text message from GoDaddy, and send them direct notice.

Because membership in the proposed Class is easily determined based on objective criteria and records that have already been produced and are readily accessible, the proposed Settlement Class is ascertainable. *See Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*, No. 15-cv-0590, 2017 WL 1042079, at *4 (S.D. Ala. Mar. 17, 2017) (granting final approval and finding that the proposed class was ascertainable where the defendant provided a list of phone numbers that received the unauthorized messages at issue and accompanying contact information).

### ii.   *Numerosity.*

The numerosity requirement of Rule 23(a)(1) is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 1553 (11th Cir. 1986) (stating that a class of "more than forty" class members is "adequate"). Based on the Cellular Number List and estimates provided by the Settlement Administrator, it is likely that direct notice will be sent to approximately two million individuals. The Settlement Class is therefore sufficiently numerous. *See Family Med. Pharmacy*, 2016 WL 6573981, at *4 (finding that a class of "8,500 persons" was sufficient to satisfy numerosity). The estimated number of Settlement Class Members, coupled with the fact that they are geographically disbursed throughout the country, renders joinder impracticable and supports a finding of numerosity.

### iii.   *Commonality.*

The second prerequisite of Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is met where the putative class members share a "common contention" that is "capable of classwide resolution—

which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The threshold for commonality, however, is not high. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). For purposes of satisfying the commonality requirement, "even a single common question will do." *Carriuolo v. General Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).

Other TCPA class actions where the class members' claims arose under the TCPA and focused on the same course of conduct by a common defendant have been found to have common legal and factual issues. *See, e.g.*, *Family Med. Pharmacy*, 2016 WL 6573981, at *4 (preliminarily approving TCPA class action settlement and finding that commonality was satisfied because "the class members have suffered the same injury"); *Guarisma v. ADCAHB Med. Coverages, Inc.*, No. 13-cv-21016, 2015 WL 13650934, at *2 (S.D. Fla. June 24, 2015) (finding commonality was satisfied for settlement purposes for class defined as "[a]ll persons to whom [the defendant] made or initiated . . . a telephone call marketing Florida Blue products or services from March 21, 2009 through March 2, 2015"); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (finding that class certification of TCPA claims is "normal" because the main questions in such cases are "common to all class members").

Similarly, the Settlement Class Members share a common statutory TCPA claim arising out of the same standardized conduct: that they allegedly received calls or text messaging that constitute telemarketing on their cellular telephones from GoDaddy, and that allegedly did not consent to receive such calls or text messaging. Proving a TCPA violation would require the resolution of the same central factual and legal issues, including: whether the Settlement Class Members' received calls or a text message on their cellular telephones; whether such calls and text

messages were made using an ATDS; whether Settlement Class Members consented to receiving

the calls or the text messaging; and, whether such conduct violated the TCPA. In addition, the calls

and the text messages at issue were allegedly made to the Settlement Class Members in the same

manner and for promotional purposes, and thus would entitle the Settlement Class Members to

identical statutory damages under the TCPA. Therefore, the sheer number and significance of the

common questions that exist for the proposed Settlement Class Members are sufficient to meet the

commonality requirement.

*iv.*     *Typicality.*

The typicality prong of subsection 23(a)(3) requires that the class representative's claims

be typical of the class members' claims. Fed. R. Civ. P. 23(a)(3). For a plaintiff to meet Rule

23(a)'s requirement of typicality, "the claims or defenses of the class and the class representative

[shall] arise from the same event or pattern or practice and [be] based on the same legal theory."

*Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009). "The typicality

requirement may be satisfied despite substantial factual differences . . . when there is a strong

similarity of legal theories." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001); *see also*

*Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 543 (N.D. Ala. 2001) ("particular factual

differences, differences in the amount of damages claimed or even the availability of certain

defenses against a class representative may not render his or her claims atypical") (citations

omitted).

Plaintiffs allege that they received phone calls or a text message from GoDaddy, and that

they did not consent to receive these calls or the text message, and that these calls and the text

message violated the TCPA. Plaintiffs proffer that the claims of the Settlement Class Members

would be based on the same allegations. Further, Plaintiffs and the putative Settlement Class

Members have all suffered the same injury: a violation of their rights under the TCPA. As a result,

21

**52**

Plaintiffs and the proposed Settlement Class are entitled to identical statutory damages under the TCPA. Because the Settlement Class Members assert identical claims that are based on the same legal theory, the same facts, and the same course of conduct by GoDaddy, and seek redress for the same injury, Plaintiffs are typical of the Settlement Class they seek to represent.

> *v.*     *Adequacy.*

The final subsection of Rule 23(a) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied where "the named Plaintiffs have [no] interests antagonistic to those of the rest of the class" and "Plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). This "adequacy of representation analysis encompasses two separate inquiries (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Here, Plaintiffs' interests are representative of and consistent with the interests of the proposed Settlement Class Members—all have received allegedly unlawful calls or a text message from GoDaddy, and all seek relief under the TCPA. Plaintiffs' pursuit of this matter, including producing documents and participating in the discovery process, as well as representing the Settlement Class Members' interests throughout the settlement process, demonstrates that they have been and will remain zealous advocates for the Settlement Class. Plaintiffs have no interests that are antagonistic to the interests of the putative Settlement Class Members; rather, their primary interest is the same, namely, to obtain relief pursuant to the TCPA.

Plaintiffs are also represented by experienced, competent counsel. Proposed Class Counsel have regularly engaged in complex class litigation and have extensive experience in consumer

22

class action lawsuits involving cellular telephones and, in particular, the TCPA. Plaintiffs' counsel and their firms have been appointed as class counsel in numerous complex consumer class actions, including numerous TCPA cases such as the one before the Court here. *See* Declaration of Myles McGuire, attached hereto as <u>Exhibit B</u>, at ¶¶ 8–9; Declaration of John R. Cox, attached hereto as <u>Exhibit C</u>, at ¶ 8; Declaration of Earl P. Underwood, attached hereto as <u>Exhibit D</u>, at ¶¶ 7–10; Declaration of Robert M. Hatch, attached hereto as <u>Exhibit E</u>, at ¶ 2. As such, proposed Class Counsel are qualified to assess the fairness and reasonableness of the Settlement Agreement reached in this case.

2.   <u>The Proposed Settlement Class Is Certifiable Under Federal Rule 23(b)(3)</u>.

A class is certifiable under Rule 23(b)(3) where "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Settlement Class before the Court here satisfies both of these requirements.

*i.   Common questions predominate within the Settlement Class.*

The predominance inquiry focuses on whether a proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Williams*, 2019 WL 1450090, at *4 ("[c]ommon issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . monetary relief'") (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254–55 (11th Cir. 2004)). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (internal quotation marks omitted). In TCPA cases, the predominance requirement is generally met where, as here, the class members' claims focus on a specific calling operation by a particular defendant. *See, e.g., Gonzalez v. TCR Sports Broad.*

23

*Holding, LLP*, No. 18-cv-20048, 2019 WL 2249941, at *2 (S.D. Fla. May 24, 2019) (granting final approval of TCPA class action settlement and finding predominance satisfied where individuals received "one or more text messages sent by or on behalf of Defendant . . . on a cellular phone"); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 15-cv-01175, 2017 WL 1034201, at *1 (N.D. Ala. Mar. 16, 2017); *O'Toole v. Pitney Bowes, Inc.*, No. 08-cv-01645, 2009 WL 10672311, at *1 (N.D. Ga. Aug. 3, 2009); *CMart, Inc. v. Metro. Life Ins. Co.,* 299 F.R.D. 679, 691 (S.D. Fla. 2014) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 f.3d 999, 1005 (11th Cir. 1997).

In this case, as in those cited above, common questions predominate because all of the Settlement Class Members received the same type of automated calls and text messages from GoDaddy, and all of the Class Members did not consent to receive such calls and messages. In other words, all of the Settlement Class Members were sent the same type of automated phone calls and text messages, under similar circumstances, by the same entity, and without their prior express consent. As such, the elements of any given Settlement Class Member's claim will be based on the same class-wide proof applicable to other Settlement Class Members within the same class. Further, as to the dialing system used by GoDaddy to place the calls and text messages at issue, testimony of GoDaddy's corporate representatives has made clear that GoDaddy utilized the same automated systems to send its text messages, and similarly used the same dialing systems to place all of the calls at issue. Accordingly, whether all of the automated calls and text messages at issue were placed using an ATDS is subject to common proof that predominates over any individual issues. Accordingly, common questions will predominate over any potential individualized issues.

ii.     *A class action is superior to any alternative means of adjudicating Settlement Class Members' claims.*

A class action is also superior to any other method available to fairly and efficiently

24

adjudicate the Settlement Class Members' claims. A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Here, because all of the Settlement Class members claims involve the same course of conduct by GoDaddy, and are subject to resolution based on the determination of the same common legal and factual issues, it would also be most efficient for their claims to be adjudicated on a class basis. Nor is there any concern regarding the "difficulties in managing a class action" since "[t]he proposed settlement negates any potential problems for managing a class action." *Family Med. Pharmacy*, 2016 WL 6573981, at *7 (citing *Amchem*, 521 U.S. at 620) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[]").

Importantly, many putative Settlement Class Members may not have access to competent counsel willing to invest the time and resources necessary to prosecute their claims. Because the Settlement Class Members have little incentive to bring individual actions to recover "the relatively minimal amount of damages" available under the TCPA, they are unlikely to have an interest in individually controlling the prosecution of separate actions. *See Knutson v. Schwan's Home Serv., Inc.*, No. 12-cv-0964, 2013 WL 4774763, at *10 (S.D. Cal. Sept. 5, 2013) ("Given the relatively minimal amount of damages that an individual may recover in suing for violation of the TCPA, the Court finds a class action would achieve Plaintiffs' objective better than if class members were required to bring individual actions"). It is therefore unlikely that, absent a class action, many individuals would be able to obtain relief through individual lawsuits. As such, adjudicating the Settlement Class Members' claims in a single proceeding will "save[] the

resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). *See CMart*, 299 F.R.D. at 691 ("the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating the plaintiffs' claims under TCPA").

    *iii.*        *The proposed Notice Plan satisfies Due Process and the requirements of Federal Rule 23.*

When a class is certified through settlement, Due Process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e) (1). Where, as here, a class is certified pursuant to Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) ("[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"). The notice must contain information in plain, easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

As discussed above, the Parties have agreed to a comprehensive Notice Plan that more than satisfies the requirements of Due Process and Rule 23. The Agreement provides for a multi-part Notice Plan designed to reach as many potential Settlement Class Members as possible. The Settlement Administrator estimates that the Notice Plan will achieve a direct contact rate of 90% of potential Settlement Class Members. *See* Declaration of Cameron R. Azari, Director of Legal

Notice for Epiq, attached hereto as <u>Exhibit F</u>, at ¶ 21. Under the notice plan, the Settlement Administrator will send *direct* notice of the Settlement via email or U.S. Mail to Settlement Class Members who will be identified using GoDaddy's Cellular Number List and Contact Information Records. Additionally, the Settlement Administrator will establish a website containing relevant court documents, notices, and the Claim Form, and which will provide for online submission of claims. In accordance with Rule 23(e)(4), the notices will all inform Settlement Class Members of their right to object or exclude themselves from the settlement and the process and deadlines for doing so.

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days after filing the Agreement with the Court, GoDaddy will send required notice to the appropriate government entities. 28 U.S.C § 1715(b). Because the proposed Notice Plan effectuates direct notice to all Settlement Class Members, establishes a publicly available Settlement Website, and fully apprises Settlement Class Members of their rights, it comports with the requirements of Due Process and Rule 23 and should be approved.

<i>iv.</i>    <i>Plaintiffs' Counsel Should Be Appointed Class Counsel.</i>

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

As described in detail above, proposed Class Counsel have diligently investigated Plaintiffs' TCPA claims and the feasibility of class certification, have committed extensive efforts to negotiating and executing this Settlement and the related papers, and have devoted and will

27

<u>58</u>

continue to devote substantial time and resources to this litigation. Proposed Class Counsel have extensive experience with similar class action litigation, including scores of TCPA cases, and have been appointed class counsel in many class actions, including numerous TCPA cases in this District and in courts throughout the country. *See* McGuire Decl. at ¶¶ 8–9; Cox Decl. at ¶ 8; Underwood Decl. at ¶¶ 7–10; Hatch Decl. at ¶ 2. As such, proposed Class Counsel have an in-depth knowledge of the laws applicable to the Settlement Class Members' claims and certification of the Settlement Class. *See* McGuire Decl. at ¶¶ 8–9; Cox Decl. at ¶ 8; Underwood Decl. at ¶¶ 7–10; Hatch Decl. at ¶ 2. Accordingly, the Court should appoint Plaintiffs' Counsel to serve as Class Counsel for the proposed Settlement Class pursuant to Rule 23(g).

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1) granting preliminary approval of the proposed settlement; (2) appointing Plaintiffs Susan Drazen, Jason Bennett, and John Herrick as Class Representatives; (3) appointing McGuire Law, P.C.; JRC Legal; Underwood & Riemer, P.C.; Bock, Hatch, Lewis & Oppenheim, LLC; Mark K. Wasvary, P.C.; Kent Law Offices; and McMorrow Law, P.C. as Class Counsel; (4) approving the form and content of the proposed Notice and ordering that it be effectuated; (5) scheduling a final approval hearing; and (6) providing such other and further relief as the Court deems reasonable and just.


Dated: January 10, 2020                 Respectfully submitted,

                                        /s/ Eugene Y. Turin
                                        EUGENE Y. TURIN

                                        *Attorneys for Plaintiffs*

UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
Fax: (251) 990-0626
epu@urlaw.onmicrosoft.com

MCGUIRE LAW, P.C.
Myles McGuire (*pro hac vice* to be filed)
Evan M. Meyers (*pro hac vice* to be filed)
Eugene Y. Turin (admitted *pro hac vice*)
55 West Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

JRC LEGAL
John R. Cox
30941 Mill Lane, Suite G-334
Spanish Fort, AL 36527
Tel: (251) 517-4753
john@jrclegal.net

BOCK, HATCH, LEWIS & OPPENHEIM, LLC
Robert M. Hatch (admitted *pro hac vice*)
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Tel: (312) 658-5500
service@classlawyers.com

KENT LAW OFFICES
Trinette G. Kent
3219 Camelback Rd., Ste. 588
Phoenix, AZ 85018
Tel: (480) 247-9644
tkent@kentlawpc.com

MARK K. WASVARY, P.C.
Mark K. Wasvary
2401 West Big Beaver Road, Suite 100
Troy, MI 48084
Tel: (248) 649-5667
mark@wasvarylaw.com

MCMORROW LAW, P.C.
Michael J. McMorrow
118 North Clinton St., Suite 108
Chicago, IL 60661
Tel: (312) 265-0708
mike@mjmcmorrow.com

29

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2020, I electronically filed the foregoing *Plaintiffs'*
*Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action*
*Settlement* with the Clerk of the Court using the CM/ECF system. A copy of said document will
be electronically transmitted to all counsel of record.

/s/ Eugene Y. Turin
Eugene Y. Turin, Esq.

# TAB 49

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SUSAN DRAZEN, o***n behalf of herself and* | ) | |
| *others similarly situated* | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION: 1:19-00563-KD-B** |
| | ) | |
| **GODADDY.COM, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | | |
| **JASON BENNETT, o***n behalf of himself and* | ) | |
| *others similarly situated* | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION: 1:19-00563-KD-B** |
| | ) | |
| **GODADDY.COM, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on Plaintiff Susan Drazen's second motion for preliminary approval of a proposed class action settlement and for certification of the settlement class. (Doc. 45).

I.     <u>Class Certification</u>

Plaintiff's revised settlement agreement comports with the Court's previous order to remove John Herrick as a named representative. (Doc. 44 at 17). The Court hereby adopts and incorporates the analysis and findings detailed in its prior Order. (Doc. 44). Upon consideration and for the reasons set forth herein, and in the Court's prior Order (Doc. 44), Plaintiff's unopposed motion is **GRANTED**, the proposed class  is certified for settlement only and the settlement agreement is **conditionally and preliminarily** approved.

## II.   __Class Settlement__

Plaintiffs Jason Bennett and Susan Drazen move for preliminary approval of the class action settlement agreement. (Doc. 45 at 1-2). A class action can be settled "only with the court's approval." Fed. R. Civ. P. 23(e). Final approval may be given only after class notice and a hearing. Id. However, the Court must first "make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." O'Connor v. Worthington PJ, Inc., 2017 WL 6762436, *3 (M.D. Fla. 2017) (citing Smith v. William Wrigley Jr. Co., 2010 WL 2401149 at *2 (S.D. Fla. 2010)). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." Id. (internal quotes omitted). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." Id. (citing Fuentas Cordova v. R & A Oysters, Inc., 2016 WL 5219634, *1 (S.D. Ala. 2016)); Smith, 2010 WL 2401149 at *2 (same).

First, the Court is satisfied that the settlement is the result of the parties' good faith negotiations. The settlement agreement was the result of an arms-length negotiation by both parties while represented by counsel and facilitated by the Honorable Wayne Anderson. (Doc. 20 at 12; Doc. 45-1 at 3). The settlement was also reached after discovery and after several months of negotiations. (Doc. 20 at 13).

Second, the Court is satisfied that there are no obvious deficiencies and the settlement falls within the range of reason. During settlement negotiations, GoDaddy agreed to make up to $35,000,000 available: 1) to pay individuals who submit valid claim forms; 2) for attorney's fees; 3) for a service award to the Class Representatives; 4) for costs and expenses of litigation. (See Doc. 45-1 at 47). Each Settlement Class Member who submits a valid claim is eligible to receive

either a $35 cash award or a $150 voucher that can be used for GoDaddy services or products.

(Id.). The parties also agreed, based on how many valid claims are submitted, that it is possible

each Settlement Class Member's Award will be reduced on a *pro rata* basis to cover settlement

administration costs, attorneys' fees, a service award to the Class Representatives, and costs and

expenses of litigation. (Id.). Accordingly, the Court finds the Settlement Agreement is

preliminarily approved as fair, reasonable, and adequate.

### A.   **Class Representative**

For the reasons set forth in the Court's previous Order (Doc. 44 at 13-16), the unopposed

motion to appoint Plaintiffs as class representatives is **GRANTED**. Accordingly, Plaintiffs Jason

Bennett and Susan Drazen are **DESIGNATED** as the representatives of the settlement agreement

as defined in Section II(B), for the purpose of the Settlement Agreement.

### B.   **Class Counsel**

"An order that certifies a class action…must appoint class counsel under Rule 23(g)." Fed.

R. Civ. P. 23(c)(B). See O'Connor, 2017 WL 6762436 at *3 (considering the experience of counsel

in a class action settlement context). Rule 23(g)(1)(A) and (B) provides that in appointing class

counsel, the Court:

> (A)     must consider: (i) the work counsel has done in identifying or
> investigating potential claims in the action; (ii) counsel's experience in
> handling class actions, other complex litigation, and the types of claims
> asserted in the action; (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class;
>
> (B)     may consider any other matter pertinent to counsel's ability to fairly
> and adequately re[resent the interests of the class.

Fed. R. Civ. P. 23(g)(1)(A)&(B). Upon consideration of the foregoing factors, and for the reasons

set forth in the Court's prior Order (Doc. 44 at 15-16), the Court finds that Class Counsel JRC

Legal, McGuire Law, P.C., Underwood and Riemer, PC, Bock, Hatch, Lewis& Oppenheim, LLC,

Mark K. Wasvary, P.C., Kent Law Offices, and McMorrow Law, P.C. are adequate counsel. Accordingly, the motion to appoint class counsel is **GRANTED**.

### C. **Settlement Administrator**

The parties agreed to mutually select and supervise a Settlement Administrator to administer the Agreement. (Doc. 45-1 at 10). The parties agree the Settlement Administrator may later substitute a different entity, subject to Court approval, to administer the agreement. (Id.). Per the Settlement Agreement, the Settlement Administrator will send direct notice of the Settlement to Settlement Class Members; establish a website and maintain the Settlement website; receive and process claims; distribute settlement awards and costs; among other tasks. (Doc. 45-1 at 15-16). Upon consideration of the foregoing, the unopposed motion to mutually select and supervise the Settlement Administrator is **GRANTED.** Accordingly, the parties are authorized to select and retain a Settlement Administrator to fulfill the duties listed in the Settlement Agreement. (Doc. 45-1 at 15-16).

### D. **Class Notice**

Before final approval of a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individualized notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice must contain information in plain, easily understood language, and should include the nature of the action, the class definition(s). the claims, and the members' rights. Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). The notice requirement has two primary components: content and manner of distribution. Adams v. Southern Farm Bureau Life Insurance Co., 493 F.3d 1276, 1286 (11th Cir. 2007) (citing Twigg v. Sears,

4

65

Roebuck & Co., 153 F.3d 1222, 1227 (11th Cir. 1998) ("we look solely to the language of the notices and the manner of distribution.")).

In the unopposed motion, the parties state they have "agreed to a comprehensive Notice Plan" which "provides for a multi-part Notice Plan designed to reach as many potential Settlement Class Members as possible…estimate[ing] that the Notice Plan will achieve direct contact rate of 90% of potential Settlement Class Members." (Doc. 20 at 32). Under the proposed Notice Plan, the Settlement Class Members will be provided notice by email and by postcard if email addresses are either unavailable or emails are undeliverable. (Doc. 45-1 at 19). In addition to direct notice, a Long Form Notice will be posted on the Settlement Website. (Id. at 20). The website will contain electronic versions of the claim form that can be submitted online or via regular mail, as well as the full Settlement Agreement, a detailed Long Form Notice, important court documents, and answers to frequently asked questions. (Id. at 8, 10, 50, 56).

Accordingly, the Court finds that the proposed Plan for distribution of notice is the best course of action under the circumstances, it is reasonably calculated to provide notice to all members who are identified by GoDaddy in the Cellular Number List as persons or entities to whom text messages were sent or to whom calls were made.

As to the form of the notice, it must "contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average class member." Twigg, 153 F.3d at 1227 (internal quotes omitted). "Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." Id. (internal quotes omitted). Such information includes "the relief available, the steps

necessary to opt out, and the implications of remaining a member of the class." <u>Adams</u>, 493 F.2d at 1286.

The Proposed Short Form Notice includes a detailed description of the proceedings in a manner that would be reasonably understood by the average person. (Doc. 45-1 at 47). It contains a summary of the class action settlement and directs the recipients to the website or to the Settlement Administrator's address for the recipient to send its claim by the requisite date. (<u>Id.</u>). The notice contains a section captioned "What Are My Options" which gives information regarding how to be bound by the settlement as well as what the recipient can do to opt out of the settlement. (<u>Id.</u> at 48). It directs the recipient to the website for a more detailed explanation of how to be excluded from or object to the Settlement. (<u>Id.</u> at 48). Additionally, the notice informs the recipient of her right to appear at the hearing on attorney's fees and tells the recipients she can call a number or visit the website for further information. (<u>Id.</u>).

The proposed long form notice, to be posted on the website, contains a lengthier description of the lawsuit, the settlement, the rights of the potential class members, etc. (Doc. 45-1 at 50-56). The long form notice warns the recipient to "Please read this notice carefully" as it "explains your rights and options and the deadlines to exercise them." (<u>Id.</u> at 50). It discusses the various options—"Submit a Claim Form," "Exclude Yourself," "Object to the Settlement"—and again warns the recipients after informing them of their options "IF YOU DO NOT TIMELY MAKE YOUR OBJECTION YOU WILL BE DEEMED TO HAVE WAIVED ALL OBJECTIONS AND WILL NOT BE ENTITLED TO SPEAK AT THE FINAL APPROVAL HEARING." (<u>Id.</u> at 53). The website also will contain the full Settlement Agreement, important court documents, and answers to frequently asked questions. (<u>Id.</u> at 8, 10, 50, 56).

Accordingly, the Court finds that the email notice, post card notice, and other forms of class notice are reasonable, adequate, and sufficient notice to the class members and meet the requirements of due process.

### E.  <u>Establishment of Dates</u>

On **December 14, 2020** at **2:00 p.m. CST**, a hearing regarding the final approval of the class action settlement shall be held in Courtroom 4B, United States Courthouse, 155 Saint Joseph Street, Mobile, Alabama 36602. Motions in support of final approval shall be submitted on or before **November 3, 2020.**

On or before **July 24, 2020**, any motion for approval of attorney's fees and motion for incentive award shall be filed and objections[1] shall be due by **July 31, 2020**. The motions shall be heard at the final hearing.

Within **fourteen (14)** days of this Order, GoDaddy shall provide the Settlement Administrator with the Contact Information Records and Cellular Number List for the entities or persons to which calls or text messages were sent.

Within **thirty (30)** days of this Order, the Settlement Administrator shall issue notice to the class members by email notice to the members identified by GoDaddy, as set forth in the Notice Plan (Doc. 45-1 at 15). For Settlement Class Members who do not have a valid email address in the Cellular Number List or for whom email notice is not deliverable, Postcard Notice shall be sent. (<u>Id.</u>). The form of notice shall be substantially the same for email and post card notification and shall be in the form as provided to the Court (<u>Id.</u> at 19-20).

---

[1] Pursuant to the Settlement Agreement, GoDaddy.com, LLC will not oppose a request by Plaintiffs for a service award in the amount of five thousand dollars ($5000.00) for each John Bennett, Susan Drazen, John Herrick, will not oppose an attorneys' fee award no more than 30% of the Total Settlement Amount -- plus reimbursement of reasonable, documented litigation costs and expenses -- and agree that the Court will determine the amount of fees and costs class counsel are entitled to recover. (Doc. 45-1 at 26, 50, 54).

Within **thirty (30)** days of this Order, the Settlement Administrator shall launch the Settlement Website. (Id. at 20).

By **August 31, 2020**, the members of the settlement class who wish to be excluded must request exclusion[2] from the settlement class. As provided in the Long-Form Notice available on the Settlement website, the class members must timely send a letter to the Settlement Administrator, which must include the full name, address, telephone number(s), GoDaddy account number(s), and be "personally sighed…under penalty of perjury" with a "statement that indicates [a] desire to be 'excluded from the Settlement Class.'" (Doc. 45-1 at 52).

Any request for exclusion which does not substantially comply with these requirements or which is untimely filed shall be ineffective. Two (2) weeks before the final hearing, the Settlement Administrator shall submit to the Court a list of the individual settlement class members that have timely requested exclusion.

By **August 31, 2020**, members of the Settlement Class who chose to object to any part or all of the Class Settlement Agreement must file their objection with the Court. Also, the class member must mail their objection to class counsel and counsel for GoDaddy postmarked no later than **August 31, 2020**. As provided in the Notice, the objection must be signed by the class member or their attorney and include the class members' full name, current address, telephone number(s), and GoDaddy account number(s). (Doc. 45-1 at 52-53). Also,

> if represented by counsel, the name, bar number, address, and telephone number of your counsel; (3) a signed statement, under penalty of perjury, that you received one or more phone calls or text messages from GoDaddy between November 4, 2014 to December 31, 2016, and that you are a member of the Settlement Class; (4) a statement of all your objections to the Settlement, including your legal and factual basis for each objection; (5) a statement of whether you intend to appear at the Final Approval Hearing, either with or without counsel, and if with counsel, the name of

---

[2] In the Settlement Agreement, the parties agreed that class members shall have forty-five (45) days from the date the Notice is issued opt out of the Agreement. (Doc. 46 at 8). The Court anticipates that the first Notice issue at the latest on July 2, 2020.

your counsel who will attend; (6) the number of times in which you, your counsel, or your counsel's law firm have objected to a class action settlement within the five years preceding the date that you submit your objection, the caption of each case in which you, your counsel, or your counsel's law firm has made such objection, and a copy of any orders related to or ruling upon your, your counsel's, or your counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case; (7) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objections, as well as any exhibits they intend to introduce at the Final Approval Hearing; and (8) any and all agreements related to the objection or the process of objections—whether written or verbal—between you or your counsel and any other person or entity.

(Id. at 53). If the class member wishes to speak at the final hearing, they must file a notice of appearance with the Court and mail it to class counsel and counsel for Defendants no later than **two (2) weeks** before the final hearing. The Court will not consider any objection that is not timely filed or that fails to substantially meet the requirements.

By **October 7, 2020**, members of the settlement class shall submit a valid Claim Form to the Settlement Administrator. (Doc. 46 at 9). It must be completed and signed, and either submitted online at the Settlement Website or by printing out the form and mailing the form postmarked on or before **October 7, 2020**.

## F.  Injunction

Unless and until the settlement is canceled and/or terminated, all proceedings in this Litigation, other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement Agreement and this Order, are hereby **STAYED** and **SUSPENDED** until further order of this Court. In aid of the Court's jurisdiction to implement and enforce the proposed settlement, Plaintiffs and all settlement class members who have not timely excluded themselves from the settlement class, shall be **PRELIMINARILY ENJOINED**, during the period from the entry of the preliminary approval order to the date of the final settlement hearing, from commencing or prosecuting any action asserting any of the claims and causes of action to be

released under the Settlement Agreement, either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located.

If the settlement proposed in the Settlement Agreement and the final Judgment and Order contemplated by the Settlement Agreement do not receive full and final judicial approval in all material respects, or are reversed, vacated, or modified in any material respect, then the Settlement Agreement shall have no force or effect, the parties shall be restored to their respective prior positions, any certification of the settlement class and the Court's preliminary findings in connection therewith shall be vacated, the litigation shall proceed as though the Settlement Class had never been certified and all Defendants shall have the right to oppose the certification of any plaintiff class.

## III.     Conclusion

Based upon the foregoing, it is **ORDERED** that Plaintiff Susan Drazen's motion (Doc. 45) is **GRANTED** as detailed herein. The operative settlement agreement is Doc. 45-1.

**DONE** and **ORDERED** this the **9th** day of **June 2020.**

/s/Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

# TAB 69-1

# Exhibit A

## SECOND AMENDED CLASS ACTION SETTLEMENT AGREEMENT

This Second Amended Joint Stipulation of Class Action Settlement and Release (the "Agreement") is made and entered into this 26th day of May, 2020, by and among (1) Plaintiffs Jason Bennett, Susan Drazen, and John Herrick (collectively "Plaintiffs"), individually and on behalf of the settlement class defined herein ("Settlement Class"), and (2) Defendant GoDaddy.com, LLC ("Defendant"), subject to preliminary and final approval as required by Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs and Defendant are collectively referred to as the "Parties." The Parties hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement, and upon entry by the Court of a Final Order and Judgment, all claims of the Settlement Class against Defendant in the actions styled *Drazen v. GoDaddy.com, LLC*, Case No. 1:19-cv-00563, *Bennett v. GoDaddy.com, LLC*, formerly Case No. 2:16-cv-03908-ROS, now Case No. 1:20-cv-00094, and *Herrick v. GoDaddy.com, LLC*, D. Ariz., Case No. 2:16-cv-00254, *appeal pending* 18-16048 (9th Cir.) shall be settled and compromised upon the terms and conditions contained herein.

## I.    RECITALS

1.    Plaintiff Jason Bennett brought suit against Defendant in the United States District Court for the Southern District of Alabama, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and seeking, *inter alia*, monetary damages. This action, styled *Bennett v. GoDaddy.com, LLC*, was transferred to the United States District Court for the District of Arizona on November 10, 2016, and designated Case No. 2:16-cv-03908. On February 19, 2020, this action was transferred to the United States District Court for the Southern District of Alabama, and given a new case number, Case No. 1:20-cv-00094. On February 21, 2020, this action was consolidated with *Drazen v. GoDaddy.com, LLC*, Case No. 1:19-cv-00563.

2.      Plaintiff Suzan Drazen brought suit against Defendant in the United States District Court for the Southern District of Alabama, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and seeking, *inter alia*, monetary damages.  This action is styled *Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563.

3.      Plaintiff John Herrick brought suit against Defendant in the United States District Court for the District of Arizona, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and seeking, *inter alia*, monetary damages.  This action is styled *Herrick v. GoDaddy.com, LLC*, D. Ariz., Case No. 2:16-cv-00254, *appeal pending* 18-16048 (9th Cir.).

4.      Defendant denies and continues to deny each and every allegation and all charges of wrongdoing or liability of any kind whatsoever that Plaintiffs or members of the Settlement Class presently have asserted in the Actions, or may in the future assert.

5.      Following arm's length negotiations, including mediation before an experienced mediator, the Honorable Wayne R. Anderson (Ret.) of JAMS Chicago, Plaintiff Jason Bennett, Plaintiff Susan Drazen, Defendant, and their respective counsel entered into the Joint Stipulation of Class Action Settlement and Release (the "Original Agreement") in September 2019.   In entering the Original Agreement, the Parties agreed to settle the Actions in their entirety without any admission of liability, with respect to all Released Claims.

6.      In December 2019, the Parties entered into the Amended Joint Stipulation of Class Action Settlement and Release (the "Amended Agreement"), for the sole purpose of formally including Plaintiff John Herrick as a Plaintiff in the settlement of the Actions, and to include his counsel as Class Counsel for the Settlement Class.

7.      On April 27, 2020, pursuant to an order from the Honorable Kristi K. DuBose, the Parties submitted a Joint Statement in *Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563, to modify the definition of the Settlement Class in the Amended Agreement.

8.      On May 14, 2020, the Honorable Kristi K. DuBose ordered the Parties to "file an amended Proposed Settlement Agreement" that "remove[d] Herrick as a Class Representative." The Parties now seek to enter into this Agreement for the sole purpose of removing Herrick as a Class Representative.  The Parties agree that, unless and until this Agreement is fully executed by the Parties and their counsel, the Amended Agreement and all of its terms shall remain in full force and effect.

9.      In entering this Agreement, the Parties agree to settle the Actions in their entirety without any admission of liability, with respect to all Released Claims.  The Parties intend this Agreement to bind Plaintiffs, Defendant, and all members of the Settlement Class who do not timely request to be excluded from the Agreement.

10.      Defendant continues to dispute its liability for the claims alleged in the Actions, and maintains that it complied, at all times, with applicable laws and regulations.  Defendant does not, by this Agreement or otherwise, admit any liability or wrongdoing of any kind.  Despite Defendant's belief that it is not liable for, and has good defenses to, the claims alleged in the Actions, Defendant has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted, or could have been asserted, in the Actions.  Neither this Agreement, nor any negotiation or act performed, or document created in relation to, the Agreement or negotiation or discussion thereof is, or may be deemed to be, or may be used as, an admission of, or evidence of, any wrongdoing or liability.

11.     Plaintiffs and Class Counsel believe that the claims asserted in the Actions have merit, and have examined and considered the benefits to be obtained under the proposed resolution set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action, and any subsequent appeal.  Plaintiffs and Class Counsel fully investigated the facts and law relevant to the merits of the Action.

12.     Plaintiffs and Class Counsel concluded that the proposed resolution set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.  Plaintiffs and Class Counsel have considered that, if the claims asserted are not settled now by voluntary agreement among the parties, future proceedings (including appeals) would be protracted and expensive, would involve highly complex legal and factual issues relating to the continued maintenance of the class, liability, and damages, and would involve substantial uncertainties, delays, and other risks inherent in litigation.  In light of these factors, Plaintiffs and Class Counsel have concluded that it is desirable and in the best interests of Plaintiffs and the members of the Settlement Class to settle the claims asserted in the Actions at this time, on the terms set forth herein, and that the settlement terms confer exceptional benefits upon Settlement Class Members.

**NOW, THEREFORE**, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows:

## II.     DEFINITIONS

13.     "Actions" shall mean, collectively, *Drazen v. GoDaddy.com, LLC*, S.D. Ala. Case No. 1:19-cv-00563, *Bennett v. GoDaddy.com, LLC*, S.D. Ala. Case No. Case No. 1:20-cv-00094,

and *Herrick v. GoDaddy.com, LLC*, D. Ariz., Case No. 2:16-cv-00254, *appeal pending* 18-16048 (9th Cir.).

14.     "Administrative Expenses" shall mean all reasonable costs and expenses associated with the Settlement Administrator, including but not limited to costs in providing notice (including notice under 28 U.S.C. § 1715), communicating with Settlement Class Members, and disbursing payments to the Settlement Class Members.

15.     "Agreement" shall mean this Second Amended Joint Stipulation of Settlement and Release, including each and every exhibit attached hereto.

16.     "Amended Agreement" shall mean the Amended Joint Stipulation of Class Action Settlement and Release executed by the Parties in December 2019.

17.     "Approved Claims" shall mean complete and timely claims, submitted by Settlement Class Members, that have been approved for payment by the Settlement Administrator.

18.     "CAFA Notice" shall mean the notice requirements imposed by 28 U.S.C. § 1715(b).

19.     "Cash Award" shall mean a thirty-five U.S. Dollar ($35.00) payment to a Settlement Class Member who elects to receive the Cash Award, subject to *pro rata* reduction as set forth in Paragraph 74.

20.     "Cellular Number List" shall mean the list of unique cellular phone numbers that received a call or text message from Defendant during the Class Period.

21.     "Claim" shall mean a written submission made to the Settlement Administrator by a Settlement Class Member for the purpose of participating as a Claimant in this Action.

22.     "Claimant" shall mean a Settlement Class Member who timely submits a Claim in accordance with the terms of the Agreement.

23.     "Claims Deadline" shall mean the last day that Settlement Class Members may submit a Claim to the Settlement Administrator.  The Claims Deadline shall be ninety (90) days after the date the Notice is emailed to Settlement Class Members.  The Claims Deadline will be specified in the Notice.

24.     "Class Counsel" shall mean JRC Legal, McGuire Law, P.C., Underwood & Riemer, PC, Bock, Hatch, Lewis & Oppenheim, LLC, Mark K. Wasvary, P.C., Kent Law Offices, and McMorrow Law, P.C., collectively.

25.     "Class Member ID" shall mean the unique alphanumeric number assigned to each class member, as set forth in the Notice sent to Settlement Class Members.

26.      "Class Period" shall mean the period from November 4, 2014 through December 31, 2016.

27.     "Contact Information Records" shall mean the list of names, email addresses, physical addresses, and phone numbers associated with numbers on the Cellular Number List.  The numbers on the Cellular Number List will not necessarily be coextensive with the phone numbers on the Contact Information Records.

28.     "Court" shall mean any judge with jurisdiction over the pending Actions.

29.     "Defense Counsel" shall mean Cozen O'Connor PC.

30.     "Effective Date" shall mean the fifth business day after the last of the following events have occurred:

        a.     The Court has entered without material change the Final Approval Order; and

        b.     The time for seeking rehearing or appellate or other review has expired, and no appeal or petition for rehearing or review has been timely filed; or the

Agreement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or *certiorari* could be taken has finally expired and relief from a failure to file same is not available.

31.    "Final Approval" shall mean the date the Court enters an order and judgment granting final approval of the Agreement and determining the amount of fees, costs, and expenses awarded to Class Counsel and the amount of a service award, if any, to Plaintiffs.

32.    "Final Approval Order" shall mean the order and final judgment that the Court enters granting final approval of the Agreement and determining the amount of fees, costs, and expenses awarded to Class Counsel and the amount of a service award, if any, to Plaintiffs.  If the Court issues separate orders addressing these matters, Final Approval Order shall be defined to include all such orders.

33.    "Notice" shall mean the notice of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Agreement. The forms of the proposed Short Form Notice, which will be sent to Settlement Class Members via email (and then via postcard for any email that is not deliverable), and Long Form Notice, which will be posted on the Settlement Website, agreed upon by Class Counsel and Defense Counsel are attached hereto respectively as Exhibits 1 and 2.

34.    "Notice Program" shall mean the methods provided for in Section IX of this Agreement for giving the Notice.

35.    "Opt-Out Deadline" shall mean the deadline by which Settlement Class Members can opt-out of the Agreement, and shall be forty-five (45) days after the date the Notice is emailed to Settlement Class Members. The Opt-Out Deadline will be specified in the Notice.

36.    "Original Agreement" shall mean the Joint Stipulation of Class Action Settlement and Release executed by Plaintiff Jason Bennett, Plaintiff Susan Drazen, Defendant, and their respective counsel in September 2019.

37.    "Preliminary Approval" shall mean the date the Court enters, without material change, an order preliminarily approving the Agreement in the form jointly agreed upon by the Parties.

38.    "Released Claims" shall mean any and all claims against Defendant whatsoever arising out of, related to, or connected with sending or placing to a cellular telephone, or causing someone to send or place, or assisting someone with placing or sending, a phone call or text message or SMS message related to Defendant without consent, including, but not limited to, claims brought under the TCPA, during the Class Period. "Released Claims" shall include all claims that were or could have been asserted in the Actions, regardless of whether such claims are known or unknown, filed or unfiled, asserted or as yet unasserted, existing or contingent.

39.    "Released Parties" shall mean, jointly and severally, and individually and collectively, Defendant and its past and present parents, predecessors, successors, affiliates, holding companies, subsidiaries, employees, agents, attorneys, board members, assigns, partners, contractors, joint venturers, or third-party agents with which it has or had contracts, and/or their affiliates.

40.    "Releasing Parties" shall mean Plaintiffs and all Settlement Class Members who do not timely and properly opt-out of the Agreement, and each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, representatives and all those who claim through them or on their behalf.

41.     "Settlement Administrator" shall mean the entity mutually selected and supervised by the Parties to administer the Agreement.  The Parties may, by agreement, later substitute a different organization as Settlement Administrator, subject to approval by the Court if the Court has previously approved the Agreement preliminarily or finally.  In the absence of agreement, either party may move the Court to substitute a different organization as Settlement Administrator upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent person or entity.

42.     "Settlement Awards" shall mean the Cash Awards and Voucher Awards.

43.     "Settlement Class" is defined in Section III of this Agreement.

44.     "Settlement Class Member" shall mean those persons or entities who are members of the Settlement Class, as set forth in the Settlement Class definition, and who do not timely and properly opt-out of the Agreement.

45.     "Settlement Costs" shall mean all costs incurred incident to the Agreement, including but not limited to (i) an award of fees, costs, and expenses to Class Counsel; (ii) any service award to Plaintiffs; and (iii) costs of administration of the Agreement, including without limitation the Administrative Expenses.

46.     "Settlement Website" shall mean a website established by the Settlement Administrator, which shall contain information about the Agreement and all Court documents related to the Agreement, as further described herein.  The URL for the website will be agreed upon, in writing, by Class Counsel and Defense Counsel.

47.     "Total Settlement Amount" shall mean the maximum amount made available by Defendant for settlement of Approved Claims and Settlement Costs, as set forth in Paragraph 50.

9

48.     "Voucher Award" shall mean a fully transferable credit for services available from Defendant in the amount of one hundred fifty U.S. Dollars ($150.00), subject to *pro rata* reduction as set forth in Paragraph 74, redeemable for Defendant's products and services.

## III.   THE SETTLEMENT CLASS

49.     For settlement purposes only, the Parties agree to ask the Court to certify the following "Settlement Class" under Rules 23(b)(3) and (e) of the Federal Rules of Civil Procedure:

> a.     The Settlement Class consists of all persons within the United States to whom, during the Class Period, Defendant placed a voice or text message call to their cellular telephone pursuant to an outbound campaign facilitated by the web-based software application used by 3Seventy, Inc., or the software programs and platforms that comprise the Cisco Unified Communications Manager.

> b.     Excluded from the Settlement Class are (1) the trial judges presiding over the Actions; (2) Defendant, as well as any parent, subsidiary, affiliate or control person of Defendant, and the officers, directors, agents, servants or employees of Defendant; (3) the immediate family of any such person(s); (4) any Settlement Class Member who timely and properly opts out of the settlement; and (5) Class Counsel, their employees, and their immediate family.

## IV.   BENEFIT TO THE SETTLEMENT CLASS

50.     In exchange for the mutual promises and covenants in this Agreement, including, without limitation, the releases and the dismissals of the Actions upon Final Approval, Defendant agrees to make a total of up to thirty-five million U.S. Dollars ($35,000,000.00) (the "Total Settlement Amount") available for settlement of Approved Claims and Settlement Costs.  In no event shall Defendant be obligated to pay more than the Total Settlement Amount.

51.     Settlement Awards will be made to each Settlement Class Member who submits an Approved Claim.  Payment of Settlement Awards will be made based on the criteria set forth in, and subject to the terms of, Section XII of this Agreement.  Each Settlement Class Member will be entitled to make one claim to receive either a Cash Award or Voucher Award, regardless of (a) the number of calls or text messages the Settlement Class Member received on their cellular phone from Defendant, or from someone sending such messages on behalf of Defendant, during the Class Period, or (b) the number of cellular phone numbers the Settlement Class Member used during the Class Period.

      a.     <u>Amount of Cash Award</u>.  Each Settlement Class Member who submits an Approved Claim and elects to receive a Cash Award will receive a check in the amount of thirty-five U.S. Dollars ($35.00), subject to *pro rata* reduction as set forth in Paragraph 74.  Such checks will be negotiable for one hundred eighty (180) days. Checks that are not cashed within the negotiable period will not result in unclaimed property under state law.

      b.     <u>Amount of Voucher Award</u>.  Each Settlement Class Member who submits an Approved Claim and elects to receive a Voucher Award will receive a voucher in the amount of one hundred fifty U.S. Dollars ($150.00), subject to *pro rata* reduction as set forth in Paragraph 74.  The Voucher Award will be redeemable online at Defendant's website (www.godaddy.com) or by contacting Defendant's Sales and Support Team at the phone number listed on Defendant's website.  The Voucher Award shall be freely transferrable, will be good on all products and services offered by Defendant, and will require no minimum purchase.  Any unused balance shall be forfeited one (1) year following the issuance of the Voucher

Award.  In no event will any unused balance constitute abandoned or unclaimed property.

## V.   SETTLEMENT OF ACTION AND ALL CLAIMS AS TO RELEASED PARTIES

52.   Final approval of this Agreement will settle and resolve with finality, on behalf of the Released Parties, the Actions, and the Released Claims and any other claims that have been brought, could have been brought, or could be brought now or at any time in the future against the Released Parties by the Releasing Parties in the Actions or any other proceeding arising out of, in any manner related to, or connected in any way with the Released Claims.

## VI.   NOTICE OF SETTLEMENT

53.   Pursuant to the Original Agreement, on September 23, 2019, Class Counsel filed a stipulated Notice of Settlement in *Bennett v. GoDaddy.com, LLC*, Case No. 2:16-cv-03908-ROS, and requested that said matter be stayed pending the entry of a Final Approval Order in *Drazen v. GoDaddy.com, LLC*, Case No 19-cv-00563.  Class Counsel subsequently filed a stipulated Notice of Settlement in *Drazen v. GoDaddy.com, LLC*, Case No 19-cv-00563 on September 30, 2019.

54.   Pursuant to the Amended Agreement, on December 17, 2019, Class Counsel and counsel for Defendant filed a Joint Motion to Stay Appellate Proceeding Pending Settlement with the appellate court in *Herrick v. GoDaddy.com, LLC*, D. Ariz., Case No. 2:16-cv-00254, *appeal pending* 18-16048 (9th Cir.), and requested that said matter be stayed pending the entry of a Final Approval Order.  The Parties, following the Effective Date in the *Drazen* action, will file a stipulated notice of dismissal with prejudice in *Bennett v. GoDaddy.com, LLC*, Case No. 1:19-cv-00094, and a stipulated motion to voluntarily dismiss the appeal in *Herrick v. GoDaddy.com, LLC*, D. Ariz., Case No. 2:16-cv-00254, *appeal pending* 18-16048 (9th Cir.).

## VII.   PRELIMINARY SETTLEMENT APPROVAL

55.     Within thirty (30) days of the execution of this Agreement by Plaintiffs, Class Counsel shall move the Court for an Order granting Preliminary Approval of this Agreement ("Preliminary Approval Order").   In advance of this deadline, Class Counsel will prepare the motion and proposed Preliminary Approval Order, and provide Defendant with reasonable notice of, and opportunity to review and comment on, both submissions.

56.     The proposed Preliminary Approval Order that will be attached to the motion shall be in a form agreed upon by Class Counsel and Defendant.  The motion for Preliminary Approval shall request that the Court: (1) approve the terms of the Agreement as fair, adequate and reasonable; (2) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (3) appoint Susan Drazen and Jason Bennett as class representatives, and JRC Legal, McGuire Law, P.C., Underwood & Riemer, PC, Bock, Hatch, Lewis & Oppenheim, LLC, Mark K. Wasvary, P.C., Kent Law Offices, and McMorrow Law, P.C., collectively, as Class Counsel; (4) approve the Notice Program set forth herein and the form and content of the Notice; (5) approve the Claims process; (6) approve the procedures for Settlement Class Members to opt-out of the Settlement Class or object to the Agreement; (7) stay the Actions pending Final Approval of the Agreement; and (8) schedule a Final Approval hearing for a time and date mutually convenient for the Court, Class Counsel and counsel for Defendant, at which the Court will (i) conduct an inquiry into the fairness of the Agreement, (ii) determine whether it was made in good faith, and (iii) determine whether to approve the Agreement and Class Counsel's application for attorneys' fees, costs and expenses and a service award to the Plaintiffs ("Final Approval Hearing").

## VIII.   SETTLEMENT ADMINISTRATOR

13

57.     The Settlement Administrator shall administer various aspects of the Agreement as described herein and perform such other functions as are specified elsewhere in this Agreement, including, but not limited to:

      **a.**     Obtaining from Class Counsel and Defense Counsel the Contact Information Records and Cellular Number List;

      **b.**     Determining associated email and physical addresses that might exist for any Settlement Class Member using the Contact Information Records and Cellular Number List, and verifying and updating the addresses received through the National Change of Address database;

      **c.**     Providing Notice by email (to the extent reasonably ascertainable);

      **d.**     Providing Notice by postcard (to the extent email addresses are not available or emails are undeliverable);

      **e.**     Providing Long Form Notice;

      **f.**     Providing Class Counsel and Defense Counsel with the Class Member ID and associated number on the Cellular Number List for each Settlement Class Member within five (5) days of when the Settlement Administrator begins to provide Notice;

      **g.**     Establishing and maintaining the Settlement Website;

      **h.**     Establishing and maintaining a post office box for requests to opt-out of the Settlement Class;

      **i.**     Receiving, evaluating, and processing Claims;

      **j.**     Advising Settlement Class Members if their Claims are deficient;

**k.**     Providing weekly reports about the Notice Program, and the number and identity of opt-outs (if any), to Class Counsel and Defense Counsel;

**l.**     Establishing and maintaining an automated toll-free telephone line for Settlement Class Members to call with settlement-related inquiries;

**m.**     Responding to any Settlement Class Member inquiries;

**n.**     Processing all requests to opt-out of the Settlement Class;

**o.**     In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that identifies each Settlement Class Member who timely and properly opted out of the Settlement Class;

**p.**     Distributing Settlement Awards and Settlement Costs; and

**q.**     Providing CAFA Notice to the appropriate State and Federal officials as required by 28 U.S.C. § 1715.

58.     All Administrative Expenses shall be included in and paid from the Total Settlement Amount.  The Parties agree that the Claims Administrator will maintain detailed records of the amounts spent on the Class Notice and administration of the Agreement, and will provide that information to Class Counsel and Defense Counsel on a monthly basis.

## IX.     NOTICE TO THE SETTLEMENT CLASS

### A.     Contents of Notice

59.     Upon Preliminary Approval of the Agreement, at the direction of Class Counsel and Defendant, the Settlement Administrator shall implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order. The Notice shall include, among other information: a description of the material terms of the Agreement, including instructions on how to submit a Claim; a date by which Settlement Class Members may

opt-out of the Settlement Class; a date by which Settlement Class Members may object to the Agreement; the date upon which the Final Approval Hearing is scheduled to occur; the address of the Settlement Website at which Settlement Class Members may access the form to submit a Claim, this Agreement, and other related documents and information; and a unique numerical identifier for each Settlement Class Member.  Class Counsel and Defendant shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon the dates and deadlines set by the Court in the Preliminary Approval Order.

60.   The Notice shall include a procedure for Settlement Class Members to opt-out of the Settlement Class.  A Settlement Class Member may opt-out of the Settlement Class at any time prior to the Opt-Out Deadline. Any Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement.

61.   The Notice shall include a procedure for Settlement Class Members to object to the Agreement and/or to Class Counsel's application for attorneys' fees, costs and expenses and/or a service award to Plaintiffs.  Objections to the Agreement, to the application for fees, costs, expenses and/or for the service award must be mailed to the Clerk of the Court, Class Counsel, and Defendant.  For an objection to be considered by the Court, the objection must be submitted no later than the Opt-Out Deadline, as specified in the Notice.  If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope, mailed first-class postage prepaid and addressed in accordance with the instructions.  If submitted by private courier (e.g., FedEx), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

62.   The Parties will include in the motion for Preliminary Approval and draft order the following recommendations to the Court for the requirements for any objection to be valid and

considered by the Court.  Written objections must be verified by a declaration under the penalty of perjury or a sworn affidavit and must include:

    **a.**    The names of the Actions;

    **b.**    The objector's full name, address and telephone number;

    **c.**    An explanation of the basis upon which the objector claims to be a Settlement Class Member;

    **d.**    All grounds for the objection, accompanied by any legal support for the objection known to the objector or the objector's counsel;

    **e.**    The number of times in which the objector has objected to a class action settlement within the five (5) years preceding the date the objector files the objection, the caption of each case in which the objector made such an objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

    **f.**    The identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Agreement or fee application;

    **g.**    The identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

    **h.**    A list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and

    **i.**    The objector's signature (an attorney's signature is not sufficient).

63.     Settlement Class Members, or their attorneys, intending to make an appearance at the Final Approval Hearing, must also deliver to Class Counsel and Defense Counsel, and file with the Court, a Notice of Intent to Appear no later than fifteen (15) days after the Opt-Out Deadline. Only Settlement Class Members who file and timely serve a Notice of Intent to Appear may participate in the Final Approval Hearing.

**B.     The Notice Program**

64.     The Settlement Administrator shall implement the following Notice Program:

a.      First, the Parties will provide the Settlement Administrator with Contact Information Records for every Settlement Class Member, as well as the Cellular Number List.

b.      Second, for all Settlement Class Members with whom the Contact Information Records associate an email address, the Settlement Administrator shall send an email containing the Notice to all such email addresses.  This process shall be completed thirty (30) days after Preliminary Approval or fifteen (15) days after the Settlement Administrator receives the Contact Information Records, whichever is later.  The Parties will provide the Settlement Administrator with the Contact Information Records and Cellular Number List within fifteen (15) days after Preliminary Approval.

c.      Third, for all Settlement Class Members with whom the Contact Information Records do not associate an email address, and to the extent that any email notice sent to the Settlement Class Members identified in the prior paragraph cannot be delivered, the Settlement Administrator shall, to the extent reasonably possible, mail to the Settlement Class Member a postcard containing the Notice.

18

90

Before sending the postcard, the Settlement Administrator shall run the Settlement Class Member's address (as indicated on the Contact Information Records) through the National Change of Address Database and update the Settlement Class Member's address, if necessary. This process shall be completed no later than sixty (60) days after Preliminary Approval, or thirty (30) days after the Settlement Administrator receives the Contact Information Records and Cellular Number List, whichever is later.

d.      Fourth, in addition to the above, the Settlement Administrator shall create and maintain the Settlement Website, which will contain the Long Form Notice, the Complaint, and Motion for Fee Award and/or Motion for Final Approval (if filed concurrently, within three (3) days of filing). The Settlement Website will be active until 45 calendar days after the entry of the Final Approval Order.

e.      The Settlement Administrator shall provide Class Counsel and Defense Counsel with an affidavit that confirms that the Notice Program was completed in a timely manner. Class Counsel shall file that affidavit with the Court as an exhibit to and/or in conjunction with Plaintiff's motion for Final Approval of the Agreement.

65.      Within the parameters set forth in this Agreement, further specific details of the Notice Program shall be subject to the agreement of Class Counsel and Defense Counsel.

## X.      FINAL APPROVAL ORDER

66.      The Plaintiffs' Motion for Preliminary Approval of the Agreement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur. Class Counsel shall file their Motion for Final Approval of the Agreement, and application for attorneys'

fees, costs and expenses and for a service award for Plaintiffs, no later than thirty (30) days prior to the Final Approval Hearing.  At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Agreement, and on Class Counsel's application for attorneys' fees, costs, and expenses and for a service award for Plaintiffs.  In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Agreement or to the fee, cost, expense or service award application, provided the objectors submitted timely objections that meet all of the requirements listed in the Preliminary Approval Order and Notice.

67.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order, including whether to approve Class Counsel's request for attorneys' fees, costs, expenses, and service awards.  The proposed Final Approval Order shall be in a form agreed upon by Class Counsel and Defense Counsel.  Such proposed Final Approval Order shall, among other things:

      a.       Determine that the Agreement is fair, adequate and reasonable;

      b.       Certify the Settlement Class for settlement purposes only;

      c.       Determine that the Notice satisfies due process requirements;

      d.       Enter judgment dismissing the Actions with prejudice and without costs, except as set forth in this Agreement;

      e.       Bar and enjoin all Releasing Parties from asserting any of the Released Claims, including during any appeal from the Final Approval Order;

      f.       Release Defendant and the Released Parties from the Released Claims; and

g.      Reserve the Court's continuing and exclusive jurisdiction over the Parties

to this Agreement for the purpose of administering, supervising, construing and

enforcing this Agreement in accordance with its terms.

## XI.   CLAIMS PROCESS

68.     Each member of the Settlement Class who does not timely opt-out from the

Agreement shall be a Settlement Class Member and entitled to make a Claim.  To make a Claim,

Settlement Class Members must submit by the Claims Deadline a valid and timely Claim form, a

copy of which is attached hereto as Exhibit 3, which will be accessible through the Settlement

Website.  The Claim form shall contain the Settlement Class Member's: (1) name; (2) current

address; (3) cellular telephone number(s) at which the individual received a call or text from

Defendant; (4) a current contact telephone number; (5) a statement identifying whether each

cellular telephone number at which the individual received a call or text from Defendant was a

residential or business line; (6) a statement identifying whether the claimant was the primary user

of each phone number that received a call or text message; (7) the unique numerical identifier

included on the Notice; and (8) a signed verification swearing to the truth of the information

provided under penalty of perjury.

69.     A Claim that does not meet the requirements set forth in this Agreement and in the

Claim instructions shall be rejected. Where a good faith basis exists, the Settlement Administrator

may reject a Settlement Class Member's Claim for, among other reasons, the following:

a.      Failure to fully complete and/or sign the Claim;

b.      The cellular telephone number provided in the Claim does not match any number

on the Cellular Number List;

21

93

c.      The unique numerical identifier listed on the Claim does not match the number that was provided with the notice;

d.      The Claim is illegible;

e.      The person submitting the Claim is not a Settlement Class Member;

f.      The Claim is fraudulent;

g.      The Claim is duplicative of another Claim;

h.      The person submitting the Claim requests that payment be made to a person or entity other than the Settlement Class Member for whom the Claim is submitted;

i.      Failure to submit a Claim by the Claims Deadline; and/or

j.      The Claim otherwise does not meet the requirements of this Agreement.

70.      After rejecting a Claim, the Settlement Administrator will attempt to notify the Settlement Class Member that his or her Claim was rejected, and state the reasons the Claim was rejected. Any Settlement Class Member who submits an incomplete, inaccurate or otherwise deficient Claim shall be permitted to re-submit the Claim by the later of the Claims Deadline or fifteen (15) days after the Settlement Administrator first attempts to notify the Settlement Class Member of the rejection of the Claim.

71.      Class Counsel and Defense Counsel shall have the right to inspect each Claim and the supporting documentation received by the Settlement Administrator at any time upon reasonable notice.  In addition, the Settlement Administrator shall provide periodic updates to Class Counsel and Defense Counsel regarding Claim submissions beginning within seven (7) business days after the commencement of the Notice Program, continuing on a monthly basis thereafter.

72.     No person shall have any claim against Defendant, Defense Counsel, Plaintiffs, Class Counsel, the Settlement Class, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Agreement.

73.     Any Settlement Class Member who fails to submit a Claim by the Claims Deadline, and who does not opt-out of the Agreement, shall be forever barred from receiving any benefit pursuant to this Agreement, but shall in all other respects be bound by all of the terms of this Agreement including the terms of the Final Approval Order to be entered in the Actions and the releases provided for herein, and will be barred from bringing any action in any forum (state, federal, or arbitral) against any of the Released Parties concerning any of the Released Claims.

## XII.    DISTRIBUTION OF SETTLEMENT AWARD

74.     All Approved Claims shall receive payment of the Settlement Award.  To the extent that the total dollar amount of the Approved Claims, plus the Settlement Costs as those are determined and defined herein, exceeds the Total Settlement Amount, each individual Settlement Award will be reduced on a *pro rata* basis in order to prevent such an occurrence.  In making any *pro rata* reduction, the Settlement Administrator will attempt to adjust the Cash Award and the Voucher Award in the amounts necessary to maintain an equal ratio between the Cash Award and Voucher Award values.

75.     No more than 14 days after the Effective Date, the Settlement Administrator will calculate the total of all Approved Claims, adjusted *pro rata* as necessary, and Settlement Costs, and inform the Parties of the resulting amount.  Within thirty (30) days thereafter, Defendant will deposit an amount equal to (a) the value of all Approved Claims electing a Cash Award, and (b) the Settlement Costs, in an account to be maintained and distributed by the Settlement Administrator (the "Settlement Account").    Defendant will also provide the Settlement

Administrator with the requisite number of vouchers containing redemption codes to satisfy the number of Approved Claims electing a Voucher Award.

76.     The Settlement Administrator shall distribute the Settlement Account in the following manner:

        **a.**     Within fourteen (14) days after funds are deposited into the Settlement Account, the Settlement Administrator shall distribute the approved service award, if any, as set forth in the Final Approval Order, to Plaintiffs;

        **b.**     Within fourteen (14) days after funds are deposited into the Settlement Account, the Settlement Administrator shall distribute the approved fees, costs, and expenses, as set forth in the Final Approval Order, to Class Counsel;

        **c.**     Within one hundred twenty (120) days after funds are deposited into the Settlement Account and vouchers containing redemption codes are provided by Defendant, the Settlement Administrator shall distribute Settlement Awards via U.S. mail to the addresses associated with the Approved Claims in the form of either (a) checks made payable to the Settlement Class Members or (b) vouchers containing a redemption code, as applicable.  If any Settlement Award payments or vouchers are returned as undeliverable, the Settlement Administrator shall attempt to verify the accuracy of the mailing address for that Settlement Class Member against the information provided in the Claim, and attempt a second mailing if appropriate.  No further efforts need be taken by the Settlement Administrator to resend the check or voucher.

        **d.**     Any checks that are not deposited and cleared within one hundred eighty (180) days, and any vouchers that are returned to the Settlement Administrator,

shall be null and void and the associated Settlement Class Member will become ineligible to receive a Settlement Award. Defendant shall have no further obligation to make any payment pursuant to this Agreement or otherwise to any such Settlement Class Member. All unpaid funds from uncleared checks and all returned vouchers shall be returned to Defendant, and Defendant shall have no obligation to pay any further amount.

## XIII.  ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

77.     Class Counsel will request attorneys' fees of no more than thirty percent (30%) of the Total Settlement Amount plus reimbursement of reasonable, documented litigation costs and expenses. Defendant agrees not to oppose a request that satisfies these requirements. The amount of fees, costs and expenses awarded to Class Counsel will be at the discretion of the Court. The Parties agree that the Court's failure to approve, in whole or in part, any award for fees or cost and expenses shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination of the Agreement.

78.     Class Counsel will ask the Court to approve a service award in the amount of five thousand dollars ($5,000.00) for each Plaintiff. Defendant agrees not to oppose this request. The amount of any service award to Plaintiffs will be at the discretion of the Court. The Parties agree that the Court's failure to approve, in whole or in part, any service award shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination of the Agreement.

## XIV.  RELEASE AND COVENANT NOT TO SUE

79.     Upon the Effective Date, the Releasing Parties shall automatically be deemed to have fully and irrevocably released and forever discharged Defendant and the Released Parties from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs,

25

attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Actions, or the conduct, omissions, duties or matters at any time from the beginning of the Class Period through the end of the Class Period that were or could have been claimed, raised, or alleged in the Actions.

80.     The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever.

81.     Neither the Agreement, nor any act performed or document executed pursuant to or in furtherance of the Agreement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class Members, or any wrongdoing or liability on the part of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission on the part of any of the Released Parties, in the Actions, or in any proceeding in any court, administrative agency or other tribunal.

82.     In addition, with respect to the subject matter of this Actions, by operation of the entry of the Final Approval Order, Plaintiffs and each Settlement Class Member, and each of their respective successors, assigns, legatees, heirs, and personal representatives, expressly waive any and all rights or benefits they may now have, or in the future may have, under any law relating to

the releases of unknown claims, including, without limitation, Section 1542 of the California Civil Code, which provides:

> A General Release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

By operation of the entry of the Final Approval Order, Plaintiffs and each Settlement Class Member, shall be deemed to have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any foreign country, and any and all principles of common law that are similar, comparable, or equivalent in substance or intent to Section 1542 of the California Civil Code.

83.    To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

## XV.    TERMINATION

84.    This Agreement may be terminated by either Class Counsel or Defendant by serving on counsel for the opposing party written notice of termination within fourteen (14) days (or such longer time as may be agreed in writing between Class Counsel and Defendant) after any of the following occurrences:

> a.    The Court fails to preliminarily approve the Agreement on any ground other than the approval of the attorneys' fees, costs, and expenses payable to Class Counsel or a service award to Plaintiffs;

b.      The Court fails to enter the Final Approval Order on any ground other than the approval of the attorneys' fees, costs, and expenses payable to Class Counsel or a service award to Plaintiffs;

c.      The Court rejects, materially modifies, materially amends or changes the Agreement on any basis other than the approval of the attorneys' fees, costs, and expenses payable to Class Counsel or a service award to Plaintiffs; an appellate Court vacates or reverses the Final Approval Order on any basis other than the approval of the attorney's fees, costs, and expenses payable to Class Counsel or a service award to Plaintiffs;

d.      The Effective Date does not occur; or

e.      More than one thousand five hundred (1500) Settlement Class Members opt-out of the Agreement.

85.     The Parties expressly agree that the denial of a request to stay any proceedings impacted by this Agreement, including, but not limited to, the Actions, shall not be grounds for termination of the Agreement.

86.     In the event of a termination, this Agreement shall be considered null and void, and all of Plaintiffs', Class Counsel's, and Defendant's obligations under the Agreement shall cease to be of any force and effect. In the event of such a termination, all of the Parties' respective pre-Agreement rights, claims and defenses will be retained and preserved, and the Parties shall return to the status *quo ante* in the Actions as if the Parties had not entered into this Agreement.

## XVI.   WAIVER OF APPEALS

87.     The Parties agree to waive all appeals from the Final Approval Order, unless the Court materially modifies the Agreement, including but not limited to any modification of the

Total Settlement Amount; provided, however, that Plaintiffs may appeal, solely at their own expense, any reduction in the amount requested of attorneys' fees, costs, and expenses to Class Counsel or a service award to Plaintiffs. Any reduction in the amount requested of attorneys' fees, costs, and expenses to Class Counsel or a service award to Plaintiffs will not, however, constitute a material modification of the Agreement, and will not be grounds to void the Agreement.

## XVII.  COMMUNICATIONS BY CLASS COUNSEL

88.     Class Counsel agrees that they will not take steps to publicize the Agreement, issue any press releases, or initiate any contact with the media or any verdict/settlement publicist or database about this case and/or the fact, amount, or terms of the Agreement. Class Counsel also agrees not to post the terms of the Agreement on their respective firm websites or any social media site. If Class Counsel receives an inquiry about the Agreement from the media, they may respond only that the matter has been resolved. Notwithstanding the foregoing, when contacted by Settlement Class Members regarding the Agreement, Class Counsel may explain to such Settlement Class Members that the Actions have been settled, and how to obtain settlement benefits. Additionally, notwithstanding the foregoing, Class Counsel may include this Agreement in any court filings in the future. This Section shall not be construed to limit or impede the notice requirements of Section IX herein, nor shall this Section be construed to prevent Class Counsel from notifying or explaining to potential Settlement Class Members or others that this case has settled, the merits of such settlement and how to obtain settlement benefits.

## XVIII. MISCELLANEOUS PROVISIONS

89.     <u>Recitals</u>. The Parties agree that the recitals are contractual in nature and form a material part of this Agreement.

90.     <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

91.     <u>Cooperation of Parties</u>. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek court approval, uphold court approval, and do all things reasonably necessary to complete and effectuate this Agreement.  This obligation of the Parties to support and complete the Agreement shall remain in full force and effect regardless of events that may occur.

92.     <u>Dispute Resolution and Obligation to Meet and Confer</u>.  Any dispute between the Parties concerning the interpretation or implementation of this Agreement will be resolved by the Court.  Prior to bringing any such dispute to the Court, counsel for the Parties will confer in good faith to resolve the dispute.  If the parties are unable to resolve the dispute themselves, the dispute will be submitted to Hon. Wayne R. Anderson (Ret.) of JAMS Chicago for mediation before being submitted to the Court, unless the Parties agree otherwise.

93.     <u>Amended Agreement Unaffected Until Execution</u>.  The Parties agree that, unless and until this Agreement is fully executed by the Parties and their counsel, the Amended Agreement and all of its terms shall remain in full force and effect.

94.     <u>Integration</u>. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

95.     <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

96.   <u>Exhibits</u>.  Any exhibits to this Agreement are hereby incorporated herein and made a part of this Agreement.

97.   <u>Governing Law</u>. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the State of Arizona, without regard to the principles thereof regarding choice of law.

98.   <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement.

99.   <u>Modification and Amendment</u>.  This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Defense Counsel and, if the Agreement has been approved preliminarily by the Court, approved by the Court.

100.   <u>No Waiver</u>.  The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

101.   <u>No Prior Assignments</u>.  The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Agreement.

102.   <u>Rights of Released Parties</u>.  Nothing express or implied in this Agreement is intended or shall be construed to confer upon or give any person or entity other than the Parties,

31

Released Parties, and Settlement Class Members any right or remedy under or by reason of this Agreement.  Each of the Released Parties is an intended third party beneficiary of this Agreement with respect to the Released Claims and shall have the right and power to enforce the release of the Released Claims in their favor against all Releasing Parties.

103.  <u>Authority</u>.  Class Counsel (for the Plaintiffs and the Settlement Class Members), and Defense Counsel, represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation or entity included within the definitions of Plaintiffs and Defendant to all terms of this Agreement.  Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

104.  <u>Agreement Mutually Prepared</u>.   Neither Defendant nor Plaintiffs shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

105.  <u>Independent Investigation and Decision to Settle</u>.  The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with these Actions; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Actions as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement.  It is the Parties' intention to resolve their disputes in connection with these Actions pursuant to the terms of this Agreement and thus, in furtherance of their intention, the Agreement shall remain in full force and effect notwithstanding

the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in fact or law, subsequently occurring or otherwise.

106.   <u>Receipt of Advice of Counsel</u>.  Each Party acknowledges, agrees, and specifically warrants that he, she or it has fully read this Agreement, received independent legal advice with respect to the advisability of entering into this Agreement and the legal effects of this Agreement, and fully understands the effect of this Agreement.

107.   <u>Return of Documents</u>.  The Parties will return or destroy all copies of discovery and settlement/mediation materials obtained in this litigation from Defendant or third parties within thirty (30) days of the Effective Date.

108.   <u>Days</u>.  All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified.

109.   <u>Stay Pending Court Approval</u>.  Class Counsel and Defense Counsel agree to stay all proceedings, other than those proceedings necessary to carry out or enforce the terms and conditions of the Agreement, until the Effective Date.  If, despite the Parties' best efforts, this Agreement shall fail to become effective, the parties will return to the status *quo ante* of these Actions as if the Parties had not entered into this Agreement.  Class Counsel further agree to use their best efforts to seek the stay or dismissal of any proceeding other than the Actions, whether currently pending or hereafter filed, that alleges a TCPA violation resolved by this Agreement, whether brought by a plaintiff and/or on behalf of a person or entity who would be a Settlement Class Member, and to oppose entry of any interim or final relief in favor of, any Settlement Class Member in any other proceedings against Defendant which challenges the Agreement.

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Joint Stipulation of Settlement and Release as of the date set forth below.

**GoDaddy.com, LLC**

DocuSigned by:

*Nima Kelly*

0A94934D6F574B2...

(Signature)

Nima Kelly
_____
(Print Name)

Chief Legal Officer, EVP, Corporate Secretary, Corporate
_____
(Title)

27-May-2020
_____
(Date)

**Jason Bennett**

_____
(Signature)

_____
(Print Name)

_____
(Date)

**John Herrick**

_____
(Signature)

_____
(Print Name)

_____
(Date)

**Susan Drazen**

_____
(Signature)

_____
(Print Name)

_____
(Date)

34

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Joint Stipulation of Settlement and Release as of the date set forth below.

**GoDaddy.com, LLC**

_____
(Signature)

_____
(Print Name)

_____
(Title)

_____
(Date)

**John Herrick**

_____
(Signature)

_____
(Print Name)

_____
(Date)

**Jason Bennett**

_Jason Bennett_____
(Signature)

Jason Bennett_____
(Print Name)

May 27, 2020_____
(Date)

**Susan Drazen**

_____
(Signature)

_____
(Print Name)

_____
(Date)

34

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Joint Stipulation of Settlement and Release as of the date set forth below.

**GoDaddy.com, LLC**

_____
(Signature)

_____
(Print Name)

_____
(Title)

_____
(Date)

**John Herrick**

_____
(Signature)

_John Herrick_____
(Print Name)

_5-27-20_____
(Date)

**Jason Bennett**

_____
(Signature)

_____
(Print Name)

_____
(Date)

**Susan Drazen**

_____
(Signature)

_____
(Print Name)

_____
(Date)

34

108

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Joint Stipulation of Settlement and Release as of the date set forth below.

**GoDaddy.com, LLC**

_____
(Signature)

_____
(Print Name)

_____
(Title)

_____
(Date)

**John Herrick**

_____
(Signature)

_____
(Print Name)

_____
(Date)

**Jason Bennett**

_____
(Signature)

_____
(Print Name)

_____
(Date)

**Susan Drazen**

_____
(Signature)

Susan drazen
_____
(Print Name)

5/27/2020
_____
(Date)

34

109

**AGREED AND CONSENTED TO**:

JRC LEGAL
*Class Counsel*


By: *John R. Cox*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
    John R. Cox


MCGUIRE LAW, P.C.
*Class Counsel*


By: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
    Eugene Y. Turin


UNDERWOOD & REIMER, PC
*Class Counsel*


By: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
    Earl P. Underwood


BOCK, HATCH, LEWIS & OPPENHEIM, LLC
*Class Counsel*


By: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
    Phillip Bock


MARK K. WASVARY, P.C.
*Class Counsel*


By: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
    Mark Wasvary

**AGREED AND CONSENTED TO**:

JRC LEGAL
*Class Counsel*


By: _____
        John R. Cox


MCGUIRE LAW, P.C.
*Class Counsel*


By: _____
        Eugene Y. Turin


UNDERWOOD & REIMER, PC
*Class Counsel*


By: _____
        Earl P. Underwood


BOCK, HATCH, LEWIS & OPPENHEIM, LLC
*Class Counsel*


By: _____
        Phillip Bock


MARK K. WASVARY, P.C.
*Class Counsel*


By: _____
        Mark Wasvary


35

**AGREED AND CONSENTED TO**:

JRC LEGAL
*Class Counsel*


By: _____
      John R. Cox


MCGUIRE LAW, P.C.
*Class Counsel*


By: _____
      Eugene Y. Turin


UNDERWOOD & REIMER, PC
*Class Counsel*

By: _____
      Earl P. Underwood


BOCK, HATCH, LEWIS & OPPENHEIM, LLC
*Class Counsel*


By: _____
      Phillip Bock


MARK K. WASVARY, P.C.
*Class Counsel*


By: _____
      Mark Wasvary

35

**AGREED AND CONSENTED TO:**

JRC LEGAL
*Class Counsel*

By: _____
          John R. Cox

MCGUIRE LAW, P.C.
*Class Counsel*

By: _____
          Eugene Y. Turin

UNDERWOOD & REIMER, PC
*Class Counsel*

By: _____
          Earl P. Underwood

BOCK, HATCH, LEWIS & OPPENHEIM, LLC
*Class Counsel*

By: _____
          Phillip Bock

MARK K. WASVARY, P.C.
*Class Counsel*

By: _____
          Mark Wasvary

35

KENT LAW OFFICES
*Class Counsel*


By: _____
          Trinette Kent


MCMORROW LAW, P.C.
*Class Counsel*


By: _____
          Michael McMorrow


COZEN O'CONNOR, P.C.
*Counsel for GoDaddy.com, LLC*


By: _____
          Paula L. Zecchini

KENT LAW OFFICES
*Class Counsel*

By: _____
         Trinette Kent

MCMORROW LAW, P.C.
*Class Counsel*

By: _____
         Michael McMorrow

COZEN O'CONNOR, P.C.
*Counsel for GoDaddy.com, LLC*

By: _____
         Paula L. Zecchini

36

KENT LAW OFFICES
*Class Counsel*


By: _____
       Trinette Kent


MCMORROW LAW, P.C.
*Class Counsel*

By: _____
       Michael McMorrow


COZEN O'CONNOR, P.C.
*Counsel for GoDaddy.com, LLC*


By: _____
       Paula L. Zecchini

36

<u>116</u>

# EXHIBIT 1

<u>PROPOSED SHORT FORM NOTICE</u>

**IF YOU RECEIVED A TEXT MESSAGE OR PHONE CALL FROM GODADDY BETWEEN NOVEMBER 4, 2014 AND DECEMBER 31, 2016 ON YOUR CELLULAR TELEPHONE, YOU MAY BE ELIGIBLE TO RECEIVE A MERCHANDISE CREDIT OR PAYMENT FROM A CLASS ACTION SETTLEMENT**

*A federal court authorized this Notice.  You are not being sued.  This is not a solicitation from a lawyer.*

***PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE, OR THE DEFENDANT WITH QUESTIONS ABOUT THE SETTLEMENT OR THE LITIGATION***

This notice concerns a proposed Settlement to resolve claims in the lawsuits *Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563 (S.D. Ala.), *Bennett v. GoDaddy.com, LLC*, Case No. 1:20-cv-00094 (S.D. Ala.), and *Herrick v. GoDaddy.com, LLC*, Case No. 2:16-cv-00254 (D. Ariz.), *appeal pending* 18-16048 (9th Cir.).[1] Plaintiffs Susan Drazen, Jason Bennett, and John Herrick ("Plaintiffs") allege that Defendant GoDaddy.com, LLC ("GoDaddy") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by placing phone calls and sending text messages to cellular telephone numbers without the recipients' consent. GoDaddy denies the allegations in the lawsuits, and the Court has not decided who is right.

### Am I a Member of the Settlement Class?

You are receiving this notice because GoDaddy's records indicate that you might be a Settlement Class Member.  You're a member of the settlement class if, at any time between November 4, 2014 and December 31, 2016, GoDaddy placed a voice or text message call to your cellular telephone pursuant to an outbound campaign facilitated by the web-based software application used by 3Seventy, Inc., or the software programs and platforms that comprise the Cisco Unified Communications Manager.

### What Can I Get From the Proposed Settlement?

GoDaddy has agreed to make up to $35,000,000 available to pay individuals who submit valid claim forms, settlement administration costs, attorney's fees, a service award to the Plaintiffs, and costs and expenses of the litigation.  Subject to the qualification set forth at the end of this paragraph, each Settlement Class Member who submits a valid Claim Form will be entitled to receive their choice of either a Voucher Award (a $150 merchandise credit voucher that can be used for any products and services made available by GoDaddy) or a Cash Award ($35, in the form of a check mailed to you).  The Voucher Award is freely transferrable, is good on all merchandise (including sale, discount, or promotional pricing), and requires no minimum purchase.  There is a limit of one Claim per Settlement Class Member, and each Settlement Class Member may receive only one Voucher Award or one Cash Award.  Upon receipt of a valid Claim Form, the Settlement Administrator will determine whether you are eligible to receive an Award.  Depending on how many valid Claim Forms are submitted, it is possible that each Settlement Class Member's Award will be reduced on a pro-rata basis to cover settlement administration costs, attorney's fees, a service award to the Plaintiffs, and the costs and expenses of the litigation.

To receive either the Voucher Award or the Cash Award, you must submit a Claim Form online at [URL], or print the Claim Form and mail it to the Settlement Administrator at the address provided on the Claim Form.  A Claim Form must be postmarked or submitted online by [DATE].

---

[1] Capitalized terms herein have the same meanings as those defined in the Settlement Agreement, a copy of which may be found online at the Settlement Website below.

38

**What Are My Options?**

If you do not want to be legally bound by the settlement, you must exclude yourself by **[date]**. If you do not exclude yourself, you will release any claims you may have, as more fully described in the Settlement Agreement, available at the settlement website [URL]. You may object to the settlement by **[date]**. The Long Form Notice available on the website explains how to exclude yourself or object. The Court will hold a hearing on [DATE] at [TIME] in Courtroom [NO.] of the U.S. District Court for the [COURT], [ADDRESS], to consider whether to approve the Settlement, a request by Class Counsel for attorney's fees of up to 30% of $35,000,000, costs for their work in the case, and an incentive award payment in an amount up to $5,000 for each of the Plaintiffs. The Motion for these fees and expenses will be posted on the Settlement Website when it is filed with the Court.  The Court will decide the amount of fees and expenses to award.  You may appear at the hearing, subject to the requirements set by the Court, either yourself or through an attorney hired by you, but you are not required to do so. For more information, call [number] or visit the website.

39

# Exhibit 2

**<u>PROPOSED LONG FORM NOTICE</u>**

**<u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>**

*Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563

(U.S. District Court for the Southern District of Alabama)

*Bennett v. GoDaddy.com, LLC*, Case No. 20-cv-00094

(U.S. District Court for the Southern District of Alabama)

*Herrick v. GoDaddy.com, LLC*, Case No. 2:16-cv-00254, *appeal pending* 18-16048 (9th Cir.)

(U.S. District Court for the District of Arizona)

**PLEASE READ THIS NOTICE CAREFULLY. IF YOU RECEIVED A PHONE CALL OR TEXT MESSAGE ON YOUR CELLULAR TELEPHONE FROM GODADDY BETWEEN NOVEMBER 4, 2014 AND DECEMBER 31, 2016, YOU MAY BE ENTITLED TO A MERCHANDISE CREDIT OR PAYMENT FROM A CLASS ACTION SETTLEMENT. THIS NOTICE EXPLAINS YOUR RIGHTS AND OPTIONS AND THE DEADLINES TO EXERCISE THEM.**

*A federal court authorized this Notice. You are not being sued. This is not a solicitation from a lawyer.*

***PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE, OR THE DEFENDANT WITH QUESTIONS ABOUT THE SETTLEMENT OR THE LITIGATION***

This notice concerns the proposed Settlement to resolve claims in the lawsuits *Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563 (S.D. Ala.), *Bennett v. GoDaddy.com, LLC*, Case No. 20-cv-00094 (S.D. Ala.), and *Herrick v. GoDaddy.com, LLC*, Case No. 2:16-cv-00254 (D. Ariz.), *appeal pending* 18-16048 (9th Cir.).[*]

Plaintiffs Susan Drazen, Jason Bennett, and John Herrick ("Plaintiffs") allege that Defendant GoDaddy.com, LLC ("GoDaddy") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by placing phone calls and sending text messages to cellular telephone numbers without the recipients' consent.

GoDaddy denies Plaintiffs' allegations, denies any wrongdoing whatsoever, and has not conceded the truth or validity of any of the claims against it. By entering into this Settlement, the parties seek to avoid the risks and costs associated with further litigation. The Court has not decided who is right.

The Settlement offers payments (in the form of either a merchandise voucher or cash) to Settlement Class Members who submit valid Claims.

---

[*] Capitalized terms herein have the same meanings as those defined in the Settlement Agreement (the "Agreement"), a copy of which may be found online at the Settlement Website below.

41

Your legal rights are affected regardless of whether you act.  Read this Notice carefully.

## WHY DID I GET THIS NOTICE?

This is a court-authorized notice of a proposed settlement in class action lawsuits known as *Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563 (S.D. Ala.), *Bennett v. GoDaddy.com, LLC*, Case No. 20-cv-00094 (S.D. Ala.), and *Herrick v. GoDaddy.com, LLC*, Case No. 2:16-cv-00254 (D. Ariz.), *appeal pending* 18-16048 (9th Cir.). The settlement would resolve lawsuits brought on behalf of persons who allege that GoDaddy.com, LLC ("GoDaddy") placed calls and sent text messages to cellular telephone numbers without the recipients' consent. The Court has granted preliminary approval of the Settlement and has conditionally certified the Settlement Class for purposes of settlement only. This Notice explains the nature of the class action lawsuit, the terms of the Settlement, and the legal rights and obligations of the members of the Settlement Class. Please read the instructions and explanations below so that you can better understand your legal rights.

The Honorable Kristi K. DuBose, U.S. District Court for the Southern District of Alabama is overseeing this settlement.

## WHAT IS THIS LAWSUIT ABOUT?

The lawsuits allege that GoDaddy placed calls and sent text messages to cellular telephone numbers without the recipients' consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. GoDaddy denies each and every allegation of wrongdoing, liability, and damages that were or could have been asserted in the Actions, and GoDaddy denies that the claims in the Actions would be appropriate for class treatment if the litigation were to proceed through trial.

The Plaintiffs' Complaints, the Settlement Agreement, and other case-related documents are available on the Settlement Website, accessible at [URL].  The Settlement resolves the Actions.  The Court has not decided who is right.

## WHY IS THIS A CLASS ACTION?

A class action is a lawsuit in which one or more persons called a "Class Representative" sues on behalf of people who have similar claims. All of these people together are a "Settlement Class" or "Settlement Class Members." The Settlement, if finally approved by the Court, resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class.

## WHY IS THERE A SETTLEMENT?

The Plaintiffs and GoDaddy have determined that it is in their best interests to settle this case to avoid the expenses, uncertainties, and inconvenience associated with litigation.  This Settlement resolves all claims against GoDaddy and its affiliated entities. The Settlement is not an admission of wrongdoing by GoDaddy and does not imply that there has been, or would be, any finding that GoDaddy violated any law. GoDaddy denies each and every allegation of wrongdoing and liability in the Actions.

The Court has already preliminarily approved the Settlement. Nevertheless, because the settlement of a class action determines the rights of all members of the class, the court overseeing these lawsuits must give final approval to the Settlement before it can be effective. The Court has conditionally certified the Settlement Class for settlement purposes only, so that Settlement Class Members have this notice and the opportunity to exclude themselves from the Settlement Class, to voice their support or opposition to final approval of the Settlement, and to have the opportunity to obtain the benefits offered by the Settlement. If

42

the Court does not give final approval to the Settlement, or if it is terminated by the parties, the Settlement will be void, and the lawsuit will proceed as if there had been no settlement and no certification of the Settlement Class.

## WHO IS IN THE SETTLEMENT CLASS?

You are a member of the Settlement Class if, between November 4, 2014 and December 31, 2016, GoDaddy placed a voice or text message call to your cellular telephone pursuant to an outbound campaign facilitated by the web-based software application used by 3Seventy, Inc., or the software programs and platforms that comprise the Cisco Unified Communications Manager.

Excluded from the Settlement Class are (1) the trial judge presiding over the Actions; (2) GoDaddy, as well as any parent, subsidiary, affiliate or control person of GoDaddy, and the officers, directors, agents, lawyers, servants or employees of GoDaddy; (3) the immediate family of any such person(s); (4) any Settlement Class Member who timely opts out of the settlement; and (5) Class Counsel, their employees, and their immediate family.

## WHAT ARE MY OPTIONS?

### (1) Submit a Claim Form.

If you are a member of the Settlement Class, you must submit a completed Claim Form to receive your choice of a Voucher Award or Cash Award. To do so, you must complete a Claim Form and submit it by **[date]**. You may obtain a Claim Form at [URL], and you may submit your Claim Form online at [URL], or to the Settlement Administrator by U.S. Mail at_____, postmarked by **[date]**. *Submitting a valid and timely Claim Form is the only way to receive a benefit from this Settlement, and is the only thing you need to do to receive* the elected Voucher Award or Cash Award. If the Court approves the Settlement and it becomes final and effective, and you have submitted a valid Claim Form, then you will receive your elected Award.

### (2) Exclude yourself.

You may exclude yourself from the Settlement. If you do so, you will receive no benefit from the Settlement, but you will not release any claims you may have against GoDaddy and the Released Parties (as that term is defined in the Settlement Agreement), and are free to pursue whatever legal rights you may have by pursuing your own lawsuit against the Released Parties at your own risk and expense. To exclude yourself from the Settlement, you must mail a timely letter to the Settlement Administrator at _____, postmarked by _____. Your request to be excluded from the Settlement must be personally signed by you under penalty of perjury and contain a statement that indicates your desire to be "excluded from the Settlement Class," and that, absent of excluding yourself or "opting out," you are "otherwise a member of the Settlement Class in the proposed settlement of *Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563 (S.D. Ala.), *Bennett v. GoDaddy.com, LLC*, Case No. 20-cv-00094 (S.D. Ala.), and *Herrick v. GoDaddy.com, LLC*, Case No. 2:16-cv-00254 (D. Ariz.), *appeal pending* 18-16048 (9th Cir.)." The request should also include your full name, address, telephone number(s), and GoDaddy account number(s).

You cannot ask to be excluded on the phone, by email, or at the Settlement Website. You may opt out of the Settlement Class only for yourself.

### (3) Object to the Settlement.

43

123

If you are a Settlement Class Member (and do not exclude yourself from the Settlement Class), you can object to any part of the Settlement.  To object, you must submit a timely letter that includes the following: (1) a heading that includes the case name and case number; (2) your full name, address, telephone number, the cellular telephone number(s) at which you received a phone call or text message from GoDaddy between November 4, 2014 to December 31, 2016, GoDaddy account number(s) and if represented by counsel, the name, bar number, address, and telephone number of your counsel; (3) a signed statement, under penalty of perjury, that you received one or more phone calls or text messages from GoDaddy between November 4, 2014 to December 31, 2016, and that you are a member of the Settlement Class; (4) a statement of all your objections to the Settlement, including your legal and factual basis for each objection; (5) a statement of whether you intend to appear at the Final Approval Hearing, either with or without counsel, and if with counsel, the name of your counsel who will attend; (6) the number of times in which you, your counsel, or your counsel's law firm have objected to a class action settlement within the five years preceding the date that you submit your objection, the caption of each case in which you, your counsel, or your counsel's law firm has made such objection, and a copy of any orders related to or ruling upon your, your counsel's, or your counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case; (7) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objections, as well as any exhibits they intend to introduce at the Final Approval Hearing; and (8) any and all agreements related to the objection or the process of objections—whether written or verbal—between you or your counsel and any other person or entity.

**IF YOU DO NOT TIMELY MAKE YOUR OBJECTION, YOU WILL BE DEEMED TO HAVE WAIVED ALL OBJECTONS AND WILL NOT BE ENTITLED TO SPEAK AT THE FINAL APPROVAL HEARING.**

If you file and serve a written objection and statement of intent to appear, you may appear at the Final Approval Hearing, either in person or through your personal counsel hired at your expense, to object to the fairness, reasonableness, or adequacy of the Settlement.

If you wish to object, you must file your objection with the Court (using the Court's electronic filing system or in any manner in which the Court accepts filings) no later than [DATE], and mail a copy of your objection to (1) the Clerk of Court; (2) the attorneys representing the Plaintiffs and the Settlement Class (Evan M. Meyers, McGuire Law, P.C., 55 West Wacker Drive, 9th Floor, Chicago, IL 60601); and (3) the attorneys representing GoDaddy (Paula L. Zecchini and Jeffrey M. Monhait, Cozen O'Connor, 999 Third Avenue, Suite 1900, Seattle, Washington 98104), postmarked no later than [DATE].

If you hire an attorney in connection with making an objection, that attorney must also file with the Court a notice of appearance by [DATE]. If you do hire your own attorney, you will be solely responsible for payment of any fees and expenses the attorney incurs on your behalf. If you exclude yourself from the Settlement, you cannot file an objection.

**(4)  Do Nothing.**

If you are a Class Member and do not submit a valid Claim Form, you will still be bound by all orders and judgments of the Court. Unless you exclude yourself from the Settlement, you will not be able to file or continue a lawsuit against the Released Parties regarding any released claims.

**WHAT DOES THE SETTLEMENT PROVIDE?**

GoDaddy has agreed to make up to $35,000,000 available to pay individuals who submit a valid Claim Form, settlement administration costs, attorney's fees, a service award to the Plaintiffs, and costs and expenses of the litigation.  Subject to the qualification set forth at the end of this paragraph, each Settlement

Class Member who submits a valid Claim Form will be entitled to receive their choice of either a Voucher Award (a $150 merchandise credit voucher that can be used for any products and services made available by GoDaddy) or a Cash Award ($35, in the form of a check mailed to you).  The Voucher Award is freely transferrable, is good on all merchandise (including sale, discount, or promotional pricing), and requires no minimum purchase.  There is a limit of one Claim per Settlement Class Member, and each Settlement Class Member may receive only one Voucher Award or one Cash Award.  Upon receipt of a valid Claim Form, the Settlement Administrator will determine whether you are eligible to receive an Award.  Depending on how many valid Claim Forms are submitted, it is possible that each Settlement Class Member's Award will be reduced on a pro-rata basis to cover settlement administration costs, attorney's fees, a service award to the Plaintiffs, and the costs and expenses of the litigation.

Plaintiffs and their lawyers think the proposed Settlement is best for everyone who is affected by it.

To claim a Voucher Award or a Cash Award, Class Members must submit a Claim Form by [DATE].  Following the final approval of the Settlement, the Settlement Administrator will provide the Voucher Award (in the form of a redemption code) or Cash Award (in the form of a check) to each Class Member who submits a valid, timely Claim Form. All checks issued to Settlement Class Members who choose to receive the Cash Award will expire and become void one hundred eighty (180) days after they are issued. Any unused Voucher Award balance will be forfeited one (1) year after it is issued.

Additionally, the attorneys who brought these lawsuits (listed below) will ask the Court to award them attorney's fees in an amount not to exceed 30% of $35,000,000, plus their costs for the time, expense and effort expended in investigating the facts, litigating these cases, and negotiating the Settlement.  The Plaintiffs will also ask the Court for a payment of up to $5,000 each for their time, effort, and service in this matter.

## WHAT RIGHTS AM I GIVING UP IN THIS SETTLEMENT?

Unless you exclude yourself from the Settlement, you cannot sue or be part of any other lawsuit against GoDaddy about the issues in this case, including any existing litigation, arbitration, or proceeding.  Unless you exclude yourself, all of the decisions and judgments by the Court will bind you.

The Settlement Agreement is available at [URL].  The Settlement Agreement provides more detail regarding the Releases and describes the Released Claims with specific descriptions in necessary, accurate legal terminology, so read it carefully.  If you have any questions, you can talk for free to the attorneys identified below who have been appointed by the Court to represent the Settlement Class, or you are welcome to talk to any other lawyer of your choosing at your own expense.

## WHEN WILL I RECEIVE THE VOUCHER AWARD OR CASH AWARD?

The parties cannot accurately predict when (or whether) the Court will grant Final Approval to the Settlement, so please be patient. After the Court finally approves the Settlement, and after any appeals are resolved, you will receive your Voucher Award or Cash Award. If there is are appeals, resolving them can take time. Updated information about the case will be made available at [URL], or you can call the Settlement Administrator at [number], or contact Class Counsel at the information provided below.

## WHEN WILL THE COURT RULE ON THE SETTLEMENT?

The Court has already granted Preliminary Approval of the Settlement. A final hearing on the Settlement, called a final approval or fairness hearing, will be held to determine the fairness of the Settlement. At the fairness hearing, the Court will also consider whether to make final the certification of the Settlement Class

for settlement purposes, hear any proper objections and arguments to the Settlement, as well as any requests for an award of attorneys' fees and expenses and incentive awards for the Plaintiffs that may be sought by Class Counsel. The Court will hold the fairness hearing on [DATE] at [TIME] in Courtroom [NO.] of the U.S. District Court for the [COURT], [ADDRESS].

If the Settlement is given Final Approval, the Court will not make any determination as to the merits of the claims or defenses at issue in the Actions. Instead, the Settlement's terms will take effect and the lawsuits will be dismissed on the merits with prejudice. Both sides have agreed to the Settlement in order to achieve an early and certain resolution to the lawsuits, in a manner that provides specific and valuable benefits to the members of the Settlement Class.

If the Court does not grant Final Approval of the Settlement, or if a Final Approval is reversed on appeal, or if the Settlement does not become final for some other reason, you will not receive any benefit, and Class Members will receive no benefits from the Settlement. Plaintiffs, GoDaddy, and the Class Members will be in the same position as they were prior to the execution of the Settlement, and the Settlement will have no legal effect, no class will remain certified (conditionally or otherwise), and Plaintiffs and GoDaddy will continue to litigate the lawsuits. There can be no assurance that, if the Settlement is not approved, the Settlement Class will recover more than is provided in the Settlement, or indeed, anything at all.

**WHO REPRESENTS THE CLASS?**

The Court has approved the following attorneys to represent the Settlement Class. They are called "Class Counsel." You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| | | |
|---|---|---|
| John R. Cox | Evan M. Meyers | Earl P. Underwood, Jr. |
| JRC Legal | Eugene Y. Turin | Underwood & Riemer, PC |
| 30941 Mill Lane | McGuire Law, P.C. | 21 South Section Street |
| Suite G-334 | 55 W. Wacker Drive, 9th | Fairhope, AL 36532 |
| Spanish Fort, AL 36527 | Floor | epu@urlaw.onmicrosoft.com |
| john@jrclegal.net | Chicago, IL 60601 | Tel: (251) 990-5558 |
| Tel: (251) 517-4753 | eturin@mcgpc.com | |
| | Tel: (312) 893-7002 | |
| | | |
| Phillip A. Bock | Trinette G. Kent | Mark K. Wasvary |
| David M. Oppenheim | Kent Law Offices | Mark K. Wasvary, P.C. |
| Tod A. Lewis | 3219 Camelback Rd. | 2401 West Big Beaver Road, |
| Bock, Hatch, Lewis & | Ste. 588 | Suite 100 |
| Oppenheim, LLC | Phoenix, AZ 85018 | Troy, MI 48084 |
| 134 N. La Salle St. | tkent@kentlawpc.com | mark@wasvarylaw.com |
| Ste. 1000 | Tel: (480) 247-9644 | Tel: (248) 649-5667 |
| Chicago, IL 60602 | | |
| phil@classlawyers.com | | |
| Tel: (312) 658-5500 | | |

46

Michael McMorrow
McMorrow Law, P.C.
One North LaSalle Street
44th Floor
Chicago, IL 60602
mike@mjmcmorrow.com
Tel: (312) 265-0708

**WHERE CAN I GET ADDITIONAL INFORMATION?**

This Notice is only a summary of the proposed Settlement of this lawsuit. More details are in the Settlement Agreement which, along with other documents, can be obtained at [URL]. If you have any questions, you can also call the Settlement Administrator at ___or Class Counsel at the numbers or email addresses set forth above. In addition to the documents available on the case website, all pleadings and documents filed in court may be reviewed or copied in the Office of the Clerk. Please do not call the Judge or the Clerk of the Court about this case. They will not be able to give you advice on your options.

47

# Exhibit 3

## CLAIM FORM

**TO RECEIVE A PAYMENT, YOU MUST COMPLETE AND SIGN THIS CLAIM FORM AND SUBMIT IT TO THE SETTLEMENT ADMINISTRATOR (SEE SUBMISSION INFORMATION BELOW) BY [DATE].**

Please read this form carefully and follow the instructions below.   **Step 1**: provide the requested information.   **Step 2**: sign the certification.   **Step 3**: submit the Claim Form using one of the identified methods.  You may submit this Claim Form online at [URL] on or before [DATE], or by printing out and mailing this form to: [Settlement Administrator Address] postmarked on or before [DATE].

**YOU ARE ONLY ENTITLED TO SUBMIT A CLAIM FORM IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS**.  See the Long Form Notice online on the Settlement Website at [URL] or call [number] if you have questions as to whether you are a member of the Settlement Class.

Each Settlement Class Member may submit one Claim only.  Your Claim may be rejected if you do not provide the information requested below.  Your claim will also be rejected if you do not sign the Claim Form.

### STEP 1: CLAIMANT INFORMATION

#### A.  Name and Address

Class Member ID:[*]  _____
Full Name:  _____
Home Street Address:  _____
City, State, Zip Code:  _____
Email Address (optional):  _____
Telephone Number:  _____
GoDaddy Account Number(s):  _____

#### B.  Phone Call and/or Text Message Information

Please indicate each cellular telephone number at which you received a phone call or text message from GoDaddy during the time period from November 4, 2014 to December 31, 2016, and for each such cellular telephone number, please (a) indicate whether it is a residential or business line, and (b) identify the primary user of the cellular telephone number:

| Cellular Telephone Number | Business or Residential? | Primary User |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

---

[*] This number is the [xx]-digit alphanumeric number located in the Notice you received.  If you do not provide this number, your Claim Form may be rejected.

49

129

|  |  |  |
|---|---|---|
|  |  |  |

### C.  Election of Award

Please indicate whether you wish to receive the Cash Award (in an amount up to $35) or Voucher Award (in an amount up to $150). Please mark only one (1) of the options:

_____ $35 Cash Award          _____ $150 Voucher Award

### STEP 2: CERTIFICATION

I hereby certify under penalty of perjury under the laws of the United States of America that I have received notice of the class action Settlement in this case, and I am a member of the Settlement Class as described in the Notice.  I certify under penalty of perjury under the laws of the United States of America that the above information is true to the best of my knowledge. I understand that the Settlement Administrator, Class Counsel, and Defense Counsel have the right to verify my responses or otherwise dispute any claims that are based on inaccurate responses.

_____          _____
Signature                                              Date

### STEP 3: METHODS OF SUBMISSION

**Please complete the Claim Form online at [URL] no later than [date], or mail, at your own expense, a complete, signed Claim Form to the Settlement Administrator, postmarked no later than [date], and addressed to:**

[ADDRESS]

50

# TAB 88

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| SUSAN DRAZEN, on behalf of herself and other persons similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>GODADDY.COM, LLC, a Delaware Limited Liability Company,<br><br>     Defendant. | Civil Action: 1:19-00563-KD-B |
| JASON BENNETT on behalf of himself and other persons similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>GODADDY.COM, LLC, a Delaware Limited Liability Company,<br><br>     Defendant. | Civil Action: 1:20-00094-KD-B |

## UNOPPOSED JOINT MOTION FOR AN INDICATIVE RULING APPROVING OBJECTOR SETTLEMENT AGREEMENT AND MOTION TO EXPEDITE

On December 23, 2020, the Court entered its Final Judgment and Order

Approving Class Settlement and awarded Class Counsel attorneys' fees (the "Final

Order"). ECF 74. Objector Juan Pinto ("Objector") appealed to the United States Court of Appeals, Eleventh Circuit. Appeal No. 21-101999.

After mediating the dispute, Class Counsel and the Objector (collectively, the "Settling Parties") have reached an agreement to settle the appeal in exchange for certain consideration, but without changes to the Final Order or terms of the class settlement. The terms of the agreement between Class Counsel and the Objector are set out in the Objector Settlement Agreement, attached as Exhibit 1. Pursuant to Rules 62.1 and 23(e)(5)(B) of the Federal Rules of Civil Procedure, the Settling Parties respectfully request that, after a hearing under Rule 23(e)(5)(B), the Court enter an indicative ruling approving the agreement so that they can ask the Eleventh Circuit to remand for entry of a formal order by this Court and subsequent dismissal of the appeal in the Eleventh Circuit.

In addition, to allow for prompt distribution of settlement benefits to the class, the Settling Parties request that the Court expedite briefing by requiring any opposition to be filed within five (5) days of the filing of this Motion and any reply brief to be filed three (3) days thereafter.

Defendant GoDaddy.com, LLC ("GoDaddy") does not oppose this motion.

## I.     PROCEDURAL HISTORY

After more than three years of litigation and nearly a year in contentious negotiations, Class Counsel achieved a settlement with GoDaddy, making up to $35 million in benefits available to Settlement Class Members. ECF 50-1. Under the terms

2

of the settlement, each class member who filed a valid, timely claim could elect to receive either a $150.00 Voucher Award to use for any GoDaddy products or services, or a $35.00 Cash Award, for having allegedly received phone calls or text messages alleged to have been in violation of the federal Telephone Consumer Protection Act (the "TCPA").

On July 24, 2020, Class Counsel filed their Motion for Attorneys' Fees requesting $10,500,000.00 in fees, calculated as 30% of the settlement benefits made available to the class. ECF 50. The Court initially entered an order awarding Class Counsel $8,750,000.00 in attorneys' fees. ECF 51.

On August 31, 2020, class member Juan Pinto ("Objector"), through counsel, filed a formal objection opposing settlement approval, premature entry of attorneys' fees, and the amount of attorneys' fees requested and awarded. ECF 53. On September 1, 2020, upon review of Pinto's objection, the Court amended its order to indicate that, while $8,750,000 appeared reasonable, the issue would be taken up at the final approval hearing. ECF 55.

Class Counsel moved for final approval of the class settlement on November 3, 2020. ECF 69. Objector filed reply briefs in support of his objection (ECF 65, 68) and appeared through counsel at the final fairness hearing. ECF 84.

On December 23, 2020, the Court granted final approval to the settlement, recognizing that it provides "a very favorable outcome for Settlement Class Members[,]" particularly in light of the evolution of TCPA litigation that "has been

3

unfavorable to plaintiffs[.]" ECF 74 at 26. The Court also overruled Pinto's objection. ECF 74. The Court also awarded attorneys' fees of $7,000,000. *Id.*

Pinto had objected that the Class Settlement Agreement did not require the settlement administrator to email class members whose settlement awards were returned as undeliverable to obtain updated mailing addresses. ECF 53. In response to this objection, the settlement administrator submitted a declaration committing to such a campaign for all undeliverable settlement awards. ECF 61-2. If just 1% of such awards are returned as undeliverable and ultimately reach the class member, this benefits the class by $22,661.[1] At 5%, it benefits the class by $113,308.50.[2]

Pinto filed a notice of appeal from the Court's order approving the settlement and awarding attorneys' fees to the Eleventh Circuit, Appeal No. 21-101999. ECF 75. Under the terms of the Class Settlement Agreement, neither the class settlement benefits, nor Class Counsel's attorneys' fees can be distributed until the appeal is resolved. ECF 50-1 at ¶¶ 30, 75.

On appeal, Pinto entered an appearance through counsel, ordered the transcript, prepared and filed a Certificate of Interested Persons, and prepared and filed a Civil

---

[1] $2,266,170 x. 1% = $22,661.70.

[2] $2,266,170 x. 5% = $113,308.50

4

Appeal Statement in the Eleventh Circuit. Because Pinto's Opening Brief was initially due on March 17, 2021,[3] Pinto also began preparation of Appellant's Opening Brief.

After mediated negotiations, the Settling Parties reached an agreement to settle the appeal in exchange for certain consideration, but without changes to the Final Order or terms of the Class Settlement. Through this mediation, the Settling Parties have authorized the execution of an agreement memorialized in the Objector Settlement Agreement attached as Exhibit 1. The basic terms of the agreement are as follows:

1.      In general, Objector agrees to dismiss his appeal with prejudice if: the Court enters an indicative ruling approving the Objector Settlement Agreement; the Eleventh Circuit remands the matter to the Court without modifying the existing Final Order; and, the Court enters a formal order approving the Objector Settlement Agreement when jurisdiction is returned. *See* Exhibit 1 at § 2.2. No changes will be made to the Final Order or the Class Action Settlement. *Id.* at § 4.2.

2.      The Objector Settlement Agreement recognizes the non-monetary benefit bestowed by the Objector in ensuring an adversarial proceeding on attorneys' fees, with Objector's objection resulting in clarification by the Court that, despite the premature fee order, class members would have an opportunity to object to the proposed fees. *Id.* at § 1.17. It also recognizes the benefit conveyed to the class by the Objector in ensuring

---

[3] The Court of Appeals extended this deadline to March 31, 2021 on the motion of Objector. On March 30, 2021, the Court of Appeals granted the Settling Parties' unopposed joint motion to stay the briefing schedule.

LEGAL\51767503\1

that the Settlement Administrator initiates an email campaign directed at any class member whose Settlement Award is returned as undeliverable. *Id.* at § 1.16. It further provides that, in consideration for withdrawal of the appeal, and based on benefits bestowed by the Objector, and upon distribution by the Settlement Administrator of fees, costs, and expenses as described in ¶ 76(b) of the Class Settlement Agreement, John R. Cox, PLLC d/b/a JRC Legal, attorney for the Class, has agreed to share $375,000 from the Fee and Expense Award with Objector for attorneys' fees and costs related to the objection, plus $5,000 as an Objector Incentive Award for Juan Pinto. *Id.* at § 1.18, 2.1.[4] The Settling Parties agree that the total amount requested by the Objector and his counsel is supported by their efforts.

## II.   ARGUMENT

### A.    Legal Standard

Rule 23(e)(5)(B) of the Federal Rules of Civil Procedure requires court approval before any "payment or other consideration may be provided in connection with … forgoing, dismissing, or abandoning an appeal from a judgment approving [a class action settlement]." As the Rule itself notes, if an appeal is pending "the procedures of Rule 62.1 appl[y] while the appeal remains pending." *Id.* Rule 62.1, in turn, provides

---

[4] The Eleventh Circuit in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), was specific in its disapproval of incentive awards for class representatives. *Johnson* does not speak to payments for objectors. Nevertheless, to the extent the Court denies or reduces the Objector Incentive Award, any such ruling shall *not* alter, terminate, or render the Objector Settlement Agreement null and void. Ex. 1 at § 2.1.

LEGAL\51767503\1

that where a "timely motion is made for relief that the court lacks authority to grant because an appeal that has been docketed and is pending, the court may:

(1) defer considering the motion;

(2) deny the motion; or

(3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."

Fed. R. Civ. P. 62.1. If the Court states in the indicative ruling that it would grant the motion upon return of jurisdiction, then Federal Rule of Appellate Procedure 12.1 authorizes the "court of appeals [to] remand for further proceedings" while retaining jurisdiction "unless it expressly dismisses the appeal." *See also* 11th Cir. R. 12.1-1.

Rule 23(e)(5)(B)(ii) does not describe the standard for approval of compensation for withdrawal of an appeal.[5] Since Rule 23(e)(5)(B) only requires approval of "payment or consideration," it does not necessarily require approval of the objector settlement

---

[5] The Comments from the Advisory Committee indicate that withdrawal of an objection at the trial court level under Rule 23(e)(5)(B)(i) is subject to Rule 23(h), but that forgoing, dismissing, or abandoning appeals under Rule (e)(5)(B)(ii) is not. Language referencing Rule 23(h) appears in the paragraph discussing the former, but not in the latter. "When the drafters so clearly knew how to express one meaning, their failure to do so [elsewhere] implies that the meaning was not intended." *Weight Loss Healthcare Centers of Am., Inc. v. Office of Pers. Mgmt.*, 655 F.3d 1202, 1210 (10th Cir. 2011); *see also Russello v. United States,* 464 U.S. 16, 23 (1983) (when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion")); *see also Delta Air Lines, Inc. v. August,* 450 U.S. 346, 347–62, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981) (courts apply the rules of statutory interpretation to determine the meaning of a Federal Rule of Civil Procedure).

7

agreement itself, and certainly, there is no indication in the Rule, as there is with class settlement agreements, that the agreement or payment must be fair, adequate, and reasonable. *Compare* Fed. R. 23(e)(5)(B) *with* Fed. R. Civ. P. 23(e)(2).

Nevertheless, given this Court's role as guardian for the class members, the relevant question is whether the payment in their best interests. *See In re Syngenta AG MIR162 Corn Litig.*, 2:14-md-02592, ECF No 4307 (Jan. 3, 2020) (granting motion for indicative relief after finding objector settlement "in the best interests of the class"). For the reasons stated below, the payment is in the best interests of the class members. This payment will compensate Objector and his counsel for their role in assisting in the settlement review process, improving settlement administration, and for providing benefits to the settlement class. Additionally, resolution of the appeal will allow the Settlement Administrator to begin making distributions to class members sooner. Furthermore, this eliminates risk that approval of the settlement will be reversed.

## B.    Analysis

The agreed-upon compensation to Objector's counsel as memorialized in Exhibit A will be paid exclusively by Class Counsel, will not diminish the class recovery in any respect, and is clearly reasonable. *See In re Experian Data Breach Litig.*, Case No. 8:15-cv-01592, Dkt. 334 (stipulation), Dkt. 335 (order) (C.D. Cal. Jul. 3, 2019) (approving objector settlement without an increase in settlement benefits on the basis that the objectors participated in the settlement process). Of course, Class Counsel are best suited to determine how their own Fee and Expense award should be allocated,

8

and the decision by one among them to share some of it with the Objector's counsel is appropriate.

Furthermore, resolution of this Objection is in the best interests of the Class given that, since the filing of this appeal, the Supreme Court has issued its long-awaited decision in *Facebook, Inc. v. Duguid*, No. 19-511, 2021 WL 1215717 (U.S. Apr. 1, 2021), which unanimously overturned the Ninth Circuit and ruled that the definition of "Automatic Telephone Dialing System" ("ATDS") is limited to equipment that uses a sequential number generator. 2021 WL 1215717, at *7. If Objector's appeal were to proceed – instead of being resolved as now proposed – a reversal of the District Court's final approval order could jeopardize the claims of the Class Members on remand. In short, resolution of the Objection will permit the Class Members to obtain their requested relief and avoid the risk of losing such relief altogether, and resolution is, thus, in the best interest of the Class.

Objector's counsel has also expended significant time and labor advancing the objection, arguing at the fairness hearing, prosecuting the appeal, and negotiating the instant settlement.  In total, they have expended 277.1 hours. Objector's counsel's work on the case was not administrative or ministerial but involved substantive and complex legal issues. They filed a comprehensive objection regarding the class settlement and requested attorneys' fees in this Court (ECF No. 53); prepared supplemental reply briefs (ECF Nos. 65, 68); argued in support of the objection at the fairness hearing; thoroughly researched the issues for appeal, perfected the appeal; entered an appearance

9

in the Eleventh Circuit, filed a Civil Appeal Statement, and began preparation of Appellant's Opening Brief in Appeal Number 21-10199. Exhibit 2, Declaration of Robert Clore.

In addition, the results achieved through this settlement are in the best interests of the class. Courts recognize objectors' value in the settlement-approval process and have approved payments for creating a beneficial adversarial setting. *See e.g., In re Experian Data Breach Litig.*, Case No. 8:15-cv-01592, Dkt. 334 (stipulation), Dkt. 335 (order) (C.D. Cal. Jul. 3, 2019); *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 229 (N.D. Ill. 2019) (approving incentive award for objector who "offered critiques of the Settlement Agreement that meaningfully assisted the Court in its analysis"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 358 (N.D. Ga. 1993) ("If objectors' appearance sharpens the issues and debate on the fairness of the settlement, their performance of the role of devil's advocate warrants a fee award.").

In adding the approval requirement, now found in Rule 23(e)(5)(B), the Advisory Committee explained that it sought to discourage objectors who "may be seeking only personal gain[] and using objections to obtain benefits for themselves rather than assisting in the settlement-review process." Advisory Committee's 2018 note on Fed. R. Civ. P. 23(e). At the same time, the Committee recognized that "[g]ood-faith objections can assist the court in evaluating a proposal under Rule 23(e)(2)," and that "[i]t is legitimate for an objector to seek payment for providing such assistance…." *Id.*

10

Objector falls into the latter category, having not only advanced "good-faith objections" to assist the Court in evaluating the class settlement, but adding non-monetary benefits to the class settlement. Approval of Class Counsel's agreement with Objector also finds support in numerous cases awarding fees to objectors and their counsel for "transform[ing] the fairness hearing into a 'truly adversarial proceeding.'" *Park v. Thomson Corp.*, 633 F. Supp. 2d 8, 11 (S.D.N.Y. 2009) (quoting *In re AOL Time Warner ERISA Litig.*, No. 02 CV. 8853 (SWK), 2007 WL 4225486, at *2 (S.D.N.Y. Nov. 28, 2007)); *see In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 358.

Given these authorities and the good-faith contributions of Objector and his counsel to the adversarial nature of the approval proceedings, there can be little dispute that an agreement that does not merely compensate Objector and their counsel for their efforts but also benefits the Class should be approved under Rule 23(e)(5). Objector's proposed settlement with Class Counsel, and the Objector's role in the settlement approval process, provided meaningful benefit beyond just Objector's participation in the settlement. Objector's settlement with Class Counsel recognizes the non-monetary benefit bestowed by Objector by ensuring an adversarial proceeding on attorneys' fees, with Objector's objection resulting in clarification by the Court that, despite the premature fee order, class members would have an opportunity to object to the proposed fees. *Id.* at § 1.17. In addition, Objector also provided a benefit to the class by ensuring that the Settlement Administrator initiates an email campaign directed at class members whose Settlement Award is returned as undeliverable. *Id.* at § 1.16. This

11

benefit is worth at least an additional $22,661 if 1% of such awards are returned as undeliverable and nevertheless ultimately received by the class members. It is worth as much as $113,308.50 if 5% are returned but ultimately received by the class members.

Moreover, the compensation of counsel relative to their lodestar shows that the agreed-upon fee is not unreasonable. The lodestar of Objector's counsel is $164,400 plus $2,097.99 in unreimbursed litigation expenses, resulting in a lower lodestar multiplier (2.25) than Class Counsels' Fee and Expense Award (2.49). Exhibit 2 at 8.

Finally, the settlement is also in the best interests of the class because it will permit distribution of settlement funds sooner. The Settlement Administrator currently hopes to begin delivering settlement awards promptly. That will only be possible if the appeals have been dismissed. Accelerating payment to the class alone is a justifiable reason to approve the agreed-upon fee; in combination with these other factors, it surely tilts the balance in favor of approval.

## III.   CONCLUSION

For these reasons, the Settling Parties request that the Court enter an indicative ruling approving the Objector Settlement Agreement. The Settling Parties further request a hearing on this motion as required by Rule 23(e)(5)(B) and that the Court expedite consideration of this motion and require any opposition(s) to be filed within five days (on or before April 20, 2021), with the expectation that if any interested party fails to file an opposition by that date all arguments contesting approval of the Objector Settlement Agreement will be waived.

LEGAL\51767503\1

Dated: April 15, 2021                    Respectfully submitted,

                                         /s/ Robert W. Clore
                                         ROBERT W. CLORE

                                         *Attorneys for Juan Pinto*

                                         Robert W. Clore
                                         *Pro Hac Vice*
                                         Bandas Law Firm, P.C.
                                         802 N. Carancahua, Suite 1400
                                         Corpus Christi, Texas 78401
                                         (361) 698-5200

                                         /s/ John R. Cox
                                         JOHN R. COX

                                         JRC LEGAL
                                         John R. Cox
                                         30941 Mill Lane, Suite G-334
                                         Spanish Fort, AL 36527
                                         Tel: (251) 517-4753
                                         john@jrclegal.net

                                         Class Counsel

## **Certificate of Service**

I hereby certify that on April 15, 2021, I electronically filed the foregoing motion and supporting exhibits with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ John R. Cox
JOHN. R. COX

14

# TAB 88-1

Exhibit 1

## OBJECTOR SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 13th day of April 2021, by and between (i) Juan Pinto ("Objector"), individually, together and by and in conjunction with his attorney Robert Clore and Christopher Bandas and the Bandas Law Firm; and (ii) John R. Cox, PLLC d/b/a JRC Legal ("JRC Legal"), on the other hand, with respect to objections asserted by Pinto against the Settlement and Class Counsels' attorneys' fees in *Drazen v. GoDaddy.com, LLC*, Case No. 1:19-cv-00563 (S.D. Ala.) (the "*Drazen* Action") on appeal before the Eleventh Circuit in Case No. 21-10199. Objector and JRC Legal shall be collectively referred to as the "Parties" and separately referred to as a "Party."

Unless otherwise defined herein, all capitalized words, phrases or terms set forth herein shall have the meaning set forth in the Second Amended Joint Stipulation of Class Action Settlement and Release (the "Settlement Agreement") by and among (1) Plaintiffs Jason Bennett, Susan Drazen, and John Herrick (collectively "Plaintiffs"), individually and on behalf of the Settlement Class, and (2) Defendant GoDaddy.com, LLC ("GoDaddy") filed in the *Drazen* Action on May 28, 2020 (ECF 45-1).

## 1. RECITALS

1.1.    WHEREAS, in May 2020, Plaintiffs and GoDaddy entered into the Settlement Agreement, which made up to $35 million in benefits available to Settlement Class Members. Under the terms of the settlement, each class member who filed a valid, timely claim could elect to receive either a $150.00 Voucher Award to use for any GoDaddy products or services, or a $35.00 Cash Award, for having allegedly received phone calls or text messages alleged to have been in violation of the federal Telephone Consumer Protection Act.

1.2.    WHEREAS, Plaintiffs filed a Motion for Attorneys' Fees in connection with their efforts in securing the Class Settlement Agreement. ECF 50.

1.3.    WHEREAS, the district court initially entered an order awarding Plaintiffs' counsel $8,750,000.00 in attorneys' fees. ECF 51.

1.4.    WHEREAS, Objector filed objections to approval of the settlement, the premature entry of Attorneys' Fees, and the Award of Attorneys' Fees itself. ECF 53.

1.5.    WHEREAS, upon review of Pinto's objection, the Court amended its order to provide that the $8,750,000 award appeared reasonable, but that the issue would be taken up at the final approval hearing.

1.6.    WHEREAS, Plaintiffs filed a Motion for Final Approval of the Settlement. ECF 69).

1.7.    WHEREAS, Objector filed reply briefs in support of the Objection (ECF 65, 68) and appeared in person to argue the objections at the Final Fairness Hearing.

1.8.     WHEREAS, after receiving argument and considering the objection, the Honorable Kristi K. Dubose (the "Court") granted final approval to the settlement and overruled Pinto's objections. ECF 74.

1.9.     WHEREAS, in its Order granting Final Approval the Court awarded attorneys' fees of $7,000,000. ECF 74.

1.10.    WHEREAS, Pinto also objected to the limited requirements placed upon the settlement administrator to ensure that vouchers and checks actually reach the class, including calling for a follow-up email to confirm the accuracy of addresses for any vouchers or checks returned as undeliverable. ECF 53.

1.11.    WHEREAS, after Pinto's objection, the settlement administrator submitted a declaration stating that it will conduct an email campaign to request updated U.S. mailing addresses from Settlement Class Members for all undeliverable Settlement Awards. ECF 61-2.

1.12.    WHEREAS, Pinto filed a Notice of Appeal in the Eleventh Circuit (Appeal No. 21-10199).

1.13.    WHEREAS, Pinto has entered an appearance on appeal through counsel Robert Clore and Christopher Bandas and has filed a Civil Appeal Statement in the Eleventh Circuit Court of Appeals, and has further began preparation of Appellant's Opening Brief.

1.14.    WHEREAS, for purposes of this settlement only and pursuant to the Parties' confidential settlement negotiations with a mediator, Pinto will agree to request dismissal of his appeal subject to the terms and conditions set forth below.

1.15.    WHEREAS, for purposes of this settlement only and pursuant to the Parties' confidential settlement negotiations in consideration of and conditioned on all the terms outlined herein, including the issuance of an Indicative Ruling by the Court pursuant to Fed. R. Civ. P. 23(e)(5)(B) and 62.1 approving of the Payment (defined below), remand by the Eleventh Circuit pursuant to Fed. R. App. P. 12.1, written order by the Court approving the Payment, and dismissal of the appeals in the Eleventh Circuit without altering the approval of the Payment,.

1.16.    WHEREAS, the Parties recognize that Objector provided a non-monetary benefit by ensuring that the settlement administrator initiates an email campaign directed at any class member whose Settlement Award is returned as undeliverable.

1.17.    WHEREAS, the Parties further recognize the non-monetary benefit bestowed by the Objector in ensuring an adversarial proceeding on attorneys' fees inasmuch as Pinto's Objection resulted in the Court clarification that despite the premature fee order, class members would have an opportunity to object to the proposed fees.

1.18.    WHEREAS, JRC Legal and Class Counsel will join and not oppose Objector's request that $375,000 ("the Payment") of the Fee and Expense Award plus a $5,000 objector incentive award to Juan Pinto shall be paid in recognition for non-monetary benefits provided by Objector to the class, including providing an adversarial settlement-approval process and improving settlement administration as described above, and as resolution of the pending appeal,

and that this resolution is in the best interests of the Class, subject to (i) Court approval pursuant to the Fed. Rule Civ. P. 23(e)(5)(B) and (ii) all of the terms and conditions of this Agreement. Further, JRC Legal, Class Counsel, and Pinto have agreed to file a joint motion for Indicative Ruling in support of the request.

NOW, THEREFORE in consideration of the mutual obligations and agreements contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## 2. WITHDRAWAL OF APPEAL AND REIMBURSEMENT OF ATTORNEYS' FEES AND COSTS

2.1     **Payment.**  All Plaintiffs will not oppose Objector's request that the Court award an Objector Incentive Award in the amount of $5,000 for Juan Pinto, and separately, $375,000 in attorneys' fees for Pinto's counsel in recognition for his non-monetary contributions to the class. The Payment shall be paid by JRC Legal from the Fee and Expense Award, after (a) receipt of the Court's issuance of an Indicative Ruling pursuant to Fed. R. Civ. P. 23(e)(5)(B) and 62.1 approving of the Payment, (b) remand by the Eleventh Circuit under Fed. R. App. P. 12.1, (c) the Court enters an order formally approving this Agreement and (d) the Eleventh Circuit's dismissal of the Appeal without alteration of the approval or Fee and Expense Award. The Payment shall be paid by JRC Legal no later than 5 business days after the Settlement Administrator distributes the approved fees, costs, and expenses as described in ¶76(b) of the Second Amended Joint Stipulation of Class Action Settlement Approved by the Court. Any dispute, litigation, and/or appeal that arises among class counsel regarding allocation of the Fee and Expense Award shall not delay Payment to Objector in any respect. Any award for less than the amount of $375,000 in attorneys' fees, or any reduction of this amount by any court, shall render this agreement null and void. However, any reduction or denial of the Objector Incentive Award shall not alter, terminate, or render this agreement null and void.

2.2     **Terms and Conditions of the Payment.**  Payment to Objector ("Objector Award") is subject to the following conditions:

2.2.1     Objector, by counsel, and JRC Legal have executed this Agreement.

2.2.2     The Court issues an indicative ruling pursuant to Fed. R. Civ. P. 23(e)(5)(B) and 62.1 that this Agreement and the Objector Award will be approved ("Indicative Ruling") when jurisdiction is returned to the Court.

2.2.3     After (a) receipt of the Court's Indicative Ruling pursuant to Fed. R. Civ. P. 23(e)(5)(B) and 62.1 approving of the Payment, (b) remand by the Eleventh Circuit under Fed. R. App. P. 12.1, (c) the Court enters an order formally approving this Agreement and the Objector Award, and (d) the formal order approving this Agreement and the Objector Award becomes final and non-appealable. Payment to Objector of the Objector Award is further conditioned upon the Court of Appeals for the Eleventh Circuit dismissing with prejudice and without any right of re-instatement or continuation of the

Appeal without modification, reversal, or remand of the Final Order and Judgment, including the Fee and Expense Award.

2.2.4   Objector stipulates and agrees not to make, assist or participate in any manner in any further objections, opposition, appeal, collateral attack, petition for review or certiorari, or any other arguments or request for relief related to the Settlement, the Fee and Expense Award, or the allocation among law firms of the Fee and Expense Award.

2.2.5   **Dismissal of Appeal and Termination Provision**.  If one or more objections are filed to the Joint Motion for Indicative Ruling, Objector may, in his discretion and within five days of any such objection, declare this Agreement a nullity and proceed with the Appeal currently pending before the Eleventh Circuit Court of Appeals. If the Objector elects termination, the Parties will file a joint motion to withdraw their Motion for Indicative Ruling and will notify the Eleventh Circuit Court of Appeals upon withdrawal of the Motion for Indicative Ruling and request abatement, if any, of the Appeal be lifted.

In the event the district court denies the Joint Motion for Indicative Ruling, the Parties will notify the Eleventh Circuit Court of Appeals and request abatement of Objector's Appeal, if any, be lifted, and Objector may proceed with the Appeal currently pending before the Eleventh Circuit Court of Appeals.

Additionally, as described in 11th Cir. R. 12.1-1, if one or more objections are filed to the remand with the Eleventh Circuit within 14 days after entry of the order granting the Motion for Indicative Ruling, Objector may, in his discretion and within five days of any such objection, declare this Agreement a nullity and proceed with the Appeal currently pending before the Eleventh Circuit Court of Appeals. If the Objector elects termination, the Parties will file a joint motion to withdraw their Motion for Indicative Ruling and will notify the Eleventh Circuit Court of Appeals upon withdrawal of the Motion for Indicative Ruling and request abatement, if any, of the Appeal be lifted.

If the district court enters an order finally approving this Agreement and the Objector Award Payment, and no appeal is filed from the order within thirty days, then the Objector shall file a motion to dismiss the Appeal with prejudice. If an appeal is filed within 30 days of the order finally approving this Agreement and the Objector Award, then Objector shall not be obligated to dismiss his appeal until dismissal or affirmance of the appeal from the order finally approving this Agreement and the Objector Award. If the order finally approving this Agreement and the Objector Award is reversed, vacated, modified, or otherwise set aside, then the parties will request abatement, if any, of Objector's Appeal be lifted and Objector may

proceed with the Appeal currently pending before the Eleventh Circuit Court of Appeals.

2.3 **Process for Approval of the Payment.**  Upon execution of this Agreement by the Parties, JRC Legal and Objector shall file their joint Motion for an Indicative Ruling by April 15, 2021, and the Parties shall file a joint motion to stay the appeal. In addition, the Parties  will request an expedited briefing schedule on the joint motion for Indicative Ruling as follows:  (a) Any opposition must be filed within five (5) days where the failure to object or oppose will constitute forfeiture and waiver of any right to oppose the Payment or Objector Award, if the award is approved in the Indicative Ruling; (b) Any reply in support of the joint Motion for Indicative Ruling shall be filed within three (3) days of any opposition. The foregoing dates for the requested briefing schedule are subject to modification by the Court at its discretion.

2.4 The Parties agree to cooperate in good faith and to use their respective best efforts to address any concerns or questions raised by the Court or the Eleventh Circuit Court of Appeals necessary to obtain approval of the Joint Motion for Indicative Ruling and approval by the Court and the Eleventh Circuit and the related dismissal with prejudice of all Appeals subject to the terms and conditions set forth in this Agreement.

3. **REPRESENTATIONS AND WARRANTIES**

3.1 The Parties represent and warrant that each signatory to this Agreement expressly warrants to the other Party that he, she or it has the authority to execute this Agreement on behalf of the Party or Parties to be bound by his, her or its signature, and on behalf of each and every principal or other owner of a legal, equitable or beneficial interest in such Party or Parties. JRC Legal, has authority to act on behalf of Class Counsel and bind them for purposes of this Agreement.

3.2 Each Party to this Agreement has made such investigation of the facts pertaining to the Settlement and this Agreement and of all matters pertaining thereto as he, she or it has independently deemed necessary and appropriate. Each Party has read this Agreement and understands its contents.

3.3 Juan Pinto represents and warrant that he has received independent legal advice from his attorney(s) with respect to the contents of this Agreement, the obligations in this Agreement, and the advisability of entering into this Agreement.

3.4 The Objector represents and warrants his respective lodestar (total number of attorney hours expended times billing rate) and expenses incurred with respect to the Litigation, including the Objection, as follows: $166,497.99.

4. **GENERAL PROVISIONS**

4.1 For purposes of this settlement and Agreement only, Objector agrees to dismiss his appeal subject to the terms and conditions set forth in this Agreement

4.2 For purposes of this settlement and Agreement only, the Parties acknowledge that Plaintiffs and their counsel are not proposing any changes to the Class Settlement, the Final

Judgment and Order Approving Class Settlement, or the amount of Class Counsel's Fee and Expense Award. The Parties agree that all provisions of the Agreement are consistent with the terms of the Class Settlement and do not in any way change any of its terms and conditions, or affect, reduce or limit the relief available to the Class therein. Nothing in this Agreement affects the Judgment and Orders issued in the Litigation, the Settlement Agreement, and/or any finding that the Settlement is fair, reasonable and adequate.

4.3     After receipt of the Payment, Objector and his counsel agree not to: (i) further object, participate, or assist in any objection to the Settlement, any Judgment, or Orders issued in the Litigation; (ii) file any further appeal in relation to the Litigation, the Settlement, and any Judgment or Orders issued in the Litigation; and (iii) in any way prevent or delay the Effective Date of the Settlement or cooperate with any other person in doing so.

4.4     Neither this Agreement nor any matters relating to the terms or negotiations of this Agreement shall be admissible in any lawsuit or other proceeding for any purpose other than to establish a term or condition of this Agreement that a Party purportedly has breached or to enjoin or dismiss a lawsuit or other proceeding brought in violation of this Agreement.

4.5     All Parties agree expressly that resolution of the Objection is in the best interest of the class.

4.6     This Agreement is the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions. Nothing in this Agreement shall be read to limit, abrogate or alter the scope, rights or obligations of the Parties under the Settlement. This Agreement may not be amended orally in any way and may be amended only by an agreement in writing signed by all Parties hereto.

4.7     Each Party has participated, cooperated or contributed to the drafting and preparation of this Agreement. In any construction to be made of this Agreement, the same shall not be construed for or against any Party, but shall be construed fairly according to its plain meaning.

4.8     This Agreement may be executed in counterparts.  When each Party has signed and delivered at least one counterpart, each counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one agreement which shall be binding and effective as to all Parties.

4.9     This Agreement, to the extent signed and delivered by means of a facsimile machine, E-mail, or PDF, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. No Party hereto shall raise the use of a facsimile machine, E-Mail, or PDF to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of these means as a defense to the formation of a contract and each such Party forever waives any such defense.

4.10     This Agreement shall be governed by the laws of the State of Alabama and any dispute shall be resolved exclusively in the United States District Court for the District of Alabama

before the Honorable Kristi Dubose or, in the event of her unavailability, by another federal district judge in the District of Alabama.

4.11   Time is of the essence in this Agreement. All terms set forth herein are material. This Agreement is binding upon and shall inure to the benefit of all Parties hereto, their agents, representatives, insurers, attorneys, accountants, advisors, partners, heirs, assigns, and successors and predecessors in interest.

**I have read the foregoing Agreement and I understand its contents. I have reviewed the entire document with my attorney and, understanding its terms and conditions, agree to abide by it.**

Counsel for Juan Pinto

ROBERT CLORE
Date:   Apr. 13, 2021

JRC LEGAL
Class Counsel

JOHN R. COX
Date:   April 13, 2021

LEGAL\51767563\1

# TAB 89

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SUSAN DRAZEN, o**n *behalf of herself and* *others similarly situated* | ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **CIVIL ACTION: 1:19-00563-KD-B** |
| **GODADDY.COM, LLC,** | ) ) | |
| **Defendant.** | ) | |

| | | |
|---|---|---|
| **JASON BENNETT, o**n *behalf of himself and* *others similarly situated* | ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **CIVIL ACTION: 1:19-00563-KD-B** |
| **GODADDY.COM, LLC,** | ) ) | |
| **Defendant.** | ) | |

## ORDER

This action is before the Court on the parties "Unopposed Joint Motion for an Indicative Ruling Approving Objector Settlement Agreement and Motion to Expedite." (Doc. 88). For the reasons set forth herein, this Court finds the parties' motion raises substantial issues; the Court would not be inclined to grant the parties' joint motion upon remand.

### I.    Background

On December 23, 2020, this Court entered its Final Judgment and Order Approving Class Settlement. (Doc. 74). Thereafter, Objector Juan Pinto appealed to the United States Court of Appeals for the Eleventh Circuit. (Doc. 75). The parties indicate now that "Class Counsel and the Objector (collectively, the "Settling Parties") have reached an agreement to settle the appeal in exchange for certain consideration…" (Doc. 88 at 2). The Objector Settlement Agreement in sum

includes a term that Pinto will dismiss his appeal with prejudice if this Court "enters an indicative ruling approving the Objector Settlement Agreement; the Eleventh Circuit remands the matter to the Court without modifying the existing Final Order; and, the Court enters a formal order approving the Objector Settlement Agreement when jurisdiction is returned." (Doc. 88 at 5). The Objector Settlement Agreement awards Pinto's attorneys $375,000 (to come from the attorneys' fees awarded to Class Counsel previously) and a $5,000 incentive award to Pinto. (Id.).

The parties jointly move now for the Court to enter an indicative ruling approving the Objector Settlement Agreement "so that they can ask the Eleventh Circuit to remand for entry of a formal order by this Court and subsequent dismissal of the appeal in the Eleventh Circuit." (Doc. 88 at 2).

## II.    **Objector Incentive Award**

First, the Objector Settlement Agreement includes a term which would award Pinto a $5,000 incentive award. The parties contend the Eleventh Circuit's decision in Johnson v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020) "was specific to its disapproval of incentive awards for class representatives." (Doc. 88 at 6, n.4). According to the parties, Johnson "does not speak to payments for objectors." (Id.).

The parties reading of Johnson is too narrow. The Eleventh Circuit in Johnson explained that the Supreme Court's holdings in Trustees v. Greenough, 105 U.S. 527 (1882) and Central Railroad & Banking Co. v. Pettus, 113 U.S. 116 (1885) "establish limits on the types of awards that attorneys and litigants may recover from the fund." Johnson, 975 F.3d at 1256. Specifically, in discussing Trustees v. Greenough, 105 U.S. 527 (1882), the Eleventh Circuit explained:

> Importantly for our analysis of modern-day incentive awards, however, the Court went on to hold that "there [was] one class of allowances" that was "decidedly objectionable"—namely, "those made for [Vose's] personal services and private expenses." Id. at 537. The Court explained that "[t]he reasons which apply to his

expenditures incurred in carrying on the suit, and reclaiming the property subject to the trust"—*i.e.*, those that it approved—"do not apply to his personal services and private expenses." *Id.* The Court reasoned that while there might be reasons to award *trustees* "for their personal services"—*e.g.*, "to secure greater activity and diligence in the performance of the trust, and to induce persons of reliable character and business capacity to accept the office of trustee"—such "considerations have no application to the case of a creditor seeking his rights in a judicial proceeding." *Id.* at 537–38. In the case of a creditor, like Vose, "the allowance of a salary for [his] time and ... [his] private expenses" in carrying on litigation "would present too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interest of creditors." *Id.* at 538. The Court thus concluded that "[s]uch an allowance has neither reason nor authority for its support." *Id.*

To sum up, then, the Supreme Court in *Greenough* upheld Vose's award of attorneys' fees and litigation expenses but rejected as without legal basis the award for his "personal services and private expenses"—in particular, the yearly salary and reimbursement for the money he spent on railroad fares and hotel bills.

Johnson, 975 F.3d at 1257. The Court applied the holdings from Greenough and Pettus to the facts of the case before it—to the class representative context—but the prohibition announced by the Supreme Court in Greenough and Pettus has broader implications. Notably, in Greenough the Supreme Court reasoned that awarding a creditor "'a salary for [his] time…and [his] private expenses' in carrying on the litigation 'would present too great a temptation to parties to intermeddle in the management of valuable property or funds in which they only have the interest of creditors.'" Johnson, 975 F.3d at 1257 (citing Greenough, 105 U.S. at 538)). And Pettus reiterated the Supreme Court's holding in Greenough that a claim to be compensated for personal services and private expenses is "unsupported by reason or authority." Id. (citing Pettus, 113 U.S. at 122). The Eleventh Circuit in Johnson applied this reasoning to class representative incentive awards, holding:

We take the rule of *Greenough*, confirmed by *Pettus*, to be fairly clear: A plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses. It seems to us that the modern-day incentive award for a

class representative is roughly analogous to a salary—in *Greenough*'s terms, payment for "personal services." *See, e.g.*, *1258 *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017) ("[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case."); *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (similar); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (similar).

If anything, we think that modern-day incentive awards present even more pronounced risks than the salary and expense reimbursements disapproved in *Greenough*. Incentive awards are intended not only to compensate class representatives for their time (*i.e.*, as a salary), but also to promote litigation by providing a prize to be won (*i.e.*, as a bounty). As our sister circuits have described them—even while giving them general approval—incentive awards are designed "to induce [a class representative] to participate in the suit," *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992), and "to make up for financial or reputational risk undertaken in bringing the action" and "to recognize [a class representative's] willingness to act as a private attorney general," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *see also, e.g.*, *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (explaining that "applications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain").[1]

> FN 1: So far as we can tell, the only circuit to have directly confronted whether *Greenough* and *Pettus* prohibit incentive awards summarily dismissed the cases as "inapposite" because they presented a different "factual setting[ ]." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir.), *cert. denied sub nom. Bowes v. Melito*, —— U.S. ——, 140 S. Ct. 677, 205 L.Ed.2d 440 (2019). We are unpersuaded by the Second Circuit's position. Other circuits have recognized the continuing vitality of *Greenough* as prohibiting awards for "private" and "personal" expenses in common-fund cases, although they haven't applied the decisions specifically to incentive awards. *See, e.g.*, *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1208 (6th Cir. 1992) (explaining that costs awarded to the shareholders' representative in derivative litigation "related to advancing the litigation" and were "not 'private' in the sense found objectionable in *Greenough*"); *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d at 571 (citing *Greenough* for the proposition that expenses other than attorneys' fees can be awarded out of a common fund, "provided they are not personal").

975 F.3d at 1258.

An incentive awards to class representatives "intended [] to compensate class representatives for their time" are indistinguishable from an incentive award to an objector seeking to do the same. Johnson, 975 F.3d at 1258. Similarly, awarding incentive awards to objectors "promotes litigation by providing a prize to be won (i.e., as a bounty)" in the same way that class representative incentive awards do. Id. Thus, even though the Eleventh Circuit in Johnson applied the rationales of Greenough and Pettus to the specific facts before it—namely class representative incentive awards—the holding extends logically to objector incentive awards. To hold otherwise would create an inconsistent result.

### III.    Objector's Attorneys' Fees

The parties also included a term in the Objector Settlement Agreement in which "John R. Cox…has agreed to share $375,000 from the Fee and Expense Award with Objector for attorneys' fees and costs related to the objection." (Doc. 88 at 6). The parties contend the fee is reasonable because 1) it will be paid by Class Counsel and will not impact the class recovery in any way; 2) Objector's counsel has spent significant time and expense litigating the objection; 3) the objection assisted the Court in evaluating the class settlement; 4) it added non-monetary benefits to the class by creating an adversarial setting; 5) the objection ensured the Settlement Administrator would follow up with class members whose award was returned as undeliverable; and 6) the fee is reasonable as illustrated by the lodestar. See (Doc. 88 at 10-12).

"[T]he objector's entitlement to an award of attorneys' fees is dependent upon their ability to show that they have either (1) conferred some benefit on the class or (2) substantially improved the settlement under consideration." Faught v. American home Shield Corp., 2010 WL 10959224, at *1 (N.D. Ala. May 26, 2010) aff'd 444 Fed.Appx. 445, 446 (11th Cir. 2011). First, every objection Pinto made was overruled. His objections did not improve the terms of the Settlement

Agreement, much less *substantially* improve the Settlement. Compare with Faught, 2010 WL 10959224, at *3 (finding objections did not substantially benefit the class members where all objections but one were overruled and the only objection sustained "required them go through the Review desk process which their settlement established").

And, the objections did not confer a benefit on the class. The parties in part contend Pinto "ensur[ed] that the Settlement Administrator initiates an email campaign directed at class members whose Settlement Award is returned as undeliverable." (Doc. 88 at 12). The parties then attempt to quantify this benefit to the class by estimating the additional total of awards distributed if this "change" results in awards being distributed to class members when initially their award was "undeliverable." (Id.). Previously though, when Pinto objected to the Settlement Administration process on this exact issue, Plaintiffs cited the declaration of Kari Grabowski, Project Manager for the Settlement Administrator Epiq. (Doc. 61 at 30). There, the Plaintiffs contended the "settlement Agreement does not limit the Settlement Administrator's duty to 'verify mailing information,' including to send follow up email if deemed appropriate to obtain the correct mailing address…As stated in the declaration of Ms. Grabowski, the Settlement Administrator intends to do just that, which directly undercuts Bandas' [Pinto's] point." (Id.). Now, the parties seek to credit Pinto for ensuring the Settlement Administrator initiates a campaign Grabowski already intended on doing. The Settlement distribution process did not change as a result of this objection, presumably because that follow-up process was already anticipated and intended. Therefore, Pinto did not confer any benefit on the class with respect to this process.

And, though Pinto pointed out the Court's order on attorneys' fees was premature, the Court subsequently amended its premature order, carrying Plaintiffs' motion to the Final Approval Hearing. (Docs. 51, 55). And, the Court fully reconsidered Plaintiffs' motion for attorneys' fees.

Pointing out the Court's error, but ultimately losing all of his objections, does not warrant $375,000 in attorneys' fees. The Court would not find that reasonable.

## IV.    <u>Conclusion</u>

Accordingly, the parties' motion for an indicative ruling is **GRANTED**.[1] For the reasons discussed *supra*, this motion raises substantial issues, which at this juncture the Court would not be inclined to grant upon remand from the Eleventh Circuit Court of Appeals. The parties' "Motion to expedite" the briefing is **MOOT.** (Doc. 88 at 2).

**DONE** and **ORDERED** this the **22nd** day of **April 2021**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[1] Pursuant to Rule 62.1: "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed.R.Civ.P. 62.1. Thus, the Court is proceeding pursuant to Rule 62.1(3).