No. 21-10199

—————————————

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

—————————————

**Susan Drazen**, et. al., on behalf of herself and other persons similarly situated,

Plaintiffs-Appellees,

**GoDaddy.com, LLC**, a Delaware Limited Liability Company,

Defendant-Appellee,

v.

**Juan Enrique Pinto**,

Movant-Appellant.

—————————————

On Appeal from a Final Judgment of the United States District Court for the Southern District of Alabama
(Case No. 1:19-cv-00563-KD-B)

—————————————

## CORRECTED PETITION FOR REHEARING *EN BANC*

—————————————

UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
epunderwood@alalaw.com

Counsel for Plaintiffs-Appellees

August 18, 2022

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to this Court's Rule 26.1-1, Plaintiffs-Appellees Susan Drazen and Jason Bennett state that they are individual persons and that there are no publicly held corporations that own ten percent or more of any stock issued by either Plaintiff. Plaintiffs further state that the following people are believed to have an interest in the outcome of this appeal:

- Bandas Law Firm, P.C. (representing Movant-Appellant Juan Enrique Pinto);

- Attorney Christopher A. Bandas (representing Movant-Appellant Juan Enrique Pinto);

- The Honorable Magistrate Judge Sonja F. Bivins (United States District Court for the Southern District of Alabama);

- Attorney Phillip A. Bock (representing Plaintiff-Appellee Susan Drazen);

- Bock Hatch & Oppenheim (representing Plaintiff-Appellee Susan Drazen);

- Attorney Robert W. Clore (representing Movant-Appellant Juan Enrique Pinto);

- Attorney John R. Cox (representing Plaintiff-Appellee Susan Drazen);

- Attorney Matthew B. Criscuolo (representing Defendant-Appellee GoDaddy.com, LLC);

i

- Attorney Thomas Jefferson Deen, III (representing Movant-Appellant Juan Enrique Pinto);

- Plaintiff-Appellee Susan Drazen;

- The Honorable Kristi K. DuBose (United States District Court for the Southern District of Alabama);

- Defendant-Appellee GoDaddy.com, LLC;

- Attorney Robert M. Hatch (representing Plaintiff-Appellee Susan Drazen);

- Objector Steven F. Helfand;

- Plaintiff John Herrick;

- Kenneth J. Reimer Attorney at Law (representing Plaintiff-Appellee Susan Drazen);

- Attorney Trinette G. Kent (representing Plaintiff-Appellee Susan Drazen);

- Kent Law Offices (representing Plaintiff-Appellee Susan Drazen);

- Law Offices of John R. Cox (representing Plaintiff-Appellee Susan Drazen);

- Mark K. Wasvary, P.C. (representing Plaintiff-Appellee Susan Drazen);

- Attorney Miles McGuire (representing Plaintiff-Appellee Susan Drazen);

- McGuire Law, P.C. (representing Plaintiff-Appellee Susan Drazen);

- Attorney Michael J. McMorrow (representing Plaintiff-Appellee Susan Drazen);

- McMorrow Law, P.C. (representing Plaintiff-Appellee Susan Drazen);

- Attorney Evan M. Meyers (representing Plaintiff-Appellee Susan Drazen);

- Attorney Cozen O'Connor (representing Defendant-Appellee GoDaddy.com, LLC);

- Attorney Jeffrey M. Monhait (representing Defendant-Appellee GoDaddy.com, LLC);

- Movant-Appellant Juan Enrique Pinto;

- Attorney Kenneth J. Reimer (representing Plaintiff-Appellee Susan Drazen);

- Attorney Yevgeniy Y. Turin (representing Plaintiff-Appellee Susan Drazen);

- Attorney Earl Price Underwood, Jr. (representing Plaintiff-Appellee Susan Drazen);

- Underwood & Riemer, P.C. (representing Plaintiff-Appellee Susan Drazen);

- Attorney Mark K. Wasvary (representing Plaintiff-Appellee Susan Drazen);

- Attorney Paula L. Zecchini (representing Defendant-Appellee GoDaddy.com, LLC)

I hereby certify that, except as disclosed above, I am unaware of any actual or potential conflict of interest involving the justices of the Eleventh Circuit Court of Appeals, and I will immediately notify the Court in writing upon learning any such conflict.

August 18, 2022

Respectfully submitted,

*/s/ Earl P. Underwood, Jr.*

UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
epunderwood@alalaw.com

Counsel for Plaintiffs-Appellees
Susan Drazen and Jason Bennett

## STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves the following question of exceptional importance:

Whether a person who receives a single text message in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (TCPA), has suffered concrete injury sufficient to have Article III standing to pursue a TCPA claim Congress expressly authorized, as every other circuit to address the issue has held.

August 18, 2022

Respectfully submitted,

*/s/ Earl P. Underwood, Jr.*

UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
epunderwood@alalaw.com

Counsel for Plaintiffs-Appellees
Susan Drazen and Jason Bennett

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ......................................i

STATEMENT OF COUNSEL...................................................v

TABLE OF AUTHORITIES...................................................vii

ISSUE THAT MERITS *EN BANC* CONSIDERATION...........................1

COURSE OF PROCEEDINGS AND CASE DISPOSITION...................4

STATEMENT OF FACTS .....................................................5

REASONS FOR *EN BANC* REVIEW ......................................6

I.   EVERY OTHER FEDERAL APPELLATE COURT TO ADDRESS
     TCPA STANDING HAS RULED CONTRARY TO *SALCEDO*..........6

II.  THE STANDING ANALYSIS IN *SALCEDO* RUNS COUNTER TO
     OTHER DECISIONS FROM THIS CIRCUIT. ................................13

III. THE PANEL DECISION CONFLICTS WITH SUPREME COURT
     JURISPRUDENCE ON REPRESENTATIONAL STANDING........15

CONCLUSION ....................................................................17

CERTIFICATE OF SERVICE..............................................20

COPY OF OPINION...........................................................21

# TABLE OF AUTHORITIES

## Cases

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ................................ 1

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (2019) ....................... 13

*Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686
(5th Cir. 2021) ......................................................... 2, 9, 10, 14

*Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*,
858 F.3d 1362 (11th Cir. 2017) ........................................... 12

*Gadelhak v. AT&T Servs., Inc.*,
950 F.3d 458 (7th Cir. 2020) ...................................... 2, 8, 11

*Glasser v. Hilton Grand Vacations Co., LLC*,
948 F.3d 1301 (2020 ....................................................... 12, 13

*Krakauer v. Dish Network, LLC*,
925 F.3d 643, 654 (4th Cir. 2019) ..................................... 11

*Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019); ......... 2, 8

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
781 F.3d 1245 (11th Cir. 2015); ...................................... 2, 12

*Salcedo v. Hanna*, 936 F.3d 1162 (2019) ............................... v, 1

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ....................... 5, 14

*Susinno v. Work Out World Inc.*, 862 F.3d 346 (2017) ........................ 7

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ............................ 3

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) ................................... 2, 6, 7, 8

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000) .................................................. 2, 14, 15

## Statutes and Rules

47 U.S.C. § 227(b)(1)(A)(iii). ....................................................... 1

47 U.S.C. § 227(b)(3) .................................................................. 1

Federal Rule of Appellate Procedure 35 ................................... 5

## ISSUE THAT MERITS *EN BANC* CONSIDERATION

The TCPA bars using an automatic telephone dialing system "to make any call" to a cellular number without prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). A text message is a "call" for purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). Congress expressly authorized individual actions for injunctive relief and recovery of at least $500 for each violation. 47 U.S.C. § 227(b)(3).

In *Salcedo v. Hanna*, 936 F.3d 1162 (2019), a panel of this Court ruled that receipt of a single unlawful text message is not an injury sufficiently concrete so as to confer standing. *Id.* at 1172. According to *Salcedo*, the "chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waved in one's face. Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts." *Id.*

The panel in this case was duty-bound to follow *Salcedo* and, consequently, vacated the class definition and approved settlement on the ground that some class members received only a single text message and thus lacked standing. *See* Slip. Op. at 18. This Court should grant a

rehearing *en banc* to reevaluate the *Salcedo* holding and to clarify the law regarding the elements necessary to pursue a TCPA claim.

This standing issue is exceptionally important and warrants *en banc* review. The decision in *Salcedo* hinders the ability of Congress to effect enforcement of federal law prohibiting unwanted calls and texts through private litigation, disregarding both the concrete harm to the recipient and the widespread damage the practice inflicts on public phone and data networks.

Every other circuit court to address the issue has held that a person does, in fact, have standing to sue based on receipt of an unlawful communication. *See Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686, 690 (5th Cir. 2021); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).

The panel decision in *Salcedo* not only stands alone among the circuit courts, but its analysis is in tension with other decisions from this Court. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (*Sarris*). Additionally, its

reasoning clashes with the doctrine of representational standing, which the Supreme Court discussed at length in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000).

## COURSE OF PROCEEDINGS AND CASE DISPOSITION

Plaintiff Susan Drazen brought this class-action lawsuit in 2019 against Defendant GoDaddy.com, LLC, alleging that GoDaddy violated the TCPA by using an automatic telephone dialing system to send promotional calls and text messages to her cell phone number. After years of litigation, the parties submitted a proposed class settlement, and the District Court for the Southern District of Alabama certified the class and approved the settlement. An objector, Juan Enrique Pinto, filed an appeal.

Without the benefit of any briefing or argument on the issue of standing – an issue that was not raised on appeal – the panel ruled that the class definition improperly included members that had received only one text and therefore did not have standing, based on *Salcedo* and the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). The panel also considered but did not decide whether a single cellphone call meets the concrete injury requirement. Instead, the panel vacated the certification and settlement and remanded the case to allow the parties "to redefine the class with the benefit of *TransUnion* and its common-law analogue analysis." Slip Op. at 20.

4

## STATEMENT OF FACTS

The District Court certified the class and approved the proposed settlement based on the following class definition (with some exclusions not relevant here):

> All persons within the United States to whom, from November 4, 2014 through December 31, 2016, Defendant placed a voice or text message call to their cellular telephone pursuant to an outbound campaign facilitated by the web-based software application used by 3Seventy, Inc., or the software programs and platforms that comprise the Cisco Unified Communications Manager.

Slip Op. at 5.

After notice of the settlement was sent to the class members, thousands of claims for benefits were submitted. The objector, Mr. Pinto's, appeal was limited almost exclusively to the issue of the District Court's award of attorneys' fees, and the appellate briefing and oral argument, likewise, only addressed the issue of attorneys' fees and not the issue of standing. Nonetheless, the panel decision held that "the class definition does not meet Article III standing requirements," and therefore vacated the District Court's order certifying the class and granting final approval to the settlement. *Id.* at 10–11.

## REASONS FOR *EN BANC* REVIEW

Federal Rule of Appellate Procedure 35 states that *en banc* consideration "is not favored and ordinarily will not be ordered unless" necessary for uniformity or "the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a). The holding in *Salcedo* – which the panel in this case was required to follow – sets the bar for access to the courts too high and separates this Court from all other circuits to reach the issue. The standing ruling is also counter to other decisions of this Court and disregards the doctrine of representational standing. It is an issue of exceptional importance.

## I. EVERY OTHER FEDERAL APPELLATE COURT TO ADDRESS TCPA STANDING HAS RULED CONTRARY TO *SALCEDO.*

The panel in *Salcedo* stated that it would "look to history and the judgment of Congress" to determine whether harms from a single text message suffice to confer standing, as the Supreme Court instructed in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). *Salcedo*, 936 F.3d at 1168. The court noted the absence of findings on harms from unsolicited text messages while acknowledging the technology did not exist when Congress enacted the TCPA in 1991. *Id.* at 1169. It construed the

congressional record to "suggest that the receipt of a single text message is qualitatively different from the kinds of things Congress was concerned about when it enacted the TCPA." *Id.*

According to the *Salcedo* panel, Congress enacted the TCPA based on "a concern for privacy within the sanctity of the home that [does] not necessarily apply to text messaging." *Salcedo*, 936 F.3d at 1169. Congress's "privacy and nuisance concerns about residential telemarketing are less clearly applicable to text messaging." *Id.*

Before *Salcedo*, the Ninth Circuit had addressed whether receipt of two text messages conferred standing in *Van Patten v. Vertical Fitness*, 847 F.3d 1037 (9th Cir. 2017). The Ninth Circuit had reviewed many of the same congressional findings and concluded that the plaintiff had standing, but the *Salcedo* panel found *Van Patten* "unpersuasive" because the Ninth Circuit purportedly did not examine "whether isolated text messages not received at home" came within Congress's stated purpose of protecting consumers from unwanted calls. *Id.*

The court in *Salcedo* considered historical causes of action, such as the tort of intrusion upon seclusion, trespass, and nuisance, and it declared there was no analogue: "History shows that Salcedo's allegation

is precisely the kind of fleeting infraction upon personal property that tort law has resisted addressing." *Salcedo*, 936 F.3d at 1172.

The Ninth Circuit had, again, reached the opposite conclusion, holding that actions "to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states." *Van Patten*, 847 F.3d at 1043. The *Salcedo* court disagreed, stating that "an examination of those torts reveals significant differences in the kind and degree of harm they contemplate providing redress for." *Salcedo*, 936 F.3d at 1172.

The Third Circuit also sided in favor of standing to sue for a single unlawful call to a cellphone in *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3rd Cir. 2017)—although the *Salcedo* decision makes no reference to that case. In *Susinno*, the Third Circuit construed the legislative findings and history differently than the panel in *Salcedo*. For example, the court in *Susinno* found that the particular emphasis on residential calls "does not limit—either expressly or by implication—the statute's application to cell phone calls." *Susinno*, 862 F.3d at 349. And it found that the complaint asserts "the very harm that Congress sought to

prevent, arising from prototypical conduct prescribed by the TCPA." *Id.* at 351 (cleaned up).

A few months before the *Salcedo* ruling, the Second Circuit decided *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 677 (2019), holding that "Plaintiff's receipt of the unsolicited text messages, sans any other injury, is sufficient to demonstrate injury-in-fact." *Id.* at 88. The court in *Melito* found the alleged injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit," as both the Ninth and Third Circuits had ruled. *Id.* at 93 (citing *Van Patten* and *Susinno*). The *Salcedo* decision does not reference *Melito*.

In 2020, then-Judge Amy Coney Barrett authored a unanimous decision for the Seventh Circuit in *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020). On the historical front, the court observed that the "common law has long recognized actions at law against defendants who invaded the private solitude of another by committing the tort of 'intrusion upon seclusion.'" *Id.* at 462. It expressly disagreed with *Salcedo*'s historical analysis, noting that courts have "recognized liability for intrusion upon seclusion for irritating intrusions," and the "harm

posed by unwanted text messages is analogous to that type of intrusive invasion of privacy." *Id.*

The Seventh Circuit also disagreed with the way the *Salcedo* panel applied *Spokeo*. As Judge Barrett explained in the court's decision, the instruction to evaluate harms recognized at common law requires that courts "look for a 'close relationship' in kind, not degree." *Gadelhak*, 950 F.3d at 462 (quoting *Spokeo*, 578 U.S. at 341). "A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same *kind* of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable." *Id.* at 463. It agreed with the decisions in *Van Patten* and *Melito* "that unwanted text messages can constitute a concrete injury-in-fact for Article III purposes." *Id.*

The Fifth Circuit joined the majority view in *Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686 (5th Cir. 2021), holding that standing exists to pursue a claim based on receipt of an unlawful text message. It observed that under similar facts, the Second, Third, Seventh, and Ninth Circuits had all "reached the same conclusion: Telemarketing text messages present the precise harm and infringe the same privacy

10

interests Congress sought to protect in enacting the TCPA." *Id.* at 690 (cleaned up). The Fifth Circuit rejected the *Salcedo* panel's view that Congress enacted the TCPA to remedy harms solely related to residential calls and that harms from unwanted cellular messages were somehow "qualitatively different." *Cranor*, 998 F.3d at 690.

"First, the TCPA expressly covers cellular phones" and "includes text messaging in its prohibitions on transmitting false caller ID information." *Cranor*, 998 F.3d at 690. Thus, "it would make little sense to prohibit telemarketing to mobile devices designed for use *outside the home*" if Congress were concerned only with "nuisances *in the home*." *Id.* at 691. Second, "the TCPA addresses 'nuisance and invasion of privacy' in a variety of other non-residential contexts." *Id.* Third, Congress authorized the FCC to exempt calls that are not a nuisance or privacy invasion, and "[n]o part of this delegation limits the FCC to considering nuisance and privacy only in the home." *Id.*

The Fifth Circuit also took issue with the *Salcedo* panel's historical view that a single unwanted text message is "the kind of fleeting infraction upon personal property that tort law has resisted addressing." *Cranor*, 998 F.3d at 692 (quoting *Salcedo*, 936 F.3d at 1172). Among other

things, the court noted that the *Salcedo* decision never addressed public nuisance. *Id.* at 693. And it highlighted two other significant mistakes in the reasoning laid out in *Salcedo*.

"First, *Salcedo*'s view of trespass to chattels is substantially narrower than the scope of that action at common law." *Cranor*, 998 F.3d at 693. The *Salcedo* court was led astray by "mistak[ing] the twentieth-century Restatement for the eighteenth-century common law." *Id.* Second, echoing concerns (now) Justice Amy Coney Barrett had made in *Gadelhak*, the Fifth Circuit said that "*Salcedo*'s focus on the substantiality of the harm in receiving a single text misunderstands *Spokeo*." *Id.* at 693. A proper historical inquiry focuses "on the types of harms protected at common law, not the precise point at which those harms become actionable." *Id.* (quoting *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 654 (4th Cir. 2019)).

In short, no federal appellate court has endorsed *Salcedo*. The Eleventh Circuit stands alone in rejecting subject matter jurisdiction based on receipt of a text message, making it exceptionally important for this Court to reconsider that issue *en banc*. *See* Fed. R. App. P. 35(b)(1)(B).

## II.   THE STANDING ANALYSIS IN *SALCEDO* RUNS COUNTER TO OTHER DECISIONS FROM THIS CIRCUIT.

This Court in *Sarris* held there is standing to pursue TCPA claims because receipt of a single junk fax briefly ties up the fax machine, even if there is no proof a fax was ever printed: "This occupation of Plaintiff's fax machine is among the injuries intended to be prevented by the statute and is sufficiently personal or particularized … to provide standing." *Sarris*, 781 F.3d at 1252. Similarly, in *Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*, 858 F.3d 1362 (11th Cir. 2017), this Court held "the clinic established that it suffered a concrete injury" because "the clinic's fax machine was occupied and rendered unavailable for legitimate business while processing the unsolicited fax." *Id.* at 1366.

The *Salcedo* panel acknowledged those TCPA junk fax cases but deemed them "inapplicable" because intangible costs imposed by an unwanted text purportedly "differ in kind" from a fax message, in that a "cell phone user can continue to use all the device's functions, including receiving other messages, while it is receiving a text message." *Salcedo*, 936 F.3d at 1168. But that reasoning fails. There is no legitimate basis why Article III of the United States Constitution would permit individual suits based on receipt of a single junk fax but bar a text message claim.

13

Indeed, if anything, a junk text message can be more injurious than a junk fax. Texts are now used for things like schools contacting parents and healthcare providers communicating test results. A person rushing to school to pick up a sick child or awaiting a COVID-19 test result before boarding a plane would not mute his phone, and getting a spam text would be worse than a single unwanted fax printing on the recipient's fax machine back in the office.

The *Salcedo* decision runs into a similar problem with circuit precedent addressing standing for TCPA claims based on an unwanted call. This Court in *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020), held that "receipt of more than one unwanted telemarketing call" meets the "concrete injury" requirement for standing—even where two plaintiffs sue after each received just one call. *Id.* at 1305–06 (quoting *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (2019)).

The panel decision in this case acknowledged the *Glasser* decision in a footnote, stating this Court has "been less than a model of clarity in *Cordoba* and *Glasser* for purposes of Article III analysis." Slip. Op. at 18 n.14. And the decision recognizes that "[w]e have a problem here." *Id.* at

19 n.14. "The difference between *Cordoba* and *Glasser* and our case may present the need to reexamine *Glasser* in the future because it may affect both the injury-in-fact requirement and the causation analysis." *Id.* Because the decision in *Glasser* predated the historical analysis now called for under *Spokeo*, the panel decision declared *Glasser* "suspect on that ground alone." *Id.*

On the contrary, time has revealed the *Salcedo* decision as the suspect one. Not only does it create tension with other circuit decisions addressing standing in similar contexts but it puts this circuit at odds with all others with respect to text message claims. This Court can set things straight by granting this petition for *en banc* review.

## III. THE PANEL DECISION CONFLICTS WITH SUPREME COURT JURISPRUDENCE ON REPRESENTATIONAL STANDING.

The *Salcedo* decision purported to embrace *Spokeo*'s instruction that standing requires "a 'close relationship' to traditionally redressable harm." *Salcedo*, 936 F.3d at 1172. As the Fifth Circuit observed in *Cranor*, however, the *Salcedo* panel neglected to consider common law causes of action available to address a public nuisance. *Cranor*, 998 F.3d at 693. There is likewise a "well-established exception" for *qui tam*

15

actions that allow "private plaintiffs to sue in the government's name for the violation of a public right," as Justice Thomas observed in his concurrence in *Spokeo*, 578 U.S. at 345.

In *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), the Supreme Court held that a plaintiff has standing to assert a *qui tam* claim on behalf of the government where Congress assigns the right to do so.[1] "Although we have never expressly recognized 'representational standing' on the part of assignees, we have routinely entertained their suits." *Id.* at 774–75 (citing cases). The Court recounted the history of such actions going back to the 13th century, including "informer statutes" that permit the plaintiff to share in recovery as a bounty, which the First Congress employed in several different settings. *Id.* at 776 & n.5.

The instant case involves an express right of action by Congress to pursue claims based on certain insidious telemarketing practices that cause harm to public phone and data networks. As the Supreme Court's

---

[1] "*Qui tam* is short for the Latin phrase *qui tam pro domino rege pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.' The phrase dates from at least the time of Blackstone. *See* 3 W. Blackstone, Commentaries, *160." *Ex rel. Stevens*, 529 U.S. at 768 n.1.

decision in *ex rel. Stevens* makes plain, Congress is well within constitutional bounds assigning the right to pursue claims to individuals who encountered the problem firsthand. The *Salcedo* panel's failure to consider those actions in its analysis has led this Circuit astray, and *en banc* review is necessary to correct course.

## CONCLUSION

The standing issue at the heart of the panel's ruling presents an issue of exceptional importance that warrants *en banc* review. The decision in *Salcedo* frustrates the ability of Congress to authorize suit not only to protect individuals from harm but also to safeguard public rights from interference. This Court should overrule *Salcedo* and hold that all class members have standing to pursue their TCPA claims, consistent with congressional intent and consistent with the rulings from all other circuits to consider the issue. This Court should therefore affirm the District Court's order certifying the class and approving the proposed settlement.

August 18, 2022

Respectfully submitted,

/s/*Earl P. Underwood, Jr.*
UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
Fax: (251) 990-0626
epunderwood@alalaw.com
*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 28(b), Fed. R. App. P. 32(a)(7)(B) and Eleventh Circuit Rule 28-1 and 32 because this brief contains 3,233 words, excluding the parts of the brief exempted by Eleventh Circuit Rule 32-4, as counted by Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century SchoolBook font and is double spaced.

18

Respectfully submitted,

/s/ *Earl P. Underwood, Jr.*

UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
Fax: (251) 990-0626
epunderwood@alalaw.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 18, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system, and separately mailed 15 paper copies to the Court.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Respectfully submitted,

*/s/ Earl P. Underwood, Jr.*

UNDERWOOD & RIEMER, P.C.
Earl P. Underwood, Jr.
21 South Section Street
Fairhope, AL 36532
Tel: (251) 990-5558
Fax: (251) 990-0626
epu@urlaw.onmicrosoft.com

*Counsel for Plaintiffs-Appellees*

## COPY OF OPINION

*See attached.*

[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10199

_____

SUSAN DRAZEN,

on behalf of herself and other persons similarly situated,

Plaintiff-Appellee,

Godaddy.com, LLC,

a Delaware Limited Liability Company,

Defendant-Appellee,

*versus*

MR. JUAN ENRIQUE PINTO,

Movant-Appellant.

—————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cv-00563-KD-B

—————————————

Before WILSON, BRANCH, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

We have in this case an argument over the meaning of cou-
pon settlements.  But, because there is an Article III standing prob-
lem with the class, we must vacate the District Court's approval of
class certification and settlement in this case and remand for the
opportunity to revise the class definition.

## I.

In August 2019, Susan Drazen filed a complaint against Go-
Daddy.com, LLC ("GoDaddy") in the Southern District of Ala-
bama alleging that GoDaddy had violated the Telephone Con-
sumer Protection Act of 1991 ("TCPA") when it allegedly called
and texted Drazen solely to market its services and products
through a prohibited automatic telephone dialing system.  *See* 47
U.S.C. § 227(a)(1), (b)(1)(A).  Her case was consolidated with an-
other case that had been litigated by Jason Bennett in the District

of Arizona,[1] Case No. 2:16-cv-03908 (D. Ariz. 2016), and a third related action filed by John Herrick was "incorporated into and resolved" by the resolution of this case, Case No. 2:16-cv-00254 (D. Ariz. 2016).[2]

Drazen and the plaintiffs in the two other related cases, Bennett and Herrick, purported to bring a class action on behalf of similarly situated individuals. After negotiating with GoDaddy, the three plaintiffs submitted a proposed class settlement agreement to the District Court. The class was defined as follows:

(a) All persons within the United States who received a call or text message to his or her cellular telephone from Defendant from November 4, 2014 through December 31, 2016.

(b) Excluded from the term "Settlement Class" are: (1) the trial judges presiding over the Actions; (2) Defendant, as well as any parent, subsidiary, affiliate or control person of Defendant, and the officers, directors, agents, servants or employees of Defendant; (3) the immediate family of any such person(s); (4) any Settlement Class Member who

---

[1] Bennett and Drazen filed a joint motion to transfer venue for Bennett's case to the Southern District of Alabama and to consolidate their cases. The District Court granted that motion.

[2] Bennett alleged that he received unsolicited calls from GoDaddy on his cellphone. Herrick alleged that he received promotional text messaging from GoDaddy on his cellphone.

timely and properly opts out of the settlement;
and (5) Class Counsel, their employees, and their
immediate family.

 The proposed settlement was structured so that GoDaddy would
make available $35 million in settlement funds for claims that were
approved and for settlement costs.  There were two compensation
options for class members, both subject to pro rata reduction in the
event that too many class members opted into the class.  Class
members could either receive $35 in cash or a $150 voucher to be
used exclusively at GoDaddy.  Based on the proposed settlement,
class counsel agreed to ask for no more than 30% in attorneys' fees
in addition to reimbursement of reasonable litigation costs and ex-
penses.  Class counsel also agreed to ask the District Court to award
each named plaintiff $5,000, which GoDaddy did not oppose.

        In response to this motion, the District Court ordered brief-
ing on the application of *Salcedo v. Hanna*, 936 F.3d 1162, 1168
(11th Cir. 2019), to the class as proposed in the settlement agree-
ment.  We held in *Salcedo* that receipt of a single unwanted text
message was not a sufficiently concrete injury to give rise to Article
III standing, *Salcedo*, 936 F.3d at 1168, and the proposed class defi-
nition included individuals who received only one text message
from GoDaddy.  In their briefing, the parties put forth a new class
definition:

    (a)  All persons within the United States to whom, from
         November 4, 2014 through December 31, 2016, De-
         fendant placed a voice or text message call to their

cellular telephone pursuant to an outbound cam-
paign facilitated by the web-based software applica-
tion used by 3Seventy, Inc., or the software pro-
grams and platforms that comprise the Cisco Uni-
fied Communications Manager.

(b) Excluded from the term "Settlement Class" are (1)
the trial judges presiding over the Actions; (2) De-
fendant, as well as any parent, subsidiary, affiliate or
control person of Defendant, and the officers, direc-
tors, agents, servants or employees of Defendant; (3)
the immediate family of any such person(s); (4) any
Settlement Class Member who timely and properly
opts out of the settlement; and (5) Class Counsel,
their employees, and their immediate family.

After considering the briefing of the parties, the District
Court, citing our decision in *Cordoba v. DIRECTV, LLC*, 942 F.3d
1259, 1273 (11th Cir. 2019), determined that only the named plain-
tiffs must have standing. So, according to the District Court, the
standing problem could be resolved by removing Herrick, the text-
message only recipient, from being a named plaintiff. As to "absent
class members," who may have only received a single text message,
the District Court noted that these individuals would only make up

about seven percent of the class based on GoDaddy's representations.[3]

The District Court determined that "even though some of the included class members would not have a viable claim in the Eleventh Circuit, they do have a viable claim in their respective Circuit [because of a circuit split]. Thus, GoDaddy is entitled to settle those claims in this class action although this Court would find them meritless had they been brought individually in the Eleventh Circuit." In other words, the District Court allowed text-message only recipients to remain in the class, even though they lacked Article III standing under our standards.

After conducting a Rule 23(a) analysis for numerosity, commonality, typicality, and adequacy, and a Rule 23(b)(3) analysis for predominance, the District Court approved certification of the class for purposes of settlement in accordance with the proposed settlement agreement, on the condition that Herrick be removed as a named plaintiff.[4] In response, the parties submitted an amended proposed settlement agreement removing Herrick as a class representative. On June 9, 2020, the District Court then

---

[3] Based on GoDaddy's analysis, 91,000 individuals out of the approximately 1.26 million class members received only a single text message from GoDaddy.

[4] The District Court did not conduct an analysis of the Rule 23(e)(2) factors, which is mandatory when "a class [is] proposed to be certified for purposes of settlement." Fed. R. Civ. P. 23(e).

certified the class for settlement with that change and preliminarily approved the settlement agreement, requiring any motions for attorneys' fees to be filed by July 24, 2020, any objections within the class to attorneys' fees be filed by July 31, 2020, and any objectors to object to the settlement itself by August 31, 2020.

Next, on July 24, 2020, class counsel moved for attorneys' fees equal to 30% of the total settlement fund of $35 million, which came out to $10.5 million, and $105,410.51 in costs. On August 11, 2020, the District Court approved class counsel receiving 25% of the common fund, $8.75 million, in attorneys' fees since "the issues in this case were not complex" and the "average benchmark" was 25%. The District Court also granted the $105,410.51 in costs and expenses. Finally, the District Court granted $5,000 to Drazen, Bennett, and Herrick for their services as settlement class members.

Then, on August 31, 2020, Juan Pinto objected to the settlement. He explained that while the class notice had identified an objection deadline of August 31, 2020, the District Court had awarded attorneys' fees on August 11, 2020, twenty days ahead of the objection deadline. For our purposes, his most important argument is that this settlement was subject to the Class Action Fairness Act ("CAFA") because it was a coupon settlement under 28 U.S.C. § 1712(e).[5] In other words, because GoDaddy vouchers

---

[5] Pinto also argued that the class notice violated due process. He does not raise that argument before us, so we won't consider it further here.

were a part of the settlement, Pinto believed that these vouchers were coupons under CAFA.[6]  The punchline is that if the vouchers are coupons under CAFA then the attorneys' fees for class counsel in this case would be subject to heightened judicial scrutiny and would have to be based on the "value to class members of the coupons that are redeemed."  28 U.S.C. § 1712(a), (e).  In other words, basing attorneys' fees on the common fund value of $35 million would be out the window, and a more complicated calculation based on coupon redemption and the cash settlement fund would take its place.  In any event, attorneys' fees would likely be lower than what the District Court had calculated under its original method.[7]

_____

[6] *See* 28 U.S.C. § 1712(a) ("If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed."); *id.* § 1712(e) ("In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members. The court, in its discretion, may also require that a proposed settlement agreement provide for the distribution of a portion of the value of unclaimed coupons to 1 or more charitable or governmental organizations, as agreed to by the parties. The distribution and redemption of any proceeds under this subsection shall not be used to calculate attorneys' fees under this section.").

[7] Pinto argued that only the redeemed coupons could be used for a percentage-based fee and that a lodestar could be used for the cash portion of the settlement.

In response to Pinto's argument that the District Court had prematurely awarded attorneys' fees, the District Court amended its attorneys' fees order to make all its previous awards "subject to a final evaluation and review of any objections and at the final approval hearing." The District Court did not alter the substance of the awards at this time.

After receiving further briefing from both the parties and Pinto, the District Court issued its final order, incorporating its earlier findings that the class met the standards of Rule 23(a) and Rule 23(b)(3). It noted that there were 1,237,296 class members in the settlement and that as of October 22, 2020, there were only 24,059 completed claims, 11,662 for cash and 12,396 for vouchers. The District Court addressed Pinto's objection, deciding that the settlement was not a coupon settlement under CAFA. However, the District Court did decide to reduce attorneys' fees to 20% of the common fund, or $7,000,000, because "the results obtained for the plaintiffs d[id] not justify an award at the high end of the benchmark."[8] And, finally, the District Court awarded the $105,410.51 in costs that class counsel had requested through the plaintiffs.

---

[8] Separately, the District Court also disapproved the $5,000 awards for the lead plaintiffs since our decision in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020), forbade that practice.

And, with that, the class action settlement received final approval with attorneys' fees and costs.  Pinto timely appealed.[9]

## II.

We review the District Court's order granting final approval to the settlement for abuse of discretion. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).  We review questions of statutory interpretation, like the application of CAFA to coupon settlements, de novo.  *United States v. Lumley*, 135 F.3d 758, 759–60 (11th Cir. 1998).  And we review de novo our own subject-matter jurisdiction.  U.S. Const. art. III, § 2; *Williams v. Chatman*, 510 F.3d 1290, 1293 (11th Cir. 2007) ("Federal courts are obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking." (internal citation and quotation marks omitted)).

## III.

After that complicated procedural history, we start with the basic question of whether we have subject-matter jurisdiction in this case.  The parties did not brief the issue before us, apparently assuming the class definition passed Article III standing muster.  Not to hide the ball, we hold that the class definition does not meet Article III standing requirements, so we vacate the District Court's

---

[9] Pinto and the parties submitted to the District Court a proposed settlement after Pinto's appeal, which the District Court denied.

decision to grant final approval of the settlement and remand to give the parties an opportunity to revise the class definition.

Our starting point is the Supreme Court's decision in *Frank v. Gaos*, 139 S. Ct. 1041 (2019). There, five class members objected to the district court's preliminary approval of a settlement because the settlement agreement only provided for *cy pres* relief. *Gaos*, 139 S. Ct. at 1045. After a hearing on the matter, the district court gave the settlement final approval, and the class members appealed to the Ninth Circuit. *Id.* After the parties had briefed the merits issue of *cy pres* relief before the Ninth Circuit but before the Ninth Circuit issued a decision, the Supreme Court decided *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540 (2016). In *Spokeo*, the Supreme Court held that a plaintiff does not automatically satisfy Article III standing requirements, just because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."[10] *Gaos*, 139 S. Ct. at 1045 (quoting *Spokeo*, 578 U.S. at 341, 136 S. Ct. at 1549). The Ninth Circuit affirmed settlement of the class action on the merits without addressing the

---

[10] Article III standing has three components: 1) injury-in-fact that is concrete and particularized and actual and imminent, 2) causation, and 3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136–37 (1992). *Spokeo* was specifically concerned with the concreteness prong of the injury-in-fact inquiry. *Spokeo*, 578 U.S. at 339, 136 S. Ct. at 1548. In *Spokeo*, the Supreme Court explained that plaintiffs must still demonstrate a concrete injury, even when a plaintiff has alleged a statutory violation. *Id.* at 341, 136 S. Ct. at 1549. In other words, a statutory violation does not necessarily meet the requirements of Article III for standing purposes.

potential Article III standing problem, and the objectors appealed to the Supreme Court. *Id.*

The question before the Supreme Court was "whether a class action settlement that provides a *cy pres* award but no direct relief to class members satisfies the requirement that a settlement binding class members be 'fair, reasonable, and adequate.' Fed. Rule Civ. Proc. 23(e)(2)." *Id.* But rather than address the certified question, the Supreme Court evaluated the Article III standing issue and explained that Article III's standing requirements "extend[] to court approval of proposed class action settlements." *Id.* at 1046. The Supreme Court explained that while ordinarily in non-class litigation parties may settle whenever they want without court intervention, Fed. R. Civ. P. 41(a)(1)(A), not so in class litigation, where a settlement may only be finalized with district court approval, Fed. R. Civ. P. 23(e). *Gaos*, 139 S. Ct. at 1046. And, the *Gaos* court explained, "federal courts lack jurisdiction if no named plaintiff has standing." *Id.* The Supreme Court vacated the settlement and remanded the case in order for the lower courts to consider the standing issue "in light of *Spokeo*" because "[r]esolution of the standing question should take place in the District Court or the Ninth Circuit in the first instance." *Id.*

From *Gaos*, we take the following: even at the settlement stage of a class action, we must assure ourselves that we have Article III standing at every stage of the litigation. U.S. Const. art. III, § 2; *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) ("To have a case or controversy, a litigant must establish that he

has standing, which must exist throughout all stages of litigation."); *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) (evaluating Article III standing of plaintiffs on appeal after a full trial below). That requirement is derived from Article III as well as the unique nature of class action settlements as laid out in Rule 23(e), which require court approval.

Beyond the holding in *Gaos*, we have another lodestar principle that guides our analysis, and that principle is drawn from *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). There are two key takeaways from *TransUnion* for our purposes here: 1) To satisfy the concrete injury requirement for standing, a plaintiff alleging a statutory violation must demonstrate that history and the judgment of Congress support a conclusion that there is Article III standing; 2) "Every class member must have Article III standing in order to recover individual damages." *TransUnion*, 141 S. Ct. at 2204–05, 2208. The first point is mainly a refining and reiteration of *Spokeo*. *See Spokeo*, 578 U.S. at 340–41, 136 S. Ct. at 1549. The second requires a bit more discussion.

## IV.

To understand how *TransUnion*'s rule that every class member must have Article III standing to recover damages fits into this case, we must return to the record below. When the District Court certified the class under that definition, it was operating under two principles. First, citing *Cordoba*, it said that only the named plaintiff must have standing. *Cordoba*, 942 F.3d at 1273. Second, citing the Fifth Circuit's decision in *In re Deepwater*

*Horizon*, the District Court decided that even if there were plain-tiffs in the class definition who did not have standing, because they might have standing in another circuit, we should allow them to remain a part of the class here because it is a nationwide class ac-tion.  *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014).  For instance, the District Court pointed out that we held in *Salcedo v. Hanna* that a plaintiff has not suffered a concrete injury for Article III standing purposes when she has received a single un-wanted text message.  *See Salcedo v. Hanna*, 936 F.3d 1163, 1172 (11th Cir. 2019).  The District Court contrasted our holding with that of the Ninth Circuit in *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017), which it interpreted as holding that a single unwanted text message is sufficient to estab-lish a concrete injury for Article III standing purposes.

So, the District Court conditioned certification on the re-moval of the text-message-only recipient, Herrick, as a named class representative to comply with *Cordoba*.  And the District Court reasoned that the class definition could remain as it was, because the plaintiffs in the class who had only received one unwanted text message would have standing in another circuit to bring suit.

Our problem in this case is that the District Court's granting of this class definition runs headlong into *Cordoba* and *TransUn-ion*.[11]  Starting with the District Court's use of *Cordoba*, we

---

[11] Of course, we do not fault the District Court for failing to be clairvoyant. The District Court issued its grant of certification of the class for settlement

acknowledge that *Cordoba* says that "[f]or a class to be certified, [only] the named plaintiff must have standing." *Cordoba*, 942 F.3d at 1267. But *Cordoba* also counsels that "whether absent class members can establish standing may be exceedingly relevant to the class certification analysis required by Federal Rule of Civil Procedure 23," and "at some time in the course of the litigation the district court will have to determine whether each of the absent class members has standing before they could be granted any relief." *Id.* at 1273, 1274. So, the *Cordoba* court located the standing analysis of unnamed class members at the certification stage in Rule 23 rather than as a standalone standing requirement under Article III of the Constitution itself. Regardless of whether standing presents itself as an inquiry under Rule 23 or Article III for certification purposes, *TransUnion* has affirmed the reasoning of *Cordoba*. To recover individual damages, all plaintiffs within the class definition must have standing. *TransUnion*, 141 S. Ct. at 2208. Here, the District Court's certification of the class was only pursuant to a settlement. So, the *Cordoba* inquiry into standing for certification purposes through Rule 23 merges with the *TransUnion* analysis of damages recovery to lead us to the following conclusion: when a class seeks certification for the sole purpose of a damages

---

and preliminary approval of the class settlement on June 9, 2020, a little over a year before the Supreme Court's decision in *TransUnion*, and its final order approving class settlement on December 23, 2020, still six months before *TransUnion* was decided. But we are bound to now apply the Supreme Court's decision in *TransUnion* in this appeal. *See generally United States v. Campbell*, 26 F.4th 860 (11th Cir. 2022) (en banc).

settlement under Rule 23(e), the class definition must be limited to those individuals who have Article III standing. If every plaintiff within the class definition in the class action in *TransUnion* had to have Article III standing to recover damages after trial, logically so too must be the case with a court-approved class action settlement.

Before turning to the standing analysis as applied to the plaintiffs in this case, we address the District Court's second guiding principle that unnamed plaintiffs with no standing in our circuit may be entertained as part of the nationwide class because they have might standing in another circuit. The case the District Court cites for this proposition, *In re Deepwater Horizon*, says nothing of the sort. In that case, the Fifth Circuit declined to choose between two different methods of evaluating class standing under Article III—one based on the named plaintiffs and the other based on the class definition—because the class at issue met both standards. *See In re Deepwater Horizon*, 739 F.3d at 803 ("As contemplated by the Class Definition, therefore, the class contains only persons and entities that possess Article III standing."). At most, *In re Deepwater Horizon* stands for the proposition that absent class members need not "prove their claims prior to settlement under Rule 23(e)."[12] *Id.* at 807. Nowhere does that case suggest that we check Article III standing at the door when dealing with a class action.

---

[12] The District Court seems to have conflated standing with merits when it said that "the class includes absent members who received only one text but <u>would</u> have a viable claim in their respective Circuit. So the issue is whether this Court can certify a class wide settlement that includes claims that are

*TransUnion* says that we can't award damages to plaintiffs who do not have Article III standing. And Article III standing goes to the heart of our jurisdiction to hear cases in the first place. We cannot, therefore, check our Article III requirements at the door of the class action. Any class definition that includes members who would never have standing under our precedent is a class definition that cannot stand. With that background, we turn to the standing analysis of the actual plaintiffs in this case.

## V.

The District Court certified the class for settlement with the following class definition:

> (a) All persons within the United States to whom, from November 4, 2014 through December 31, 2016, Defendant placed a voice or text message call to their cellular telephone pursuant to an outbound campaign facilitated by the web-based software application used by 3Seventy, Inc., or the software programs and platforms that comprise the Cisco Unified Communications Manager.

So, the universe of plaintiffs under this definition includes any individual who received a text message or phone call on their cellphone

---

viable in some circuits but not in others . . . . [E]ven though some of the included class members would not have a viable claim in the Eleventh Circuit, they do have a viable claim in their respective Circuit." Article III standing does not go to the merits or viability of the claim itself but rather to our jurisdiction to hear the case.

from GoDaddy in the specified period.  As discussed above, under *Salcedo*, we have said that a single unwanted text message is not sufficient to meet the concrete injury requirement for standing.  So, the class definition cannot stand to the extent that it allows standing for individuals who received a single text message from Go-Daddy.  Otherwise, individuals without standing would be receiving what is effectively damages in violation of *TransUnion*.

The more difficult question is whether individuals who have received a single cellphone call also have standing.[13]  *See Salcedo*, 936 F.3d at 1170 ("[C]ell phone calls may involve less of an intrusion than calls to a home phone.").  Without the benefit of *TransUnion*, we held in *Glasser v. Hilton Grand Vacations Company, LLC*, addressing the same statute as the one in this case, that "receipt of more than one unwanted telemarketing call" was sufficient to meet the "concrete injury" requirement for Article III standing.  *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306 (11th Cir. 2020) (quoting *Cordoba*, 942 F.3d at 1270 ("The receipt of more than one unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing.")).[14]

---

[13] We note that the named plaintiffs Bennett and Drazen alleged receiving multiple telephone calls, which is sufficiently similar to the tort of intrusion upon seclusion to meet the minimum requirements of Article III standing under our current case law.  *Cordoba*, 942 F.3d at 1270; *but see infra* n.14.

[14] As a side note, we have been less than a model of clarity in *Cordoba* and *Glasser* for purposes of Article III standing analysis.  *Cordoba* involved an FCC

regulation promulgated pursuant to the TCPA that "requir[ed] telemarketers to maintain lists of individuals who have asked not to receive calls from particular callers – so-called 'internal do-not-call lists.'" *Cordoba*, 942 F.3d at 1264. And the only plaintiffs in the class action in that case who had standing were those who received telemarketing calls after they had asked not to be called. *Id.* at 1272. *Glasser*, which dealt with the same statute as the one in our case, involved two individuals who alleged that they had received calls from automatic dialing systems in violation of the TCPA. *Glasser*, 948 F.3d at 1305–06. There, we said that because *Cordoba* had held that "more than one unwanted telemarketing call" was sufficient to confer standing, the plaintiffs in *Glasser* had standing. *Id.* at 1306.

We have a problem here. "Unwanted" in *Cordoba* had a specific meaning—individuals who were called after asking not to be called. "Unwanted" in the context of the statute at issue in our case and in *Glasser* refers to the fact that individuals, though never asking not to be called, were called by allegedly prohibited means under the TCPA—automatic telephone dialing systems. So, to us, the standing analysis in *Cordoba* and the standing analysis in *Glasser* and our case may not necessarily be the same. In *Cordoba*, people asked not to be called—period. In *Glasser* and in our case, the individuals are not complaining about the fact they were called. They are complaining about the fact that the automatic telephone dialing system did the calling. In other words, the injury is not the call but rather the dialing system used, and it is not clear that GoDaddy's compliance with the statute would have prevented the plaintiffs from being called. The difference between *Cordoba* and *Glasser* and our case may present the need to reexamine *Glasser* in the future because it may affect both the injury-in-fact requirement and the causation analysis. At the very least, *Cordoba* and *Glasser* were decided pre-*TransUnion*, and under *TransUnion* plaintiffs have the burden of establishing Article III standing for statutory violations by alleging facts that would allow us to find a common-law analogue to the injury in question. *See TransUnion*, 141 S. Ct. at 2204. *Glasser* conducted no historical analysis and is suspect on that ground alone.

But we did not decide whether a single phone call to a cellphone was a concrete injury for Article III standing purposes. *See Salcedo*, 936 F.3d at 1169, 1172 n.11 ("As we have discussed, both the judgment of Congress and history here reveal concerns about intrusions into the privacy of the home and interferences with property that do not readily transfer to the context of cell phones.").

Because we have not received briefing on whether a single cellphone call is sufficient to meet the concrete injury requirement for Article III standing and because *TransUnion* has clarified that courts must look to history to find a common-law analogue for statutory harms, we think the best course is to vacate the class certification and settlement and remand in order to give the parties an opportunity to redefine the class with the benefit of *TransUnion* and its common-law analogue analysis.

**VACATED AND REMANDED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 27, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 21-10199-BB
Case Style: Susan Drazen, et al v. Juan Pinto
District Court Docket No: 1:19-cv-00563-KD-B

Electronic Filing

All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call <u>Tonya L. Richardson, BB</u> at <u>(404) 335-6174</u>.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion