[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10199

_____

SUSAN DRAZEN,
on behalf of herself and other persons similarly situated,

Plaintiff-Appellee,

Godaddy.com, LLC,
a Delaware Limited Liability Company,

Defendant-Appellee,

*versus*

MR. JUAN ENRIQUE PINTO,

Movant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cv-00563-KD-B

———————————————

Before WILSON, BRANCH, and TJOFLAT, Circuit Judges.

PER CURIAM:

After considering Drazen's petition for panel rehearing, we grant it, withdraw our previous opinion published at 101 F.4th 1223, and substitute this opinion for it. This opinion is the same as our previous one, except that we clarify that the opinion of this Court is delivered solely in Section III.C.iii, in which Judges Wilson, Branch, and Tjoflat joined. *See Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1031 n.6 (11th Cir. 2003) (explaining that the "opinion of the Court" is that in which a majority of the participating judges join)."

TJOFLAT, Circuit Judge:

The consolidated class actions involved in this appeal[1] were

———————————————

[1] The consolidated class actions are: *Drazen v. GoDaddy.com, LLC* (*Drazen*), No. 1:19-cv-00563-KD-B (S.D. Ala. filed Aug. 21, 2019); *Bennett v. GoDaddy.com, LLC* (*Bennett*), No. 1:20-cv-00094-KD-B (S.D. Ala. filed June 20, 2016); and *Herrick v. GoDaddy.com LLC* (*Herrick*), No. 2:16-cv-00254-DJH (D. Ariz. filed Jan. 28, 2016). On May 14, 2018, the *Herrick* District Court granted GoDaddy summary judgment. Herrick appealed to the U.S. Court of Appeals for the Ninth Circuit. *Herrick v. GoDaddy.com, LLC*, No. 18-16048 (9th Cir. filed June 6, 2018). The Ninth Circuit stayed the appeal pending the resolution of the instant

21-10199                Opinion of the Court                3

brought under the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227.[2]    The Plaintiffs alleged that

---

appeal.  The District Court below "incorporated" *Herrick* into *Drazen* and *Bennett*, and "resolved" Herrick's claims against GoDaddy in the final judgment it entered.  *Drazen v. Pinto (Drazen I)*, 41 F.4th 1354, 1356 (11th Cir. 2022), *vacated on reh'g en banc*, 61 F.4th 1297 (11th Cir. 2023).

[2] The TCPA creates a private cause of action.  47 U.S.C. § 227(b)(3) states:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

4                    Opinion of the Court                    21-10199

GoDaddy.com,[3] LLC violated the TCPA[4] by using an automatic

---

[3] For those unfamiliar, GoDaddy, Inc. is a publicly traded multi-billion-dollar U.S. corporation that markets itself as "the world's largest services platform for entrepreneurs around the globe." *See* NASDAQ, *GoDaddy Inc.*, https://www.nasdaq.com/market-activity/stocks/gddy (last visited Feb. 20, 2024) (listing a market cap of $15.4 billion); GoDaddy, *About Us*, https://aboutus.godaddy.net/about-us/overview/default.aspx (last visited Feb. 4, 2024). It offers a variety of services to its some twenty-one million customers, which range from small noncommercial businesses to large corporations. *See* GoDaddy, Inc., Annual Report (Form 10-K) (Dec. 31, 2020). Those services include domain registration, website hosting, payment processing, and marketing support.

[4] Relevant here are the restrictions and prohibitions listed in 47 U.S.C. § 227(b)(1). Section 227(b)(1) states:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> . . . .
>
> > > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

telephone dialing system (ATDS)[5] to make telephone calls or send text messages to their telephone numbers or cell phones and the numbers or phones of the class members they sought to represent. The parties negotiated a settlement: GoDaddy would provide up to $35 million to pay both class members' claims and up to $10.5 million to their lawyers as attorney's fees. Shortly after the Drazen lawsuit was filed and the Bennett case was consolidated, the Plaintiffs moved the District Court pursuant to Rule 23(e)(1) to: (1) certify a Rule 23(b)(3)[6] class for settlement purposes, (2) approve

---

[5] The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

[6] Under Federal Rule of Civil Procedure 23(b)(3),

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> . . . .
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

preliminarily the settlement agreement the parties had negotiated, and (3) approve their draft of the notice of proposed settlement to be directed to the class pursuant to Rule 23(c)(2).[7]

The District Court, presumably applying Rule 23(e)(1), determined that the Plaintiffs had produced evidence sufficient to show that the Court would likely approve the proposed settlement and certify the class for purposes of judgment on the proposal. *See* Fed. R. Civ. P. 23(e)(1). Thus, it granted the Plaintiffs' motion and appointed the Plaintiffs' lawyers as Class Counsel. In its order granting the motion, the District Court directed that notice of the proposed settlement be given to the class pursuant to Rule 23(e)(1)(B) and that it contain the information specified in Rule 23(c)(2)(B)(i)–(vii).[8]

---

   (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

   (D) the likely difficulties in managing a class action.

[7] Pls.' Mot. at 13–15, *Drazen*, ECF No. 20.

[8] In directing notice to the class, the District Court said:

  "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individualized notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice must contain information in plain, easily understood language, and should include the nature of the action, the class definition(s)[,] the *claims*, and the members' rights. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

On July 9, 2020, the day the Settlement Administrator emailed the Rule 23(c)(2) notice to the class, the U.S. Supreme Court granted certiorari in *Facebook, Inc. v. Duguid* "to resolve a conflict among the Courts of Appeals regarding whether an autodialer must have the capacity to generate random or sequential phone numbers." 592 U.S. 395, 401–02 (2021). The issue before the Court was the same as the principal issue in the Plaintiffs' consolidated actions: "whether th[e] definition [of an ATDS] encompasses equipment [like GoDaddy used] that can 'store' and dial telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *See id*. at 399 (fourth alteration in original). The Court held that it did not. *Id*. "To qualify as an [ATDS], a

_____

. . . .

    As to the form of the notice, it must "contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average class member." *Twigg*, 153 F.3d at 1227 (internal quotes omitted). "Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Id*. (internal quotes omitted). Such information includes "the relief available, the steps necessary to opt out, and the implications of remaining a member of the class." *Adams*, 493 F.2d at 1286.

Order at 4, 5–6, *Drazen*, ECF No. 49 (emphasis added).

We note that for classes certified under Rule 23(b)(3), the notice must include "the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(2)(B)(iii). For the full text of Rule 23(c)(2), see *infra* note 38. This requirement is discussed more fully in Section III.B.ii.

device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.*

Class Counsel realized that if the proceedings in their cases were stayed pending the Supreme Court's decision in *Facebook*, and *Facebook* was decided in a way that favored GoDaddy, the $2,267,570 of class members' claims[9] would likely be worthless and the attorney's fees would not be forthcoming. To avoid that scenario, Class Counsel would have to persuade the District Court to enter a final judgment that approved the settlement agreement and granted their motion for attorney's fees *before* the Supreme Court decided *Facebook*. So, once the time for class members to file claims expired, Class Counsel moved the District Court to hold a Rule 23(e)(2) final hearing to certify the class, approve the settlement agreement as "fair, reasonable, and adequate," approve the Rule 23(c)(2) notice, and grant their motion for attorney's fees.

Class Counsel moved the District Court to do that in the nick of time. The District Court heard their motion six days after the Supreme Court heard argument in *Facebook*.[10] The District Court issued its final judgment and order approving the proposed settlement agreement, class, and attorney's fees three months

---

[9] $35 cash checks multiplied by 11,662 claims ($408,170) plus $150 vouchers multiplied by 12,396 claims ($1,859,400) equals $2,267,570. *See infra* Section I.E.ii.

[10] The District Court also denied Class Counsel's request to grant each class representative a $5,000 service award. *Drazen*, 2020 WL 8254868, at *14.

before the Supreme Court decided *Facebook*, which was favorable to GoDaddy as Class Counsel anticipated.[11]

The District Court granted Class Counsel's motion over the objection of Juan Pinto, the appellant here. Pinto made a couple of arguments. First, he argued that the District Court ruled on the motion for attorney's fees prematurely because it was before the deadline for objections, a violation of Rule 23(h) and due process. Second, Pinto's main objection was that the District Court's order approving the settlement agreement should be vacated as an abuse of discretion because the fees awarded Class Counsel were far in excess of what the class members would receive. This breached the District Court's fiduciary duty and made the settlement agreement unfair, unreasonable, and inadequate under Rule 23(e)(2)(C)(iii). If the order was not vacated, he contended that the District Court should be instructed to reconsider the attorney's fees issue because it failed to consider the issue under the heightened scrutiny required by the Class Action Fairness Act (CAFA), 28 U.S.C. § 1712, in cases involving "coupon settlements."

In this appeal,[12] we consider whether the District Court abused its discretion in approving the proposed settlement

---

[11] The District Court issued its order on December 23, 2020, *id.*, and the Supreme Court issued the *Facebook* decision on April 1, 2021, 592 U.S. 395. *See infra* Section I.E.iii.

[12] This is the third time this appeal has been before this Court. We first entertained it in June 2022. *Drazen I* (oral argument held June 9, 2022). To cure a standing problem created by the application of *Salcedo v. Hanna*, 936 F.3d 1162

agreement, certifying the class, granting Class Counsel's motion for attorney's fees, and entering the final judgment. We conclude that it did in several ways. First, it failed to consider the 2018 amendments to Rule 23(e)(2). The District Court also overlooked evidence indicating that the settlement agreement was the product of collusion, such as the overbroad release provision and inadequate relief provided to the class relative to what Class Counsel and GoDaddy received. Next, the notice of the proposed settlement the District Court ordered failed to inform the absent class members of the "claims, issues, or defenses" in the Plaintiffs' cases as required by Rule 23(c)(2)(B)(iii), fundamental due process, and the Court's fiduciary obligation to the absent class members. Finally, the District Court erred in three ways when it calculated attorney's fees because it: (1) misapplied Rule 23(h), (2) treated the settlement as a common fund when it was claims-made, and (3) determined that this was not a settlement involving coupons under CAFA and thus declined to examine Class Counsel's motion for attorney's fees with CAFA-mandated scrutiny and procedures.

In concluding that the District Court abused its discretion and that its judgment must be vacated, we are not unmindful that

_____

(11th Cir. 2019), we "vacate[d] the District Court's approval of class certification and settlement . . . and remand[ed] for the opportunity to revise the class definition." 41 F.4th at 1355. The mandate did not issue, and the case was reheard en banc to address the vitality of *Salcedo*'s standing holding. *Drazen v. Pinto (Drazen II)*, 74 F.4th 1336, 1342 (11th Cir. 2023) (en banc). We addressed that issue and sent the case back to the original panel to decide this appeal. *See id.* at 1346.

Class Counsel contributed to the abuse. As officers of the court, they should have reminded the District Court that Rule 23(c)(2)(B)(iii) required that the notice of settlement sent to the class members inform them about *Facebook*. They knew that the Supreme Court's *Facebook* decision would decide *the dispositive issue* in their clients' cases: whether systems like what GoDaddy used here came under the definition of an ATDS in the TCPA.

In deciding this appeal, we must go back to 2016 when the present litigation with GoDaddy started. Some of the lawyers acting as Class Counsel here sued GoDaddy under the TCPA in the District of Arizona on behalf of John Herrick—a class member in these consolidated actions.[13] They were unsuccessful; the District Court there granted GoDaddy summary judgment because the system GoDaddy used to send text messages to Herrick and potential GoDaddy customers was not an ATDS. So, after appealing the judgment to the U.S. Court of Appeals for the Ninth Circuit, they joined forces with the remaining Class Counsel and made another go of it in the Southern District of Alabama, in the cases here. Thus, before we discuss the reasons for vacating the final judgment in the cases here, we must look at Herrick's case in the District of Arizona and what took place in the Southern District of Alabama thereafter in the consolidated cases now before us.

We split our opinion into four parts. Part I describes the background of how this case came to be before us. Part II

---

[13] We note that, among other firms, the law firm Bock, Hatch, Lewis & Oppenheim, LLC, represents both John Herrick and Susan Drazen.

establishes the general legal standards applicable to our review. Part III discusses why the District Court's judgment must be vacated and the cases remanded for further proceedings because the Court failed to follow those standards. And Part IV concludes with a summary.

Table of Contents

I. Background ................................................................ 15

    A. *Herrick's TCPA Case in the District of Arizona* .............*15*

    B. *Southern District of Alabama Proceedings After Herrick's Appeal* ....................................................................*19*

        i. Bennett's Case ..................................................... 19

        ii. Drazen's Case ..................................................... 22

    C. *Preliminary Approval of the Proposed Settlement Agreement, Class Certification, and Notice* ..................................*24*

        i. Preliminary Approval of the Proposed Settlement Agreement and Conditional Class Certification ................. 24

        ii. District Court's Order Granting Class Counsel's Motion ............................................................................... 26

        iii. Notice ................................................................ 28

    D. *Attorney's Fees and Pinto's Objections* .........................*31*

        i. Class Counsel's Motion for Attorney's Fees .......... 31

        ii. The District Court's Order ................................... 35

        iii. Pinto's Objection ................................................ 37

        iv. The District Court's Response to Pinto's Objection ............................................................................... 38

    E. *Events Following Certiorari in Facebook* ......................*39*

        i. Class Counsel Informs the District Court About *Facebook* ................................................................. 39

        ii. Class Counsel Moves for Final Approval of the Proposed Settlement Agreement .......................................... 41

iii.  District Court Hearing .......................................... 42

iv.  The District Court's Approval Order and Final Judgment ........................................................................ 46

II.  Legal Standard ............................................................. 53

III.  Discussion ..................................................................... 54

*A.  Issues Related to Rule 23(e)* .........................................*56*

i.  Rule 23(e) and the District Court's Fiduciary Duties .......................................................................................... 56

ii.  The District Court Erroneously Approved the Settlement Agreement as Fair, Reasonable, and Adequate . 60

iii.  Class Counsel Induced the District Court's Error .......................................................................................... 68

*B.  The Notice Did Not Comply with Rule 23(c) and Due Process* .........................................................................................*70*

i.  Review of Issues Not Raised Below or Briefed on Appeal ................................................................................. 70

ii.  The District Court's Rule 23(c)(2) and Due Process Errors ................................................................................. 72

*C.  Attorney's Fees Were Not Calculated Properly*...............*79*

i.  Rule 23(h) ............................................................. 79

ii.  Claims-made v. Common Fund Settlements ....... 81

iii.  The Class Action Fairness Act Applies Because the Settlement was a Coupon Settlement ................................. 88

IV.  Conclusion................................................................. 107

# I. Background

The procedural and factual history of this appeal is complicated, but its accuracy is paramount to our analysis. To make things clear, we outline the events that brought the case to us as follows. Section I.A. describes the proceedings in the TCPA case Herrick brought against GoDaddy in the District of Arizona. Section I.B. covers what transpired in the Southern District of Alabama following Herrick's appeal to the Ninth Circuit. Section I.C. covers Class Counsel's motion for the preliminary approval of the proposed Settlement Agreement and the certification of a class for the purpose of settlement, the District Court's order granting the motion, and the sending of the notice of settlement to the class members. Section I.D. concerns Class Counsel's motion for attorney's fees, the District Court's order granting the motion, Pinto's objection to the order, and the District Court's order issued in response. Section I.E. describes what happened in the consolidated cases as *Facebook* was proceeding in the Supreme Court. It details the hearing where the District Court considered Class Counsel's motions for final approval of the proposed Settlement Agreement and for attorney's fees, as well as Pinto's objections, and then entered final judgment.

## A. Herrick's TCPA Case in the District of Arizona

On January 28, 2016, John Herrick sued GoDaddy under the TCPA in the District of Arizona.[14]  Herrick purported to represent

---

[14] *See* Complaint, *Herrick*, ECF No. 1.

a Rule 23(b)(3) class consisting of "[a]ll persons in the United States who received one or more unsolicited text messages sent by or on behalf of GoDaddy after October 15, 2013."[15]

Herrick's complaint, which was amended on August 9, 2016, alleged the same TCPA violations subsequently asserted in the complaints in the consolidated actions here, *Drazen* and *Bennett*.[16] Herrick's amended complaint asserted that GoDaddy violated 47 U.S.C. § 227(b)(1)(A)(iii) by employing an ATDS to dial his phone number and the phone numbers of his proposed class members and send them text messages.[17] He also asserted that the ATDS had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.[18] In his prayer for relief, Herrick sought: (1) statutory damages of $500 per text message under § 227(b)(3)(B)

---

[15] *Id*. at 8.

[16] Amended Complaint, *Herrick*, ECF No. 27. For convenience we sometimes refer to *Drazen* and *Bennett* collectively as *Drazen/Bennett*. As noted above, the only material difference between the complaints in *Herrick* and in *Drazen/Bennett* is that *Herrick*'s class was restricted to violations involving text messages whereas the complaints in *Drazen/Bennett* involved phone calls and text messages.

[17] *Id*. at 15–19. On May 14, 2018, in its order granting GoDaddy summary judgment, the *Herrick* court stated: "GoDaddy contracted with a web-based software application company called 3Seventy, Inc. ('3Seventy') to send a one-text marketing campaign to nearly 100,000 of its customers using its 3Seventy Platform." *Herrick v. GoDaddy.com LLC*, 312 F.Supp.3d 792, 793 (D. Ariz. 2018), *appeal docketed*, No. 18-16048 (9th Cir. June 6, 2018).

[18] Amended Complaint, *Herrick*, ECF No. 27 at 18–19.

and up to $1,500 per text message sent willfully or knowingly, and (2) an injunction prohibiting GoDaddy from "engaging in the same or similar practices."[19]

On March 31, 2017, following discovery, GoDaddy moved the District Court for summary judgment. Alternatively, GoDaddy moved the Court to stay the proceedings pending the Ninth Circuit's decision in *Marks v. Crunch San Diego, LLC*,[20] regarding the proper interpretation of an ATDS.[21] The issue in *Marks* was whether, as the District Court held,[22] the messaging system the

---

[19] *Id.* at 19–20.

[20] 904 F.3d 1041 (9th Cir. 2018), *abrogated by Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021).

[21] The Ninth Circuit had deferred its decision in *Marks* until the U.S. Court of Appeals for the D.C. Circuit decided *ACA International v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018). *See Marks*, 904 F.3d at 1049. The D.C. Circuit decided *ACA International* on March 16, 2018, and the Ninth Circuit decided *Marks* on September 20, 2018.

[22] The District Court, in granting the defendant summary judgment, held that:

> The platform used by Defendant does not have the present capacity to store or produce numbers to be called, using a random or sequential number generator, and to dial those numbers. Numbers only enter the system through one of the three methods listed above, and all three methods require human curation and intervention. None could reasonably be termed a "random or sequential number generator." Thus, because the Textmunication platform lacks a random or sequential number generator, it is not currently an ATDS.

*Marks v. Crunch San Diego, LLC*, 55 F.Supp.3d. 1288, 1292 (S.D. Cal. 2014) (internal citation omitted), *vacated and remanded*, *Marks*, 904 F.3d 1041.

defendant used to send text messages, which otherwise would be prohibited by the TCPA, was not an ATDS "because it lacked the present or potential capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Marks*, 904 F.3d at 1043 (quoting 47 U.S.C. § 227(a)(1)).

The District Court in *Herrick* did not wait for the Ninth Circuit's decision on that issue before ruling on GoDaddy's motion for summary judgment. On May 14, 2018—four months before *Marks* was decided—the Court granted the motion and dismissed Herrick's TCPA action on the ground that the system GoDaddy used to send the text messages to Herrick's phone was not an ATDS. As the Court put it:

> The 3Seventy Platform used by GoDaddy did not have the [capacity] "to store or produce numbers to be called, using a random or sequential number generator." Numbers that were called could only be inputted into the 3Seventy Platform by a preprogrammed file or list provided by the user; the Platform could not randomly or sequentially generate these numbers by itself. Moreover, although it may be theoretically plausible that the 3Seventy Platform could be reprogrammed to have this capacity, it is undisputed that to enable such capability, a user would have to do much more than simply press a button.

*Herrick v. GoDaddy.com LLC*, 312 F.Supp.3d 792, 800 (D. Ariz. 2018) (first quoting 47 U.S.C. § 227(a)(1), and then citing *ACA Int'l*, 885 F.3d at 695), *appeal docketed*, No. 18-16048 (9th Cir. June 6, 2018).

About one and a half years after Herrick appealed the District Court of Arizona's judgment, the Ninth Circuit stayed the case pending the approval or disapproval of the settlement agreement in *Drazen/Bennett*.[23]

### B. Southern District of Alabama Proceedings After Herrick's Appeal

Herrick's case is but one of the three relevant district court proceedings in this appeal. We now discuss the two other cases brought by Plaintiffs Jason Bennett and Susan Drazen.

### i.    Bennett's Case

Bennett sued GoDaddy in the Southern District of Alabama on June 20, 2016.[24] His class-action complaint alleged the same TCPA violations Herrick alleged and in two counts sought identical relief.[25] The complaint differed from Herrick's in that

---

[23] Order at 1, *Herrick v. GoDaddy.com, LLC*, No. 18-16048, (9th Cir. Dec. 18, 2019), ECF No. 45.

[24] *Bennett v. GoDaddy.com, LLC*, No. 1:16-cv-00291-KD-N (S.D. Ala. June 20, 2016).

[25] Bennett's complaint sought the statutory damages of $500 and $1,500 for a class consisting of:

> All persons within the United States who, since two (2) year prior to the filing of this Complaint through the date of the certification of a class herein, received a call placed to a cellular telephone line by or on behalf of Defendant that included or introduced an advertisement or constituted telemarketing, and was initiated using an automatic telephone dialing system,

GoDaddy's alleged violations consisted of telephone calls, rather than text messages.[26] On November 1, 2016, GoDaddy moved the District Court to transfer the action to the District of Arizona under 28 U.S.C. § 404(a) based on a forum-selection clause.[27] It granted the motion with Bennett's consent on November 9, 2016. On December 1, 2017, Bennett, with leave of court, filed an amended complaint which changed the description of the proposed class to include:

> All persons within the United States to whom, from November 4, 2014 through October 19, 2016, Defendant's Customer Development Team initiated a telephone call to his or her cellular telephone using an [ATDS] pursuant to one or more of the Telemarketing Campaigns that resulted in the initiation of a telephone call to Plaintiff's cellular telephone.

---

absent the prior express written consent of the called party to receive such calls.

Complaint at 5, *Bennett*, No. 1:16-cv-00291-KD-N (S.D. Ala. June 20, 2016), ECF No. 1.

[26] Bennett's complaint was brought under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §§ 1332(d), 1453, 1711–15, and invoked the district court's subject-matter jurisdiction under § 1332(d)(2). *Id.* at 2. It is obvious that *Drazen* and *Herrick* were also brought under CAFA and that the plaintiffs impliedly invoked the District Court's subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332(d)(2).

[27] Defendant's Brief in Support of Motion to Transfer Venue at 3, *Bennett*, No. 1:16-cv-00291-KD-N (S.D. Ala. June 20, 2016), ECF No. 18. The clause was among the terms of Herrick's service agreement with GoDaddy. *Id.*

Amended Complaint at 7, *Bennett v. GoDaddy.com LLC*, No. 2:16-cv-03908-ROS (D. Ariz. Dec. 1, 2017), ECF No. 75. On March 15, 2019, the District Court granted Bennett's motion to certify the class as a Rule 23(3)(b) class.[28]

Meanwhile, the appeal of the District Court's judgment in *Herrick* was well underway. On March 4, 2019, Herrick filed his opening brief. Pl.-Appellant's Opening Br., *Herrick v. GoDaddy.com LLC*, 2019 WL 1134650 (9th Cir. Mar. 4, 2019). It stated the issue presented for review thusly: "Does the TCPA's definition of an [ATDS] 'include a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator?' *Marks v. Crunch San Diego, LLC,* 904 F.3d 1041, 1043 (9th Cir. 2018)." *Id.* at *2. GoDaddy's answer brief filed on May 3, 2019, presented a counterstatement of issues:

> 1. Whether the District Court correctly entered summary judgment in favor of GoDaddy where Plaintiff's TCPA claim requires proof that GoDaddy used an ATDS, which the TCPA defines as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator . . . ," and it is undisputed that the

---

[28] Bennett moved the District Court to certify the class on September 15, 2016. The court denied the motion on October 13, 2016, as premature, subject to renewal. From that point until March 15, 2019, the parties engaged in extensive discovery regarding Bennett's claim that GoDaddy had violated 47 U.S.C. § 227(b)(1)(A).

third party software platform GoDaddy used to send the single text message at issue (the "3Seventy Platform") does not have the capacity to generate telephone numbers, randomly, sequentially, or otherwise.

2. Whether the District Court correctly entered summary judgment in favor of GoDaddy because Plaintiff could not prove that GoDaddy used an ATDS for the separate reason that undisputed facts demonstrate the 3Seventy Platform's "inability to dial numbers without human intervention."

Appellee's Answer Br., *Herrick v. GoDaddy.com LLC*, 2019 WL 2061415, at *3–4 (9th Cir. May 3, 2019).

Herrick filed a reply brief on June 24, 2019. Pl.-Appellant's Reply Br., *Herrick v. GoDaddy.com LLC*, 2019 WL 2777421 (9th Cir. June 24, 2019). The Ninth Circuit has stayed the appeal pending the disposition of this appeal.[29]

## ii. Drazen's Case

Drazen sued GoDaddy in the Southern District of Alabama on August 21, 2019. Drazen's Complaint,[30] mirroring the violations asserted in *Herrick,* alleged that GoDaddy violated the TCPA, 47 U.S.C. § 227(b)(1), by using an ATDS to make phone calls and

---

[29] *See supra* note 23.

[30] The District Court treated the complaint in *Drazen* as the operative complaint for the consolidated class actions. We do too, referring to it as the "Complaint."

send text messages to the members of the class she was representing. The Complaint sought statutory damages—$500 for each call or text and $1,500 for each willful or knowing violation of § 227(b)(1)—and injunctive relief.

Drazen filed her Complaint on behalf of a Rule 23(3)(B) class that numbered "at least 100." The class contained:

> All persons within the United States to whom, from November 4, 2014, through December 31, 2016, Defendant [GoDaddy] placed a voice or text message call to their cellular telephone pursuant to an outbound campaign *facilitated by the web-based software application used by 3Seventy, Inc.*, or the software programs and platforms that comprise the Cisco Unified Communications Manager.

*Drazen I*, 41 F.4th at 1362 (emphasis added).

On September 23, 2019, Bennett, joined by GoDaddy, filed a Notice of Settlement in *Bennett*, stating that the parties had reached a settlement that was part of a larger settlement they had negotiated with Drazen. They requested the District of Arizona to stay proceedings in *Bennett* pending the *Drazen* court's approval of the settlement. The *Bennett* court granted the stay on October 3, 2019.

On September 30, 2019, while the Notice of Settlement was pending in *Bennett*, Drazen filed a Notice of Settlement in *Drazen* stating that Drazen and GoDaddy had reached a settlement and intended to move the District Court for preliminary approval of their settlement agreement on or before October 14, 2019.

On February 11, 2020, GoDaddy and Bennett filed a joint request that the District of Arizona transfer their case to the Southern District of Alabama and, on February 14, the Court granted this motion and transferred *Bennett*. Seven days later, the *Drazen* court granted Drazen's motion to consolidate *Drazen* and *Bennett*.

### C. *Preliminary Approval of the Proposed Settlement Agreement, Class Certification, and Notice*

With that procedural ground plowed, we next lay out the District Court's preliminary approval of the proposed Settlement Agreement, its conditional class certification, and the Notice that was sent to the Class Members.

### i. Preliminary Approval of the Proposed Settlement Agreement and Conditional Class Certification

On January 10, 2020, Drazen filed an unopposed motion to conditionally certify a Rule 23(b)(3) class for settlement only and preliminarily approve their proposed settlement agreement.[31] On May 14, 2020, the District Court entered an order indicating that it would grant the motion "if the [p]roposed Settlement Agreement is amended to remove Herrick as a [c]lass [r]epresentative."[32] *Drazen*, 2020 WL 2494624, at \*10 (S.D. Ala. May 14, 2020).

---

[31] Drazen and Bennett were, in effect, proposing the following: based on their submission to the District Court, it was likely that—at a hearing held under Rule 23(e)(2) to determine whether the parties' settlement proposal was fair, reasonable, and adequate—the District Court would approve the proposal.

[32] The District Court concluded that Herrick lacked standing under *Salcedo*. *Drazen*, No. 1:19-cv-00563-KD-B, at \*5 (S.D. Ala. May 14, 2020).

On May 28, 2020, Drazen and Bennett amended the Settlement Agreement accordingly and submitted it to the District Court as the Second Amended Class Action Settlement Agreement and Release (Settlement Agreement or Agreement).[33] Attached to the Settlement Agreement were Short and Long Form Notices. They appear in the Appendix to this opinion as Exhibits A and B, respectively.

According to the Short Form Notice, the Settlement Agreement provided that GoDaddy would make up to $35 million available to pay class members claims (in the form of a $150 Voucher Award or a $35 Cash Award), settlement administration costs, attorney's fees of up to 30% of $35 million ($10.5 million), and a $5,000 service award to each of the Plaintiffs—Drazen, Bennett, and Herrick. The Settlement Agreement provided that depending on the number of claims submitted and approved, each class member's claim may be reduced on a pro rata basis to enable the Settlement Administrator to pay the attorney's fees, costs and expenses, and the service awards. A class member not opting out of the settlement would "release any claims [the class member] may have, as more fully described in the Settlement Agreement."[34]

---

[33] The parties to the Settlement Agreement were GoDaddy and Plaintiffs Drazen, Bennett, and Herrick, individually and on behalf of the settlement class.

[34] The Settlement Agreement is briefly described in the Short Form Notice. *See* App. Ex. A. The Short Form Notice was sent to the class members after the District Court certified the class for settlement purposes and preliminarily approved the Settlement Agreement. As indicated in the Short Form Notice,

ii. District Court's Order Granting Class Counsel's Motion

In its June 9, 2020, order, the District Court certified the proposed class for settlement only, preliminarily approved the Settlement Agreement, approved the proposed Short Form Notice and Long Form Notice, and appointed Class Counsel.[35]  Pertinent here, the order also required that:

- By June 23, 2020, "GoDaddy shall provide the Settlement Administrator with the [email addresses] for the entities or persons to which calls or text messages were sent" during the relevant period.
- By July 9, 2020, "the Settlement Administrator shall launch the settlement website" and send the Short Form Notice to the class members by email.
- By July 24, 2020, Class Counsel shall file "any motion for approval of attorney's fees and . . . [service] award."
- By July 31, 2020, objections to the motion for attorney's fees or incentive awards must be filed.  Motions for attorney's fees and service awards "shall be heard at the final hearing" on December 14, 2020.
- "By August 31, 2020, the members of the settlement class who wish to be excluded must request exclusion from the settlement

_____

the Agreement itself was made available to the class members on the website the Settlement Administrator created, www.DrazenTCPASetttlement.com., after the District Court preliminarily approved the Settlement Agreement.

[35] The District Court held two ten-minute telephonic conferences with counsel after issuing the May 14 order and before the June 9 order—on May 29 and June 4.

class[, a]s provided in the Long-Form Notice available on the Settlement website." (footnote omitted)

- By August 31, 2020, class members who "chose to object to any part or all of the Class Settlement Agreement must . . . [do so a]s provided in the Notice[. T]he objection must be signed by the class member or their attorney and include the class members' full name, current address, telephone number(s), and Go-Daddy account number(s)." It also must include:

  > if represented by counsel, the name, bar number, address, and telephone number of your counsel; (3) a signed statement, under penalty of perjury, that you received one or more phone calls or text messages from GoDaddy between November 4, 2014 to December 31, 2016, and that you are a member of the Settlement Class; (4) a statement of all your objections to the Settlement, including your legal and factual basis for each objection; (5) a statement of whether you intend to appear at the Final Approval Hearing, either with or without counsel, and if with counsel, the name of your counsel who will attend; (6) the number of times in which you, your counsel, or your counsel's law firm have objected to a class action settlement within the five years preceding the date that you submit your objection, the caption of each case in which you, your counsel, or your counsel's law firm has made such objection, and a copy of any orders related to or ruling upon your, your counsel's, or your counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case; (7) a list of all persons who will be called to testify at the Final Approval Hearing in support of

the objections, as well as any exhibits they intend to
introduce at the Final Approval Hearing; and (8) any
and all agreements related to the objection or the pro-
cess of objections—whether written or verbal—be-
tween you or your counsel and any other person or
entity.

- "If the class member wishes to speak at the final hearing, they
  must file a notice of appearance with the Court and mail it to
  class counsel and counsel for Defendants no later than **two (2)
  weeks** before the final hearing.  The Court will not consider
  any objection that is not timely filed or that fails to substantially
  meet the requirements."
- By October 7, 2020, class members "shall submit a valid Claim
  Form to the Settlement Administrator."
- By November 3, 2020, "[m]otions in support of final approval
  [of the class action settlement agreement] shall be submitted."
  The Court will consider such motions at the final hearing.

Order at 7–9, *Drazen* (S.D. Ala. June 9, 2020), ECF No. 49.[36]

### iii.  Notice

On July 9, 2020, the Settlement Administrator established
the settlement website: www.DrazenTCPASettlement.com.  It also
posted on the website the Complaint, the Settlement Agreement,
and the June 9 order.  The same day, the Administrator emailed the
Short Form Notice to the class members.  Because the Class was a

---

[36] The events depicted in the bulleted list above largely coincided with the
events set out in the proposed order the Plaintiffs submitted to the District
Court on May 28.  We have provided specific dates above based on the dead-
lines set out in the June 9 order.

21-10199                Opinion of the Court                29

Rule 23(b)(3) class,[37] that notice was supposed to comply with Rule
23(c)(2)(B).[38]

Regarding Rule 23(c)(2)(B)(iii)'s requirement that the notice
include "the class claims, issues, or defenses," the Short Form No-
tice stated:

---

[37] The District Court so found in its June 9, 2020, order and in its December
23, 2020, final judgment and order approving the class settlement.

[38] Rule 23(c)(2)(B) provides that:

> For any class certified under Rule 23(b)(3)—or upon ordering
> notice under Rule 23(e)(1) to a class proposed to be certified
> for purposes of settlement under Rule 23(b)(3)—the court
> must direct to class members the best notice that is practicable
> under the circumstances, including individual notice to all
> members who can be identified through reasonable effort.
> The notice may be by one or more of the following: United
> States mail, electronic means, or other appropriate means.
> The notice must clearly and concisely state in plain, easily un-
> derstood language:
>
>   (i)     the nature of the action;
>   (ii)    the definition of the class certified;
>   (iii)   the class *claims*, *issues*, or *defenses*;
>   (iv)    that a class member may enter an appearance
>           through an attorney if the member so desires;
>   (v)     that the court will exclude from the class any mem-
>           ber who requests exclusion;
>   (vi)    the time and manner for requesting exclusion; and
>   (vii)   the binding effect of a class judgment on members
>           under Rule 23(c)(3).

(emphasis added).

> Defendant GoDaddy . . . violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by placing phone calls and sending text messages to cellular telephone numbers without the recipients' consent. GoDaddy denies the allegations in the lawsuits . . . .
>
> . . . GoDaddy placed a voice or text message call to your cellular telephone pursuant to an outbound campaign facilitated by the web-based software application used by 3Seventy, Inc., or the software programs and platforms that comprise the Cisco Unified Communications Manager.

App. A.

As for Rule 23(c)(2)(B)(v)'s requirement "that the court will exclude from the class any member who requests exclusion," the Short Form Notice stated: "If you do not exclude yourself [by August 31, 2020], you will release any claims you may have, as more fully described in the Settlement Agreement, available at the Settlement website [www.DrazenTCPASettlement.com]."[39]  *Id.*

After explaining that a hearing would be held on December 14, 2020, to consider approving the proposed Settlement Agreement, and Class Counsel's request for attorney's fees of 30% of $35,000,000 and costs, the Notice stated: "The Motion for these fees

---

[39] The Short Form Notice did not explain in detail what Class Members must do to exclude themselves; instead, it directed Class Members to the Long Form Notice on the Settlement Website.  *See* App. Ex. A.  The Long Form Notice exclusion details are discussed in Section III.A.iii.  *See also* App. Ex. B.

and expenses will be posted on the Settlement Website when it is filed with the Court."[40]  *Id.*

### D. *Attorney's Fees and Pinto's Objections*

That brings us to the catalyst of this appeal: Class Counsel's motion for attorney's fees, Pinto's objection, and the District Court's response.

### i. Class Counsel's Motion for Attorney's Fees

On July 24, 2020, Class Counsel filed their motion for attorney's fees, costs and expenses, and for service awards for the Plaintiffs—Drazen, Bennett, and Herrick.[41]  Treating the "up to $35 million" GoDaddy was providing for the settlement as a "common fund," the motion sought attorney's fees of 30%, for a total of $10.5 million.  Class Counsel argued this was reasonable under Eleventh Circuit precedent, namely *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).  The motion also sought service awards of $5,000 for each of the Plaintiffs for the contributions they had made in preparing the cases for settlement.  The motion stated that the Class consisted of over 1.26 million members and that over 15,600 had filed claims for a $150 voucher or $35 cash as of its filing.

---

[40] To object to Class Counsel's motion for attorney's fees, a Class Member would have to scan the Settlement website, but would have no particular reason to do so exactly between July 24 and 31.

[41] The Settlement Administrator published Class Counsel's motion on the Settlement Website on a date the record does not disclose.

Class Counsel stated that it was an open question whether the dialing system GoDaddy used to make the phone calls and text messages to the Class Members was an ATDS—although the *Herrick* district court had answered the question in favor of GoDaddy and against Herrick on summary judgment. Counsel said that whether the dialing system GoDaddy had used constituted an ATDS

> was the subject of the motion for summary judgment [in *Herrick*] and [the] subsequent appeal to the Ninth Circuit . . . and, most recently, ha[d] been granted *certiorari* by the United States Supreme Court to resolve the circuit split on the issue. *See Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020). That is, the issue of what constitutes an ATDS is now subject to Supreme Court review, with the potential for a ruling strongly adverse to Plaintiffs and the putative Class members that *would be dispositive* in this case. As a result, had this Settlement not been reached when it was reached it is entirely possible that the Actions would have been stayed in their entirety pending the Supreme Court's ruling in *Facebook*, with the Settlement Class members receiving no benefits whatsoever.

Pl.'s Mot. in Support of Att'y's Fees at 11–12, *Drazen* (S.D. Ala. July 24, 2020), ECF No. 50 (emphasis added).[42]

---

[42] Put differently, had Class Counsel waited for the Supreme Court's decision in *Facebook* and the Court decided the ATDS issue favorably to their position,

In *Marks*, the Ninth Circuit held that "the statutory defini-tion of ATDS is not limited to devices with the capacity to call num-bers produced by a 'random or sequential number generator,' but also includes devices [like the one GoDaddy used] with the capacity to dial stored numbers automatically." *Marks*, 904 F.3d at 1052 (quoting 47 U.S.C. § 277(a)(1)(A)). In prosecuting Herrick's appeal to the Ninth Circuit, Class Counsel relied on *Marks*. In Herrick's opening brief, they stated the issue as: "Does the TCPA's definition of an [ATDS] 'include[] a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator?'" Plaintiff-Appellant's Opening Br., *Herrick v. GoDaddy.com, LLC*, No. 18-16048, 2019 WL 1134650, at *2 (9th Cir. Mar. 4, 2019) (alteration in original) (quot-ing *Marks*, 904 F.3d at 1043).

Facebook filed its cert. petition in *Facebook* on October 17, 2019. The Supreme Court granted the petition on July 9, 2020—fifteen days before Class Counsel filed their motion for attorney's fees. *Facebook, Inc. v. Duguid*, 141 S.Ct. 193 (2020) (mem.). The Court granted certiorari on the second issue presented in Face-book's petition: "Whether the definition of ATDS in the TCPA en-compasses any device that can 'store' and 'automatically dial' tele-phone numbers, even if the device does not 'us[e] a random or se-quential number generator.'" Petition for Writ of Certiorari at ii,

---

Class Counsel would have tried to cancel the Settlement Agreement and sued GoDaddy for more than $600 million (i.e., 1.26 million Class Members multi-plied by a minimum of $500 in statutory damages per member).

*Facebook, Inc. v. Duguid*, No. 19-511 (U.S. 2019), 2019 WL 5390116, at *ii (alteration in original).[43]  The resolution of the issue, one way or the other, would have decided whether the claims the Plaintiffs brought against GoDaddy in *Drazen/Bennett* were valid.  If their claims were valid, GoDaddy's exposure to the certified class would have exceeded $600 million.[44]

As it turned out, the Supreme Court rejected Class Counsel's interpretation of the ATDS on April 1, 2021.  *See Facebook*, 592 U.S. at 399.  It reversed the Ninth Circuit's decision and abrogated *Marks* with this statement:

> The question before the Court is whether that definition encompasses equipment that can "store" and dial telephone numbers, even if the device does not "us[e] a random or sequential number generator."  It does not.  To qualify as an "automatic telephone dialing system," a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator.

---

[43] Facebook's petition presented two issues: (1) "[w]hether the TCPA's prohibition on calls made using an ATDS is an unconstitutional restriction of speech, and if so whether the proper remedy is to broaden the prohibition to abridge more speech," and (2) "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'  Petition for Writ of Certiorari at ii, *Facebook, Inc. v. Duguid*, No. 19-511 (U.S. 2019), 2019 WL 5390116, at *i–*ii (third alteration in original).

[44] *See supra* note 42.

*Id.* (alteration in original).

In December 2020—when the District Court here convened to hear Class Counsel's motion to certify the class and approve the proposed settlement agreement and motion for attorney's fees—the Supreme Court had already heard argument in *Facebook* and the was case under submission.[45]

ii.  The District Court's Order

As noted above, the District Court's June 9, 2020, order stated that Class Counsel's motion for attorney's fees and service awards "shall be heard at the final hearing," set for December 14, 2020.[46]  However, on July 27, 2020, just three days after Class Counsel filed their motion for fees, the District Court took Class Counsel's July 24 motion under submission.  Fifteen days later, on August

---

[45] *Facebook* was argued December 8, 2020, and the *Drazen* final fairness hearing was December 14, 2020.

[46] The Short Form Notice confirmed this date:

> The Court will hold a hearing on [December 14, 2020,] at [2:00 p.m. CST] in Courtroom 4B of the U.S. District Court for the [Southern District of Alabama], [155 Saint Joseph St., Mobile, AL 36602], to consider whether to approve the Settlement, a request by Class Counsel for attorney's fees up to 30% of $35,000,000, costs for their work in the case, and an incentive award payment in an amount up to $5,000 for each of the Plaintiffs.  The Motion for these fees and expenses will be posted on the Settlement Website when it is filed with the Court.  The Court will decide the amount of fees and expenses to award.

App. Ex. A.

11, 2020, it ruled on the motion, granting it in part and denying it in part.

The District Court based its ruling solely on the information Class Counsel submitted with the motion. It accepted Class Counsel's portrayal of the class size and claims filed to date: 1.26 million members and over 15,600 claims. *Drazen*, 2020 WL 4606979, at *1 (S.D. Ala. Aug. 11, 2020). The District Court then credited Class Counsel's representations as to the time spent on the cases (including *Bennett* and *Herrick* in the District of Arizona)—over 5,423 hours—to calculate a lodestar of $2,800,053. *Id.* at *2–3 & n.2. It also treated the up to $35 million GoDaddy was providing as a "common fund." *Id.* at *2–3. The District Court then turned to Class Counsel's request for fees of $10.5 million. *Id.* Relying in part on *In re Home Depot Inc.*, 931 F.3d 1065 (11th Cir. 2019), it found that 25% of the common fund was a "benchmark percentage fee award" between the typical range of 20–30%. *Id.* (collecting cases). After going through the *Johnson* factors, the District Court approved attorney's fees of 25% of the $35 million or $8,750,000.[47] *Id.*

---

[47] The District Court summed up its finding with this language:

> The Court concludes that the fee should be 25% of the Common Fund as opposed to the requested 30%. The Court has considered the *Johnson* factors since the fee requested exceeds the average benchmark of 25%. The issues in this case were not complex and did not require more than the average skill required of litigation in federal court. Moreover, the results obtained for the plaintiffs ($35 dollars or a $150 voucher) do not justify an award at the high end of the benchmark. The

at *3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).   It also approved Counsel's request of $105,410.51 and service awards of $5,000 for each of the Plaintiffs: Drazen, Bennett, and Herrick. *Id.* at *4–5.

### iii.  Pinto's Objection

On August 31, 2020, Pinto filed a counseled objection to the District Court's August 11 order granting Class Counsel's motion for attorney's fees.  He argued that the District Court had breached its fiduciary duty to the absent class members and violated due process.  It did so because the Short Form Notice told class members that they had until August 31 to object to Class Counsel's motion for attorney's fees, not July 31 like the June 9 order said or August 11 when the court ruled on the attorney's fees motion.  Pinto also

---

Court acknowledges the significant effort expended to reach the Settlement in this case.  "Indeed, awarding a 25% rather than a 30% fee in this case does not in any way indicate that Class Counsel has not done exceedingly well in litigating . . . on behalf of the Class."  Here, if Class Counsel received a 30% fee, the average rate would be $1,936.12 per hour.  This realized hourly rate far exceeds the customary hourly rate in this legal community.  Thus, the Court finds the benchmark percentage fee award reasonable and appropriate here.  The Court will approve attorney[']s[ fees] totaling 25% of the Common Fund, $8,750,000.00.

*Drazen*, 2020 WL 4606979, at *3 (S.D. Ala. Aug. 11, 2020) (omission in original) (quoting *Swaney v. Regions Bank*, No. 2:13-CV-00544-RDP, 2020 WL 3064945, at *7 (N.D. Ala. June 9, 2020)).

argued that the District Court erred by awarding attorney's fees prior to the December 14 hearing.  He added that it failed to recognize that the settlement at issue was a "coupon settlement" under CAFA.  As for the proposed Settlement Agreement, Pinto argued that the District Court should disapprove it because it was unfair, unreasonable, and inadequate under Rule 23(e)(2)(C)(iii) due to the extent of the attorney's fees awarded Class Counsel.

iv.  The District Court's Response to Pinto's Objection

On September 1, 2020, after reviewing Pinto's objection, the District Court *sua sponte* amended its August 11 order.  Addressing its decision that Class Counsel should recover attorney's fees of 25% of the $35 million "common fund," the District Court amended the August 11 order to read:

> [T]he Court finds the benchmark percentage fee award appears reasonable and appropriate here.  The Court concludes that attorney[']s[] fees totaling 25% of the Common Fund (amounting to $8,750,000.00) appears reasonable and potentially reimbursable.  A final evaluation of same will be conducted upon review of any objections and at the final approval hearing.

Amended Order at 1–2, *Drazen* (S.D. Ala. Sept. 1, 2020), ECF No. 55.

As for the service awards, the District Court amended the August 11 order to read:

> The [service] awards of $5,000 for each Drazen, Bennett, and Herrick appear reasonable considering the

services performed by each for the Settlement Class Members . . . .  The incentive awards to be paid from the Settlement Fund in accordance with the terms of the Second Amended Class Action Settlement Agreement (Doc. 50-1) are subject to a final evaluation and review of any objections and at the final approval hearing.

*Id.* at 2.

The order concluded by amending its August 11 order this way: "Based upon the foregoing, it is **ORDERED** that the Plaintiffs' motion (Doc. 50) for attorney[']s[] fees, costs, expenses, and service awards [is] **CARRIED** to the final approval hearing." *Id.*

### E. Events Following Certiorari in Facebook

Finally, we arrive at the events immediately prior to the current appeal, namely Class Counsel's notification to the District Court about *Facebook*, the final fairness hearing, and the District Court's final approval of the Settlement.

### i. Class Counsel Informs the District Court About *Facebook*

In their July 24 motion for attorney's fees, Class Counsel stated that the Supreme Court had granted certiorari in *Facebook* "with the potential for a ruling strongly adverse to Plaintiffs and the putative Class members that would be dispositive in this case." Class Counsel were informing the District Court that if *Facebook* was decided before it approved the Settlement Agreement, the Class Members' claims and their motion for attorney's fees could become worthless.  Class Counsel were also telling the District

Court that the same result could occur if it stayed further proceedings in *Drazen/Bennett* pending the Supreme Court's decision in *Facebook*. As for the Settlement Agreement, they said, "it is entirely possible that the Actions would have been stayed in their entirety pending the Supreme Court's ruling in *Facebook,* with the Settlement Class members receiving no benefits whatsoever."

Class Counsel were telling the District Court that they were in a race against time, and time was closing in.[48] The Supreme Court would decide *Facebook* during the October 2020 term. The briefing was already under way. On September 4, 2020, Facebook filed its opening brief.[49] So too the Solicitor General.[50] On October 16, Duguid filed his response.[51] On November 16, Facebook and the United States each filed a reply brief.[52]

---

[48] Meanwhile, the District Court was concerned about Class Counsel's pursuit of service fees of $5,000 for each Plaintiff. On September 23, 2020, the District Court directed the parties to brief the impact of *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020) on the service awards issue. *See id.* at 1255 (addressing a conflict of interest between class representative, who obtained a $6,000 incentive award, and class members).

[49] Brief for Petitioner, *Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 5498510 (U.S. Sept. 4, 2020).

[50] Brief for the United States as Respondent Supporting Petitioner, *Facebook*, No. 19-511, 2020 WL 5439453 (U.S. Sept. 4, 2020).

[51] Brief for Respondent, *Facebook*, No. 19-511, 2020 WL 6204411 (U.S. Oct. 16, 2020).

[52] Reply Brief for Petitioner, *Facebook*, No. 19-511, 2020 WL 6876000 (U.S. Nov. 16, 2020); Reply Brief of Respondent United States in Support of Petitioner, *Facebook*, No. 19-511, 2020 WL 6876001 (U.S. Nov. 16, 2020).

ii. Class Counsel Moves for Final Approval of the Proposed Set-
tlement Agreement

On November 3, 2020, Class Counsel moved the District
Court for final approval of the proposed Settlement Agreement
and class under Rule 23(e)(2). Attached to the motion was the dec-
laration of Kari Grabowski, a project manager at Epiq Class Action
& Claims Solutions, Inc. (Epiq)—the Settlement Administrator.
Grabowski was involved in issuing the Short Form Notice to the
Class Members and receiving their responses. Her declaration es-
tablished the following as of October 22, 2020: 67,392 unique visi-
tors accessed the Settlement website.[53]  Of the approximately
1,237,000 class members, 24,059 (1.9%) filed claims.  Of those
24,059 who filed claims, 12,396 asked for vouchers and 11,662 asked
for cash. Eleven Class Members (0.00089%) opted out of the set-
tlement. That meant that approximately 1,213,000 Class Members
(98.1%) would be bound by the settlement but would receive noth-
ing. Yet they would release their claims against GoDaddy and those
against the other "Released Parties" as provided in the Settlement
Agreement.

After this recital of Class Member's responses to the Notice,
Class Counsel's motion said the following regarding the adverse ef-
fect that the Supreme Court's likely decision would have on Class
Members:

---

[53] Assuming each visit was from a different class member, 5% of the class vis-
ited the website.

Critically, the settlement must be measured against the real possibility that Settlement Class Members would have received no compensation whatsoever. While Plaintiffs believe they would have secured class certification and prevailed at trial, success was not assured, particularly given the uncertainty surrounding the interpretation of "automatic telephone dialing system" ("ATDS") – the precise issue on appeal to the U.S. Supreme Court in *Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020) – and the changing status of the law regarding Article III standing for certain TCPA violations. *See Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019).

This Court has already preliminarily found that this settlement is fair, adequate, and reasonable (Dkt. No. 49, at 3)—a finding that is now supported by the overwhelming majority of the Settlement Class. For those reasons, as well as those stated further below, Plaintiffs respectfully request that the Court grant final approval of the settlement so that the thousands of Settlement Class Members who filed claims may receive the settlement benefits to which they are entitled.

Pl.'s Mot. in Support of Final Approval at 8, *Drazen*, No. 1:19-cv-00563-KD-B (S.D. Ala. Nov. 3, 2020), ECF No. 69.

### iii.  District Court Hearing

On December 8, 2020, the Supreme Court heard argument in *Facebook*.  Six days later, the District Court held a hearing on

Class Counsel's November 3 motion for final approval of the proposed Settlement Agreement and class certification, and their July 24 motion for attorney's fees, costs, expenses, and service awards.

The District Court focused the hearing on Pinto's objection to the Settlement Agreement—the size of its provision for Class Counsel's attorney's fees compared to the Class Members' recovery—and the adequacy of the Short Form Notice. The hearing ended with GoDaddy's lawyer's announcement about the status of *Facebook* and the Supreme Court's likely resolution of the ATDS issue.

Pinto objected to the amount the Settlement Agreement set aside for Class Counsel's attorney's fees. The fees, up to $10.5 million (30% of $35 million) would amount to over four times the claims the class members had submitted to the Settlement Administrator. Pinto argued that the settlement was a coupon settlement, which required the District Court to give it heightened scrutiny under CAFA, 28 U.S.C. § 1712(e). Pinto's position was that "unless the parties [were] willing to amend the settlement so that the benefit can be returned to the class," the District Court's "only recourse [would be] to disapprove the settlement."

The District Court expressed concern that only 2% of the Class Members had submitted claims. It asked "what kind of things can be done to get more consumers to respond?" Turning to John R. Cox—who was appearing for Class Counsel—and GoDaddy's lawyer, the District Court expressed concern over the rate of claims submitted. "I'm concerned whether the notice was

adequate, if you want to say anything about that, to only get this amount of people responding." An answer to the question was not forthcoming.

The District Court asked GoDaddy's lawyer why GoDaddy did not "just send [the class members] their $35."[54] Then, to Cox, it asked why they didn't consider that. The District Court suggested that they never intended that the settlement be for $35 million. "So you are asking me to give you 25[%] of a $35 million settlement, but if you never intended for it to be really $35 million, then that's not really the value of the settlement."

During another exchange the Court had with GoDaddy's lawyer, the lawyer said: "following notice, [GoDaddy] received several communications from customers . . . indicating that they did not support the lawsuit and that they did not intend to file a claim." So the 2% claims rate was not "indicative of a notice problem."

The hearing ended with the following discussion of *Facebook*:

> MS. ZECCHINI [GoDaddy's lawyer]: Your Honor, I would say that the case law has turned more favorably to GoDaddy at this juncture.
>
> THE COURT: And in what respects?

---

[54] This would amount to approximately $43,295,000 ($35 each for 1,237,000 class members). Subtracting from the settlement agreement's $35 million the $10.5 million requested for attorney's fees, $15,000 in service awards, and $105,410.51 that expenses and costs amounted to, would leave $24,379,589.50 for class members—approximately $19.70 each.

MS. ZECCHINI: Well, there's the Facebook case that the Supreme Court is dealing with briefing and post-hearing on the automatic telephone dialing system issue. That hearing was last week, I believe. The days are starting to blend together.

But I think, certainly, we have an argument on the TCPA issue. GoDaddy felt very strongly that the class certification decision in *Bennett* is incorrect. Certainly, that is something that we intend to appeal down the road.

. . . .

I think it would be difficult, at best, if the settlement is not finally approved. To renegotiate a settlement, frankly, at all in short term but certainly not one that is as favorable to the class simply because of the view that the law has become more favorable to GoDaddy over time. Now, certainly, that can go the other way, which is, you know, why we worked so hard to see if we could reach settlement and get some finality for GoDaddy and payment to the class.

THE COURT: Anything else?

MR. COX: . . . .

Given how the other circuits have ruled on [what is an ATDS] and then in the Supreme Court's Facebook case, it has become virtually impossible to move forward with any settlement negotiations until that Facebook case is over.

So it would put the class in a position where they have the opportunity to take the benefit that they've

been provided and claimed or go back to the drawing
board and back into litigation in an environment that
[is] even less uncertain than when we arrived here and
settled the case in 2019.

Transcript of Hearing at 23–24, *Drazen*, No. 1:19-cv-00563-KD-B
(S.D. Ala. Dec. 14, 2020), ECF No. 84.

iv.  The District Court's Approval Order and Final Judgment

On December 23, the District Court entered its final judg-
ment and order approving the class-action settlement.  After trac-
ing the history of the litigation, the order acknowledged that Pinto
wanted the settlement agreement either amended (to give Class
Members part of the attorney's fees awarded, which, admittedly,
would be a difficult undertaking) or disapproved.  The District
Court admitted that its August 11 order on attorney's fees was
premature but considered the error harmless because it reconsid-
ered the attorney's fees issue.

Next, the District Court disagreed with Pinto that the settle-
ment was a coupon settlement under CAFA:

[T]his is not a coupon settlement as contemplated by
CAFA.  Notably, Class Members received the choice
between a $150 Voucher *or* a $35 cash award.  The
$150 Voucher award in and of itself may be a coupon
as anticipated by CAFA, but, the presence of the $35
cash award removes this Settlement Agreement from
the purview of CAFA's restrictions on coupon settle-
ments. . . .   [I]t can be assumed that half of the

claimants recognized the $150 Voucher as bestowing
equal or greater value than the $35 cash award.

*Drazen*, 2020 WL 8254868, at \*4 (citations omitted).

The District Court, apparently referring to Rule 23(c)(2), re-
iterated the finding that it made in granting preliminary approval
of the Settlement Agreement on June 9: "the forms of class notice
proposed by the parties . . . was the best notice practicable under
the circumstances." Relying on Kari Grabowski's declaration for
Epiq, it also found that the notice was 96.95% effective for a class
of 1,237,296, with eleven Class Members opting out and 24,059
submitting claims as of October 22, 2020.

The District Court then determined whether the Settlement
Agreement was "fair, reasonable, and adequate" under Rule
23(e)(2). But it did not do so by expressly considering the standards
listed under Rule 23(e)(2)(A)–(D). Instead, it considered the issue
pursuant to the factors listed in *Bennett v. Behring Corp.*, 737 F.2d 982
(11th Cir. 1984):

> (1) the likelihood of success at trial; (2) the range of
> possible recovery; (3) the point on or below the range
> of possible recovery at which a settlement is fair, ade-
> quate and reasonable; (4) the complexity, expense and
> duration of litigation; (5) the substance and amount
> of opposition to the settlement; and (6) the stage of
> proceedings at which the settlement was achieved.

*Id.* at 986.

Before applying these factors, the District Court considered whether the Settlement Agreement was the product of collusion. The District Court found that it was not because the parties participated in multiple arms-length negotiations following "extensive and contentious discovery." This weighed in favor of approving the Settlement Agreement. So, too, the opinion of counsel. The parties were represented by skilled and experienced counsel, many of whom had extensive experience in class action litigation.

Turning to the *Bennett* factors, the District Court found that the first factor weighed in favor of approving the Settlement Agreement:

> Plaintiffs faced substantial hurdles that affected the class's likelihood of succeeding on the merits at trial. Plaintiffs allege that GoDaddy violated the TCPA when it called and texted unwanted marketing messages. Moreover, . . . the case law surrounding TCPA litigation is unsettled rendering the chance for success at trial similarly uncertain. For example, one open question concerns *whether the technology GoDaddy used constitutes an ATDS under the TCPA.*
>
> . . .
>
> As the parties indicated at the Final Approval Hearing, GoDaddy's bargaining position has strengthened since this settlement was reached because of developments in TCPA law. Thus, the benefit provided to the Settlement Class may even be less had this Settlement Agreement been negotiated today.

*Drazen*, 2020 WL 8254868, at *7–8 (emphasis added).[55] The District Court found that the remaining *Bennett* factors also counseled the approval of the Settlement Agreement. Hence, the District Court approved it.

On the attorney's fees issue, the District Court reviewed Class Counsel's July 24, 2020, motion anew and fixed their fees at $7 million—20% of the $35 million it treated as a common fund.

Last, the District Court reviewed the scope of the release contained in the Settlement Agreement given by Class Members who did not opt-out.[56] It cited the following release provisions:

---

[55] On the other hand, had Class Counsel waited for the Supreme Court's decision in *Facebook* and the decision was favorable to their position, they would have been in a position to negotiate a settlement far in excess of the up to $35 million GoDaddy offered.

The District Court appeared unaware of the *Herrick* court's resolution of the ATDS issue in favor of GoDaddy and that the 3Seventy Platform GoDaddy used in *Drazen/Bennett* was the same 3Seventy Platform it used in *Herrick*. The District Court also seemed unaware that Herrick's claim against GoDaddy in *Drazen/Bennett* would be subject to GoDaddy's res judicata defense based on the summary judgment GoDaddy obtained in *Herrick*. "Under well-settled federal law, the pendency of an appeal does not diminish the res judicata effect of a judgment rendered by a federal court." *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497 (D.C. Cir. 1983).

[56] Only eleven class members opted out. The District Court's decision therefore bound all but eleven of the approximately 1,237,000 Class Members.

79.  Upon the Effective Date, the Releasing Parties[57] shall automatically be deemed to have fully and irrevocably released and forever discharged Defendant and the Released Parties[58] from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorney's fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Actions, or the conduct, omissions, duties or matters at any time from the beginning of the Class Period through the

---

[57] "Releasing Parties" is defined in the Settlement Agreement:

> Plaintiffs and all Settlement Class Members who do not timely and properly opt-out of the Agreement, and each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, representatives and all those who claim through them or on their behalf.

*Drazen*, 2020 WL 8254868, at *15 n.12.

[58] "Released Parties" is defined in the Settlement Agreement:

> [J]ointly and severally, and individually and collectively, Defendant and its past and present parents, predecessors, successors, affiliates, holding companies, subsidiaries, employees, agents, attorneys, board members, assigns, partners, contractors, joint venturers, or third-party agents with which it has or had contracts, and/or their affiliates.

*Id*. at *15 n.13.

end of the Class Period that were or could have been
claimed, raised, or alleged in the Actions.

80. The Parties understand and acknowledge that this
Agreement constitutes a compromise and settlement
of disputed claims. No action taken by the Parties ei-
ther previously or in connection with the negotia-
tions or proceedings connected with this Agreement
shall be deemed or construed to be an admission of
the truth or falsity of any claims or defenses hereto-
fore made, or an acknowledgment or admission by
any party of any fault, liability or wrongdoing of any
kind whatsoever.

81. Neither the Agreement, nor any act performed or
document executed pursuant to or in furtherance of
the Agreement: (a) is or may be deemed to be, or may
be used as, an admission of, or evidence of, the valid-
ity of any claim made by the Plaintiffs or Settlement
Class Members, or any wrongdoing or liability on the
part of the Released Parties; or (b) is or may be
deemed to be, or may be used as, an admission of, or
evidence of, any fault or omission on the part of any
of the Released Parties, in the Actions, or in any pro-
ceeding in any court, administrative agency or other
tribunal.

82. In addition, with respect to the subject matter of
this Actions, by operation of the entry of the Final
Approval Order, Plaintiffs and each Settlement Class
Member, and each of their respective successors, as-
signs, legatees, heirs, and personal representatives, ex-
pressly waive any and all rights or benefits they may

now have, or in the future may have, under any law relating to the releases of unknown claims, including, without limitation, Section 1542 of the California Civil Code . . . .

By operation of the entry of the Final Approval Order, Plaintiffs and each Settlement Class Member, shall be deemed to have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any foreign country, and any and all principles of common law that are similar, comparable, or equivalent in substance or intent to Section 1542 of the California Civil Code.

83.  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

*Id.* at *15.

Normally, in a settlement like the one proposed here in which the issue of liability is not resolved, the plaintiff gives the defendant a release for all of the claims asserted against the defendant in the plaintiff's complaint and any claims the plaintiff could have asserted because they arose out of or stemmed from the factual basis of the claims the plaintiff's complaint asserted.  4 William B. Rubenstein, Newberg & Rubenstein on Class Actions § 18:19 (6th ed. Nov. 2023 update).  This is an expression of the "identical

factual predicate" doctrine. *Id.* We take the following passage of the District Court's December 23 order as applying that doctrine:

> The Court finds that the release provision "properly settles all matters between the class members and released parties" as a result of the GoDaddy's conduct as identified in the Settlement Agreement, that the release covers "claims based on the same factual predicate as the litigation being settled" and "is tailored to prevent the relitigation of settled questions at the core of this class action." Greco, 635 Fed. Appx. 628, 635–36 (11th Cir. 2015) (citing In re Corrugated Container Antitrust Litig., 643 F.2d 195, 221 (5th Cir. 1981) (for the premise that the federal court "may release not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint")).

*Drazen*, 2020 WL 8254868, at *16. This language reduced the reach of the release provisions of the proposed Settlement Agreement, effectively amending the Agreement.

## II. Legal Standard

We review for an abuse of discretion the approval of a class action settlement, class certification, and an award of reasonable attorney's fees. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1278 (11th Cir. 2021). "Rule 23 grants district courts broad discretion to manage class actions." *In re Equifax*, 999 F.3d at 1266 (citing *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088,

1096 (5th Cir. 1977) [59] ("In the management of class actions, [Rule] 23 necessarily vests the district courts with a broad discretion to enable efficacious administration of the course of proceedings before it.")).  "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).

An abuse of discretion occurs when the district court rests its decision on findings of fact that are clearly erroneous or when it incorrectly applies legal principles.  *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004).  It stands to reason that an abuse would occur in a Rule 23(b)(3) class action when the district court breaches its fiduciary duty to the absent class members.[60]  We review questions of statutory interpretation *de novo*.  *Redus Fla. Com., LLC v. Coll. Station Retail Ctr., LLC*, 777 F.3d 1187, 1191 (11th Cir. 2014).

### III.  Discussion

Pinto's appeal challenges the District Court's approval of the proposed Settlement Agreement and its order granting Class Counsel's motion for attorney's fees.  Pinto contends that, given the District Court's breach of its independent fiduciary duty to the

---

[59] "In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), [we] adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981."  *Christ v. Beneficial Corp.*, 547 F.3d 1292, 1297 n.8 (11th Cir. 2008).

[60] This is discussed in Section III.A.i.

absent class members, we should refrain from rewarding Class Counsel for organizing the settlement in a way that prevents the return of excess fees to the class. Pinto advocates for the vacation of the settlement but, at a minimum, we should make clear that attorneys are not entitled to large fee awards that cannot withstand CAFA scrutiny.

We conclude that the District Court abused its discretion in handling these consolidated cases by erroneously applying the controlling legal principles and rules of law, including its fiduciary duty to the absent class members. These errors tainted the District Court's Rule 23(e)(1) implicit finding on June 9, 2020, that the parties had presented the District Court with evidence sufficient to enable it to decide whether to give notice to the proposed class—that is, a Rule 23(c)(2) notice that would afford the absent class members information sufficient to enable them to decide whether to opt-out of the proposed settlement. The errors also infected the District Court's Rule 23(e)(2) finding, after a fairness hearing, that the proposed settlement was fair, reasonable, and adequate and that $7 million constituted a reasonable attorney's fee for the worked Class Counsel performed.

Below, we discuss three critical areas in which the District Court abused its discretion. The first area concerns the application of Rule 23(e)(1) and (2). The second concerns the application of Rule 23(c)(2) and the principles of due process it implements in directing that notice of the proposed settlement be sent to the Class

Members.  The third area concerns the application of the law in granting Class Counsel's motion for attorney's fees.

### A. Issues Related to Rule 23(e)

We begin our discussion by analyzing whether the District Court and Class Counsel complied with Rule 23(e).

### i. Rule 23(e) and the District Court's Fiduciary Duties

"Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)); *In re Equifax,* 999 F.3d at 1265 (explaining that the district court "takes on a type of fiduciary role for the class").

Prior to class certification, "[a] district court must conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003).  Moreover, in deciding whether to certify a class, the district court "may look past the pleadings to determine whether the requirements of [R]ule 23 have been met." *Castano*, 84 F.3d at 744.  "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable

substantive law in order to make a meaningful determination of the certification issues." *Id.*

As a fiduciary, the court must take steps "to ensure the settlement is 'noncollusive in nature.'" *In re Equifax*, 999 F.3d at 1265 (quoting Newberg § 13:40). We direct "district judges to exercise 'careful scrutiny' in order to 'guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members.'" *Id.* (quoting *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983)).

The district court's role as a fiduciary reaches its zenith once class counsel moves the court for an award of attorney's fees. At "the fee-setting stage, '[class] counsel's understandable interest in getting paid the most for its work representing the class' comes into conflict 'with the class'[s] interest in securing the largest possible recovery for its members.'" *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1252–53 (11th Cir. 2020) (quoting *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010)). Thus, the district court is under an obligation to serve as a fiduciary for the class plaintiffs, ensuring that the class has the chance to advocate for its own best interests. *Id.* at 1253. "The district court cannot properly play its fiduciary role unless—as in litigation generally—class counsel's fee petition has been fully and fairly vetted." *Id.*

Rule 23(e) also addresses the notice of proposed settlement to the class and standards for a district court's approval of a class action settlement. Rule 23(e)(1) speaks to the information the parties must present to district court to enable the court to decide

whether to direct notice of the proposed settlement "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(A)–(B). The information must be sufficient to enable the court to find that it "will likely be able to approve the proposal under Rule 23(e)(2)[] and certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The word "likely" when used in this context means that the information the parties provide the court creates the probability that, by the time the court convenes the Rule 23(e)(2) hearing, it will approve the proposal. In doing so, the court will consider the class members' responses to the Rule 23(c)(2) notice and any other evidence bearing on whether the proposal is fair, reasonable, and adequate that may not have been before the court when it considered the issue the first time around. Included in such other evidence is the information the court uncovers in its fiduciary role in focusing on the negotiation process that led to the settlement proposal, to preclude the possibility of collusion. *See Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983).

Where, as here, a settlement is negotiated

[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *Roes, 1-2 v. SFBSC Mgmt., Inc.*, 944 F.3d 1035, 1043 (9th Cir. 2019); *In re Gen. Motors*, 55 F.3d at 805 (courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified"); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chicago*, 834 F.2d 677, 681 (7th Cir.1987) (Posner, J.) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the settlement is required."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (Friendly, J.) (reviewing courts must employ "even more than the usual care"); *see also* Manual for Complex Litig. § 21.612 (4th ed. 2004).

Rule 23(e)(2) speaks to what the district court must consider in order to find that the proposed class action settlement is fair, reasonable, and adequate. The court must consider the following:

>   (A) [whether] the class representatives and class counsel have adequately represented the class;
>   (B) [whether] the proposal was negotiated at arm's length;
>   (C) [whether] the relief provided for the class is adequate, taking into account:
>   >   (i)    the costs, risks, and delay of trial and appeal;
>   >   (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   >   (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>   >   (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D) [and whether] the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In sum, the district court's obligations under Rule 23(e) *and* as a fiduciary for the absent class members essentially coincide.

### ii.  The District Court Erroneously Approved the Settlement Agreement as Fair, Reasonable, and Adequate

Because the District Court failed to apply the latest version of Rule 23(e)(2) when determining whether the proposed settlement was fair, reasonable, and adequate, it abused its discretion.  As we point out, there are also other reasons why the proposed settlement would not pass Rule 23(e)(2) muster.

### 1.  2018 Amendment to Rule 23(e)(2)

As an initial matter, it was an abuse of discretion for the District Court to approve the settlement as fair, reasonable, and adequate without explicitly considering the standards in Rule 23(e)(2)(A)–(D), which were added in the 2018 amendment to the Rule.  *See Briseño v. Henderson*, 998 F.3d 1014, 1026–27 (9th Cir. 2021) (reversing district court for failure to apply new Rule 23(e)(2) in addition to its Circuit's caselaw factors); *cf. Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1261 (11th Cir. 2023) (instructing a district court on remand, for other reasons, to consider the 2018 amendments to Rule 23(e)(2) when doing the fair, reasonable, and adequate assessment of the class-action while citing *Briseño* for support).

However, "[t]he 2018 amendment to Rule 23(e)(2) is not meant 'to displace' the factors previously identified by courts in

reviewing class action settlement agreements, but 'rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Ponzio v. Pinon*, 87 F.4th 487, 494–95 (11th Cir. 2023) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).  Thus, courts should continue to apply the *Bennett* factors as well.  *See id.* (continuing to apply the *Bennett* factors and noting how the Rule's four core concerns overlap nicely with the *Bennett* factors); *In re Equifax*, 999 F.3d at 1273 (applying both the post-2018 Rule 23(e)(2) standards as well as the *Bennett* factors); *see also In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 685 & n.19 (6th Cir. 2020) (Moore, J., dissenting) (dissenting on a different issue but noting that the 2018 amendments to Rule 23(e)(2) "merely codified existing practices").

## 2.  Overbroad Release Provision

In its final judgment and order approving the class action settlement, the District Court attempted to cure the overbroad-release problem—while coincidentally preserving Class Counsel's $7 million attorney's fees award—by invoking the "identical factual predicate" doctrine.[61]  But in applying that doctrine, the District Court went too far, in essence, amending the release provisions in a material way: to limit their sweep to the claims Plaintiffs' alleged in the Complaint against GoDaddy.  Although a district judge must assess a proposed settlement agreement for fairness, "[t]he judge

---

[61] *See supra* Section I.E.iv. (discussing the release provisions).

cannot rewrite the agreement." Newberg § 13:46 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "[T]he judicial role in reviewing a proposed settlement is . . . limited to approving the proposed settlement, disapproving it, or imposing conditions on it." *Id.*

We sense that the District Court was disturbed by the breadth of the release provisions, especially the provision identifying the parties released in addition to GoDaddy: "Defendant and its past and present parents, predecessors, successors, affiliates, holding companies, subsidiaries, employees, agents, attorneys, board members, assigns, partners, contractors, joint venturers, or third-party agents with which it has or had contracts, and/or their affiliates." *Drazen*, 2020 WL 8254868, at *15 n.13.

But, the District Court could not amend the release provisions contained in the Settlement Agreement. Having concluded that the Settlement Agreement could not be approved as written, precedent required the District Court to deny the proposed settlement and deny Class Counsel's motion for attorney's fees. The District Court should have disapproved the parties' Settlement Agreement and vacated its June 9 order certifying a class for settlement only.

3. Inadequate Relief

The District Court's role as a fiduciary for the absent Class Members heightened the moment the Plaintiffs' lawyers presented it with the Settlement Agreement. This is because the Agreement provided for preferential treatment for their clients—Drazen,

Bennett, and Herrick—and guaranteed that their attorney's fees of up to $10.5 million would not be reduced even if the Class Members' claims totaled more than $35 million less the attorney's fees, administration costs, court costs, and the service fees. The District Court became a fiduciary because the Plaintiffs and their lawyers were at odds with the absent Class Members.

Under these circumstances, the District Court was required to ensure that the proposed settlement agreement was not collusive. To do that, the District Court had to make a rigorous analysis of the showing the Plaintiffs' lawyers made under Rule 23(e)(1). It had to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano*, 84 F.3d at 744. The June 9 order preliminarily approving the proposed settlement agreement as fair, reasonable, and adequate indicated on its face that the Plaintiff's lawyers had failed to satisfy Rule 23(e)(1) and the District Court failed to conduct the rigorous analysis required. Here is the sum and substance of the District Court's basis for finding that the Plaintiffs' Rule 23(e)(1) showing established the likelihood that the District Court would approve the Plaintiffs' settlement proposal at the Rule 23(e)(2) fairness hearing:

> Plaintiffs Jason Bennett and Susan Drazen move for preliminary approval of the class action settlement agreement. (Doc. 45 at 1-2). A class action can be settled "only with the court's approval." Fed. R. Civ. P. 23(e). Final approval may be given only after class notice and a hearing. *Id.* However, the Court

must first "make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *O'Connor v. Worthington PJ, Inc.*, 2017 WL 6762436, *3 (M.D. Fla. 2017) (citing *Smith v. William Wrigley Jr. Co.*, 2010 WL 2401149 at *2 (S.D. Fla. 2010)). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Id.* (internal quotes omitted). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Id.* (citing *Fuentas Cordova v. R & A Oysters, Inc.*, 2016 WL 5219634, *1 (S.D. Ala. 2016)); *Smith*, 2010 WL 2401149 at *2 (same).

First, the Court is satisfied that the settlement is the result of the parties' good faith negotiations. The settlement agreement was the result of an arms-length negotiation by both parties while represented by counsel and facilitated by the Honorable Wayne Anderson. (Doc. 20 at 12; Doc. 45-1 at 3). The settlement was also reached after discovery and after several months of negotiations. (Doc. 20 at 13).

Second, the Court is satisfied that there are no obvious deficiencies and the settlement falls within the range of reason. During settlement negotiations, GoDaddy agreed to make up to $35,000,000 available: 1) to pay individuals who submit valid claim forms; 2) for attorney's fees; 3) for a service award to the Class Representatives; 4) for costs and expenses of

litigation. (See Doc. 45-1 at 47). Each Settlement Class Member who submits a valid claim is eligible to receive either a $35 cash award or a $150 voucher that can be used for GoDaddy services or products. (*Id.*). The parties also agreed, based on how many valid claims are submitted, that it is possible each Settlement Class Member's Award will be reduced on a *pro rata* basis to cover settlement administration costs, attorneys' fees, a service award to the Class Representatives, and costs and expenses of litigation. (*Id.*). Accordingly, the Court finds the Settlement Agreement is preliminarily approved as fair, reasonable, and adequate.

Order at 2–3, *Drazen* (S.D. Ala. June 9, 2020), ECF No. 49.

It is apparent that the District Court found the Plaintiff's Rule 23(e)(1) showing adequate based solely on a reading of the proposed Settlement Agreement and the parties' good faith and arms-length negotiations. Nothing in the record indicates that the District Court considered any other evidence such as the size of the class and the composition of the Rule 23(c)(2) notice the class would receive. Depending on what the notice represented, a large class might generate a flood of claims that would be reduced *pro rata* to pay the Plaintiffs' lawyers, incentive awards, and administrative expenses.

The information the District Court considered at the Rule 23(e)(2) hearing painted a different picture regarding whether its approval would benefit Class Counsel at the expense of absent Class Members. The District Court's approval of the Agreement

would bind about 98.1% of class members but they would receive absolutely nothing in exchange for giving GoDaddy overbroad releases, and Class Counsel would receive $7 million in attorney's fees. The District Court did express concern about the lack of Class Member claims—only 1.9% of the class—but it expressed no concern, either at the December 14 hearing or in its December 23 order, about the 98.1% of the Class Members who received nothing but gave GoDaddy overbroad releases because they neglected to opt-out of the settlement.

Perhaps the failure of 98.1% to opt out and thereby avoid giving GoDaddy and its affiliates the releases was due to the language in the Long Form Notice about opting out of the settlement:

> To exclude yourself from the settlement, you must mail a timely *letter to the Settlement Administrator* at *Drazen v. GoDaddy.com, LLC*, Settlement Administrator, P.O. Box 2730, Portland, OR 97208-2730, postmarked by **August 31, 2020**. Your request to be excluded from the settlement must be personally *signed* by you *under penalty of perjury* and *contain a statement that indicates your desire to be "excluded from the Settlement Class," and that, absent of excluding yourself or "opting out," you are "otherwise a member of the Settlement Class in the proposed settlement* of *Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563 (S.D. Ala.), *Bennett v. GoDaddy.com, LLC*, Case No. 1:20-cv-00094 (S.D. Ala.), and *Herrick v. GoDaddy.com, LLC*, Case No. 2:16-cv-00254 (D. Ariz.), *appeal pending* 18-16048 (9th Cir.)." The request should also include your full

name, address, telephone number(s), and GoDaddy
account number(s).

App. Exhibit B at 3 (emphasis added).

How many Class Members would take the time and effort
to compose a letter to comply with that opt-out instruction? How
many would be aware of the elements of the crime of perjury, like
materiality? And how many would think they should consult a law-
yer before signing a letter under penalty of perjury?

Given these stringent opt-out requirements, and the Settle-
ment Administrator's apparent discretionary authority to reject a
Class Member's opt-out letter as insufficient, it is reasonable to in-
fer that the Settlement Agreement was deliberately structured by
the parties' lawyers in a way that would ensure that no class mem-
bers would opt out and the entire class would therefore be bound
by its sweeping release provisions.

As the absent Class Members' fiduciary, the District Court
should have noted the inference. It bore on the fairness and rea-
sonableness of the proposed Settlement Agreement. The District
Court had the fairness of the settlement to the absent Class Mem-
bers in mind when it said this to Class Counsel at the fairness hear-
ing: "So you are asking me to give you 25 percent of a $35 million
settlement, but if you never intended for it to be really $35, then
that's not really the value of the settlement."

To sum it up, the District Court materially breached its duty
to the absent Class Members from June 9, 2020—when it prelimi-
narily approved the settlement agreement that advanced the

lawyers' interests at the expense of the absent Class Members—to December 23, 2020, when it certified the class, approved the proposed Settlement Agreement, and granted Class Counsel's motion for attorney's fees.

### iii.  Class Counsel Induced the District Court's Error

Rule 23(e)(1)(A) placed on the parties the burden of providing the District Court with "information sufficient to enable it to decide whether to give notice of the propose[d Settlement Agreement] to the class." Fed. R. Civ. P. 23(e)(1)(A).  Implicit in this burden is the duty to provide the District Court with information sufficient to satisfy the court's obligations under Rule 23(c)(2), specifically (c)(2)(B)(iii) here, and Rule 23(e)(2).  *See* Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment; Newberg §§ 13:12, 39.  Class Counsel undertook to carry this burden for the parties. As it turned out, the information they provided the District Court was materially insufficient to enable the court to comply with Rule 23(c)(2)(B)(iii).[62]  Class Counsel induced the non-compliance.  The information, or lack thereof, caused the District Court to err.

Rule 23(e)(2) required the District Court to determine whether the proposed Agreement was "fair, reasonable, and adequate after considering," among other things, whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  While Class Counsel were asking the District Court to make this determination, they were

---

[62] *See infra* Section III.B. (discussing omissions in the notice).

representing each of the Plaintiffs who sought a service award of $5,000. They were also representing the absent Class Members.

"One cardinal rule defines the scope of counsel's ethical obligations in class actions: class counsel owes a duty to the class as a whole and not to any individual members of the class." *Med. & Chiropractor Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 991 (11th Cir. 2020); *NPAS Sols.*, 975 F.3d at 1252. Class Counsel, in seeking $10.5 million in fees, were representing themselves. They were the absent Class Members' adversaries. At the same time, Class Counsel were in effect representing GoDaddy in obtaining overbroad releases of GoDaddy and scores of "affiliates" from claims yet to materialize. A class of 1.26 million members had to be bound by those releases. Class Counsel had agreed to the release provisions GoDaddy wanted. Their hope for attorney's fees depended on their agreement.

The District Court erred in finding that Class Counsel's representation of the absent Class Members was adequate because it failed to "adopt the role of a skeptical client and critically examine . . . the proposed settlement terms." *See* Manual for Complex Litigation § 21.61. Likewise, it did not "exercise 'careful scrutiny' in order to 'guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members.'" *See In re Equifax Inc.*, 999 F.3d at 1265 (quoting *Holmes*, 706 F.2d at 1147). Finally, it didn't see the conflict the lawyers had vis-à-vis the class members.

B. *The Notice Did Not Comply with Rule 23(c) and Due Process*

We next explore the deficiencies with the Notice. It failed to satisfy Rule 23(c)(2) and violated the due process rights of absent Class Members. Moreover, it misrepresented and therefore distorted the terms of the Settlement Agreement. Because Pinto did not raise this specific argument regarding the notice, we first pause to explain why we consider it.

i. Review of Issues Not Raised Below or Briefed on Appeal

"Ordinarily an appellate court does not give consideration to issues not raised below." *Hormel v. Helvering*, 312 U.S. 552, 556 (1941). We maintain "a healthy regard for the necessity and desirability of having errors corrected at [the] trial [court] rather than on appeal." *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975). "However, this principle is not unyielding." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1352 (11th Cir. 2017). "[O]n review[,] we always possess the power to consider errors to which no objection was made." *Edwards*, 512 F.2d at 286. Indeed, "[t]here may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court . . . below." *Hormel*, 312 U.S. at 557; *see also Dowell, Inc. v. Jowers*, 166 F.2d 214, 221 (5th Cir. 1948) ("The power of an appellate court on its own motion to consider grounds of error not raised below is not one which should be exercised in an ordinary case." (citation omitted)).

As Justice Black once explained,

> [r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.

*Hormel*, 312 U.S. at 557.

Despite Pinto's failure to raise these objections about the notice, either to the District Court or on appeal, "[w]e think that in the interest of justice the court here must act upon its own motion." *See Dowell*, 166 F.2d at 221. The District Court's error in approving the settlement, "was of such magnitude, . . . particularly in the circumstances of this case," in which it had a fiduciary duty to protect absent class members, "to have seriously prejudiced" absent class members' ability to make an informed decision about the settlement. *See Edwards*, 512 F.2d at 286. And when we consider GoDaddy and Class Counsel's tactic to rush the settlement and obtain an overly broad release of the Class Members' claims, "we are convinced that substantial injustice has been done in this case. We emphasize that we think that the sort of strategy employed by [Go-Daddy and class] counsel has no place in the federal district court." *See Hall v. Freese*, 735 F.2d 956, 961 (5th Cir. 1984).

ii.  The District Court's Rule 23(c)(2) and Due Process Errors

Rule 23(c)(2)[63] prescribes the notice a class action court must direct to the class proposed to be certified.  It is designed to fulfill the fundamental requirements of due process.

> The Advisory Committee's Note to Rule 23 reinforces this conclusion.  The Advisory Committee described subdivision (c)(2) as "not merely discretionary" and added that the "mandatory notice pursuant to subdivision (c)(2) . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject."  The Committee explicated its incorporation of due process standards by citation to *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and like cases.

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974) (citations omitted).[64]  One due process right Rule 23(c)(2) protects is the class

---

[63] *See supra* note 38.

[64] We have previously cabined our analyses of class action settlements "on the federal class action rule rather than on the mandates of the due process clause." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1160 (11th Cir. 1983).  And we have acknowledged that "[t]he Supreme Court employed a similar approach in *Eisen.*" *Id.*  That said, nothing prohibits us from employing a due process analysis here.  After all, even "[i]n *Eisen*, the Supreme Court endorsed the Advisory Committee's position that the notice provisions of Rule 23 must be interpreted so as to bring the conduct of class litigation *within the minimum requisites of due process.*" *Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 436 (5th Cir. 1979) (emphasis added).

members' right to be informed of "the claims, issues, or defenses" involved in the action. Fed. R. Civ. P. 23(c)(B)(iii).

No federal court at any level has yet weighed in on whether Rule 23(c)(2)(B)(iii) requires the notice to contain one of or all of "the claims, issues, or defenses." Let's look at two possible interpretations. One possibility is that notice would satisfy Rule 23(c)(2)(B)(iii) if it contained just the claims, just the issues, or just the defenses. Alternatively, notice would satisfy the Rule only if it contained all of the claims, and all of the issues, and all of the defenses. This first definition gives "or" a disjunctive meaning whereas the second gives "or" a conjunctive meaning. We think the second, conjunctive meaning, provides the correct interpretation of Rule 23(c)(2)(B)(iii).

The Supreme Court recently decided that the word "and" has a disjunctive meaning in 18 U.S.C. § 3553(f)(1), despite normally having a conjunctive meaning, "by reviewing text in context." *Pulsifer v. United States*, 144 S.Ct. 718, 726 (2024). Though the ordinary meaning of "or" is disjunctive, context can dictate otherwise. *See United States v. Garcon*, 54 F.4th 1274, 1298 (2022) (Branch, J., dissenting) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 70 (2012); *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1332 (11th Cir. 2005)), *abrogated in part by Pulsifer*, 144 S.Ct. 718 (2024). In fact, courts often construe "or" to have a conjunctive meaning due to context in which the "or" appears. *Id.* at 1298–99 (collecting cases from the Supreme Court, Former Fifth, and Eleventh Circuit); *see also id.* at 1291

(Jordan, J., dissenting) (discussing "[t]he legal interchangeability between 'and' and 'or'" in English courts, recognized by the Supreme Court in 1865, and affirmed several times by our Court).

The context here makes clear "or" has a conjunctive meaning in Rule 23(c)(2)(B)(iii). To start, the "claims, issues, or defenses" language in Rule 23(c)(2)(B)(iii) intentionally parallels Rule 23(c)(1)(B). *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 40 n.17 (1st Cir. 2009). Rule 23(c)(1)(B) requires that "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel." Fed. R. Civ. P. 23(c)(1)(B). In this section of the Rule, "or" must be disjunctive because a class can consist of just a claim, just an issue, or just a defense. *See* Fed. R. Civ. P. 23(a)(3) ("the claims or defenses of the class"); *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187–88 (3d Cir. 2006) (certification order must include "complete list of the claims, issues or defenses to be treated on a class basis"); *Simpson v. Dart*, 23 F.4th 706, 713 (7th Cir. 2022) (class's definition is not synonymous with its claims). Yet, it makes sense that the 2003 amendment to Rule 23 copied this language to (c)(2)(B)'s notice content requirements—so that class members know, "in plain, easily understood language," their legal rights that are being handled by the class device.

Next, there is compelling evidence that "or" is conjunctive in (c)(2)(B) unlike its sense in (c)(1)(B). A different context gives rise to a different meaning. First, section (c)(1)(B) deals with the certification order's content and thus primarily aids an appellate court

in later reviewing whether the class certification order was proper. *See Wachtel*, 453 F.3d at 186; *see also* Newberg § 7:26. On the other hand, section (c)(2)(B) directs the notice's content and thus primarily aids class members in deciding whether they would like to opt out of the (b)(3) class. *See In re Nissan*, 552 F.2d at 1104–05; Newberg § 8:12. As such, (c)(2)(B) is meant to provide absent class members with more, not less, information, so that they can make an informed decision about opting-out or not. This is buttressed with the Rule's command to direct "the best notice that is practicable." Accordingly, it would make no sense to read (c)(2)(B)(iii)'s "or" in a disjunctive sense and thus say that notice is sufficient where it omits the claims and issues but includes information on possible defenses. Or, more apt in this case, where notice may inform class members about their claims but provide no information on the relevant issues.

A final note on this interpretation: if a class does not have any defenses, notice containing only the claims and issues would still be sufficient. This is because all of the "class . . . defenses" amounts to nothing, and thus class members do not need to be told of any more relevant information to satisfy Rule 23(c)(2)(B)(iii).

So again, to fulfill the due process principles upon which Rule 23(c)(2) is based, Rule 23(c)(2)(B)(iii) mandates that the notice a district court directs to a Rule 23(b)(3) class "clearly and concisely state in plain, easily understood language . . . the class claims, issues, or defenses." In Section I.C.iii., we recited what the notice revealed about the Class Members' claims. It was sparse. It stated

that the claims were founded on 47 U.S.C. § 227 violations. But the notice failed to reveal that the claims could allow Class Members to potentially recover $500 for each phone call or text message made to each Class Member's cell phone, or $1,500 if made willfully or knowingly; that the class consisted of over 1.26 million members; and that GoDaddy's liability exposure was more than $600 million.

If the Class Members had known that GoDaddy was getting rid of a $600 million exposure for up to $35 million less $10.5 million in attorney's fees (as if paid to the lawyers for eliminating the exposure), they would have wondered why. And they would likely have discovered why if the notice had informed them—that is, if the District Court as fiduciary had ordered the notice to inform them—of *Facebook* and the probability that their claims would be worthless if *Facebook* were decided before the District Court could approve the proposed Settlement Agreement.

The District Court neglected its duty in failing to inform the absent Class Members about the *Facebook* issue: whether GoDaddy used an ATDS in making the calls and sending the text messages. This was the dispositive issue in the case. Both sides agreed that this was so. Can there be any doubt that the District Court's failure to inform the Class Members denied them due process of law?

The Class Members were entitled to know that if the District Court waited until the Supreme Court decided *Facebook* before considering whether to approve the Settlement Agreement, the

deal would probably have collapsed.[65]  That is because if the Supreme Court ruled that a system materially similar to the one Go-Daddy used was not an ATDS, the Class Members' claims would have vanished along with Class Counsel's anticipated attorney's fees.  On the other hand, if the Supreme Court ruled to the contrary, their claims would have a value well in excess of $35 in cash or a $150 voucher, and so too Class Counsel's right to attorney's fees.

For these reasons, we conclude that the District Court erred in approving Class Counsel's Short Form and Long Form Notices.[66]

---

[65] When a trial court is told that the dispositive issue in the case is pending decision in the appellate court (with jurisdiction to review the trial court's judgment), it is a rare occasion when the trial court does not stay proceedings pending the appellate decision.

[66] Rule 23(e)(4) arguably provided an opportunity for the District Court, in its discretion, to send another round of notice after seeing such a low number of claims or other issues.  The Rule is called "New Opportunity to Be Excluded" and states: "If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so."  Fed. R. Civ. P. 23(e)(4).  An unpublished opinion from our Circuit suggests 23(e)(4) does not apply in a situation like the present one.  *See, e.g., In re HealthSouth Corp. Sec. Litig.*, 334 F.App'x 248, 254 n.12 (11th Cir. 2009) (noting that Rule 23(e)(4) "address[es] a situation in which the class was certified prior to the approval of a settlement").  District courts in Texas and California have come to similar conclusions based on the Advisory Committee notes to the 2003 amendment.  *See Slipchenko v. Brunel Energy, Inc.*, No. H-11-1465, 2015 WL 338358, at *6 (S.D. Tex. Jan. 23, 2015) (quoting Fed. R. Civ. P. 23(e)(3) advisory committee's note

_____

to 2003 amendment (emphasis added)) ("Rule 23(e)(3) [now (e)(4)] authorizes the court to refuse to approve a settlement unless the settlement affords a new opportunity to elect exclusion *in a case that settles after a certification decision if the earlier opportunity to elect exclusion provided with the certification notice has expired by the time of the settlement notice.* A decision to remain in the class is likely to be more carefully considered and is better informed when settlement terms are known.").

We are unpersuaded and think Rule 23(e)(4) allows for additional notice in this situation. First, unpublished opinions are not binding precedent on us. *United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013) (citing 11th Cir. R. 36-1, IOP 6). Second, the advisory committee note does not foreclose *this* scenario, it just states that (e)(4) *also provides* an opportunity for additional notice in *that other* scenario. Third, and related, if one did think the advisory committee note cuts against using (e)(4) for notice in any scenario other than the one it describes, it still would not be binding. Although the interpretations in the advisory committee notes are highly persuasive, they are not binding. *See Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005). Finally, the plain text of (e)(4) clearly allows another round of notice for class members to opt out, even in our scenario. Further, Rule 23(e)(1) provides for notice when there is a proposed settlement, so it would be superfluous to read (e)(4) as providing the same notice for the same reasons as the notice procedures of (e)(1). This reading of (e)(4) is supported by a variety of sources, including other parts of the advisory committee note, the FJC manual, a leading legal treatise, and an opinion by then-Judge Ketanji Brown Jackson. *See Ross v. Lockheed Martin Corp.*, 267 F.Supp.3d 174, 202–04 (D.D.C. 2017); *True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052, 1082–83 (C.D. Cal. 2010) ("The only notice sent to class members contained the terms of the initial proposed settlement, to which the parties have agreed to make several substantive changes. These changes . . . may have an effect on the decisions of the Objectors and opting-out class members. Thus, the parties should have sent notice of the revised settlement to at least these class members."); FJC Manual on Complex Civil Litigation, § 21.643 ("An opportunity to opt out after the settlement terms are known, either at the initial opportunity or a second opportunity");

### C. *Attorney's Fees Were Not Calculated Properly*

Finally, we move to why the District Court abused its discretion when it granted in part Class Counsel's motion for attorney's fees. This Section proceeds in three parts. First, we establish what Rule 23(h) requires when a district court considers an award of attorney's fees. Second, we note how the District Court erred by treating the Settlement as creating a common fund rather than a claims-made settlement. Last, we explain why we disagree with the District Court's conclusion that CAFA does not apply. And in doing so, we answer the novel questions before our Circuit of what constitutes a coupon settlement and how CAFA's attorney's fees provisions apply.

#### i. Rule 23(h)

Rule 23(h) governs the award of attorney's fees. We read Rule 23(h) "in accordance with its plain text." *NPAS Sols.*, 975 F.3d at 1252. "[T]he plain text of the rule requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." *Id.* (quoting *In re Mercury*, 618 F.3d at 993–94). This "ensures that class members have full information when considering—and,

---

Fed. R. Civ. P. 23(e)(3) advisory committee's note to 2003 amendment ("A decision to remain in the class is likely to be more carefully considered and is better informed when settlement terms are known. . . . Many factors may influence the court's decision. Among these are changes in the information available to class members since expiration of the first opportunity to request exclusion, and the nature of the individual class members' claims."); 5 Moore's Federal Practice - Civil § 23.167.

should they choose to do so, objecting to—a fee request." *Id.* Although class members may become aware of the overall amount that counsel intends to request from a class notice, they would be at a disadvantage in raising objections based solely on the notice. *Id.* This is because only the fee motion filed later will encompass "'the details of class counsel's hours and expenses' and 'the rationale . . . offered for the fee request.'" *Id.* (quoting *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014)) (omission in original).

"Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members." *Id.* (quoting *In re Mercury*, 618 F.3d at 994). It enhances the integrity of the class action settlement process, the district courts' attorney's fees rulings, and, in the long run, the public's respect for the courts. The District Court gave absent Class Members no advance notice that its June 9, 2020, order would require Class Counsel to file their motion for attorney's fees by July 24, 2020, despite the Settlement Agreement requiring that their motion for attorney's fees be filed by November 14, 2020.[67] The same order then

---

[67] The Settlement Agreement states: "Class Counsel shall file their Motion for Final Approval of the Agreement, and application for attorneys' fees, costs and expenses and for a service award for Plaintiffs, no later than thirty (30) days prior to the Final Approval Hearing."

gave the absent Class Members only seven days to object to the motion for attorney's fees.

The District Court erred. In addition to disregarding the manifest intent of Rule 23(h), it breached its fiduciary duty to the absent Class Members whose interests became antagonistic to Class Counsel's interests the moment Class Counsel moved the District Court for attorney's fees on July 24.

What was the rush? As noted above, "[t]he plain text of [Rule 23(h)] requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." *Id.* (quoting *In re Mercury*, 618 F.3d at 993–94) (alteration in original). The District Court admitted that it erred in approving Class Counsel's motion in part on August 11, 2020, but it considered the error harmless. We need not decide whether the District Court's reconsideration of the motion at the December hearing removed the taint from its August 11 action because its *ex parte* decision on the motion denied the absent Class Members fundamental due process.

### ii. Claims-made v. Common Fund Settlements

"A common-fund case is when 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Home Depot*, 931 F.3d at 1079 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). "This is typical in class actions, where the class might receive a large payout, from which the attorney derives his fees." *Id.* "In common-fund cases, we have directed courts to

use the percentage method." *Id.* at 1081 (citing *Camden I*, 946 F.2d at 774 ("Henceforth in this circuit, attorney's fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.")). On the other hand, "[a] 'claims-made' settlement is a settlement that does not have a fixed settlement fund, but rather provides that the defendant will pay claims of class members who file them, usually up to some fixed ceiling." Newberg § 13:7 (footnote omitted).

These two types of settlements are quite different and the differences affect the amount class members actually receive. Since attorney's fees comes out of the relief awarded to the class, the differences between the two settlement types also affect what would be a reasonable amount of attorney's fees. *See Home Depot*, 931 F.3d at 1079 ("Common-fund cases are consistent with the American Rule, because the attorney's fees come from the fund, which belongs to the class."); *see also* Newberg § 13:54.

> In a common fund case, a defendant contributes the settlement amount, say $100 million, into a settlement fund; the fund is distributed to the class directly or after a claims process. If the class does not claim the full $100 million, the unclaimed funds do not necessarily go back (or "revert") to the defendant; they may be distributed *pro rata* among the class members who made claims, or sent to a charity via a *cy pres* award, or to the government via escheat.
>
>     . . . .

A critical feature of a claims-made settlement is that although it only pays the claims of class members who file them, it releases the claims of the entire class. It is not, therefore, the functional equivalent of an "opt-in" settlement. By releasing the claims of nonclaiming class members, a claims-made settlement, like most class action settlements, requires a class member to opt out to escape its binding effect.

. . . .

. . . The term "claims-made settlements" refers not to the process of claiming, but to the scope of defendant's liability—whether it is fixed by a common fund that does not revert or set only at the level of class members' claims.

Newberg § 13:7 (footnotes omitted).

The District Court improperly characterized this settlement as a common fund settlement when it was actually a claims-made settlement. This erroneous finding of fact rendered the District Court's approval of the proposed Settlement Agreement an abuse of discretion. *See Home Depot Inc.*, 931 F.3d at 1078-82.

The settlement the Agreement created is a claims-made settlement, not a common fund settlement because, based on the terms of the Agreement, the $35 million was not a fund created for the payment of vouchers, cash awards, attorney's fees, and administration costs. Instead, GoDaddy only paid out an amount equal to the claims actually made and settlement costs, after those amounts were known. As the Agreement stated, "all unpaid funds

from uncleared checks and all returned vouchers shall be returned to [GoDaddy,] and [GoDaddy] shall have no obligation to pay any further amount."

Claims-made settlements have some drawbacks:

> Claims-made settlements are disfavored because, as noted in the example above, they tend to promise far more than they deliver. In most class action settlements (claims made or not), claiming may be quite low because of the small claims nature of the relief and the often difficult hurdles of claiming; if the defendant is disgorged of only the amounts claimed, and not of a fixed fund, it is likely to pay only a small percentage of the potential total recovery to the class. This troubles courts, even more so if the settlement also includes a "clear sailing" agreement whereby the defendant agrees not to contest class counsel's fee request up to a certain level. The combination makes it appear as if class counsel agreed to a low defendant liability in exchange for an easy fee.

Newberg § 13:7 (footnotes omitted).

Recall that here, less than two percent of the class members submitted a claim and the attorney's fees the District Court awarded were over four times the total value of the claims. In addition, the parties agreed to a "clear sailing" provision that would have set the attorney's fees at $10.5 million, instead of the $7 million the District Court eventually approved, which would have

created an even larger disparity between the attorney's fees and the benefits the Class Members actually received.

Class Counsel—in their briefs, at the final approval hearing, and at oral argument before us—cited several cases in support of the position that it was reasonable to award attorney's fees based on a percentage of the funds made available to the class, rather than what the class members actually receive. The first case cited was *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV-GOODMAN, 2016 WL 1529902, at *23 (S.D. Fla. Apr. 13, 2016), and, the case it relies on, *Poertner v. Gillette Co.*, 618 F.App'x 624 (11th Cir. 2015). Neither case is binding on us here. *See United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013) (citing 11th Cir. R. 36-1, IOP 6) ("[U]npublished opinions . . . are not binding precedent." (internal quotation marks omitted)). Moreover, the issue in *Poertner* was not that the valuation of the settlement was only based on "actual payments to the class." Instead, it was that the valuation was flawed because it did not also include "the substantial nonmonetary benefit and the cy pres award." *Poertner*, 618 F.App'x at 630. The case was not focused on whether the valuation should be based on "actual payments to the class" or payments that could have been made if more claims were submitted. The "substantial nonmonetary benefit" was Gillette agreeing to stop putting the allegedly misleading statements on the packaging of Ultra batteries. *Id.* at 626. The *cy pres* award was a donation of $6 million of batteries to charities over the next five years. *Id.* We have nothing like that in the *Drazen* settlement.

Class Counsel also rely on our decision in *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294–95 (11th Cir. 1999).[68] We find the decision inapposite for several reasons. First, *Waters* is a common fund case, so its holdings would not be binding in a claims-made case. *See Home Depot*, 931 F.3d at 1082 ("[W]e are not bound in a contractual fee-shifting case by statutory fee-shifting cases," regarding how to calculate attorney's fees.). Second, even if *Waters* applied, all of the cases it cites—including *Boeing*, which Class Counsel cited at oral argument—are common fund cases, save one. The one exception is *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 852–53 (5th Cir. 1998). There, the Fifth Circuit held that "it was not an abuse of discretion for a district court judge to consider the actual award paid out to the class in determining whether a fee application was reasonable." *Waters*, 190 F.3d at 1296. In sum, these cases do not apply in the situation here. Moreover, the only claims-made case cited or relied upon used the actual relief paid out to class members in calculating the attorney's fee.

In a statement respecting the denial of certiorari to review *Waters*, Justice O'Connor spoke broadly to the attorney's fees issues we face here. She stated:

> In [*Boeing*], we upheld an award of attorney's fees in a class action where the award was based on the total fund available to the class rather than the amount actually recovered. We had no occasion in *Boeing*, however, to address whether there must at least be some

---

[68] The District Court similarly misapplied *Poertner* and *Waters*. *Drazen*, 2020 WL 8254868, at *12.

rational connection between the fee award and the amount of the actual distribution to the class. The approval of attorney's fees absent any such inquiry could have several troubling consequences. Arrangements such as that at issue here decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery. They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class. And they could encourage the filing of needless lawsuits where, because the value of each class member's individual claim is small compared to the transaction costs in obtaining recovery, the actual distribution to the class will inevitably be minimal. The Courts of Appeals have differed in their approaches to the problem.

*Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223 (2000) (mem) (citation omitted).

In basing its award of Class Counsel's attorney's fees in part on a finding that the settlement created a common fund, the District Court abused its discretion because the finding constitutes clear error. That said, we hold that CAFA applies to this settlement, so its attorney's fees provisions govern how to calculate attorney's fees in this case.

### iii.  The Class Action Fairness Act Applies Because the Settlement was a Coupon Settlement

If a proposed class action settlement provides for class member recovery of coupons, 28 U.S.C. § 1712 comes into play and governs the district court's award of attorney's fees to class counsel.[69] The District Court concluded that the proposed Settlement Agreement did not create a coupon settlement subject to CAFA review because the Class Members had the option to choose a cash award instead of a voucher.  In his opening brief, Pinto argues that the presence of a cash option should not automatically make a settlement a non-coupon settlement.  He identifies three Courts of Appeal that have faced similar cases and how they each applied CAFA, despite class members having the option to choose between a voucher and cash.[70]  Pinto argues that the District Court erred here because it relied on a district court opinion that cited a Ninth

---

[69] The relevant provisions of 28 U.S.C. § 1712 are quoted in note 85, plus:

> **(e) Judicial scrutiny of coupon settlements.**—In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members.

The "fair, reasonable, and adequate" language here is the same as in Rule 23(e)(2), but we leave for another day if this requires something more.

[70] In Section III.C.iii.1, we discuss coupon settlement cases from other Circuits, including the approaches of the Fourth, Seventh, and Ninth Circuits that Pinto mentions in his brief here.

Circuit opinion,[71] which suggested that a cash option would make CAFA inapplicable.  But the Ninth Circuit had since applied CAFA to settlements with a cash option, twice.[72]

Pinto contends that the vouchers here are coupons under CAFA because they "require class members to use them with the defendant," may require spending additional money with Go-Daddy, and have limited flexibility.  Pinto also points to the limited universe of products GoDaddy offers and the policy concern that GoDaddy is not forced to "disgorge ill-gotten gains" when Class Members have to do business with GoDaddy to use the vouchers.

Drazen replies that Pinto's argument about the cash option is flawed because "the settlement specifically enabled *each* of the 1.2 million class members to claim a cash award of up to $35."  Drazen contends that because Class Counsel negotiated for and provided an alternative voucher award—with a face value greater than four times the cash option—CAFA should not be triggered.  According to Drazen, a finding that it does trigger CAFA would disincentivize one method for increasing the settlement award for class members.

---

[71] *See Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV, 2017 WL 9472860, at *6 (S.D. Fla. Nov. 20, 2017); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 952 (9th Cir. 2015).  These cases are discussed more fully in Section III.C.iii.1.

[72] One of these cases, *Chambers v. Whirlpool Corp.*, 980 F.3d 645 (9th Cir. 2020), provided no guidance on what a coupon is.  But the other, *In re Easysaver Rewards Litigation*, 906 F.3d 747 (9th Cir. 2018), is discussed in Section III.C.iii.1.

Even if CAFA applies, Drazen argues that the vouchers here are not coupons because they can be used to buy new services outright, not merely for a discount, and without spending any of one's own money. Further, the recipients are current customers, and thus already likely to continue doing business with GoDaddy. For example, in 2021, website hosting from GoDaddy started at $6 a month, so someone electing to receive the $150 voucher could get over two years of website hosting with it, without spending any of their own money. GoDaddy also has other goods and services that cost $4, $2 a month, and $10 a month. Drazen says many of the policy concerns behind CAFA do not apply here because the Class Members are almost entirely current or former customers and the alleged violations "do not relate to the quality of services provided by GoDaddy." Finally, Drazen points to the nearly 50-50 split between the Class Members choosing the $150 vouchers and those choosing $35 cash as an indicator that Cass Members valued the vouchers the same or better than cash. GoDaddy joins all of Drazen's arguments on why the vouchers are not coupons while adding that the vouchers are "freely transferrable, good on all products and services GoDaddy offers, and do[] not require any minimum purchase."

We agree that CAFA applies to settlements made up of coupons and other forms of relief because the language of 28 U.S.C. § 1712 anticipates that what it labels "coupon settlements" will not always be composed entirely of coupons. *See In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 706–10 (7th Cir. 2015) (explaining the proper understanding of § 1712(a), (b), and (c) based on the "text

and structure of § 1712, along with its legislative history and purpose" and thus "coupon settlements" as the term is used in CAFA applies "when a coupon settlement also provides some equitable or cash relief"). We also agree that the vouchers here are coupons but based on the plain meaning of the word coupon.

1. The Meaning of Coupon in CAFA

The word "coupon" is not defined in CAFA. *See* 28 U.S.C. § 1712. Therefore, in interpreting the statute, we give "each word its ordinary, contemporary, [and] common meaning." *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1273 (11th Cir. 2020) (en banc) (quotation omitted); *see also United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023) ("When a statute does not define a term, the plain meaning of the text controls unless the language is ambiguous or leads to absurd results." (cleaned up)). "As an initial matter, we look to the plain and ordinary meaning of the statutory language as it was understood at the time the law was enacted." *Dawson*, 64 F.4th at 1236 (cleaned up). "And one of the ways to figure out that meaning is by looking at dictionaries in existence around the time of enactment." *Id.* (cleaned up).

The plain meaning of coupon around 2005, when CAFA was enacted, was a voucher, certificate, or form that can be exchanged

for one or more goods or services, or for a discount on one or more goods or services.[73]

---

[73] To start, Black's Law Dictionary is not helpful here. It defines a "coupon" as "[a]n interest or dividend certificate that is attached to another instrument, such as a bond, and that may be detached and separately presented for payment of a definite sum at a specified time." *Coupon*, *Black's Law Dictionary* 378 (8th ed. 2004). The Oxford English Dictionary's first definition is similar to Black's, but its second definition is more illuminating: "A voucher issued with a product for the purchaser to exchange for cash or goods; part of a printed wrapper etc used similarly." Its two other definitions refer to a "part of an advertisement" that can be "fill[ed] in and sen[t in] for more information or as an order for goods," and "an entry-form for a competition." *Coupon*, *Oxford English Dictionary* 537 (5th ed. 2002). Merriam-Webster's Collegiate Dictionary also has a first definition similar to Black's. *See Coupon*, *Merriam-Webster's Collegiate Dictionary* 286 (11th ed. 2003). Its second definition for "coupon" is:

> a form surrendered in order to obtain an article, service, or accommodation: as **a:** one of a series of attached tickets or certificates often to be detached and presented as needed **b:** a ticket or form authorizing purchases of rationed commodities **c:** a certificate or similar evidence of a purchase redeemable in premiums **d:** a part of a printed advertisement to be cut off to use as an order blank or inquiry form or to obtain a discount on merchandise or services.

*Id.* The American Heritage Dictionary starts with the similar first definition and then defines "coupon" as follows:

> **2.a.** One of a set of detachable certificates that may be torn off and redeemed as needed. **b.** A detachable part, as of an advertisement, that entitles the bearer to certain benefits, such as a refund. **c.** A certificate accompanying a product that may be redeemed for a cash discount. **d.** A printed form to be used as an order blank or for requesting information or obtaining a

The $150 Voucher Awards in this case are coupons. They are credits redeemable for GoDaddy's products and services. Plain and simple.

It does not matter that $150 was enough to buy many different entire products from GoDaddy or over two years of some of their services. Although no minimum purchase is required, whether one must spend additional money with GoDaddy or anyone else does not by itself transform a voucher into a coupon or not. The certificate is a coupon whenever it is something that is not cash but can be exchanged for some or all of a product. For example, a $20 voucher to a vendor, awarded in a settlement, can be a coupon whether that vendor only sells items for $10, $20, $30, or some combination thereof—especially if the settlement vouchers can be stacked and transferred. The definition of a coupon only turns on whether the voucher, certificate, or form can be exchanged for one or more goods or services, or for a discount on one or more goods or services. The expiration date and restrictions on vouchers will at some extreme make it so that the vouchers

---

discount. **3.** A detachable slip calling for periodic payments, as for merchandise bought on an installment plan.

*Coupon*, *American Heritage College Dictionary* 327 (4th ed. 2002). Finally, the New Oxford American Dictionary, first published in 2001, states a "coupon" is "a voucher entitling the holder to a discount off a particular product" or "a form in a newspaper magazine that may be filled in and sent as an application for a purchase or information." *Coupon*, *New Oxford American Dictionary* 392 (1st ed. 2001). In the 2005 edition, "discount off a" was changed to "discount for a." *Coupon*, *New Oxford American Dictionary* 389 (2d ed. 2005).

effectively no longer can be exchanged, and thus are not coupons. But, such restrictions may diminish the value of the voucher and thus negatively impact the fair, reasonable, and adequate assessment by the District Court under Rule 23(e)(2).[74]

Many of our sister circuits have looked to CAFA's legislative history, particularly Senate Report 190-14, to understand what a "coupon" or "coupon settlement" looks like. However, the Eleventh Circuit will not resort to legislative history "to undermine the plain meaning of the statutory language." *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) (en banc) (citing among other cases *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994)). "'Congressional intent' is a tricky thing." *Id.* at 999 (Tjoflat, J., concurring in part and dissenting in part). "[S]ince the Legal Realist movement of the early 20th Century, scholars have criticized the whole concept of a legislative 'intent' or 'purpose' as undiscoverable at best, and at worst,

---

[74] Also, settlements that automatically give class members goods, services, or a discount may not be "coupon settlements" under CAFA. For example, a settlement may automatically enroll class members in one free year of Amazon Prime or automatically add 1,000 V-Bucks to each member's Epic Games account. Note, this is different than automatically adding e-credits or discounts to a class member's account with a store or vendor. There, the credit or discount must still be exchanged at the point of sale whereas here the service (Prime) or goods (V-Bucks) have already been given to the class member without any intermediate exchange step. In that case, there is nothing to exchange or redeem and class members with active Amazon or Epic accounts or that would actually use the new product or service they have received will find this settlement award valuable. Here again, this settlement award may not be a coupon but will affect the fair, reasonable, and adequate assessment by the District Court.

a facade used by activist judges that can be endlessly manipulated in the service of a judge's personal policy preferences." *Id.* (citing Max Radin, *Statutory Interpretation*, 43 Harv. L. Rev. 863, 870–71 (1930)).[75] "Perhaps this is one reason why, in recent years, the federal courts have turned more and more to focus on the text of a statute, as opposed to the statutory purpose (often revealed in the legislative history)." *Id.* "Though congressional intent (and legislative history) still have a legitimate place in the interpretive enterprise, this Court has embraced the notion that we should always begin with the statutory text, and that where the congressional command is clear, we should follow the statute as enacted." *Id.* (citation omitted). Indeed, CAFA and its text "resulted from years of intense lobbying . . . partisan wrangling, and, following two successful filibusters, fragile compromises." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1181 (9th Cir. 2013) (citation omitted). Therefore, it would not be appropriate to define "coupon" based on

---

[75] Professor Radin says, in relevant part:

> [T]he intention of the legislature is undiscoverable in any real sense . . . . The chances that several hundred men each will have exactly the same determinate situations in mind as possible reductions of a given [statutory issue], are infinitesimally small . . . . Even if the contents of the minds of the legislature were uniform, we have no means of knowing that content except by the external utterances or behavior of these hundreds of men, and in almost every case the only external act is the extremely ambiguous one of acquiescence, which may be motivated in literally hundreds of ways . . . .

Max Radin, *Statutory Interpretation*, 43 Harv. L. Rev. 863, 870–71 (1930).

CAFA's legislative history, particularly if doing so would undermine its plain meaning.

Our interpretation of "coupon" aligns with those of the Fourth and Second Circuits, who used contemporary dictionary definitions along with legislative history. *See Moses v. N.Y. Times Co.*, 79 F.4th 235, 247–48 (2d Cir. 2023) (confirming legislative history removes any doubt or ambiguity about the definition of coupon derived from contemporary dictionaries); *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 488–90 (4th Cir. 2020) (finding its definition to also be in line with CAFA's legislative history).

Five of our sister circuits have at least one case deciding whether a voucher is a coupon. The Seventh Circuit was the first to consider what a coupon is under 28 U.S.C. § 1712. Judge Wood's opinion in *Synfuel Technologies v. DHL Express* defined a coupon as "just a discount on a proposed purchase" and not "an entire product." 463 F.3d 646, 654 (7th Cir. 2006). It also listed some characteristics of coupons: forced "future business with the defendant," failure to "provide meaningful compensation" or "disgorge ill-gotten gains from the defendant," and "some percentage of the [coupons] will never be used and [thus] not constitute a cost to [defendant]." *Id.* at 653–54 (citing Christopher R. Leslie, *The Need to Study Coupon Settlements in Class Action Litigation*, 18 Geo. J. Legal Ethics 1395, 1396–97 (2005) and then, for the final characteristic, *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001)). Then, in 2014, the Seventh Circuit rejected its previous definition stating,

"the idea that a coupon is not a coupon if it can ever be used to buy an entire product doesn't make any sense." *Redman v. RadioShack Corp.*, 768 F.3d 622, 635 (7th Cir. 2014) (Posner, J.). Instead, it clarified that "[c]oupons usually are discounts" and may also "exceed the price of an item" that can be purchased with the coupon. *Id.* at 635–36 (referencing "the dominant concerns that animate the provisions of [CAFA] regarding coupon settlements") (citing S. Rep. No. 109-14, pt. IV.D.1, at 15–20); *see also In re Sw. Airlines*, 799 F.3d at 706 (citing *RadioShack* for the proposition that the Seventh Circuit "ha[s] rejected a narrow definition of 'coupon' by rejecting, for purposes of § 1712, a proposed distinction between 'vouchers' (good for an entire product) and 'coupons' (good for price discounts)").

Next, the Ninth Circuit has developed three factors that have been widely cited by other courts when determining if a voucher is a coupon. First, the Ninth Circuit found e-credits to be a euphemism for coupons. *HP Inkjet*, 716 F.3d at 1176.[76] Then, in a 2015 case, Chief Judge Thomas's opinion found Walmart gift cards not to be coupons because they provide more flexibility, are not a percentage discount on a purchase, do not require spending any more money, and can potentially be used on a large number of items. *See*

---

[76] The credits were redeemable for printers and printer supplies on the defendant's website, but also expired in six months, were not transferrable, could not be used with other discounts or coupons, and the amount of the largest e-credit—$6—was also how much more a combo pack of ink cartridges cost on the defendant's website as compared to Amazon.com. *In re HP Inkjet Printer Litigation*, 716 F.3d 1173, 1176, 1179 & n.6 (9th Cir. 2013).

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950–51 (9th Cir. 2015) (citing S. Rep. No. 109-14, at 15–20).[77]  It distinguished a gift card to a giant low-cost retailer from every example in the Senate report for CAFA.  *See id.*  Finally, in a 2018 case, the Ninth Circuit distilled their analysis into three factors from *Online DVD*: "(1) whether class members have 'to hand over more of their own money before they can take advantage of' a credit, (2) whether the credit is valid only 'for select products or services,' and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable."  *In re Easysaver Rewards Litig.*, 906 F.3d 747, 755 (9th Cir. 2018) (quoting *Online DVD*, 779 F.3d at 951).  This analysis was "informed by § 1712's animating purpose of preventing settlements that award excessive fees while leaving class members with 'nothing more than promotional coupons to purchase more products from the defendants.'"  *Id.* (citing *Online DVD*, 779 F.3d at 950, and quoting S. Rep. No. 109-14, at 15).

The Sixth Circuit has also weighed in on whether credits in a particular settlement constituted coupons for the purposes of CAFA.  Chief Judge Cole's majority opinion held that they did not, citing the *Online DVD* factors from the Ninth Circuit, because they did not "require an individual to buy a product or service before receiving the promised benefits," or "reengage[e] in the same . . . activity that they believe led to their injury."  *Does 1-2 v. Déjà Vu*

---

[77] The court also pointed out that "[d]istrict courts that have considered the issue have not classified gift cards as coupon settlements falling under CAFA." *Online DVD*, 779 F.3d at 951 (collecting cases).

*Servs., Inc.*, 925 F.3d 886, 897 (6th Cir. 2019) (quoting *Easysaver*, 906 F.3d at 757) (alterations in original).[78]  The dissent in *Déjà Vu* would have found the credits to be coupons based on § 1712's animating purpose, a different view of the same three factors from the Ninth Circuit, as well as the disgorgement concern from the Seventh Circuit's *Synfuel* opinion.  *Id.* at 902–03 (White, J., dissenting in part) (citations omitted).

Recently, the Fourth Circuit issued a thoroughly reasoned opinion on how to determine if a voucher is a coupon for § 1712 of CAFA.  The Court based its opinion on three sources: "CAFA's legislative history, contemporary dictionaries, and the decisions of other courts."  *Lumber Liquidators*, 952 F.3d at 488.  An important first point is that labels for the relief awarded to class members are not dispositive of whether they are coupons under CAFA.  *Id.* at 489 (citing S. Rep. No. 109-14, at 16, 18–20; *RadioShack*, 768 F.3d at 635–36).  Then, the Court pointed to "at least two interconnected concerns that Congress targeted" with CAFA: (1) "requir[ing] class members to do business with [the defendant] in the future," and (2) spending additional money with the defendant.[79]  *Id.* at 489–90

---

[78] The settlement here provided for injunctive relief and credits by default, with an option to choose cash instead of credits.  *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 897 (6th Cir. 2019).  The court noted that the cash option meant class members did not have to still be employed by the defendant or do business with it in the future.  *Id.*

[79] On the second concern, the court noted that even if class members didn't have to spend additional money, that would not be dispositive of the coupon

(citations omitted).  Next, the Fourth Circuit defined coupons as "items that entitle their holders to obtain discounted or free . . . products," drawing from dictionary definitions collected by a previous District of Massachusetts case.  *Id.* at 490 (citing *Tyler v. Michaels Stores, Inc.*, 150 F.Supp.3d 53, 60 & n.14 (D. Mass. 2015)).  Finally, the Court went through the three factors from the Ninth Circuit and concluded that the vouchers in its case would be coupons under those as well as the broader definition and additional factors from the Seventh Circuit.  *Id.* at 489–91 (citations omitted); *see also Tyler*, 150 F.Supp.3d at 59 (explaining that the Seventh Circuit's definition of "coupon" is broader than that of Ninth Circuit)).[80]  The Fourth Circuit also held that § 1712 applies even when a settlement includes a cash option.  *Lumber Liquidators*, 952 F.3d at 491(first citing *Easysaver*, 906 F.3d at 759 n.11; and then citing *In re Sw. Airlines*, 799 F.3d at 710) (reasoning that to hold otherwise "would defeat CAFA's purpose").[81]

---

issue.  *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 490 n.12 (4th Cir. 2020).

[80] For the approximately 15% of class members that chose a voucher instead of cash, the voucher covered about 60% of the price they paid for the flooring from Lumber Liquidators.  *Id.* at 480.  The vouchers could only be used on flooring and flooring tools, had at least a three-year lifespan and could not be sold or redeemed for cash, but were transferable to family or certain charities within twenty days.  *Id.* at 490, 478.

[81] The Fourth Circuit distinguished the Sixth Circuit's contrary holding on this point in *Déjà Vu* by saying, "that court did not directly resolve the issue because it concluded that the relief awarded in those proceedings was not 'coupon' relief at all."  *Id.* at 491 n.13.

Most recently, the Second Circuit also weighed in on what a coupon is. It found Access Codes for New York Times subscriptions to be "coupons under the plain meaning of the word 'coupon,' the legislative history of CAFA, and even under the Ninth Circuit's interpretation of the scope of the coupon settlement provisions." *Moses*, 79 F.4th at 248. Judge Lynch's opinion for the Court used two contemporary dictionaries to define a coupon as "an item that entitles its user to free or discounted products or services." *Id.* at 247. It went on to add that even though "a coupon is often described as a physical piece of paper, there is no dispute that coupons may be (and in today's economy often are) held in digital form." *Id.* at 248. From there, the opinion confirmed its dictionary definition with CAFA's legislative history and corroborated its finding that the Access Codes were coupons with the legislative history and additional considerations from other courts. *Id.* at 248–53 (collecting cases and factors).

The Eighth Circuit applied the coupon settlement provisions of CAFA in one case where the parties agreed that the certificates provided in that case were a "non-cash benefit to class members," but the court did not provide any additional guidance on what constitutes a coupon for future cases. *See Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969, 971 (8th Cir. 2016).

A couple of district courts in our Circuit have also ruled on whether particular settlement awards for class members are coupons. Judge Middlebrooks, in a 2017 Southern District of Florida case, listed some hallmarks of coupon settlements, but found there

is not a coupon settlement when "class members are not required to take the [non]pecuniary relief" because there is a cash option.[82] *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV, 2017 WL 9472860, at *6 (S.D. Fla. Nov. 20, 2017) (first citing 4 Newburg § 12:11 (5th ed. 2011); then citing *Online DVD*, 779 F.3d at 952; then citing *CLRB Hanson Indus., LLC v. Weiss & Assocs., PC*, 465 F.App'x 617, 619 (9th Cir. 2012) (mem.); and then citing *O'Brien v. Brain Rsch. Labs, LLC*, No. CIV.A. 12-204, 2012 WL 3242365, at *19 n.8 (D.N.J. Aug. 9, 2012)).[83] Then, in 2021, a Middle District of Florida opinion noted that "[d]istrict courts within the Eleventh Circuit have largely adopted the Ninth Circuit's rationale" with respect to what is a coupon settlement. *Smith v. Costa Del Mar, Inc.*, No. 3:18-CV-1011-TJC-JRK, 2021 WL 4295282, at *14 (M.D. Fla. Sept. 21, 2021) (collecting cases), *vacated and remanded on other grounds sub nom. Smith v. Miorelli*, 93 F.4th 1206, 1209 (11th Cir. 2024.[84]

---

[82] The District Court here cited *Mahoney* in finding that the proposed Settlement Agreement did not create a coupon settlement either, since the Agreement provided an option between cash and nonpecuniary relief. *Drazen*, 2020 WL 8254868, at *4.

[83] Judge Middlebrooks added that the weight given to this factor is reinforced by the fact that 95.2% of the claims submitted were for the cash award, not the voucher. *Mahoney*,2017 WL 9472860, at *6.

[84] Chief Judge Corrigan was persuaded by several factors in that case: class members didn't need to spend any of their own money to use the vouchers; the vouchers could be used to purchase a variety of entire items, even if they didn't cover the whole price of more expensive items; they were freely stackable and transferrable; they had a two-year expiration; and tax, shipping, and

Finally, a decision in this area in a 2015 case in the District of Massachusetts is of note for its use of contemporary dictionary definitions. Judge Young's opinion coined a broad definition of a coupon for the purposes of CAFA, which it also found to be consistent with various dictionaries. *Tyler*, 150 F.Supp.3d at 60 & n.14 (collecting a 1989, 2000, and 2003 definition from dictionaries that the First Circuit has used before).

All told, we define a coupon for the purposes of CAFA as a voucher, certificate, or form that can be exchanged for one or more goods or services, or for a discount on one or more goods or services, thus aligning our interpretation with those of the Fourth and Second Circuits.

2. Calculating Attorney's Fees Under CAFA

Given that CAFA applies because this settlement contains coupons, the next question is how do we determine attorney's fees in coupon settlements. There are three relevant provisions of CAFA that relate to attorney's fees in coupon settlements.[85] The

---

handling costs were waived. *Smith v. Costa Del Mar, Inc.*, No. 3:18-CV-1011-TJC-JRK, 2021 WL 4295282, at *14 (M.D. Fla. Sept. 21, 2021) (citations omitted). Also, the more a consumer was potentially wronged, the more value they got from the settlement, in the form of more vouchers. *Id.*

[85] The relevant provisions here are:

(a) **Contingent Fees in Coupon Settlements.**— If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of

the coupons shall be based on the value to class members of the coupons that are redeemed.

(b) **Other Attorney's Fee Awards in Coupon Settlements.**—

(1) **In general.**—If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.

(2) **Court approval.**—Any attorney's fee under this sub-section shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be con-strued to prohibit application of a lodestar with a mul-tiplier method of determining attorney's fees.

(c) **Attorney's Fee Awards Calculated on a Mixed Basis in Coupon Settlements.**—If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief—

(1) that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with sub-section (a); and

(2) that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recov-ery of the coupons shall be calculated in accordance with subsection (b).

(d) **Settlement valuation expertise.** —In a class action involv-ing the awarding of coupons, the court may, in its

meaning of these provisions does not jump off the page because the statute is "not a model of draftsmanship." *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 625 (6th Cir. 2020) (collecting cases finding the same). Accordingly, we must engage in statutory interpretation to resolve this case, and we do so *de novo*. *United States v. Jim*, 891 F.3d 1242, 1250 (11th Cir. 2018). Upon review of the text and the policies underpinning the act, we adopt the same interpretation as all of our sister Circuits to consider the question, except for the Ninth Circuit. *See Lumber Liquidators*, 27 F.4th at 302 (collecting additional cases from the Sixth, Seventh, and Eighth); *see also Blessing v. Sirius XM Radio Inc.*, 507 F.App'x 1, 4–5 (2d Cir. 2012) (adopting the same). *But see HP Inkjet*, 716 F.3d at 1185 (adopting a different interpretation).

The attorney's fees for coupon settlements under CAFA may be based on the value of the coupons that are redeemed, the lodestar method, or a combination of both.

> By its terms, a district court may choose to "attribute" attorney's fees to a settlement's provision of "coupons" using the percentage-of-recovery method under subsection (a), in which case the fee calculation must be based on the value of any "coupons" actually redeemed by class members — not a defined face

---

discretion upon the motion of a party, receive expert testimony from a witness qualified to provide information on the actual value to the class members of the coupons that are redeemed.

28 U.S.C. § 1712(a)–(d).

> value. *See* 28 U.S.C. § 1712(a). On the other hand, sub-
> section (b) provides that if a court does *not* use "a por-
> tion of the recovery of the coupons" in determining
> its attorney's fees award, the award "shall be based
> upon the amount of time class counsel reasonably ex-
> pended working on the action" — in other words, the
> statute approves the lodestar approach. *Id.* §
> 1712(b)(1). For its part, subsection (c) simply extends
> the discretion afforded to the district court, providing
> that if a "coupon" settlement also provides for equi-
> table relief, the court may use a combination of the
> percentage-of-recovery and lodestar methods, de-
> pending on what portions of the fee award (if any) are
> "based upon a portion of the recovery of the cou-
> pons." *Id.* § 1712(c)(1)-(2).

*Lumber Liquidators*, 27 F.4th at 301. All of the attorney's fees in a
settlement including coupons are not simply "attributable to the
award of coupons." Rather, the portion of the fees that comes
from a calculation based on the value of the coupons is the portion
of the fees "attributable to" or "based upon" the coupons. *See Lin-
neman*, 970 F.3d at 625–28 (conducting statutory interpretation of
the phrase "attributable to" in this section of CAFA and concluding
the same).

Naturally, the next question is when and how to determine
the value of coupons that are actually redeemed. In many cases, it
will be reasonable for a district court to entertain and approve mo-
tions for attorney's fees only after the coupons' expiration date so
that it knows for certain the value of the coupons that *were* actually

redeemed. It is also reasonable, and in fact may be the only practical thing to do sometimes, to estimate the redemption rate of the coupons when approving the settlement. For exactly this purpose, CAFA itself provides that "the court may, in its discretion upon the motion of a party, receive expert testimony from a witness qualified to provide information on the actual value to the class members of the coupons that are redeemed." 28 U.S.C. § 1712(d). Finally, even when the fees are based on the lodestar method, a district court may abuse its discretion if it does not consider the redemption rate of the coupons during the fair, reasonable, and adequate assessment of the settlement as a whole. *See Linneman*, 970 F.3d at 628 ("[A] district court must ensure that a fees award is 'reasonable,' which includes as 'the most critical factor . . . the degree of success obtained.' And as discussed below, a district court will often abuse its discretion if it fails to consider the redemption rate as part of that analysis." (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983))).

Accordingly, calculating attorney's fees in this case as a percentage of the possible relief available to class members used the wrong legal standard and was thus an abuse of discretion.

## IV. Conclusion

In deciding this appeal, we have considered matters not specifically raised in Pinto's opening brief. His brief questions the District Court's Rule 23(e)(2) finding that the proposed Second Amended Class Action Settlement Agreement and Release was "fair, reasonable, and adequate" and the Court's granting of Class

Counsel's motion for attorney's fees. But his brief does not address, as we have here, the District Court's errors, prompted as they were by the Plaintiffs' lawyers. Specifically, the District Court erred in (1) applying Rule 23—especially Rule 23(e)(1) and (c)(2)—in preliminarily approving the proposed Settlement Agreement and (2) ordering Rule 23(c)(2) notice pursuant to Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3).

That Pinto's brief did not pinpoint these errors is understandable given the fact that the errors occurred in the June 9 order while the District Court was proceeding *ex parte* with respect to absent class members. This order certified a Rule 23(b)(3) class for settlement purposes only, and, pursuant to Rule 23(c)(2), directed the issuance of the Short Form Notice to class members of the proposed settlement—all without "conduct[ing] a rigorous analysis of the [R]ule 23 prerequisites."[86] *Castano*, 84 F.3d at 740.

---

[86] Had the District Court conducted a rigorous analysis of the Rule 23(e)(1) prerequisites in May and June of 2020, before "ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)," it would have discovered what it ultimately sensed by December 23, 2020—that GoDaddy had entered into the Settlement Agreement and agreed to pay the Plaintiffs' lawyers up to $10.5 million in order to obtain widespread releases of liability for itself and a host of other entities. The released parties included GoDaddy "and its past and present parents, predecessors, successors, affiliates, holding companies, subsidiaries, employees, agents, attorneys, board members, assigns, partners, contractors, joint venturers, or third-party agents with which it has or had contracts, and/or their affiliates."

To conduct that rigorous analysis, discover the errors we have pinpointed, and call them to the District Court's attention by objection made under penalty of perjury, Pinto's lawyer had less than fifty-two days, from July 9 to August 31, 2020.  In that time, the lawyer would have needed to analyze the proposed Settlement Agreement, consult GoDaddy's settlement website, and then consider why GoDaddy had entered into the proposed Settlement Agreement and promised to pay the Plaintiffs' lawyers up to $10.5 million.  To understand why, Pinto's lawyer would have to read the record in *Herrick,* which was on appeal in the Ninth Circuit and had been fully briefed.  The briefs and the decision on appeal described the controversy in *Drazen/Bennett* in far greater detail than did the Short Form Notice, Long Form Notice, or anything on the settlement website.[87]

No lawyer, we submit, would have discovered the errors we have pinpointed in less than fifty-two days and presented those errors to the District Court in an objection filed under penalty of perjury, as the District Court required in its June 9 order.  More to the point, no lawyer would have filed an objection under penalty of

---

[87] The Short Form Notice informed Pinto of the relevant litigation thusly:

> This notice concerns a proposed Settlement to resolve claims in the lawsuits *Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563 (S.D. Ala.), *Bennett v. GoDaddy.com, LLC*, Case No. 1:20-cv-00094 (S.D. Ala.), and *Herrick v. GoDaddy.com, LLC*, Case No. 2:16-cv-00254 (D. Ariz.), *appeal pending* 18-16048 (9th Cir.).

App. Ex. A.

perjury without reading the record of Herrick's appeal in the Ninth Circuit. So, too, the District of Arizona record in *Bennett*. The objection Pinto's lawyer presented was rock solid and limited to the information provided to the absent class members with the Court's *imprimatur*. The objection was that in granting Class Counsel's motion for attorney's fees on August 11, 2020, the District Court had breached its fiduciary duty to the absent class members and thereby denied them due process of law. The Court erred, the objection read, because the Short Form Notice told class members that they had until August 31 to object to Class Counsel's motion for attorney's fees, not July 31 as the June 9 order stated, or August 11 when the court ruled on the attorney's fees motion.

That's the extent of the objection Pinto's lawyer could ethically make by August 31 under penalty of perjury. The question is whether we should limit our review to the objection. We think not for two reasons.

The first is what Justice Black stated in *Hormel*. It is worth repeating:

> [r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.

*Hormel*, 312 U.S. at 557.

The second reason is that in declining to entertain points Pinto did not brief—all concerning the District Court's application of Rule 23—we would tend to make light of what the Third Circuit stated in *In re General Motors*. "Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." *In re Gen. Motors*, 55 F.3d at 785 (quoting *Grunin*, 513 F.2d at 123).

The District Court became the absent class members' fiduciary and guardian on June 9, 2020, when it certified the members *ex parte* as a class for settlement purposes only. They remained subject to that guardianship unless and until they opted out of the settlement by August 31, 2020, by writing the Settlement Administrator a letter in which they stated, under penalty of perjury, the desire to be excluded from the Settlement Class. Because the District Court preliminarily approved the Settlement Agreement before formally certifying a class (on December 23, 2020), it had to be "even more scrupulous than usual" in guarding the rights of the absent class members. *Id.* at 805; *accord Mars*, 834 F.2d at 681; *Weinberger*, 698 F.2d at 73.

In sum, the District Court abused its discretion in approving the Second Amended Class Action Settlement Agreement and Release. For the reasons above, we **VACATE** the judgment of the District Court and its order granting attorney's fees and **REMAND** the cases to the District Court for further proceedings consistent with the holdings of this opinion.

**SO ORDERED.**

21-10199    WILSON, J., Concurring in the Judgment    1

WILSON, Circuit Judge, Concurring in the Judgment, joined by BRANCH, Circuit Judge:

I concur in the judgment to the extent that I concur with the analysis in Section III.C.iii.  While Judge Tjoflat's opinion discusses several reasons for why the district court erred, I would have addressed only the district court's erroneous determination that this was not a coupon settlement and the related attorney's fees calculation issue.

With that said, I agree with the determination that the Class Action Fairness Act (CAFA) "applies to settlements made up of coupons and other forms of relief because the language of 28 U.S.C. § 1712 anticipates that what it labels 'coupon settlements' will not always be composed entirely of coupons." Judge Tjoflat Op. at 90–91 (citing *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 706–10 (7th Cir. 2015)).  In finding that the CAFA applies, Judge Tjoflat then thoroughly explains how district courts should address attorney's fees in a coupon settlement, and I agree with this analysis.

Ultimately, the district court erred, and the Court correctly vacates and remands this case back to the district court.

# APPENDIX

# EXHIBIT A

<u>PROPOSED SHORT FORM NOTICE</u>

**IF YOU RECEIVED A TEXT MESSAGE OR PHONE CALL FROM
GODADDY BETWEEN NOVEMBER 4, 2014 AND DECEMBER 31, 2016
ON YOUR CELLULAR TELEPHONE, YOU MAY BE ELIGIBLE TO
RECEIVE A MERCHANDISE CREDIT OR PAYMENT FROM A CLASS
ACTION SETTLEMENT**

*A federal court authorized this Notice. You are not being sued. This is not a
solicitation from a lawyer.*

***PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE,
OR THE DEFENDANT WITH QUESTIONS ABOUT THE SETTLEMENT OR
THE LITIGATION***

This notice concerns a proposed Settlement to resolve claims in the lawsuits
*Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563 (S.D. Ala.), *Bennett v.
GoDaddy.com, LLC*, Case No. 1:20-cv-00094 (S.D. Ala.), and *Herrick v.
GoDaddy.com, LLC*, Case No. 2:16-cv-00254 (D. Ariz.), *appeal pending* 18-16048
(9th Cir.).[1] Plaintiffs Susan Drazen, Jason Bennett, and John Herrick ("Plaintiffs")
allege that Defendant GoDaddy.com, LLC ("GoDaddy") violated the Telephone
Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by placing phone calls and
sending text messages to cellular telephone numbers without the recipients'
consent. GoDaddy denies the allegations in the lawsuits, and the Court has not
decided who is right.

<u>**Am I a Member of the Settlement Class?**</u>

You are receiving this notice because GoDaddy's records indicate that you might
be a Settlement Class Member. You're a member of the settlement class if, at any
time between November 4, 2014 and December 31, 2016, GoDaddy placed a voice
or text message call to your cellular telephone pursuant to an outbound campaign
facilitated by the web-based software application used by 3Seventy, Inc., or the
software programs and platforms that comprise the Cisco Unified Communications
Manager.

---

[1] Capitalized terms herein have the same meanings as those defined in the Settlement
Agreement, a copy of which may be found online at the Settlement Website below.

## What can I Get From The Proposed Settlement?

GoDaddy has agreed to make up to $35,000,000 available to pay individuals who submit valid claim forms, settlement administration costs, attorney's fees, a service award to the Plaintiffs, and costs and expenses of the litigation. Subject to the qualification set forth at the end of this paragraph, each Settlement Class Member who submits a valid Claim Form will be entitled to receive their choice of either a Voucher Award (a $150 merchandise credit voucher that can be used for any products and services made available by GoDaddy) or a Cash Award ($35, in the form of a check mailed to you). The Voucher Award is freely transferrable, is good on all merchandise (including sale, discount, or promotional pricing), and requires no minimum purchase. There is a limit of one Claim per Settlement Class Member, and each Settlement Class Member may receive only one Voucher Award or one Cash Award. Upon receipt of a valid Claim Form, the Settlement Administrator will determine whether you are eligible to receive an Award. Depending on how many valid Claim Forms are submitted, it is possible that each Settlement Class Member's Award will be reduced on a pro-rata basis to cover settlement administration costs, attorney's fees, a service award to the Plaintiffs, and the costs and expenses of the litigation.

To receive either the Voucher Award or the Cash Award, you must submit a Claim Form online at [www.DrazenTCPASetlement.com], or print the Claim Form and mail it to the Settlement Administrator at the address provided on the Claim Form. A Claim Form must be postmarked or submitted online by [October 7, 2020].

## What are My Options?

If you do not want to be legally bound by the settlement, you must exclude yourself by **[August 31, 2020]**. If you do not exclude yourself, you will release any claims you may have, as more fully described in the Settlement Agreement, available at the settlement website [www.DrazenTCPASettlement.com]. You may object to the settlement by **[August 31, 2020]**. The Long Form Notice available on the website explains how to exclude yourself or object. The Court will hold a hearing on [December 14, 2020] at [2:00 p.m. CST] in Courtroom [4B] of the U.S. District Court for the [Southern District of Alabama], [155 Saint Joseph St., Mobile, AL 36602], to consider whether to approve the Settlement, a request by Class Counsel for attorney's fees of up to 30% of $35,000,000, costs for their work in the case, and an incentive award payment in an amount up to $5,000 for each of the Plaintiffs. The Motion for these fees and expenses will be posted on the

2

Settlement Website when it is filed with the Court. The Court will decide the amount of fees and expenses to award. You may appear at the hearing, subject to the requirements set by the Court, either yourself or through an attorney hired by you, but you are not required to do so. For more information, call [(866) 977-0753] or visit the website.

# EXHIBIT B

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*Drazen v. GoDaddy.com*, LLC, Case No. 19-cv-00563

(U.S. District Court for the Southern District of Alabama)

*Bennett v. GoDaddy.com, LLC*, Case No. 1:20-cv-00094

(U.S. District Court for the Southern District of Alabama)

*Herrick v. GoDaddy.com, LLC*, Case No. 2:16-cv-00254, *appeal pending* 18-16048 (9th Cir.)

(U.S. District Court for the District of Arizona)

**PLEASE READ THIS NOTICE CAREFULLY. IF YOU RECEIVED A PHONE CALL OR TEXT MESSAGE ON YOUR CELLULAR TELEPHONE FROM GODADDY BETWEEN NOVEMBER 4, 2014, AND DECEMBER 31, 2016, YOU MAY BE ENTITLED TO A MERCHANDISE CREDIT OR PAYMENT FROM A CLASS ACTION SETTLEMENT. THIS NOTICE EXPLAINS YOUR RIGHTS AND OPTIONS AND THE DEADLINES TO EXERCISE THEM.**

*A federal court authorized this Notice. You are not being sued. This is not a solicitation from a lawyer.*

### *PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE, OR THE DEFENDANT WITH QUESTIONS ABOUT THE SETTLEMENT OR THE LITIGATION.*

This Notice concerns the proposed settlement to resolve claims in the lawsuits *Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563 (S.D. Ala.), *Bennett v. GoDaddy.com, LLC*, Case No. 1:20-cv-00094 (S.D. Ala.), and *Herrick v. GoDaddy.com, LLC*, Case No. 2:16-cv-00254 (D. Ariz.), *appeal pending* 18-16048 (9th Cir.).[1]

Plaintiffs Susan Drazen, Jason Bennett, and John Herrick ("Plaintiffs") allege that Defendant GoDaddy.com, LLC ("GoDaddy") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by placing phone calls and sending text messages to cellular telephone numbers without the recipients' consent.

GoDaddy denies Plaintiffs' allegations, denies any wrongdoing whatsoever, and has not conceded the truth or validity of any of the claims against it. By entering into this settlement, the parties seek to avoid the risks and costs associated with further litigation. The Court has not decided who is right.

The settlement offers payments (in the form of either a merchandise voucher or cash) to Settlement Class Members who submit valid Claims.

Your legal rights are affected regardless of whether you act. Read this Notice carefully.

### WHY DID I GET THIS NOTICE?

This is a court-authorized notice of a proposed settlement in the class action lawsuits known as *Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563 (S.D. Ala.), *Bennett v. GoDaddy.com, LLC*, Case No. 1:20-cv-00094 (S.D. Ala.), and *Herrick v. GoDaddy.com, LLC*, Case No. 2:16-cv-00254 (D. Ariz.), *appeal pending* 18-16048 (9th Cir.). The settlement would resolve lawsuits brought on behalf of persons who allege that GoDaddy.com, LLC ("GoDaddy") placed calls and sent text messages to cellular telephone numbers without the recipients' consent. The Court has granted preliminary approval of the settlement and has conditionally certified the Settlement Class for purposes of settlement only. This Notice explains the nature of the class action lawsuit, the terms of the settlement, and the legal rights and obligations of the members of the Settlement Class. Please read the instructions and explanations below so that you can better understand your legal rights.

The Honorable Kristi K. DuBose, U.S. District Court for the Southern District of Alabama, is overseeing this settlement.

### WHAT ARE THE LAWSUITS ABOUT?

The lawsuits allege that GoDaddy placed calls and sent text messages to cellular telephone numbers without the recipients' consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. GoDaddy

---

[1] Capitalized terms herein have the same meanings as those defined in the Settlement Agreement (the "Agreement"), which may be found online at the Settlement Website, www.DrazenTCPASettlement.com.

denies each and every allegation of wrongdoing, liability, and damages that were or could have been asserted in the Actions, and GoDaddy denies that the claims in the Actions would be appropriate for class treatment if the litigation were to proceed through trial.

The Plaintiffs' Complaints, the Settlement Agreement, and other case-related documents are available on the Settlement Website, accessible at www.DrazenTCPASettlement.com. The settlement resolves the Actions. The Court has not decided who is right.

## WHY IS THIS A CLASS ACTION?

A class action is a lawsuit in which one or more persons called a "Class Representative" sues on behalf of people who have similar claims. All of these people together are a "Settlement Class" or "Settlement Class Members." The settlement, if finally approved by the Court, resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class.

## WHY IS THERE SETTLEMENT?

The Plaintiffs and GoDaddy have determined that it is in their best interests to settle this case to avoid the expenses, uncertainties, and inconvenience associated with litigation. This settlement resolves all claims against GoDaddy and its affiliated entities. The settlement is not an admission of wrongdoing by GoDaddy and does not imply that there has been, or would be, any finding that GoDaddy violated any law. GoDaddy denies each and every allegation of wrongdoing and liability in the Actions.

The Court has already preliminarily approved the settlement. Nevertheless, because the settlement of a class action determines the rights of all members of the class, the Court overseeing these lawsuits must give Final Approval to the settlement before it can be effective. The Court has conditionally certified the Settlement Class for settlement purposes only, so that Settlement Class Members receive this Notice and have the opportunity to exclude themselves from the Settlement Class, to voice their support or opposition to Final Approval of the settlement, and to have the opportunity to obtain the benefits offered by the settlement. If the Court does not give Final Approval to the settlement, or if it is terminated by the parties, the settlement will be void, and the lawsuits will proceed as if there had been no settlement and no certification of the Settlement Class.

## WHO IS IN THE SETTLEMENT CLASS?

You are a member of the Settlement Class if, between November 4, 2014, and December 31, 2016, GoDaddy placed a voice call or sent a text message to your cellular telephone pursuant to an outbound campaign facilitated by the web-based software application used by 3Seventy, Inc., or the software programs and platforms that comprise the Cisco Unified Communications Manager.

Excluded from the Settlement Class are (1) the trial judge presiding over the Actions; (2) GoDaddy, as well as any parent, subsidiary, affiliate, or control person of GoDaddy, and the officers, directors, agents, lawyers, servants, or employees of GoDaddy; (3) the immediate family of any such person(s); (4) any Settlement Class Member who timely opts out of the settlement; and (5) Class Counsel, their employees, and their immediate family.

## WHAT ARE MY OPTIONS?

**(1)     Submit a Claim Form.**

If you are a member of the Settlement Class, you must submit a completed claim form to receive your choice of a Voucher Award or Cash Award. To do so, you must complete a claim form and submit it by **October 7, 2020**. You may obtain a claim form at www.DrazenTCPASettlement.com, and you may submit your claim form online at www.DrazenTCPASettlement.com or to the Settlement Administrator by U.S. Mail at *Drazen v. GoDaddy.com, LLC*, Settlement Administrator, P.O. Box 2730, Portland, OR 97208-2730, postmarked by **October 7, 2020.** *Submitting a valid and timely claim form is the only way to receive a benefit from this settlement, and is the only thing you need to do to receive the elected Voucher Award or Cash Award.* If the Court approves the settlement and it becomes final and effective, and you have submitted a valid claim form, then you will receive your elected Award.

**(2)     Exclude Yourself.**

You may exclude yourself from the settlement. If you do so, you will receive no benefit from the settlement, but you will not release any claims you may have against GoDaddy and the Released Parties (as that term is defined in the Settlement Agreement), and are free to pursue whatever legal rights you may have by pursuing your own lawsuit

against the Released Parties at your own risk and expense. To exclude yourself from the settlement, you must mail a timely letter to the Settlement Administrator at *Drazen v. GoDaddy.com, LLC*, Settlement Administrator, P.O. Box 2730, Portland, OR 97208-2730, postmarked by **August 31, 2020**. Your request to be excluded from the settlement must be personally signed by you under penalty of perjury and contain a statement that indicates your desire to be "excluded from the Settlement Class," and that, absent of excluding yourself or "opting out," you are "otherwise a member of the Settlement Class in the proposed settlement of *Drazen v. GoDaddy.com, LLC*, Case No. 19-cv-00563 (S.D. Ala.), *Bennett v. GoDaddy.com, LLC*, Case No. 1:20-cv-00094 (S.D. Ala.), and *Herrick v. GoDaddy.com, LLC*, Case No. 2:16-cv-00254 (D. Ariz.), *appeal pending* 18-16048 (9th Cir.)." The request should also include your full name, address, telephone number(s), and GoDaddy account number(s).

You cannot ask to be excluded on the phone, by email, or via the Settlement Website. You may opt out of the Settlement Class only for yourself.

**(3)     Object to the Settlement.**

If you are a Settlement Class Member (and do not exclude yourself from the Settlement Class), you can object to any part of the settlement. To object, you must submit a timely letter that includes the following: (1) a heading that includes the case name and case number; (2) your full name, address, telephone number, the cellular telephone number(s) at which you received a phone call or text message from GoDaddy between November 4, 2014, and December 31, 2016, GoDaddy account number(s), and if represented by counsel, the name, bar number, address, and telephone number of your counsel; (3) a signed statement, under penalty of perjury, that you received one or more phone calls or text messages from GoDaddy between November 4, 2014, and December 31, 2016, and that you are a member of the Settlement Class; (4) a statement of all your objections to the settlement, including your legal and factual basis for each objection; (5) a statement of whether you intend to appear at the Final Approval Hearing, either with or without counsel, and if with counsel, the name of your counsel who will attend; (6) the number of times in which you, your counsel, or your counsel's law firm have objected to a class action settlement within the five years preceding the date that you submit your objection, the caption of each case in which you, your counsel, or your counsel's law firm has made such objection, and a copy of any orders related to or ruling upon your, your counsel's, or your counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case; (7) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objections, as well as any exhibits they intend to introduce at the Final Approval Hearing; and (8) any and all agreements related to the objection or the process of objections—whether written or verbal—between you or your counsel and any other person or entity.

**IF YOU DO NOT TIMELY MAKE YOUR OBJECTION, YOU WILL BE DEEMED TO HAVE WAIVED ALL OBJECTIONS AND WILL NOT BE ENTITLED TO SPEAK AT THE FINAL APPROVAL HEARING.**

If you file and serve a written objection and statement of intent to appear, you may appear at the Final Approval Hearing, either in person or through your personal counsel hired at your expense, to object to the fairness, reasonableness, or adequacy of the settlement.

If you wish to object, you must file your objection with the Court (using the Court's electronic filing system or in any manner in which the Court accepts filings) no later than **August 31, 2020**, and mail a copy of your objection to (1) the Clerk of Court; (2) the attorneys representing the Plaintiffs and the Settlement Class (Evan M. Meyers, McGuire Law, P.C., 55 West Wacker Drive, 9th Floor, Chicago, IL 60601); and (3) the attorneys representing GoDaddy (Paula L. Zecchini and Jeffrey M. Monhait, Cozen O'Connor, 999 Third Avenue, Suite 1900, Seattle, WA 98104), postmarked no later than **August 31, 2020**.

If you hire an attorney in connection with making an objection, that attorney must also file with the Court a notice of appearance by **November 30, 2020**. If you do hire your own attorney, you will be solely responsible for payment of any fees and expenses the attorney incurs on your behalf. If you exclude yourself from the settlement, you cannot file an objection.

**(4)     Do Nothing.**

If you are a Settlement Class Member and do not submit a valid claim form, you will still be bound by all orders and judgments of the Court. Unless you exclude yourself from the settlement, you will not be able to file or continue a lawsuit against the Released Parties regarding any released claims.

**WHAT DOES THE SETTLEMENT PROVIDE?**

GoDaddy has agreed to make up to $35,000,000 available to pay individuals who submit a valid claim form, settlement administration costs, attorney's fees, a service award to the Plaintiffs, and costs and expenses of the

litigation. Subject to the qualification set forth at the end of this paragraph, each Settlement Class Member who submits a valid claim form will be entitled to receive their choice of either a Voucher Award (a $150 merchandise credit voucher that can be used for any products and services made available by GoDaddy) or a Cash Award ($35 in the form of a check mailed to you). The Voucher Award is freely transferrable, is good on all merchandise (including sale, discount, or promotional pricing), and requires no minimum purchase. There is a limit of one Claim per Settlement Class Member, and each Settlement Class Member may receive only one Voucher Award or one Cash Award. Upon receipt of a valid claim form, the Settlement Administrator will determine whether you are eligible to receive a Settlement Award. Depending on how many valid claim forms are submitted, it is possible that each Settlement Class Member's Settlement Award will be reduced on a pro rata basis to cover settlement administration costs, attorney's fees, a service award to the Plaintiffs, and the costs and expenses of the litigation.

Plaintiffs and their lawyers think the proposed settlement is best for everyone who is affected by it.

To claim a Voucher Award or a Cash Award, Class Members must submit a claim form by **October 7, 2020**. Following the Final Approval of the settlement, the Settlement Administrator will provide the Voucher Award (in the form of a redemption code) or Cash Award (in the form of a check) to each Class Member who submitted a valid and timely claim form. All checks issued to Settlement Class Members who choose to receive the Cash Award will expire and become void one hundred eighty (180) days after they are issued. Any unused Voucher Award balance will be forfeited one (1) year after it is issued.

Additionally, the attorneys who brought these lawsuits (listed below) will ask the Court to award them attorney's fees in an amount not to exceed 30% of $35,000,000, plus costs for their time, expense, and effort expended in investigating the facts, litigating these cases, and negotiating the settlement. The Plaintiffs will also ask the Court for a payment of up to $5,000 each for their time, effort, and service in this matter.

## WHAT RIGHTS AM I GIVING UP IN THIS SETTLEMENT?

Unless you exclude yourself from the settlement, you cannot sue or be part of any other lawsuit against GoDaddy about the issues in this case, including any existing litigation, arbitration, or proceeding. Unless you exclude yourself, all of the decisions and judgments by the Court will bind you.

The Settlement Agreement is available at www.DrazenTCPASettlement.com. The Settlement Agreement provides more detail regarding the Releases and describes the Released Claims with specific descriptions in necessary, accurate legal terminology, so read it carefully. If you have any questions, you can talk for free to the attorneys identified below who have been appointed by the Court to represent the Settlement Class, or you are welcome to talk to any other lawyer you choose at your own expense.

## WHEN WILL I RECEIVE THE VOUCHER AWARD OR CASH AWARD?

The parties cannot accurately predict when (or whether) the Court will grant Final Approval to the settlement, so please be patient. After the Court finally approves the settlement, and after any appeals are resolved, you will receive your Voucher Award or Cash Award. If there are appeals, resolving them can take time. Updated information about the case will be made available at www.DrazenTCPASettlement.com, or you can call the Settlement Administrator at (866) 977-0753 or contact Class Counsel at the information provided below.

## WHEN WILL THE COURT RULE ON THE SETTLEMENT?

The Court has already granted Preliminary Approval of the settlement. A final hearing on the Settlement, called a final approval or fairness hearing, will be held to determine the fairness of the settlement. At the Final Approval Hearing, the Court will also consider whether to make final the certification of the Settlement Class for settlement purposes and hear any proper objections and arguments to the settlement, as well as any requests for an award of attorneys' fees and expenses and service awards for the Plaintiffs that may be sought by Class Counsel. The Court will hold the Final Approval Hearing on **December 14, 2020, at 2:00 p.m. CST** in Courtroom 4B of the U.S. District Court for the Southern District of Alabama, 155 Saint Joseph St., Mobile, AL 36602.

If the settlement is given Final Approval, the Court will not make any determination as to the merits of the claims or defenses at issue in the Actions. Instead, the settlement's terms will take effect and the lawsuits will be dismissed on the merits with prejudice. Both sides have agreed to the settlement in order to achieve an early and certain resolution of the lawsuits, in a manner that provides specific and valuable benefits to the members of the Settlement Class.

If the Court does not grant Final Approval of the settlement, if a Final Approval is reversed on appeal, or if the settlement does not become final for some other reason, Class Members will receive no benefits from the settlement. Plaintiffs, GoDaddy, and the Class Members will be in the same position as they were prior to the execution of the

settlement, and the settlement will have no legal effect, no class will remain certified (conditionally or otherwise), and Plaintiffs and GoDaddy will continue to litigate the lawsuits. There can be no assurance that, if the settlement is not approved, the Settlement Class will recover more than is provided in the settlement, or indeed, anything at all.

## WHO REPRESENTS THE CLASS?

The Court has approved the following attorneys to represent the Settlement Class. They are called "Class Counsel." You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

John R. Cox
JRC Legal
30941 Mill Lane
Suite G-334
Spanish Fort, AL 36527
john@jrclegal.net
Tel: (251) 517-4753

Phillip A. Bock
David M. Oppenheim
Tod A. Lewis
Bock, Hatch, Lewis &
Oppenheim, LLC
134 N. La Salle St.
Ste. 1000
Chicago, IL 60602
phil@classlawyers.com
Tel: (312) 658-5500

Michael McMorrow
McMorrow Law, P.C.
One North LaSalle Street
44th Floor
Chicago, IL 60602
mike@mjmcmorrow.com
Tel: (312) 265-0708

Evan M. Meyers
Eugene Y. Turin
McGuire Law, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
eturin@mcgpc.com
Tel: (312) 893-7002

Trinette G. Kent
Kent Law Offices
3219 Camelback Rd.
Ste. 588
Phoenix, AZ 85018
tkent@kentlawpc.com
Tel: (480) 247-9644

Earl P. Underwood, Jr.
Underwood & Riemer, PC
21 South Section Street
Fairhope, AL 36532
epu@urlaw.onmicrosoft.com
Tel: (251) 990-5558

Mark K. Wasvary
Mark K. Wasvary, P.C.
2401 West Big Beaver Road,
Suite 100
Troy, MI 48084
mark@wasvarylaw.com
Tel: (248) 649-5667

## WHERE CAN I GET ADDITIONAL INFORMATION?

This Notice is only a summary of the proposed settlement of these lawsuits. More details are in the Settlement Agreement, which, along with other documents, can be obtained at www.DrazenTCPASettlement.com. If you have any questions, you can also call the Settlement Administrator at (866) 977-0753 or Class Counsel at the numbers or email addresses set forth above. In addition to the documents available on the Settlement Website, all pleadings and documents filed in court may be reviewed or copied in the Office of the Clerk. Please do not call the Judge or the Clerk of the Court about this case. They will not be able to give you advice on your options.